**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

LOGANTREE LP,

              Plaintiff,

v.

FOSSIL GROUP, INC.,

              Defendant.

C.A. No. 1:21-cv-00385-LPS

**DEMAND FOR JURY TRIAL**

**PLAINTIFF LOGANTREE LP'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANT FOSSIL GROUP, INC.'S MOTION TO DISMISS**

*Of Counsel:*

Arnold Shokouhi
Christopher M. Barkley
James E. Sherry
**MCCATHERN, PLLC**
3710 Rawlins Street, Suite 1600
Dallas, TX 75219
(214) 443-4478
arnolds@mccathernlaw.com
cbarkley@mccathernlaw.com
jsherry@mccathernlaw.com

Dated:  June 2, 2021

**CHIPMAN BROWN CICERO & COLE, LLP**
Gregory E. Stuhlman (#4765)
Aidan T. Hamilton (#6729)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
stuhlman@chipmanbrown.com
hamilton@chipmanbrown.com

*Attorneys for Plaintiff LoganTree LP*

00012665.2

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................... 1

FACTUAL BACKGROUND ....................................................................................... 2

ARGUMENT ............................................................................................................... 4

    I.     LEGAL STANDARD ...................................................................... 5

         A.     Rule 12(b)(6) ......................................................................... 5

         B.     35 U.S.C. § 101 ..................................................................... 6

    II.    CLAIM 1 IS NOT REPRESENTATIVE OF ALL CLAIMS OF THE '576 PATENT ...................................................................... 7

    III.   THE PATENT IS ELIGIBLE UNDER BOTH PRONGS OF THE *ALICE* INQUIRY ................................................................ 8

         A.     *Alice* Step 1: The claims of the '576 Patent Are Directed to Patent-Eligible Subject Matter. ...................................... 8

         B.     *Alice* Step 2: The Claims of the '576 Patent Contain an Inventive Concept. ................................................................ 15

CONCLUSION ............................................................................................................ 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) ...................................................................7, 18

*Affinity Labs of Tex., LLC v. DirecTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ........................................................................13

*Alice Corp. Pty. Ltd. v. CLS Bank. Intern.*,
    573 U.S. 208 (2014) ..........................................................................6, 7, 11, 15

*Align Tech., Inc. v. 3Shape A/S*,
    2020 WL 5979353 (D. Del. Oct. 8, 2020) ...........................................................5

*Amdocs (Israel) Ltd., v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016) ...................................................................15, 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................5

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ..............................................................7, 15, 17

*Baxter Int'l, Inc., v. Carefusion Corp.*,
    2016 WL 2770787 (N.D. Ill. May 13, 2016)......................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................5

*Berkheimer v. HP, Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ........................................................................18

*CardioNet, LLC v. InfoBionic, Inc.*,
    955 F.3d 1358 (Fed. Cir. 2020) ..................................................................passim

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019) ..................................................................passim

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ..........................................................................................10

*Elec. Power Grp., LLC, v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) .................................................................11

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) .................................................................14

*Estate of Albart by Albart v. Lavastone Capital LLC*,
    2021 WL 1063339 (D. Del. March 18, 2021) .................................................5

*FairWarning IP, LLC v. Iatric Systs., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) .................................................................11

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ........................................................................5

*Garmin USA, Inc. v. Cellspin Soft, Inc.*,
    140 S. Ct. 907 (2020) ..............................................................................5, 6

*Immersion Corp. v. Fitbit*,
    313 F. Supp. 3d 1005 (N.D. Cal. 2018)..............................................10, 11, 13

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ......................................................6, 9, 14, 15

*Nice Ltd., v. CallMiner, Inc.*,
    2020 WL 1502290 (D. Del. March 30, 2020) ...............................................18

*Polaris Innovations Ltd. v. Kingston Tech. Co.*,
    223 F.Supp.3d 1026, (C.D. Cal. 2016) ........................................................12

*POWERbahn, LLC v. Found. Fitness LLC*,
    2016 WL 4318978 (D. Nev. Aug. 11, 2016)..................................................12

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
    827 F.3d 1042 (Fed. Cir. 2016) .........................................................6, 7, 10

*Thales Visionix Inc. v. U.S.*,
    850 F.3d 1343 (Fed. Cir. 2017) ....................................................10, 11, 12, 14

## Statutes

35 U.S.C. § 101 ...............................................................................................5, 6

## Rules

Fed. R. Civ. P. 12. .......................................................................................*passim*

## NATURE AND STAGE OF PROCEEDINGS

On March 16, 2021, Plaintiff filed suit against Defendant for multiple infringements on Plaintiff's U.S. Patent No. 6,059,576. On May 10, 2021, Defendant filed its Answer and the Motion to Dismiss which is the subject of this Response.  Discovery has not commenced due to the pendency of this Motion. This proceeding is still in its infancy.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendant has not met its high burden, especially at the pleadings stage, of overcoming the presumption of validity and proving by clear and convincing evidence that claims 1-185 of U.S. Patent No. 6,059,576 (the "'576 Patent") are directed to an ineligible abstract idea.  Likewise, Defendant has not met its high burden at the pleadings stage of overcoming the presumption of validity and proving by clear and convincing evidence, with mere unsworn argument, that the limitations of all 185 claims of the '576 Patent are somehow longstanding, routine and conventional, including when viewed by one of ordinary skill in the art as of the November 21, 1997, priority date of the '576 patent.

Defendant ignores important claim limitations, and ignores the claims as a whole, including as an ordered combination when erroneously alleging that the claims are directed toward an abstract idea of "tracking and monitoring movement."

Defendant ignores technologically inventive aspects, and the actual claim limitations, of the '576 patent.  Further, instead of addressing all of the claims at issue, Defendant asserts a single claim, Claim 1 of the '576 patent, as allegedly representative of all 185 claims of the '576 patent. Defendant provides a list of conclusory, generalized statements to support its assertions here, and, given the limited record at this stage of the proceedings and the material disputes of fact underlying both steps of the *Alice/Mayo* analysis, Defendant cannot clearly establish entitlement to dismissal.

Even if the Court deems the claimed invention set forth in each of the 185 claims of the '576 Patent to be too abstract (which they are not), there is undeniably an inventive concept in each that appropriately limits the claims.

Defendant's Motion should also be denied because the 185 claims of the '576 Patent are not unduly or improperly preemptive, including of any alleged ends or abstract ideas.

In short, including when viewed properly as a whole, the claims are not abstract; they constitute a concrete application of improved computer and network technology; and they have novel, meaningful, and significant limitations which preclude any finding of unpatentability.

Furthermore, and in the alternative, if the Court deems that Section 101 challenge is appropriate in this case, genuine issues of material fact exist, such as whether the claimed invention was longstanding, routine and conventional over twenty-three years ago, and whether the claims preempt any abstract ideas, that preclude granting a Rule 12(b) Motion.  Dismissal is inappropriate when there are factual disputes to be resolved, including whether all of the 185 claims of the '576 Patent have meaningful limitations and/or inventive concepts based upon the state of the art over twenty-three years ago, and including whether the claim limitations were longstanding, routine and conventional over twenty-three years ago.

## **FACTUAL BACKGROUND**

The '576 patent is directed to a portable, self-contained device for monitoring movement of body parts during physical activity.  '576 Patent, 2:6-9 and preamble of Claim 1.  Prior to November 21, 1997, the applicant found that several inventions, called range of motion (ROM) detectors, had been patented to measure the range of motion of various joints of the human body. *Id*. at 1:25-27.  However, these inventions typically required that two people simultaneously use the device: patient/wearer and the operator of the device.  *Id*. at 1:25-27.  This is the same problem that has existed for years for personal trainers correcting a trainee's form, or a physical therapy

professional monitoring a patient's movements.  D.I. 11 at 9.  It requires two people.  The self-contained, portable nature of the '576 Patent device provides the freedom of monitoring movement of body parts without the need for a second person.  *See*, for example, FIGS. 2A-C of the '576 Patent.

The '576 Patent device includes a movement sensor for measuring data associated with unrestrained movement in any direction and generating signals indicative of the movement.  *Id*. at 4:37-48.  The movement sensor is electronically connected to a microprocessor which receives the signals generated by the movement sensor.  *Id.* at 4:52-55.  The microprocessor is connected to a real-time clock to provide date and time information to the microprocessor.  *Id.* at 5:35-37.  In the '576 Patent, user-programmable configuration information can be entered by a user, and the user-programmed operation parameters are uploaded to the microprocessor for use by the microprocessor.  *Id.* at 5:59-6:9, 7:6-11.

Using the microprocessor, the '576 Patent device detects a user-defined event using the physical movement data and the user-programmed operation parameters.  *Id.* at 5:40-47.  This is an improvement in the technology of ROM detectors for at least two reasons: (1) conventional ROM detectors disclosed in U.S. Patent Nos. 4,665,928, 5,042,505, and 5,373,858, as cited in the Background section of the '576 Patent, do not warn the device wearer when the wearer is nearing, or has reached, a potentially dangerous angle of movement (*e.g.*, a user-defined event)[1]; and (2) conventional ROM detectors disclosed in U.S. Patent Nos. 5,128,655 and 5,398,697 utilize the sensors to perform any detection (*e.g.*, a mercury switch or a "T" shaped collimated light beam) which provides for an inconvenient operation[2].

---

[1] See '576 Patent at 1:29-36.
[2] See '576 Patent at 45-54.

The microprocessor also stores event information related to the detected user-defined event along with time stamp information reflecting a time at which the movement data causing the user-defined event occurred.  '576 Patent, 5:40-47.  This storage can inform the wearer about the tendencies he has regarding his performance of a specific task.  *Id*. at 1:67 – 2:4.

The device of the '576 Patent further includes an output indicator such as a light emitting diode (LED) or liquid crystal display connected to the microprocessor for signaling the occurrence of user-defined events.  *Id*. at 4:3-16.

Claim 1, as reexamined, recites:

> A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising:
> a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;
> a power source;
> a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters, *detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data, and storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred*;
> at least one user input connected to said microprocessor for controlling the operation of said device; and
> a real-time clock connected to said microprocessor;
> memory for storing said movement data;
> an output indicator connected to said microprocessor for signaling the occurrence of user-defined events;
> wherein said movement sensor measures the angle and velocity of said movement.

## **ARGUMENT**

Plaintiff's Complaint alleges sufficient facts when taken as true that show that the Patent is eligible and worthy of protection.  The '576 Patent provides a unique and unconventional

solution and improvements to movement detection devices that was innovative in light of the technology available at the November 21, 1997 priority date. These innovative improvements allow the claims to be directed to patent-eligible subject matter. Further, the patent provides an inventive concept by applying a novel arrangement and use of computer technology not previously considered or used at the November 21, 1997 priority date.

## I.      LEGAL STANDARD

### A.      Rule 12(b)(6)

Defendant brings this motion seeking to invalidate the Patent pursuant to 35 U.S.C. § 101 under Federal Rule of Civil Procedure 12(b)(6). D.I. 11 at 3. A plaintiff at the pleading stage of the litigation need only put forth factual allegations sufficient to show that a right to relief is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 n.3 (2007). These allegations do not have to establish the elements of a *prima facie* case but instead only need to raise a reasonable expectation that discovery will reveal evidence supporting those elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Estate of Albart by Albart v. Lavastone Capital LLC*, 2021 WL 1063339, at *2 (D. Del. March 18, 2021); *Align Tech., Inc. v. 3Shape A/S*, 2020 WL 5979353, at *1 (D. Del. Oct. 8, 2020). Because issued patents are presumed to be valid and presumed to be patent eligible since the Patent and Trademark Office ("PTO") has already examined the patent under § 101, the Defendant must prove invalidity under 12(b)(6) and § 101 by clear and convincing evidence instead of by a preponderance of the evidence. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019), *cert. denied* by *Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907, 907 (2020). In a case alleging patent invalidity, the Court can consider the pleadings, the patent, and

the patent prosecution history.  *Id.*; *see also CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020), *cert. denied* by 141 S. Ct. 1266, 1266 (2021).

**B.     35 U.S.C. § 101**

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor."  35 U.S.C. § 101.  The Supreme Court has expanded on this language by identifying three types of subject matter that are not patent-eligible: "Laws of nature, natural phenomena, and abstract ideas."  *Alice Corp. Pty. Ltd. v. CLS Bank. Intern.*, 573 U.S. 208, 216 (2014).  The ultimate purpose for these exemptions is to ensure that a patent does not monopolize the basic building blocks for other inventions.  *Id.*

However, the Supreme Court cautions the courts and the parties to "tread carefully in construing the exclusionary principle lest it swallow all of patent law."  *Id.* at 217.  All inventions contain or use some form of the laws of nature, natural phenomena and abstract ideas; "[t]hus, an invention is not rendered ineligible for patent simply because it involves an abstract concept."  *Id.*

Ultimately, the Supreme Court developed a two-part test to determine if a patent is eligible. *Id.* at 216–19. The first step looks at the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."  *CardioNet, LLC*, 955 F.3d at 1367 (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016)).  The court is to look at the patent claims, the specifications, and the prosecutorial history of the patent.  *Id.* at 1372–73.  Claims that are purporting to improve the functioning of the computer itself or improving an existing technology process are not abstract ideas even if an abstract idea is underlying the claims.  *Id.* at 1368.  "It is not enough merely to identify a patent-ineligible concept underlying the claim; [the court] must determine whether the patent-ineligible concept is what the claim is 'directed to.'"  *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1048 (Fed.

Cir. 2016).  In essence, do the claims attempt to monopolize the entirety of the ineligible concept.  *See id.*; *CardioNet, LLC*, 955 F.3d at 1368.

If the Court finds that the claims in their entirety are directed to an abstract idea, then the Court moves to step two.  *Alice*, 573 U.S. at 217.  Under step two, the Court analyzes the elements individually and as an ordered combination to determine if the additional elements form an inventive concept that amounts in practice to more than a patent on the ineligible concept itself.  *Id.*; *CardioNet, LLC*, 955 F.3d at 1367–69.  An inventive concept is more than the application of the abstract idea using "well-understood, routine, and conventional activities."  *Cellspin,* 927 F.3d at 1316.  Allegations in the complaint, the patent, and the specifications are to be used at the 12(b)(6) stage to determine if the claims are potentially inventive.  *Id.* at 1317; *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).  The specifications "need not expressly list all the reasons why this claimed structure is unconventional."  *Cellspin*, 927 F.3d at 1317.  "An inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."  *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).  Typically whether a concept was inventive at the priority date of the patent involves significant fact questions that are difficult to resolve at the 12(b)(6) stage due to the limited record before the Court.  *Id.*; *Cellspin*, 927 F.3d at 1318.

## II.     CLAIM 1 IS NOT REPRESENTATIVE OF ALL CLAIMS OF THE '576 PATENT

Defendant argues that all of the dependent claims of the '576 patent are substantially similar and linked to the same abstract idea.  D.I. 11 at 7-8.  In particular, Defendant generalizes and summarizes the dependent claims in a chart, claiming that each dependent claim merely provides a pre- or post-solution activity.  *Id*.  Defendant's generalized assertions miss the mark.

One or more dependent claims provide limitations that both narrow the independent claims and render the dependent claims patent eligible.[3]

## III.   THE PATENT IS ELIGIBLE UNDER BOTH PRONGS OF THE *ALICE* INQUIRY

Defendant argues that the claims of the '576 Patent are ineligible because they only address an abstract idea and do not contain an innovative process. D.I. 11 at 11–17. Defendant's argument, however, fails to satisfy its burden to show that no material fact issues remain and that they are entitled to judgment as a matter of law by proving that the '576 Patent is ineligible through clear and convincing evidence. Defendant's argument provides too general of a summary of the '576 Patent and ignores several key elements especially in light of the priority date of the patent. Thus, with the limited record present at this stage of the proceedings and the presence of a prosecutorial history that shows that discovery will present significant evidence in support of Plaintiff's claims, Defendant's motion to dismiss fails to put forth a sufficient basis to find that the '576 Patent is ineligible.

### A.   *Alice* Step 1: The claims of the '576 Patent Are Directed to Patent-Eligible Subject Matter.

The claims of the '576 Patent provide a non-abstract innovative improvement to the existing technological processes that were available at the '576 Patent's priority date. Specifically, but not exclusively, the technology at the time conventionally used the movement sensors themselves to perform certain detections. By limiting the detection to the movement sensor, the conventional devices were significantly limited in their functions and capabilities usually relying on user input and management for their function. The '576 Patent improved upon this process significantly by reconfiguring the unconventional combination of components by requiring a

---

[3] Plaintiff notes that more detailed arguments regarding the dependent claims are not being provided for the sake of judicial economy and in light of the large number of dependent claims.

microprocessor to detect when the specific events occurred. '576 Patent, 5:40-47 and Claims 1, 13 and 20. The combination of the microprocessor as performing detection allows significant improvement in motion sensors by scaling down the movement sensor's functions as well as allowing an improved tracking of specific movements and understanding the specific timing when those movements occur to train the user on proper movements.

Defendant argues that "longstanding, routine, and conventional" concepts constitute abstract ideas; however, whether a concept is conventional or longstanding, does not apply to the first part of the *Alice* analysis. D.I. 11 at 9; *see CardioNet, LLC*, 955 F.3d at 1368.; *McRO, Inc.*, 837 F.3d at 1312–15. Defendant also describes "the claims at such a high level of abstraction and. . . all but ensures that the exceptions to § 101 swallow the rule." D.I. 11 at 9; *id*. In particular, Defendant's argument can be boiled down to their claim that the '576 Patent is ineligible under step one because it is directed to the abstract idea of "tracking and monitoring movement." D.I. 11 at 9–13. In doing so, Defendant genericizes the claims down to four words: "receiv[e], interpret[], stor[e] and respond[]". *Id*. This argument inappropriately oversimplifies the claims and fails to take into account the allegations in this case with the specific requirements of the '576 Patent. *See CardioNet, LLC*, 955 F.3d at 1371.

Defendant further argues that "[a] third party, such as a personal trainer, may perform the same steps [of the claims] by monitoring a trainee and recording the movement times and 'angle and velocity of said movement' with pen and paper." D.I. 11 at 9. This argument fails to appreciate the claims of the '576 as a whole, where the self-contained, portable nature provides the freedom of monitoring movement of body parts without the need for a second person. *See*, for example, Claims 1, 13 and 20 and FIGS. 2A-C of the '576 Patent.

The '576 Patent does not fall within the category of claims that seek to get a patent on the abstract idea itself; instead, the claims fall specifically within claims previously determined to be technological improvements.  *See CardioNet, LLC*, 955 F.3d at 1371.  Merely because the '576 Patent describes using known components, a new and useful arrangement of the known components makes the claim patent-eligible.  *Thales Visionix Inc. v. U.S.*, 850 F.3d 1343, 1348–49 (Fed. Cir. 2017); *CellzDirect, Inc.*, 827 F.3d at 1048 (holding that the new and improved way of achieving the abstract idea using conventional components was still patent-eligible).

Defendant relies heavily on *Immersion Corp. v. Fitbit*, 313 F. Supp. 3d 1005 (N.D. Cal. 2018) in making its arguments.  Defendant indicates that the decision in *Immersion Corp.* is instructive.  D.I. 11 at 10.  Plaintiff agrees that *Immersion Corp.* is instructive, but for a majority of the opinion not discussed by Defendant.  In fact, the majority of the opinion in *Immersion Corp.* discusses patent-eligible non-abstract claims.  *See, generally*, *Immersion Corp.*, 313 F. Supp. 3d at 1010–27.  At least claim 1 of the '576 Patent is very similar to the claims found eligible in *Immersion Corp.*

Similar to the claims found eligible in *Immersion Corp.*, "the character as a whole" of claim 1 is not abstract for at least two reasons.  *Id*. at 1022.  First, the claim does not concern only a mental process or information processing, but rather the claim is tethered to a physical device.  Second, the device detects an event and signals the occurrence of the event, and stores event information related to the detected event along with time stamp information, which differentiates the device from the generic computing elements that only process information in the more typical "abstract idea" case.

Applying *Diamond v. Diehr*, 450 U.S. 175 (1981) and *Thales Visionix*, the Court found that "it is clear that simply incorporating an abstract idea in part of a claim that is otherwise directed

to patentable subject matter does not necessarily render the entire claim ineligible." *Immersion Corp.*, 313 F. Supp. 3d at 1023.  The Court found that the "weight of the claim clearly focuses on a tangible, non-abstract device as the invention which, through the allegedly unconventional combination of components, contains the new and useful feature of notifying the device's user of independent events through vibration." *Id.* (citing *Thales Visionix*, 850 F.3d at 1348–49).  The Court stated that "[t]he fact that part of the claim contains an abstract idea does not make the claim patent-ineligible under § 101.  *See Alice*, 573 U.S. at 216 ("[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept.").  *Id.*

Defendant appears to argue that since claim 1 simply includes "receiving, interpreting, storing and responding" the claim is purely functional and therefore abstract.  D.I. 11 at 12–13.  Following the Court in *Immersion Corp.*, while these four words might constitute an abstract idea, claim 1 is a device claim that is directed to patentable subject matter, and simply incorporating these four words as an abstract idea in Claim 1 does not render the entire claim ineligible.

Similar to *Immersion Corp.*, cases cited by Defendant for the proposition that ordinary components do not render a claim patent-eligible often concern method claims that use generic computers as tools to implement the abstract idea in the method.  *See, e.g.*, *Elec. Power Grp.*, *LLC, v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (holding that method claim that implemented abstract idea using conventional tangible components was directed to an abstract idea at step one); *see also FairWarning IP, LLC v. Iatric Systs., Inc.*, 839 F.3d 1089, 1096 (Fed. Cir. 2016) (describing a system claim as "merely graft[ing] generic computer components onto otherwise ineligible method claims").  These cases are distinguishable from at least claim 1, where the focus of the claim is a new and useful application embodied in a physical device.  *See Thales Visionix*,

850 F.3d at 1349 ("the claims seek to protect only the application of physics to the *unconventional configuration* of sensors as disclosed") (emphasis added).

Indeed, other district courts that have rejected § 101 challenges where the claims are directed to a physical device that merely incorporates an abstract idea as part of its operation. *See POWERbahn, LLC v. Found. Fitness LLC*, 2016 WL 4318978, at *3 (D. Nev. Aug. 11, 2016) ("While it is true that the claim includes a formula, the claim is clearly directed at a piece of exercise equipment, and the formula is simply one part of the overall scheme. Including a law of nature as one part of a claim does not transform the entire scheme into an abstract idea."); *Polaris Innovations Ltd. v. Kingston Tech. Co.*, 223 F.Supp.3d 1026, 1034 (C.D. Cal. 2016) (noting that the defendant had not "cited any case where a court found that a claim for a purportedly novel physical configuration of a piece of computer hardware was deemed patent-ineligible because it was merely the embodiment of an abstract process" and distinguishing cases involving "patented *processes* running on what the courts found to be generic hardware"); *Baxter Int'l, Inc. v. Carefusion Corp.*, 2016 WL 2770787, at *12 (N.D. Ill. May 13, 2016) (declining defendant's invitation to ignore physical components of a claimed invention that were known in the prior art and instead considering the patent as a whole).

Defendant argues that claim 1 of the '576 Patent is the same as the claim found ineligible in *Immersion Corp.* that was "directed to receiver sensor and data signals, analyzing those signals, and outputting other signals in response." D.I. 11 at 10. Plaintiff submits that the claims of the '576 Patent provide far more than merely receiving signals, analyzing signals, and outputting other signals in response. Plaintiff notes that the claim found ineligible in *Immersion Corp.* merely consisted of a processor performing a number of steps, where the claims of the '576 Patent comprise a number of structural components beyond the processor.

In that regard, the claims of the '576 Patent provide more than just gathering and processing information, which the Federal Circuit has established is an abstract idea. *See Immersion Corp.*, 313 F. Supp. 3d at 1027. In particular, the claims of the '576 Patent at least provide for a microprocessor configured to detect a first user-defined event based on movement data and at least one of user-defined operational parameters regarding the movement data.[4] The microprocessor is further configured to store event information related to the detected user-defined event along with time stamp information reflecting a time at which the movement data causing the user-defined event occurred. The foregoing detailed limitations of the '576 claims provide algorithms to the microprocessor instructing it on how to perform the detection, and how to store the information. Thus, the claims of the '576 patent provide for "how to implement" functions. *Cf. Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016).

Moreover, the claims of the '576 Patent are analogous to numerous Federal Circuit opinions that found similar claims to be patent-eligible. As one example, in *CardioNet*, the Federal Circuit analyzed a patent concerning a cardiac monitoring device. 955 F.3d at 1365–69. This device was used to detect the timing of heart beats and the variance in the heart beats to help detect heart problems. *Id.* The district court held that the monitoring, detection, and analyzing heart beats was an abstract idea that made the patent ineligible. *Id.* at 1366–67. The Federal Circuit overturned the district court's ruling holding that the patent was not directed to the abstract idea of monitoring movement, but instead, was directed to "an improved cardiac monitoring device." *Id.* at 1368–69. The Court specifically noted that the plaintiff did not need to specify the exact improvements, but the court is to construe all facts in favor of the non-moving party at the Rule

---

[4] Plaintiff believes that a claim construction of terms "user-defined event" and "user-defined operational parameter" may be relevant to the § 101 analysis.

12(b)(6) stage.  *Id.* at 1371.  Further, prior art is not a consideration at the step one analysis; instead, the court is to take the patent at face value construing it in favor of the non-moving party.  *Id.* at 1373–74.

Similar to *CardioNet*, the claims are not directed to the abstract idea of monitoring movement.  Instead, the claims are specifically directed to an improvement of physical movement monitoring devices by rearranging and using an unconventional configuration of the elements.  Specifically, the patent identifies that the microprocessor is making the detections instead of the movement sensor in combination with additional elements.  Taking the '576 Patent and the allegations in the Complaint at face value and construing them in Plaintiff's favor shows that the Patent was directed to a "specific technological improvement."  *See CardioNet*, 955 F.3d at 1370.

The Federal Circuit has come to the same conclusion in several other matters that merely because the abstract idea is involved in the patent does not make the patent directed to an ineligible concept especially when the patent is directed at improving a current or former system.  *See, e.g.*, *McRO, Inc.*, 837 F.3d at 1314–16 (holding that the automatic use of certain rules in a computer program using general-purpose computers is an improvement on computer animation despite the fact that human animators could do the same process); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1333–36 (Fed. Cir. 2016) (holding that the claims are not directed "to *any* form of storing tabular data" but instead are directed to specific tables which form an improvement on computer technology, and that defining the claims as storing, organizing, and retrieving memory is an improper classification of the claims using a high level of abstraction that should not be used at the step one analysis.); *Thales Visionix*, 850 F.3d at 1348 (holding that the use of acquiring, retrieving, and tracking data from two sensors using mathematical equations was not directed to an abstract idea but instead was directed to an improvement on tracking movement).

Defendant cannot provide clear and convincing evidence of preemption whereby any process that seeks to track movement would be required to use the claimed invention to track movement. *McRO, Inc.*, 837 F.3d at 1315. Instead, the claimed invention is directed to a specific technological improvement and is not directed to a patent-ineligible idea. Therefore, Plaintiff asks the Court to deny Defendant's Motion to Dismiss under part one of the *Alice* analysis.

**B.** **_Alice_ Step 2: The Claims of the '576 Patent Contain an Inventive Concept.**

Even though the claims are not directed to an abstract idea, to the extent the Court finds that the claims are so directed, the claimed elements "individually and as an ordered combination" recite an inventive concept. *Alice,* 573 U.S. at 217. Defendant argues that the '576 Patent does not put forth an inventive concept because it uses generic computer components doing generic functions without any specification on how to implement the invention in a manner that improves existing systems. D.I. 11 at 14–17. Defendant's argument, however, misapplies the standard at the Rule 12(b)(6) stage by not taking as true the Plaintiff's factual allegations including the specifications in the Complaint and by requiring a patent to state specifically how it is inventive in the specification. *See Cellspin*, 927 F.3d at 1317–18 (rejecting the district court requirement of citing to specific inventive or contemplated benefits in the claims and merely requiring plausible factual allegations in the complaint). Further, Defendant fails to address the fact that whether a product is inventive looks to the priority date of the patent.

Instead, when analyzing the claims and specifications and taking them in the light most favorable to Plaintiff, the Complaint sets forth plausible facts to show that the Patent contains an inventive concept. In this regard, an inventive concept can arise when a patent takes conventional components and places them in an unconventional or non-generic arrangement. *Id.* at 1318; *Bascom*, 827 F.3d at 1350; *Amdocs (Israel) Ltd., v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–01 (Fed. Cir. 2016).

Here, the claims themselves and the specification specifically indicate a new combination and arrangement of the elements that is an inventive improvement on standard movement trackers. Namely, the '576 Patent shows that the microprocessor is constructed to detect a user-defined event based on movement data and one of user-defined operational parameters regarding movement data. This is in contrast to conventional technology at the date of priority of the '576 patent, in which movement sensors typically performed detection of events. Defendant appears to be in agreement with Plaintiff that, in conventional technology, the movement sensor performs the detection. D.I. 11 at 15.[5] This is an improvement on the technology at the time because normal movement trackers required the movement sensor itself to perform the detections of events. By utilizing the microprocessor to make detections, the device of the '576 patent is far less limited in functionality than conventional motion trackers and provides better performance because of timing and feedback.

Contrary to Defendant's argument, this arrangement is an inventive concept that does not merely use computer components to achieve the abstract idea.

The '576 Patent has already undergone a reexamination and thorough *inter partes* review ("IPR") to determine its patentability. As part of the prosecutorial history during IPR, an expert opined about the novelty and the unconventional nature of arranging the components to have the microprocessor detect certain events instead of the movement sensor. This is additional evidence showing that discovery will establish additional facts relating to the unconventional nature of the claims. Further, the IPR focused heavily on the fact that the microprocessor was performing the

---

[5] Defendant states "[s]pecifically, a recording event occurs when a 'particular movement' is detected by the 'movement sensor.' *Id.* at 10:53-54. That, of course, is the conventional use of a movement sensor: to sense movement." Plaintiff notes that Defendant misinterprets and misunderstands the invention of the '576 Patent, while conceding that conventionally movement sensors make detections.

detection of the user-defined event, and not the sensor(s).  These are simply some indicators that dismissal at this stage of the proceedings with a limited record is inappropriate.

The Federal Circuit has held similar claims to be inventive under part two of the *Alice* analysis.  In *Cellspin*, the patent related to the use of Bluetooth and other files to pair two devices for sharing and uploading information.  927 F.3d at 1310–12.  The Court, taking the plaintiff's allegations as true, noted that the plaintiff had put forth some evidence showing that fact questions existed that the claimed product was inventive.  *Id.* at 1316–19.  The Court held that the patent showed that it was inventive because at the time of the invention it was unconventional to separate the process into two devices and then pair them in the way suggested by the patent.  *Id.* at 1317–18.  The Court specifically held that it is improper to discount the claims and the patent merely because the allegations do not cite to specifications and claims that are inventive.  *Id.*  Merely showing that using a conventional component at a specific location in the system or methods is sufficient to state an unconventional and inventive concept.  *Id.*

Similarly, the Federal Circuit in *Bascom* found that placing a common internet filter at a different location in the system and configuring it in a specific way was evidence of an inventive concept especially when the record is limited at the Rule 12(b)(6) stage.  827 F.3d at 1350; *see also Cellspin*, 927 F.3d at 1318.  The Court held that the district court erred by only analyzing the claims by looking at the individual components instead of the patent as a whole.  *Bascom*, 827 F.3d at 1350.  Notably, the Court held that moving the filtering system was unconventional and was not reciting the idea of filtering content or using generic computer components.  *Id.*  Further, the Court held that changing the location of the filter did not preempt all the ways to filter the internet making it patentable.  *Id.*

Similar to these cases and several other District of Delaware and Federal Circuit cases, the '576 Patent is inventive by its novel and unconventional arrangement of the component parts to improve on motion trackers at the date of priority. *See Amdocs*, 841 F.3d at 1288; *Aatrix*, 882 F.3d at 1128. As stated before, at the date of priority of the '576 Patent, motion trackers typically used movement sensors to perform detections. However, the '576 Patent shows that the microprocessor is constructed to detect a user-defined event based on movement data and one of user-defined operational parameters regarding movement data. Nothing at the pleadings stage can indicate that this arrangement and use of the component parts was well known or conventional as a matter of law. *Cellspin*, 927 F.3d at 1318–19.

Defendant places too much emphasis on the pleadings and the claims of a patent itself at this stage of the proceedings. Specifically, whether a claim cites to a specific improvement is not relevant to the eligibility analysis under step two. *Nice Ltd., v. CallMiner, Inc.*, 2020 WL 1502290, at *2–5 (D. Del. March 30, 2020). Further, the claims need only "capture" the improvement and not cite to specific improvements. *Id.*; *Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). Dismissal at the pleading stage is especially inappropriate under step two because "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1369.

Thus, under step two, the Court should deny Defendant's Motion.

## CONCLUSION

Defendant has not met their heavy burden of proving unpatentability. Further, unresolved factual issues preclude the granting of the Motion. Defendant's Motion should be denied. Alternatively, Plaintiff requests the opportunity for leave to amend its Complaint to address any concerns the Court may have.

Dated:  June 2, 2021

*Of Counsel:*

Arnold Shokouhi
Christopher M. Barkley
James E. Sherry
**MCCATHERN, PLLC**
3710 Rawlins Street, Suite 1600
Dallas, TX 75219
(214) 443-4478
arnolds@mccathernlaw.com
cbarkley@mccathernlaw.com
jsherry@mccathernlaw.com

**CHIPMAN BROWN CICERO & COLE, LLP**

 */s/ Gregory E. Stuhlman*
Gregory E. Stuhlman (#4765)
Aidan T. Hamilton (#6729)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
(302) 295-0191
stuhlman@chipmanbrown.com
hamilton@chipmanbrown.com

*Attorneys for Plaintiff LoganTree LP*