# EXHIBIT 1

US006059576A

# United States Patent [19]

Brann

[11] Patent Number: 6,059,576

[45] Date of Patent: *May 9, 2000

[54] TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY

[76] Inventor: **Theodore L. Brann**, P.O. Box 1897, Mission, Tex. 78572

[ * ] Notice: This patent issued on a continued prosecution application filed under 37 CFR 1.53(d), and is subject to the twenty year patent term provisions of 35 U.S.C. 154(a)(2).

[21] Appl. No.: **08/976,228**

[22] Filed: **Nov. 21, 1997**

[51] Int. Cl.$^7$ ............................... **A63B 69/00**; G09B 9/00

[52] U.S. Cl. ......................... **434/247**; 128/782; 600/595; 601/34; 482/8; 482/901; 340/686.1; 702/101

[58] Field of Search ..................................... 434/118, 247, 434/365; 482/3, 4, 6, 8, 9, 92, 137, 900–903; 128/897, 905, 782; 600/301, 502, 587, 594, 595; 601/5, 33, 34; 73/379.01, 379.06, 379.08; 340/573.1, 573.7, 686.1, 689; 364/167.12; 702/19, 41, 101, 141, 174

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,571,682 | 2/1986 | Silverman et al. .................. 482/903 X |
| 4,665,928 | 5/1987 | Linial et al. . |
| 4,911,427 | 3/1990 | Matsumoto et al. ................ 482/902 X |
| 4,912,638 | 3/1990 | Pratt, jr. ............................... 482/903 X |
| 4,934,694 | 6/1990 | McIntosh ............................ 482/902 X |
| 5,042,505 | 8/1991 | Mayer et al. . |
| 5,052,375 | 10/1991 | Stark et al. ......................... 482/902 X |
| 5,128,655 | 7/1992 | Shore . |
| 5,348,519 | 9/1994 | Prince et al. ........................ 482/903 X |
| 5,373,858 | 12/1994 | Rose et al. . |
| 5,375,610 | 12/1994 | LaCourse et al. . |
| 5,394,888 | 3/1995 | Stone et al. . |
| 5,398,697 | 3/1995 | Spielman . |
| 5,435,321 | 7/1995 | McMillen et al. . |
| 5,462,065 | 10/1995 | Cusimano . |
| 5,469,862 | 11/1995 | Kovacevic . |
| 5,474,088 | 12/1995 | Zaharkin et al. . |
| 5,513,651 | 5/1996 | Cusimano et al. . |
| 5,588,444 | 12/1996 | Petragallo . |
| 5,621,667 | 4/1997 | Waters . |
| 5,715,160 | 2/1998 | Plotke ................................. 482/902 X |

*Primary Examiner*—Joe H. Cheng
*Attorney, Agent, or Firm*—Locke Liddell & Sapp LLP

[57] **ABSTRACT**

An electronic device, system and method to monitor and train an individual on proper motion during physical movement. The system employs an electronic device which tracks and monitors an individual's motion through the use of an accelerometer capable of measuring parameters associated with the individual's movement. The device also employs a user-programmable microprocessor which receives, interprets, stores and responds to data relating to the movement parameters based on customizable operation parameters, a real-time clock connected to the microprocessor, memory for storing the movement data, a power source, a port for downloading the data from the device to other computation or storage devices contained within the system, and various input and output components. The downloadable, self-contained device can be worn at various positions along the torso or appendages being monitored depending on the specific physical task being performed. The device also detects the speed of movements made while the device is being worn. When a pre-programmed recordable event is recognized, the device records the time and date of the occurrence while providing feedback to the wearer via visual, audible and/or tactile warnings.

**29 Claims, 9 Drawing Sheets**









Case 1:21-cv-00385-JDW   Document 58-1   Filed 09/21/22   Page 3 of 478 PageID #: 632



FIG. 1

Case 1:21-cv-00385-JDW   Document 58-1   Filed 09/21/22   Page 4 of 478 PageID #: 633



FIG. 2A



FIG. 2B



FIG. 2C



FIG. 3

U.S. Patent

May 9, 2000

Sheet 5 of 9

6,059,576



FIG. 4

**U.S. Patent**          May 9, 2000          Sheet 6 of 9          6,059,576



FIG. 5A

| FIG. 5 LEGEND | |
|---|---|
| FIG. 5A | FIG. 5B |
| FIG. 5C | FIG. 5D |



FIG. 5B

U.S. Patent      May 9, 2000      Sheet 8 of 9      6,059,576



FIG. 5C



FIG.  5D

6,059,576

**1**

# TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY

## FIELD OF THE INVENTION

This invention relates to the field of electronic training and safety devices used to monitor human physical activity. More specifically, the invention detects, measures, records, and/or analyzes the time, date, and other data associated with movement of the device and produces meaningful feedback regarding the measured movement.

## BACKGROUND

It has long been known that improper physical movement, especially when repeated, can result in injury to a person. This injury may manifest itself in a wide range of symptoms anywhere from sore or bruised muscles to chronic, debilitating loss of movement. In order to study and better understand safe human movement which does not result in injury, a variety of sensing, monitoring, and notification devices have been created. In general, these devices fall under the general category of range of motion (ROM) detectors.

Several such inventions have been patented to measure the range of motion of various joints of the human body for both medical studies and industry applications. Typically, these inventions require that two people simultaneously use the device: the patient/wearer and the operator of the device. The purpose of these devices is to quantitatively determine a range of motion of a human joint in angular degrees as exemplified by U.S. Pat. Nos. 4,665,928; 5,042,505; and 5,373,858. Although the devices disclosed in these patents serve the purposes for which they are intended, they do not warn the device wearer when the wearer is nearing, or has reached, a potentially dangerous angle of movement.

Another class of ROM devices has attempted to provide a warning to the wearer through an audible alarm or flashing light. Typically, these devices activate the alarm when a predetermined angle of flexion or extension has been exceeded in order to try and reduce the number of injuries that can occur as a result of the improper movement. Because of the general weakness of the human spine and back muscles, most of these devices are geared toward detecting improper torso movement while lifting an object. One such invention described in U.S. Pat. No. 5,128,655 uses a mercury switch set at a predetermined angle to trigger a counting mechanism in order to count the number of times the predetermined angle is exceeded during forward bending. Another such device described in U.S. Pat. No. 5,398,697 uses a "T" shaped collimated light beam to detect both forward and lateral bending of the spine. However, these devices are not convenient to operate and serve to merely report rather than analyze the information detected.

Training an individual to make proper movements requires more than just counting the number of times a predetermined angle is surpassed and warning the wearer of the incorrect movement. In order to prevent incorrect movement in hopes of reducing injuries, lost man hours, and workmen's compensation claims, a device must not only be able to record the frequency of improper movements, but also monitor the angular velocity and general tendencies of the wearer with regard to the unsafe movement habits. The angular velocity of any physical action affects the stretching and tautness of the muscle involved in the motion. Thus, information on angular velocity is important to monitoring and analyzing improper movement. Finally, the wearer must

**2**

also be informed about the tendencies he has regarding his performance of a specific task. In particular, it is helpful to know whether improper movements occur more often in the morning or afternoon.

## SUMMARY OF THE INVENTION

According to the present invention, the foregoing and other objects and advantages are attained by a system which may be used to monitor and train a wearer during physical movement. The system employs an electronic device which tracks and monitors an individual's motion through the use of a movement sensor capable of measuring data associated with the wearer's movement. The device also employs a user-programmable microprocessor which receives, interprets, stores and responds to the movement data based on customizable operation parameters, a clock connected to the microprocessor, memory for storing the movement and analysis data, a power source, a port for downloading the data from the device to other computation or storage devices contained within the system, and various input and output components. The downloadable, self-contained device can be worn at various positions along the torso or appendages being monitored depending on the specific physical task being performed. The device also monitors the speed of the movements made while the device is being worn. When a pre-programmed recordable event is recognized, the device records the time and date of the occurrence while providing feedback to the wearer via visual, audible and/or tactile warnings. Periodically, data from the device may be downloaded into an associated computer program which analyzes the data. The program can then format various reports to aid in recognizing and correcting trends in incorrect physical movement.

It is, therefore, an object of this invention to provide a user programmable training and safety device designed to observe and record the direction and frequency of physical movement of the wearer.

It is another object of this invention to provide a system which monitors, records and analyzes the time, date, angle of movement, and angular velocity of physical movement for subsequent interpretation.

It is still another object of this invention to monitor bi-directional movement of the torso about the spine during a lifting movement.

It is yet another object of this invention to detect and monitor a series of angles of movement and to visually and audibly warn the wearer as each angle limit is exceeded during physical movement.

It is yet another object of this invention to provide a device to assist in training an individual in proper posture while executing an identified physical activity.

To achieve these and other objects which will become readily apparent upon a reading of the attached disclosure and appended claims, an improved training and safety device is provided. Additional objects, advantages, and novel features of the invention will be set forth in part in the description which follows, and in part will become apparent to those skilled in the art upon examination of the following, or may be learned by practice of the invention. The objects and advantages of the invention may be realized and attained by means of the instrumentalities and combinations particularly pointed out in the appended claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a plan view of the system of the present invention, including the movement measuring device, the download device, and the computer.

6,059,576

3

FIG. 2A is a plan view of a wearer showing a possible location for the movement measuring device in operation.

FIG. 2B is a plan view of a wearer showing another location for the device during operation.

FIG. 2C is a plan view of a wearer showing the location of an alternative embodiment of the device of the present invention.

FIG. 3 is a perspective view of another alternative embodiment of the self-contained movement measuring device of the present invention.

FIG. 4 is a block diagram of the movement measuring device of the present invention.

FIG. 5 is a flowchart of the steps performed by the microprocessor in operating the movement measuring device.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Reference is now made to FIG. 1 for a description of a preferred embodiment of the system 10 of the current invention. FIG. 1 shows the movement measuring device 12 positioned above a download device 14 connected to a computer 16. The movement measuring device 12 is designed to be physically attached to a user whose movements are to be monitored by the system 10. The self-contained movement measuring device 12 may be worn by the individual being monitored in a variety of positions based on the specific movement being observed, the particular application in which the device is used, and the convenience of the wearer.

For example, FIG. 2A shows placement of the movement measuring device 12 on the upper torso of an individual 18. Placement of the device 12 at this location will allow monitoring of the flexion and extension of the spinal column during a lifting activity. Similarly, FIG. 2B shows placement of the movement measuring device 12 on the waist or hip of an individual 18. The movement measuring device 12 may be attached via a clip, Velcro, its own belt, or any other means known in the art. Placement of the device 12 on the belt as shown will also permit monitoring of the individual's movement during physical activity. In particular, the device 12 can monitor the forward and backward bending of the spine as well as lateral bending of the spine to aid in correct bending and lifting tasks. The device 12 is also capable of measuring the distance the wearer walks and how fast he walked. FIG. 2C shows another alternative embodiment of the movement measuring device 12. In this version, the movement sensor 13 is separate from the remaining components 15 of the device 12 and is electronically connected to the remaining components 15 via a cable 17 or other commonly used connector. Separating the measurement sensor 13 from the remaining components 15 in this way gives additional flexibility in the use of the device 12. The device 12 operates in the same manner as previously described; however, the movement sensor 13 can be placed anywhere on the individual's body. Again, the specific application will dictate where the movement sensor 13 should be placed. For example, if a monitored activity requires repeated arm movement, the sensor 13 may be placed anywhere along the individual's arm thereby monitoring and recording movement data for the arm.

FIG. 3 shows a more detailed view of the movement measurement device 12 which forms a crucial part of the previously described system along with its respective external components. The internal components of the movement measurement device 12 are housed in a casing 20. This

4

casing 20 serves to protect the internal components and is most commonly made of hard molded plastic, although any suitable material may be substituted. Externally visible on the device 12 is at least one visual indicator 22 which is activated by the device 12 when appropriate. In one preferred embodiment, the visual indicator 22 is a bi-colored light emitting diode (LED) which is activated to notify the wearer when a predetermined angle of motion has been exceeded. Through different colors and blinking patterns, the visual indicator 22 signals many different conditions sensed by the device 12 including when the device 12 is turned on or off, when each of various angle limits is exceeded, and when downloading movement data recorded by the device 12. Alternatively, the visual indicator 22 may be a liquid crystal display or any other display device on which a variety of movement information may be shown. The movement measuring device 12 also contains user inputs 24. In the preferred embodiment, one user input 24 is an ON/OFF switch for controlling the operation of the device 12. Another user input 24 on the device 12 is a MUTE button which permits the wearer of the device to turn off any audible indicators. Typically, once an angle limit has been exceeded, the wearer will be notified through the illumination of a visual indicator, the sounding of an audible alarm, vibration of the device 12, or a combination thereof. In the case of an audible alarm, the MUTE button 24 may be used to turn off the alarm. Any sounds emitted by the device 12 are created by a speaker (not shown) behind the speaker cover 26 located in the external casing 20. Finally, the case 20 contains a removable battery cover 28 over an externally accessible battery compartment (not shown) which allows the operator of the device 12 to replace the internal power source. In the preferred embodiment this power source is a 1.5 volt battery.

Reference is now made to a block diagram in FIG. 4 which shows the major internal components of the movement measuring device 12 and their interconnections. The device 12 includes a movement sensor 30 which detects movement and measures associated data such as angle, speed, and distance. The movement sensor 30 generates signals corresponding to the measurement data collected. In a preferred embodiment, the movement sensor 30 is an accelerometer which is capable of detecting angles of movement in multiple planes as well as the velocity at which the movement occurs. Alternatively, multiple accelerometers, each capable of measuring angles of movement in only one plane, may be oriented within the device 12 so that movement in multiple planes may be detected. Although many accelerometers are available on the market, the preferred embodiment uses Part No. AD22217 manufactured by Analog Devices of Norwood, Mass. This component is a low G, multi-axis accelerometer. The movement sensor 30 is electronically connected to a microprocessor 32 which receives the signals generated by the movement sensor 30 for analysis and subsequent processing. The microprocessor 32 not only analyzes and responds to the movement data signals from the sensor 30, but also controls the actions of all of the electronic components of the device 12. In a preferred embodiment, the microprocessor 32 is a Motorola MC68HC705C8AFN. It should be noted, however, that other low power, programmable microprocessors may be suitable. The microprocessor 32 constantly monitors the user inputs 34 and acts accordingly. For example, if the device is turned off, the microprocessor 32 monitors the ON/OFF user input 36 to detect when the device 12 is turned back on. Once an "ON" condition is detected, the microprocessor 32 powers up and runs its internal program. The

6,059,576

5

internal program may be stored within read-only memory located in the microprocessor itself or in memory (not shown) located outside the microprocessor **32**.

The components of the device **12** receive power from a power source **38**. In a preferred embodiment the power source **38** is a 1.5 volt DC battery; however, other power sources, including alternating current, may be used. The power source **38** is connected to a power converter **40** if DC-DC or AC-DC conversion is required. In one embodiment the power converter **40** converts the 1.5 volt DC power supply from the battery to 3.3 volts DC for use with the other electronic components of the device **12**.

Also connected between the power source **38** and the microprocessor **32** is a conventional power supply manager **42** such as part number ADM706TAR from Analog Devices. The power supply manager **42** performs several functions. If a low battery condition exists, the power supply manager **42** reports the problem to the microprocessor **32** so that the microprocessor **32** may indicate the condition to the user through one or more output indicators **44**. The output indicators **44** consist of any combination of audible, visual, or tactile indicators for communicating with the wearer of the device. Audible indicators range from a single pitched tone to voice-synthesized messages in English or any foreign language. Visual indicators which could be used include single, monochromatic LEDs, multiple colored lights, and/or liquid crystal displays. The tactile indicator used in a preferred embodiment is a conventional vibrator mechanism which can be detected by the wearer. The power supply manager **42** also regulates the activity of the power converter **40** to insure that the proper voltage is constantly supplied to the device components.

The microprocessor **32** is connected to a clock **46** which is used as an internal clock for coordinating the functioning of the microprocessor **32**. The clock **46** also serves as a real time clock to provide date and time information to the microprocessor **32**. The clock **46** may have its own clock battery **48** or may receive power directly from power source **38**.

The microprocessor **32** constantly monitors the movement data received from the movement sensor **30**. The microprocessor **32** analyzes the movement data received from the sensor **30** and, based on its internal programming, responds to the data. If a recordable event occurs, the microprocessor **32** retrieves the date/time stamp from the clock **46** and records the event information along with the date/time stamp in memory **50**. In a preferred embodiment, the memory is electrically erasable programmable read-only memory (EEPROM) so that, in the event the device should lose power, the information recorded in memory **50** will not be lost. The device also contains an input/output (I/O) port **52** which is connected to the microprocessor **32**. The I/O port **52** is used to receive and transmit data collected by the device **12** between the microprocessor **32** and an external computer (not shown). In a preferred embodiment, the I/O port **52** is a serial port which includes an RS232 voltage level converter download board. Movement data stored in memory **50** can be sent through the I/O port **52** to a download device. In addition, user-programmable configuration information can be entered by a user via the external computer and uploaded through the I/O port **52** for use by microprocessor **32**. The configuration information can encompass an array of information including, but not limited to, a series of notice levels corresponding to increasing angles of movement, an event threshold, a reset range for tilt determination, and a time period for entering idle mode. Once the device **12** is operating, the microprocessor **32**

6

constantly checks to see if the angle movement information received from the movement sensor **30** indicates that the wearer has exceeded any of the pre-set notice levels. Depending on which notice level has been exceeded, the microprocessor **32** will cause the device **12** to react; i.e., by sounding an alarm. In addition, the microprocessor **32** will obtain the date/time stamp from the clock **46** and store that information along with the notice level that was exceeded into memory **50** for later analysis and reporting. Whenever an alarm is activated by the microprocessor **32**, the MUTE control switch **54** may be used to deactivate the alarm; however, the corresponding movement data associated with the activation of the alarm is still recorded in memory **50**. Furthermore, the date and time the MUTE control switch **54** was activated is also recorded by the device **12**.

A significant feature of the device **12** of the present invention is that it gives instant information to the wearer at the moment of incorrect movement and also records the information for future reference and analysis. The device **12** monitors a wide variety of "events" and records each event with a date/time stamp. Many different types of "events" may be defined to be monitored by the device **12**. As previously stated, any movement which surpasses any identified angle limit of movement (based on the specific physical task being accomplished and the range of motion needed to execute the task properly) is a standard recordable event. In addition, the device will record when no discernable movement has occurred for a predetermined amount of time (idle function), when the wearer has pressed the MUTE switch in response to an alarm (MUTE function), when the wearer's speed of movement exceeds a predefined speed (quickness function), when the device is turned on or off, when a low battery warning has been issued, when the battery is changed, when the device has been tampered with (such as removing the battery before a low battery condition has been detected), when the device is tilted outside of a specified range for a designated period of time, and when the device has measured a predetermined maximum number of particular angle limits reached. These functions are further described hereinbelow.

Whenever an incorrect user movement is sensed by the device **12**, the angular limit notice as programmed by the user is given only once. Before the device **12** can reset itself to be able to give that same angle notice on the next incorrect movement, the device **12** must return to a predetermined position (usually the upright position). If the device **12** is maintained outside of its predefined reset range for a designated period of time after an angle limit has been exceeded, a "tilt" event will be recorded and an alarm may be activated. When this situation occurs, the device **12** must be returned to its defined reset position, or the MUTE button must be pressed. The device **12** is also programmed to automatically enter a power saving mode when no motion has been detected for a given amount of time. This "idle" function event is recorded by the microprocessor **32** to indicate that the device is either not being worn or is not being used properly. The device **12** maintains the minimum amount of operating power required to detect the next movement so that, once movement is detected, the device **12** exits the idle mode and records the date and time when the exit occurred.

The device **12** will record any attempted tampering. In a preferred embodiment, this event occurs when the battery is removed before a low battery condition is detected by the device. The device **12** will also inform the wearer when the battery is low. In the preferred embodiment, the device **12** has two batteries, a battery which operates the device **12** and

6,059,576

**7**

an internal time clock battery. The internal clock battery powers the time clock **46** and aids in other operations of the device **12** when the voltage drops on the device battery. The microprocessor **32** and memory **50** do not lose information when battery power is lost from either battery.

As previously mentioned, the device **12** is completely user programmable via an external computer. These user programmed operation parameters are uploaded to the microprocessor **32** through the download device (not shown). The user may program the microprocessor **32** with an array of functions for the device **12** to perform. Primary among these is the ability to change the angular levels at which notices will be generated in order to fulfill particular application needs. In this way, the user may choose the angular positions at which he wants to be warned when they are exceeded. In the preferred device, up to three angle limits may be monitored by the device; however, any number of angles may be tracked depending upon the application. Each angle limit can be degree specific or extend over a range of degrees. When a range is used, the user specifies the starting and incremental values in degrees. Thus, an angle limit may be set to occur every five degrees beginning with an initial angle limit value. The movement sensor **30** used in the preferred embodiment can measure angles to within plus or minus 0.5° and as often as 1000 times a second. The most common use for the angle range limits is when the device **12** is worn on the hip since angle measurements cannot be made as accurately there. In contrast, when the device **12** is worn on the upper torso, results can be measured more accurately and the device **12** can be set to measure each degree of movement.

As mentioned above, once a wearer of the device **12** exceeds the first defined angle limit, a notice for that limit is given to the wearer. The notice may be a combination of a visual warning, a tactile warning, and/or an audible warning. The microprocessor **32** also stores the specific angle limit which was exceeded along with the date/time stamp. Upon exceeding the second defined angle, the wearer is issued a second notice which may be the same as or different from the first notice. These different notice characteristics may include a change in pitch for audible alarms, a difference in duration for tactile alarms, and/or a blinking, different colored, or other visual warning.

The "quickness" function of the device **12** measures the speed of an associated physical movement made by the wearer and was developed to address the following problem. In essence, the warning notice due to exceeding a first angle may be overridden by the warning notice for a second angle, thus appearing to give only the second notice. The device **12** may be programmed to recognize when this occurs and to indicate that the associated physical activity was performed by the wearer with excessive speed. If so programmed, the device **12** will record both notices, and the microprocessor **32** will record a quickness violation for further analysis and reporting by the computer. The device **12** may also include an event threshold function in its programming. This feature allows the user of the device **12** who has access to the download capabilities and the analysis software hereinafter described to determine a maximum number of incorrect movements ("events") allowed in a predetermined time period by event type. In addition, the user may program a certain response, such as shutting down the device **12** entirely, emitting a special alarm, and/or recording the date and time each event threshold was met. In a preferred embodiment, if the device **12** is programmed for shut down upon reaching the event threshold, the device **12** will require downloading to the computer **16** and being reset before it

**8**

can be operated again. This feature serves to alert the responsible party of a potential problem that must be dealt with immediately via retraining or any other means the responsible party deems necessary.

The device **12** also has additional functions and capabilities. Each unit can be assigned to a specific individual, patient or employee and later reassigned to a different person through the use of specific identification numbers. In a preferred embodiment, the device **12** requires a download of all movement data stored in memory under a previous identification number before it can be reassigned. Further, the download information along with the specific user identification number can be downloaded to the computer **16** only once in order to avoid duplicate records.

As generally described above, the system and device **12** of the present invention have practical application in a number of situations. They may be used in medical applications requiring the monitoring of physical movement. Among such applications is physical therapy which may be conducted either by the patient in the home or by medical professionals in a medical environment. More significantly, the device and system have application in an industrial setting, particularly manufacturing, where workers are required to perform repetitive manual tasks. Supervising employers can use the device and system to insure that employees are performing their tasks properly while minimizing the risk of employee injury.

By virtue of the sophisticated nature of the microprocessor **32**, the device **12** can fulfill these additional business, industry and medical needs. Furthermore, wireless capabilities may be added to the device **12** to allow downloading of information from the device **12** to a computer **16** without the need for cables or docking stations. In yet another embodiment, the radio frequency capability may allow the user to wear minimal hardware (consisting primarily of the movement sensor) on the body while transmitting the details of each physical movement to a remote microprocessor **32** for analysis and storage.

Once the data from the device **12** has been downloaded to the computer **16**, software running on the computer **16** is used to interpret the data and produce a number of reports and histories. This history information may include, but is not limited to, the dates and times when the device **12** was turned on and off; the number, with dates and times, of each notice given along with the type of notice; the number, date and time the device **12** reached an event threshold; when, how long, and how many times the device **12** powered down; the date and time the device **12** was muted; the date and time when the battery was changed; the date and time when the battery was tampered with; and the last time the device **12** was downloaded. Any of the above-mentioned predefined reports may be generated; in addition, the user may program additional reports and histories specific to the application to be monitored.

FIG. **5** is a flowchart of the steps executed by the microprocessor **32** in the movement measurement device **12** to recognize and record movement data. Referring to FIG. **5**, when the device **12** is off, the microprocessor **32** constantly checks for a change in the ON/OFF state **60** by polling the ON/OFF switch to see if it has been switched to the ON position. Once the microprocessor **32** detects that the device **12** has been turned on, the microprocessor **32** conducts some basic initialization and housekeeping functions **62**. This may include checking memory to ensure angle limits have been entered, verifying that angle limits are increasing in value (i.e., the second angle limit is not smaller than the first), and

6,059,576

9

initializing internal program parameters. Then the microprocessor 32 checks to see whether any motion has been detected 64 by the movement sensor 30. If no motion has been detected, the microprocessor 32 will increment a "no-motion" counter 66. The microprocessor 32 then checks whether the no-motion counter has reached a predefined number of cycles indicating that the device should power down. If the requisite number of cycles indicating idle mode have elapsed, the microprocessor records the idle event (along with the date and time stamp) in memory, and the device enters the idle mode 72. Once in idle mode, the microprocessor repeatedly checks for motion 72. As long as no motion occurs, the device remains in idle mode. Once motion is detected, the microprocessor records an event that the device has exited idle mode (with the corresponding date and time) 76. The microprocessor then returns to step 64 where it again attempts to detect motion. If the no-motion counter has not reached the preset limit corresponding to idle mode, the microprocessor will check to see whether the device has remained outside of its predefined reset range for a designated amount of time 78. If not, the microprocessor reexecutes the cycle for detecting motion 64. If, however, the microprocessor recognizes a tilt event, an alarm corresponding to a tilt event is activated 80. Once the microprocessor has recognized a tilt event, it repeatedly checks whether the device has been moved back within its reset range 82. If it has not, the microprocessor continues to activate the tilt alarm. Once the device has been returned to within its reset range, the microprocessor checks again for motion 64.

Once the microprocessor detects motion in step 64, the first thing it does is clear the no-motion counter 84. The microprocessor then checks to see whether it has recorded a "proper movement" in the past 86. If no proper movement has occurred, the microprocessor checks whether the proper movement flag has been set 88. If the proper movement flag has not been set, the microprocessor returns to its initial motion checking step 64. If, however, the proper movement flag has been set, the microprocessor will record the occurrence of a proper movement event along with the date/time stamp 90. The microprocessor then clears all notice and the proper movement flags in step 92 and returns to the motion detection step 64. If, on the other hand, the microprocessor has detected a prior proper movement 86, it so indicates by setting the proper movement 94. The microprocessor then checks whether the first angle limit has been exceeded 96. If this first limit has not yet been exceeded, the microprocessor returns to the motion detection step 64. If the first angle limit has been exceeded, the microprocessor activates the appropriate alarm and records the event along with the date and time 98. The microprocessor then clears the proper movement flag and sets the first angle notice flag 100. The microprocessor then checks whether the device has moved beyond the next angle limit 102. If not, the microprocessor checks whether the angle is less than that required to constitute a proper movement 104. If not, then the microprocessor continues to check whether the angle of movement is less than a proper movement angle. If the angle is less than that constituting a proper movement, the microprocessor triggers a reset flag indicating that the device has been reset 106. After reset, the microprocessor checks whether any of the angle limits have been exceeded thereby setting any of the notice flags 108. If any notice flags have been set, the microprocessor will perform step 92 to clear all of the notice flags and reset the proper movement flag. If none of the notice flags have been set before the device was reset, the microprocessor will perform step 90 to record a

10

proper movement event along with the date and time. It then continues processing at step 92.

Once the angle of movement detected exceeds the next angle limit, the microprocessor will record the corresponding notice event along with the date and time and activate the appropriate notice alarm in step 110. The microprocessor then checks if the last movement exceeded the final angle limit at step 112. If not, then the process returns to step 102 to check for movement beyond the next angle limit. If the final notice event was detected, then the microprocessor will increment the event threshold counter by one at step 114 if this option has been selected by the user. Next, the microprocessor will check to see whether the event threshold limit has been reached 116. If not, the microprocessor will perform step 104 until the device is reset due to the movement angle being less than that required for a proper movement. If the event threshold has been reached, then the microprocessor will record the event threshold, activate the associated alarm, and shut down the device 118. The microprocessor will prevent the device from operating any further until its information has been downloaded 120. Once the stored data has been downloaded, the microprocessor returns to its initial motion detection step 64 for further operation.

As previously alluded to herein, the device and system of the present invention can be used in a wide number of different applications requiring monitoring and feedback of physical movement. In particular, the device and system have various medical applications including rehabilitation and physical therapy associated with an injured patient. The movement sensor is simply attached to the appropriate body part requiring monitoring, and data collection is then commenced. Besides providing the operator with instant feedback regarding the physical movement being monitored, a variety of data may be collected from the number of movement repetitions meeting or exceeding a required range to the determination and tracking of maximum range-of-motion mobility of an injured patient for later analysis. While the device and system may be operated by a medical professional in a supervisory capacity, both are simple enough to be used by an individual patient alone with download and analysis by the medical professional at a later time.

The device also has excellent application to the monitoring and analysis of physical labor performed by employees. The devices may be passed out to employees having repetitive physical tasks so that proper safety in performing the tasks, such as lifting, may be practiced. Each device can be assigned to a particular individual for a specified amount of time and programmed to monitor that individual's physical tasks. After the device is turned in, its collected information can be downloaded to the system for reporting and analysis purposes based on specific movement limits and other operational parameters programmed into the device for the particular movement being monitored. Improper movements made by the individual during the time period in question are identified, and the employee can be notified in order to make necessary corrections to the way the task is performed in order to avoid injury resulting from improper movement. The device can be used again later to ensure that the employee continues to exercise the movement guidelines as previously instructed.

The device also has application in the area of sports. For example, it may be worn by a golfer in order to monitor torso, waist, shoulder and arm movement during various drives and putts. The data collected by the device may then be used as a tool to aid in the analysis and improvement of the individual's stroke technique. Use of the device is not

6,059,576

11

limited to golf but may be used for any number of sports, including football, baseball, basketball, or tennis. And, due to the unique programmability of the device, it has more than one application within any single sport. For example, in baseball, the device and system may be used to improve technique associated with hitting or with throwing.

Still other objects and advantages of the present invention will become readily apparent to those skilled in this art from the detailed description, wherein multiple preferred embodiments of the invention are shown and described, simply by way of illustration of the best mode contemplated by the inventor for carrying out the invention. As will be realized, the invention is capable of other and different embodiments, and its several details are capable of modifications in various obvious respects, all without departing from the invention. Accordingly, the drawings and description are to be regarded as illustrative in nature, and not as restrictive. Variations in the description likely to be conceived of by those skilled in the art still fall within the breadth and scope of the disclosure of the present invention. The primary import of the present invention lies in its compact size, ease of use, and detailed information gathering and reporting features. Its benefits derive from the versatility of its monitoring capabilities as well as the specific applications for which it may be used. Again, it is understood that other applications of the present invention will be apparent to those skilled in the art upon reading the preferred embodiments and consideration of the appended claims.

We claim:

1. A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising:

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters;

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data; and

an output indicator connected to said microprocessor for signaling the occurrence of user-defined events;

wherein said movement sensor measures the angle and velocity of said movement.

2. The device of claim 1 further comprising at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters to and from a computer.

3. The device of claim 1 wherein said device is compact and weighs less than one pound.

4. The device of claim 1 wherein said movement sensor comprises at least one accelerometer.

5. The device of claim 1 wherein said movement sensor can simultaneously detect real time movement along at least two orthogonal axes.

6. The device of claim 1 wherein said movement sensor is housed separately from said microprocessor.

7. The device of claim 1 wherein said monitored body part movement is torso or limb movement.

8. The device of claim 1 wherein said data measured by said movement sensor includes the distance of said movement.

12

9. The device of claim 1 wherein said output indicator is visual.

10. The device of claim 1 wherein said output indicator is audible.

11. The device of claim 1 wherein said output indicator is tactile.

12. The device of claim 1 wherein said user input is a switch.

13. A system to aid in training and safety during physical activity, said system comprising

a portable, self-contained movement measuring device, said movement measuring device further comprising

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters;

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data;

at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters; and

an output indicator connected to said microprocessor;

a computer running a program capable of interpreting and reporting said movement data based on said operational parameters; and

a download device electronically connected to said movement measuring device and said computer for transmitting said movement data and operational parameters between said movement measuring device and said computer for analysis, reporting and operation purposes;

wherein said movement sensor measures the angle and velocity of said movement.

14. The system of claim 13 wherein said computer is a personal computer.

15. The system of claim 13 wherein said computer is connected to a network of other computers.

16. The system of claim 13 wherein said download device is a physical docking station.

17. The system of claim 13 wherein said download device is a wireless device.

18. The system of claim 17 wherein said wireless device uses radio frequency.

19. The system of claim 17 wherein said wireless device uses infrared light.

20. A method to monitor physical movement of a body part comprising the steps of:

attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement in any direction;

measuring data associated with said physical movement;

interpreting said physical movement data based on user-defined operational parameters and a real-time clock; and

storing said data in memory.

21. The method of claim 20 wherein said physical movement data includes velocity data of said movement, angle measurement data taken along at least two orthogonal axes, and related date and time data.

22. The method of claim 21 further comprising the step of defining said parameters for a specific physical movement prior to said interpreting step.

6,059,576

**13**

**23**. The method of claim **21** further comprising the step of downloading said data from said movement measuring device to a computer for reporting and analysis purposes.

**24**. The method of claim **21** wherein said interpreting step comprises teaching an individual how to properly perform said physical movement.

**25**. The method of claim **20** wherein said movement measuring device is an accelerometer.

**26**. The method of claim **20** further comprising the step of providing real time feedback regarding said movement.

**14**

**27**. The method of claim **26** wherein said physical movement is physical labor.

**28**. The method of claim **26** wherein said physical movement is an exercise related to medical treatment.

**29**. The method of claim **26** wherein said physical movement is an exercise to improve technique related to an athletic skill.

\*   \*   \*   \*   \*

US006059576C1

## (12) EX PARTE REEXAMINATION CERTIFICATE (10541st)

# United States Patent
### Brann

(10) **Number:** **US 6,059,576 C1**

(45) **Certificate Issued:** **Mar. 17, 2015**

(54) **TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY**

(75) Inventor: **Theodore L. Brann**, Mission, TX (US)

(73) Assignee: **Logantree L P**, Boerne, TX (US)

**Reexamination Request:**
No. 90/013,201, Apr. 4, 2014

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | **6,059,576** |
| Issued: | **May 9, 2000** |
| Appl. No.: | **08/976,228** |
| Filed: | **Nov. 21, 1997** |

(51) **Int. Cl.**
*A61B 5/11* (2006.01)
*A63B 24/00* (2006.01)

(52) **U.S. Cl.**
CPC ........... *A61B 5/1116* (2013.01); *A63B 2220/40* (2013.01); *Y10S 482/901* (2013.01)
USPC ............... 434/247; 600/595; 482/8; 482/901; 702/101; 601/34

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number 90/013,201, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner* — Danton DeMille

(57) **ABSTRACT**

An electronic device, system and method to monitor and train an individual on proper motion during physical movement. The system employs an electronic device which tracks and monitors an individual's motion through the use of an accelerometer capable of measuring parameters associated with the individual's movement. The device also employs a user-programmable microprocessor which receives, interprets, stores and responds to data relating to the movement parameters based on customizable operation parameters, a real-time clock connected to the microprocessor, memory for storing the movement data, a port for downloading the data from the device to other computation or storage devices contained within the system, and various input and output components. The downloadable, self-contained device can be worn at various positions along the torso or appendages being monitored depending on the specific physical task being performed. The device also detects the speed of movements made while the device is being worn. When a preprogrammed recordable event is recognized, the device records the time and date of the occurrence while providing feedback to the wearer via visual, audible and/or tactile warnings.



US 6,059,576 C1

**1**

# EX PARTE
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

Claims **1**, **13** and **20** are determined to be patentable as amended.

Claims **2-12**, **14-19** and **21-29**, dependent on an amended claim, are determined to be patentable.

New claims **30-185** are added and determined to be patentable.

**1**. A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising:

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters, *detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data, and storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred*:

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor; memory for storing said movement data; and

an output indicator connected to said microprocessor for signaling the occurrence of user-defined events;

wherein said movement sensor measures the angle and velocity of said movement.

**13**. A system to aid in training and safety during physical activity, said system comprising

a portable, self-contained movement measuring device, said movement measuring device further comprising

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters, *detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data, and storing first event information related to the detected first user-defined event along with first time stamp infor-*

**2**

*mation reflecting a time at which the movement data causing the first user-defined event occurred;*

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor; memory for storing said movement data;

at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters; and

an output indicator connected to said microprocessor;

a computer running a program capable of interpreting and reporting said movement data based on said operational parameters; and

a download device electronically connected to said movement measuring device and said computer for transmitting said movement data and operational parameters between said movement measuring device and said computer for analysis, reporting and operation purposes;

wherein said movement sensor measures the angle and velocity of said movement.

**20**. A method to monitor physical movement of a body part comprising the steps of:

attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement in any direction;

measuring data associated with said physical movement;

interpreting, *using a microprocessor included in the portable, self-contained movement measuring device,* said physical movement data based on user-defined operational parameters and a real-time clock; [and]

storing said data in memory;

*detecting, using the microprocessor, a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data; and*

*storing, in said memory, first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred.*

*30. The device of claim 1, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information.*

*31. The device of claim 1, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock and associate the retrieved first time stamp information with said first user-defined event.*

*32. The device of claim 31, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock based on the detection of the user-defined event.*

*33. The device of claim 1, wherein said memory is configured to continue to store said movement data in response to battery power being lost from said power source.*

*34. The device of claim 1, wherein said movement sensor is configured to continuously check for said movement.*

*35. The device of claim 34, wherein said microprocessor is configured to continuously interpret, based on the user-defined operational parameters, said movement data received from said movement sensor.*

*36. The device of claim 1, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event.*

US 6,059,576 C1

**3**

37. The device of claim 36, wherein said output indicator is configured to display said information signaling the occurrence of the first user-defined event based on said first time stamp information.

38. The device of claim 1, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

39. The device of claim 1, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.

40. The device of claim 39, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.

41. The device of claim 39, wherein said memory is configured to store said first event information indicating that the predetermined threshold is met.

42. The device of claim 41, wherein said memory is configured to store the first time stamp information in association with said first event information.

43. The device of claim 1, wherein said output indicator is configured to indicate a low battery condition of the device.

44. The device of claim 9, wherein said output indicator is selected from the group consisting of single monochromatic LEDs, multiple colored lights, and liquid crystal displays.

45. The device of claim 1, wherein said movement data stored in the memory is configured to be downloaded to a computer.

46. The device of claim 45, further comprising:

software configured to communicate with external software, wherein the external software is configured to present the downloaded movement data to the user.

47. The device of claim 46, wherein said external software is configured to run on the computer.

48. The device of claim 47, wherein said downloaded movement data is configured to be analyzed by said user via said external software.

49. The device of claim 46, wherein said external software is configured to interpret said movement data and produce at least one report.

50. The device of claim 46, wherein said external software is configured to interpret said movement data and produce at least one history report.

51. The device of claim 50, wherein said at least one history report includes dates and times of said movement data.

52. The device of claim 46, wherein said external software is configured to allow the user to program additional reports and histories with respect to said movement data of said user.

53. The device of claim 45, wherein said movement data is configured to be downloaded to said computer via a wired connection.

54. The device of claim 45, wherein said movement data is configured to be downloaded to said computer via a wireless connection.

55. The device of claim 39, wherein the output indicator is configured to provide a visual indicator to the user regarding the predetermined threshold being reached.

56. The device of claim 1, wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred.

**4**

57. The device of claim 56, wherein when the microprocessor detects that one of the user-defined events occurred based on the movement data reaching one of the plurality of thresholds, the output indicator displays a corresponding one of the notifications indicating that one of the user-defined events has occurred.

58. The device of claim 56, wherein the plurality of thresholds are different from each other.

59. The device of claim 56, wherein the plurality of notifications are different visual indicators.

60. The device of claim 59, wherein at least one of the visual indicators includes a blinking indicator.

61. The device of claim 39, wherein said microprocessor is configured to detect occurrence of the first user-defined event by comparing said movement data to said predetermined threshold.

62. The device of claim 1, wherein said device is configured to be placed on said user's arm to monitor and record said movement data.

63. The device of claim 62, wherein said movement sensor is configured to measure movement of said user's arm.

64. The device of claim 1, wherein said movement sensor is configured to measure a walking distance.

65. The device of claim 64, wherein said device is configured to be wearable by the user, and said movement sensor is configured to measure said walking distance of said user.

66. The device of claim 1, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information,

wherein said movement sensor is configured to continuously check for said movement,

wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information,

wherein the device further comprises software configured to communicate with external software configured to run on a computer and present the downloaded movement data,

wherein said external software is configured to produce at least one report based on said movement data,

wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred,

wherein said device is configured to be placed on said user's arm to monitor and record said movement data,

wherein said movement sensor is configured to measure movement of said user's arm.

67. The system of claim 13, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information.

68. The system of claim 13, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock and associate the retrieved first time stamp information with said first user-defined event.

69. The system of claim 68, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock based on the detection of the first user-defined event.

70. The system of claim 13, wherein said memory is configured to continue to store said movement data in response to battery power being lost from said power source.

2

US 6,059,576 C1

**7**

104. The method of claim 20, further comprising:
storing, in said memory, date information associated with the first time stamp information.

105. The method of claim 20, further comprising:
retrieving said first time stamp information from said real-time clock and associate the retrieved first time stamp information with said first user-defined event.

106. The method of claim 105, further comprising:
retrieving said first time stamp information from said real-time clock based on the detection of the first user-defined event.

107. The method of claim 20, wherein said storing comprises continuously storing said movement data after battery power is lost from a power source of the portable, self-contained movement measuring device.

108. The method of claim 20, further comprising:
continuously monitoring for said physical movement using a movement sensor of the portable, self-contained movement measuring device.

109. The method of claim 108, wherein said interpreting comprises:
continuously interpreting, based on the user-defined operational parameters, said physical movement data.

110. The method of claim 20, further comprising:
displaying, using an output indicator of the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the user-defined event.

111. The method of claim 110, wherein said output indicator displays said information signaling the occurrence of the first user-defined event based on said first time stamp information.

112. The method of claim 20, further comprising:
displaying, using an output indicator included the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

113. The method of claim 20, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.

114. The method of claim 113, wherein an output indicator of the portable, self-contained movement measuring device displays information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.

115. The method of claim 113, further comprising:
storing, in said memory, said first event information indicating that the predetermined threshold is met.

116. The method of claim 115, further comprising:
storing, in said memory, the first time stamp information in association with said first event information.

117. The method of claim 20, further comprising:
indicating a low battery condition, using an output indicator of the portable, self-contained movement measuring device.

118. The method of claim 20, wherein said physical movement data stored in the memory is the interpreted physical movement data, and said stored physical movement data is configured to be downloaded to a computer.

119. The method of claim 118, further comprising:
communicating with external software, wherein the external software is configured to present said interpreted physical movement data to the user.

120. The method of claim 119, wherein said external software is configured to run on a computer.

**8**

121. The method of 20, further comprising:
producing a report based on said interpreted physical movement data.

122. The method of claim 119, further comprising:
producing at least one report based on said interpreted physical movement data using the external software.

123. The method of claim 119, further comprising:
producing at least one history report based on said interpreted physical movement data using the external software.

124. The method of claim 123, wherein said at least one history report includes dates and times of said physical movement data.

125. The method of claim 119, further comprising:
providing additional reports and histories with respect to said interpreted physical movement data, wherein the additional reports and histories are programmed by the user via the external software.

126. The method of claim 118, wherein said physical movement data is configured to be downloaded to said computer via a wired connection.

127. The method of claim 118, wherein said movement data is configured to be downloaded to the computer via a wireless connection.

128. The method of claim 113, further comprising:
providing, via an output indicator of the portable, self-contained movement measuring device, a visual indicator to the user regarding the predetermined threshold being reached.

129. The method of claim 20, further comprising:
storing the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein the detecting comprises detecting occurrence of one of a plurality of user-defined events each time the movement data reaches one of the plurality of the thresholds.

130. The method of claim 129, wherein in response to detecting that one of the user-defined events occurred based on the movement data reaching one of the plurality of the thresholds, the method further comprises:
displaying, via an output indicator of the portable, self-contained movement measuring device, a corresponding one of the notifications indicating that one of the user-defined events has occurred.

131. The method of claim 129, wherein the plurality of thresholds are different from each other.

132. The method of claim 129, wherein the plurality of notifications are different visual indicators.

133. The method of claim 132, wherein at least one of the visual indicators includes a blinking indicator.

134. The method of claim 20, further comprising:
signaling, using an output indicator included in the portable, self-contained movement measuring device, the occurrence of user-defined events.

135. The method of claim 113, wherein the detecting comprises comparing said physical movement data to said predetermined threshold.

136. The method of claim 20, wherein said body part is user's arm, and said measuring the data comprises monitoring and recording the physical movement of said user's arm.

137. The method of claim 136, wherein said measuring the data comprises measuring the data using a movement sensor of the portable, self-contained movement measuring device.

138. The method of claim 20, further comprising:
measuring a walking distance based on the interpreted physical movement data.

US 6,059,576 C1

9

10

*139. The method of claim 20, further comprising:*

*storing, in said memory, date information associated with the first time stamp information;*

*continuously monitoring for said physical movement using a movement sensor of the portable, self-contained movement measuring device;*

*displaying, using an output indicator included the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information;*

*wherein said physical movement data stored in the memory is the interpreted physical movement data, and said stored physical movement data is configured to be downloaded to a computer;*

*communicating with external software configured to run on the computer and present said interpreted physical movement data to the user;*

*producing a report based on said interpreted physical movement data using the external software; and*

*storing the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein the detecting comprises detecting occurrence of one of a plurality of user-defined events each time the movement data reaches one of the plurality of the thresholds,*

*wherein said body part is a user's arm, and said measuring the data comprises monitoring and recording the physical movement of said user's arm.*

*140. The device of claim 1, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,*

*wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,*

*wherein said microprocessor is configured to interpret said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.*

*141. The device of claim 140, wherein the output indicator is configured to display first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met, and configured to display second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.*

*142. The device of claim 141, wherein the displayed first information is different from the displayed second information.*

*143. The device of claim 1, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.*

*144. The device of claim 1, wherein said first user-defined event is a predetermined type of movement.*

*145. The device of claim 144, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.*

*146. The device of claim 144, wherein the predetermined type of movement is movement exceeding a predefined speed.*

*147. The device of claim 144, wherein the predetermined type of movement is no movement for a predetermined amount of time.*

*148. The device of claim 144, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.*

*149. The device of claim 1, wherein said microprocessor is configured to detect a second event based on the movement data and at least one of the user-defined operational parameters, and said microprocessor is configured to store, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the movement data causing the second event occurred.*

*150. The device of claim 149, wherein said second event is a predetermined type of movement.*

*151. The device of claim 150, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.*

*152. The device of claim 150, wherein the predetermined type of movement is movement exceeding a predefined speed.*

*153. The device of claim 150, wherein the predetermined type of movement is no movement for a predetermined amount of time.*

*154. The device of claim 150, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.*

*155. The system of claim 13, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,*

*wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,*

*wherein said microprocessor is configured to interpret said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.*

*156. The system of claim 155, wherein the output indicator is configured to display first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met, and configured to display second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.*

*157. The system of claim 156, wherein the displayed first information is different from the displayed second information.*

*158. The system of claim 13, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.*

*159. The system of claim 13, wherein said first user-defined event is a predetermined type of movement.*

*160. The system of claim 159, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.*

*161. The system of claim 159, wherein the predetermined type of movement is movement exceeding a predefined speed.*

*162. The system of claim 159, wherein the predetermined type of movement is no movement for a predetermined amount of time.*

*163. The system of claim 159, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.*

*164. The system of claim 13, wherein said microprocessor is configured to detect a second event based on the movement data and at least one of the user-defined operational param-*

US 6,059,576 C1

**11**

eters, and said microprocessor is configured to store, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the movement data causing the second event occurred.

165. The system of claim 164, wherein said second event is a predetermined type of movement.

166. The system of claim 165, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

167. The system of claim 165, wherein the predetermined type of movement is movement exceeding a predefined speed.

168. The system of claim 165, wherein the predetermined type of movement is no movement for a predetermined amount of time.

169. The system of claim 165, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

170. The system of claim 13, wherein said movement sensor comprises at least one accelerometer.

171. The method of claim 20, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

wherein said interpreting comprises interpreting said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.

172. The method of claim 171, further comprising:

displaying, using an output indicator included in the portable, self-contained movement measuring device, first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met and second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.

**12**

173. The method of claim 172, wherein the displayed first information is different from the displayed second information.

174. The method of claim 20, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

175. The method of claim 20, wherein said first user-defined event is a predetermined type of movement.

176. The method of claim 175, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

177. The method of claim 175, wherein the predetermined type of movement is movement exceeding a predefined speed.

178. The method of claim 175, wherein the predetermined type of movement is no movement for a predetermined amount of time.

179. The method of claim 175, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

180. The method of claim 20, further comprising:

detecting, using the microprocessor, a second event based on the movement data and at least one of the user-defined operational parameters; and

storing, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the movement data causing the second event occurred.

181. The method of claim 180, wherein said second event is a predetermined type of movement.

182. The method of claim 181, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

183. The method of claim 181, wherein the predetermined type of movement is movement exceeding a predefined speed.

184. The method of claim 181, wherein the predetermined type of movement is no movement for a predetermined amount of time.

185. The method of claim 181, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

\*   \*   \*   \*   \*

# EXHIBIT 2

US006059576C1

(12) **EX PARTE REEXAMINATION CERTIFICATE** (10541st)

# United States Patent
Brann

(10) **Number:** US 6,059,576 C1
(45) **Certificate Issued:** Mar. 17, 2015

(54) **TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY**

(75) Inventor: **Theodore L. Brann**, Mission, TX (US)

(73) Assignee: **Logantree L P**, Boerne, TX (US)

**Reexamination Request:**
No. 90/013,201, Apr. 4, 2014

**Reexamination Certificate for:**
| | |
|---|---|
| Patent No.: | **6,059,576** |
| Issued: | **May 9, 2000** |
| Appl. No.: | **08/976,228** |
| Filed: | **Nov. 21, 1997** |

(51) **Int. Cl.**
*A61B 5/11* (2006.01)
*A63B 24/00* (2006.01)

(52) **U.S. Cl.**
CPC .......... *A61B 5/1116* (2013.01); *A63B 2220/40* (2013.01); *Y10S 482/901* (2013.01)
USPC .............. **434/247**; 600/595; 482/8; 482/901; 702/101; 601/34

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number

90/013,201, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner* — Danton DeMille

(57) **ABSTRACT**

An electronic device, system and method to monitor and train an individual on proper motion during physical movement. The system employs an electronic device which tracks and monitors an individual's motion through the use of an accelerometer capable of measuring parameters associated with the individual's movement. The device also employs a user-programmable microprocessor which receives, interprets, stores and responds to data relating to the movement parameters based on customizable operation parameters, a real-time clock connected to the microprocessor, memory for storing the movement data, a power source, a port for downloading the data from the device to other computation or storage devices contained within the system, and various input and output components. The downloadable, self-contained device can be worn at various positions along the torso or appendages being monitored depending on the specific physical task being performed. The device also detects the speed of movements made while the device is being worn. When a preprogrammed recordable event is recognized, the device records the time and date of the occurrence while providing feedback to the wearer via visual, audible and/or tactile warnings.



US 6,059,576 C1

**1**

# EX PARTE
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 307

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the
patent, but has been deleted and is no longer a part of the
patent; matter printed in italics indicates additions made
to the patent.**

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

Claims **1**, **13** and **20** are determined to be patentable as
amended.

Claims **2-12**, **14-19** and **21-29**, dependent on an amended
claim, are determined to be patentable.

New claims **30-185** are added and determined to be
patentable.

1. A portable, self-contained device for monitoring move-
ment of body parts during physical activity, said device com-
prising:

a movement sensor capable of measuring data associated
with unrestrained movement in any direction and gen-
erating signals indicative of said movement;

a power source;

a microprocessor connected to said movement sensor and
to said power source, said microprocessor capable of
receiving, interpreting, storing and responding to said
movement data based on user-defined operational
parameters, *detecting a first user-defined event based on
the movement data and at least one of the user-defined
operational parameters regarding the movement data,
and storing first event information related to the
detected first user-defined event along with first time
stamp information reflecting a time at which the move-
ment data causing the first user-defined event occurred;*

at least one user input connected to said microprocessor for
controlling the operation of said device;

a real-time clock connected to said microprocessor;
memory for storing said movement data; and

an output indicator connected to said microprocessor for
signaling the occurrence of user-defined events;

wherein said movement sensor measures the angle and
velocity of said movement.

13. A system to aid in training and safety during physical
activity, said system comprising

a portable, self-contained movement measuring device,
said movement measuring device further comprising

a movement sensor capable of measuring data associ-
ated with unrestrained movement in any direction and
generating signals indicative of said movement;

a power source;

a microprocessor connected to said power source, said
microprocessor capable of receiving, interpreting,
storing and responding to said movement data based
on user-defined operational parameters, *detecting a
first user-defined event based on the movement data
and at least one of the user-defined operational
parameters regarding the movement data, and storing
first event information related to the detected first
user-defined event along with first time stamp infor-*

**2**

*mation reflecting a time at which the movement data
causing the first user-defined event occurred;*

at least one user input connected to said microprocessor
for controlling the operation of said device;

a real-time clock connected to said microprocessor;
memory for storing said movement data;

at least one input/output port connected to said micro-
processor for downloading said data and uploading
said operational parameters; and

an output indicator connected to said microprocessor;

a computer running a program capable of interpreting
and reporting said movement data based on said
operational parameters; and

a download device electronically connected to said move-
ment measuring device and said computer for transmit-
ting said movement data and operational parameters
between said movement measuring device and said
computer for analysis, reporting and operation pur-
poses;

wherein said movement sensor measures the angle and
velocity of said movement.

20. A method to monitor physical movement of a body part
comprising the steps of:

attaching a portable, self-contained movement measuring
device to said body part for measuring unrestrained
movement in any direction;

measuring data associated with said physical movement;

interpreting, *using a microprocessor included in the por-
table, self-contained movement measuring device,* said
physical movement data based on user-defined opera-
tional parameters and a real-time clock; [and]

storing said data in memory;

*detecting, using the microprocessor, a first user-defined
event based on the movement data and at least one of the
user-defined operational parameters regarding the
movement data; and*

*storing, in said memory, first event information related to
the detected first user-defined event along with first time
stamp information reflecting a time at which the move-
ment data causing the first user-defined event occurred.*

*30. The device of claim 1, wherein said microprocessor is
configured to store, in said memory, date information associ-
ated with the first time stamp information.*

*31. The device of claim 1, wherein said microprocessor is
configured to retrieve said first time stamp information from
said real-time clock and associate the retrieved first time
stamp information with said first user-defined event.*

*32. The device of claim 31, wherein said microprocessor is
configured to retrieve said first time stamp information from
said real-time clock based on the detection of the user-defined
event.*

*33. The device of claim 1, wherein said memory is config-
ured to continue to store said movement data in response to
battery power being lost from said power source.*

*34. The device of claim 1, wherein said movement sensor is
configured to continuously check for said movement.*

*35. The device of claim 34, wherein said microprocessor is
configured to continuously interpret, based on the user-de-
fined operational parameters, said movement data received
from said movement sensor.*

*36. The device of claim 1, wherein said output indicator is
configured to display information signaling the occurrence of
the first user-defined event based on the detection of the first
user-defined event.*

US 6,059,576 C1

**3**

37. The device of claim 36, wherein said output indicator is configured to display said information signaling the occurrence of the first user-defined event based on said first time stamp information.

38. The device of claim 1, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

39. The device of claim 1, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.

40. The device of claim 39, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.

41. The device of claim 39, wherein said memory is configured to store said first event information indicating that the predetermined threshold is met.

42. The device of claim 41, wherein said memory is configured to store the first time stamp information in association with said first event information.

43. The device of claim 1, wherein said output indicator is configured to indicate a low battery condition of the device.

44. The device of claim 9, wherein said output indicator is selected from the group consisting of single monochromatic LEDs, multiple colored lights, and liquid crystal displays.

45. The device of claim 1, wherein said movement data stored in the memory is configured to be downloaded to a computer.

46. The device of claim 45, further comprising:

software configured to communicate with external software, wherein the external software is configured to present the downloaded movement data to the user.

47. The device of claim 46, wherein said external software is configured to run on the computer.

48. The device of claim 47, wherein said downloaded movement data is configured to be analyzed by said user via said external software.

49. The device of claim 46, wherein said external software is configured to interpret said movement data and produce at least one report.

50. The device of claim 46, wherein said external software is configured to interpret said movement data and produce at least one history report.

51. The device of claim 50, wherein said at least one history report includes dates and times of said movement data.

52. The device of claim 46, wherein said external software is configured to allow the user to program additional reports and histories with respect to said movement data of said user.

53. The device of claim 45, wherein said movement data is configured to be downloaded to said computer via a wired connection.

54. The device of claim 45, wherein said movement data is configured to be downloaded to said computer via a wireless connection.

55. The device of claim 39, wherein the output indicator is configured to provide a visual indicator to the user regarding the predetermined threshold being reached.

56. The device of claim 1, wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred.

**4**

57. The device of claim 56, wherein when the microprocessor detects that one of the user-defined events occurred based on the movement data reaching one of the plurality of the thresholds, the output indicator displays a corresponding one of the notifications indicating that one of the user-defined events has occurred.

58. The device of claim 56, wherein the plurality of thresholds are different from each other.

59. The device of claim 56, wherein the plurality of notifications are different visual indicators.

60. The device of claim 59, wherein at least one of the visual indicators includes a blinking indicator.

61. The device of claim 39, wherein said microprocessor is configured to detect occurrence of the first user-defined event by comparing said movement data to said predetermined threshold.

62. The device of claim 1, wherein said device is configured to be placed on said user's arm to monitor and record said movement data.

63. The device of claim 62, wherein said movement sensor is configured to measure movement of said user's arm.

64. The device of claim 1, wherein said movement sensor is configured to measure a walking distance.

65. The device of claim 64, wherein said device is configured to be wearable by the user, and said movement sensor is configured to measure said walking distance of said user.

66. The device of claim 1, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information,

wherein said movement sensor is configured to continuously check for said movement,

wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information,

wherein the device further comprises software configured to communicate with external software configured to run on a computer and present the downloaded movement data,

wherein said external software is configured to produce at least one report based on said movement data,

wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred,

wherein said device is configured to be placed on said user's arm to monitor and record said movement data,

wherein said movement sensor is configured to measure movement of said user's arm.

67. The system of claim 13, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information.

68. The system of claim 13, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock and associate the retrieved first time stamp information with said first user-defined event.

69. The system of claim 68, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock based on the detection of the first user-defined event.

70. The system of claim 13, wherein said memory is configured to continue to store said movement data in response to battery power being lost from said power source.

US 6,059,576 C1

**5**

71. The system of claim 13, wherein said movement sensor is configured to constantly checks for said movement.

72. The system of claim 71, wherein said microprocessor is configured to continuously interpret, based on the user-defined operational parameters, said movement data received from said movement sensor.

73. The system of claim 13, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event.

74. The system of claim 73, wherein said output indicator is configured to display said information signaling the occurrence of the first user-defined event based on said first time stamp information.

75. The system of claim 13, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

76. The system of claim 13, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.

77. The system of claim 76, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.

78. The system of claim 78, wherein said memory is configured to store said first event information indicating that the predetermined threshold is met.

79. The system of claim 78, wherein said memory is configured to store the first time stamp information in association with said first event information.

80. The system of claim 13, wherein said output indicator is configured to indicate a low battery condition of the device.

81. The system of claim 13, wherein said output indicator is visual, and said output indicator is selected from the group consisting of single monochromatic LEDs, multiple colored lights, and liquid crystal displays.

82. The system of claim 13, wherein said movement data stored in the memory is configured to be downloaded to the computer.

83. The system of claim 82, wherein the portable, self-contained movement measuring device further comprises:
   software configured to communicate with the program running on the computer, wherein the program is configured to present the downloaded movement data to the user.

84. The system of claim 83, wherein said downloaded movement data is configured to be analyzed by said user via said program.

85. The system of claim 83, wherein said program is configured to interpret said movement data and produce at least one report.

86. The system of claim 83, wherein said program is configured to interpret said movement data and produce at least one history report.

87. The system of claim 86, wherein said at least one history report includes dates and times of said movement data.

88. The system of claim 83, wherein said program is configured to allow the user to program additional reports and histories with respect to said movement data of said user.

89. The system of claim 82, wherein said movement data is configured to be downloaded to said computer, using the download device, via a wired connection.

90. The system of claim 82, wherein said movement data is configured to be downloaded to said computer, using the download device, via a wireless connection.

**6**

91. The system of claim 76, wherein the output indicator is configured to provide a visual indicator to the user regarding the predetermined threshold being reached.

92. The system of claim 13, wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of a plurality of user-defined events occurred.

93. The system of claim 92, wherein when the microprocessor detects that one of the user-defined events occurred based on the movement data reaching one of the plurality of the thresholds, the output indicator displays a corresponding one of the notifications indicating that one of the user-defined events has occurred.

94. The system of claim 92, wherein the plurality of thresholds are different from each other.

95. The system of claim 92, wherein the plurality of notifications are different visual indicators.

96. The system of claim 95, wherein at least one of the visual indicators includes a blinking indicator.

97. The system of claim 13, wherein said output indicator is configured to signal the occurrence of user-defined events.

98. The system of claim 76, wherein said microprocessor is configured to detect occurrence of the first user-defined event by comparing said movement data to said predetermined threshold.

99. The system of claim 13, wherein said device is configured to be placed on said user's arm to monitor and record said movement data.

100. The system of claim 99, wherein said movement sensor configured to measure movement of said user's arm.

101. The system of claim 13, wherein said movement sensor configured to measure a walking distance.

102. The system of claim 101, wherein said device is configured to be wearable by the user, and said movement sensor is configured to measure said walking distance of said user.

103. The system of claim 13, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information,
   wherein said movement sensor is configured to continuously check for said movement,
   wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information,
   wherein said movement data stored in the memory is configured to be downloaded to the computer,
   wherein the device further comprises software configured to communicate with the program which presents the downloaded movement data,
   wherein said program is configured to produce at least one report based on said movement data,
   wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred,
   wherein said device is configured to be placed on said user's arm to monitor and record said movement data,
   wherein said movement sensor configured to measure movement of said user's arm.

US 6,059,576 C1

7

104. The method of claim 20, further comprising:
storing, in said memory, date information associated with the first time stamp information.
105. The method of claim 20, further comprising:
retrieving said first time stamp information from said real-time clock and associate the retrieved first time stamp information with said first user-defined event.
106. The method of claim 105, further comprising:
retrieving said first time stamp information from said real-time clock based on the detection of the first user-defined event.
107. The method of claim 20, wherein said storing comprises continuously storing said movement data after battery power is lost from a power source of the portable, self-contained movement measuring device.
108. The method of claim 20, further comprising:
continuously monitoring for said physical movement using a movement sensor of the portable, self-contained movement measuring device.
109. The method of claim 108, wherein said interpreting comprises:
continuously interpreting, based on the user-defined operational parameters, said physical movement data.
110. The method of claim 20, further comprising:
displaying, using an output indicator of the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the user-defined event.
111. The method of claim 110, wherein said output indicator displays said information signaling the occurrence of the first user-defined event based on said first time stamp information.
112. The method of claim 20, further comprising:
displaying, using an output indicator included the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.
113. The method of claim 20, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.
114. The method of claim 113, wherein an output indicator of the portable, self-contained movement measuring device displays information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.
115. The method of claim 113, further comprising:
storing, in said memory, said first event information indicating that the predetermined threshold is met.
116. The method of claim 115, further comprising:
storing, in said memory, the first time stamp information in association with said first event information.
117. The method of claim 20, further comprising:
indicating a low battery condition, using an output indicator of the portable, self-contained movement measuring device.
118. The method of claim 20, wherein said physical movement data stored in the memory is the interpreted physical movement data, and said stored physical movement data is configured to be downloaded to a computer.
119. The method of claim 118, further comprising:
communicating with external software, wherein the external software is configured to present said interpreted physical movement data to the user.
120. The method of claim 119, wherein said external software is configured to run on a computer.

8

121. The method of 20, further comprising:
producing a report based on said interpreted physical movement data.
122. The method of claim 119, further comprising:
producing at least one report based on said interpreted physical movement data using the external software.
123. The method of claim 119, further comprising:
producing at least one history report based on said interpreted physical movement data using the external software.
124. The method of claim 123, wherein said at least one history report includes dates and times of said physical movement data.
125. The method of claim 119, further comprising:
providing additional reports and histories with respect to said interpreted physical movement data, wherein the additional reports and histories are programmed by the user via the external software.
126. The method of claim 118, wherein said physical movement data is configured to be downloaded to said computer via a wired connection.
127. The method of claim 118, wherein said movement data is configured to be downloaded to the computer via a wireless connection.
128. The method of claim 113, further comprising:
providing, via an output indicator of the portable, self-contained movement measuring device, a visual indicator to the user regarding the predetermined threshold being reached.
129. The method of claim 20, further comprising:
storing the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein the detecting comprises detecting occurrence of one of a plurality of user-defined events each time the movement data reaches one of the plurality of the thresholds.
130. The method of claim 129, wherein in response to detecting that one of the user-defined events occurred based on the movement data reaching one of the plurality of the thresholds, the method further comprises:
displaying, via an output indicator of the portable, self-contained movement measuring device, a corresponding one of the notifications indicating that one of the user-defined events has occurred.
131. The method of claim 129, wherein the plurality of thresholds are different from each other.
132. The method of claim 129, wherein the plurality of notifications are different visual indicators.
133. The method of claim 132, wherein at least one of the visual indicators includes a blinking indicator.
134. The method of claim 20, further comprising:
signaling, using an output indicator included in the portable, self-contained movement measuring device, the occurrence of user-defined events.
135. The method of claim 113, wherein the detecting comprises comparing said physical movement data to said predetermined threshold.
136. The method of claim 20, wherein said body part is user's arm, and said measuring the data comprises monitoring and recording the physical movement of said user's arm.
137. The method of claim 136, wherein said measuring the data comprises measuring the data using a movement sensor of the portable, self-contained movement measuring device.
138. The method of claim 20, further comprising:
measuring a walking distance based on the interpreted physical movement data.

US 6,059,576 C1

9

139. The method of claim 20, further comprising:

storing, in said memory, date information associated with the first time stamp information;

continuously monitoring for said physical movement using a movement sensor of the portable, self-contained movement measuring device;

displaying, using an output indicator included the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information,

wherein said physical movement data stored in the memory is the interpreted physical movement data, and said stored physical movement data is configured to be downloaded to a computer;

communicating with external software configured to run on the computer and present said interpreted physical movement data to the user;

producing a report based on said interpreted physical movement data using the external software; and

storing the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein the detecting comprises detecting occurrence of one of a plurality of user-defined events each time the movement data reaches one of the plurality of the thresholds,

wherein said body part is a user's arm, and said measuring the data comprises monitoring and recording the physical movement of said user's arm.

140. The device of claim 1, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

wherein said microprocessor is configured to interpret said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.

141. The device of claim 140, wherein the output indicator is configured to display first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met, and configured to display second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.

142. The device of claim 141, wherein the displayed first information is different from the displayed second information.

143. The device of claim 1, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

144. The device of claim 1, wherein said first user-defined event is a predetermined type of movement.

145. The device of claim 144, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

146. The device of claim 144, wherein the predetermined type of movement is movement exceeding a predefined speed.

147. The device of claim 144, wherein the predetermined type of movement is no movement for a predetermined amount of time.

10

148. The device of claim 144, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

149. The device of claim 1, wherein said microprocessor is configured to detect a second event based on the movement data and at least one of the user-defined operational parameters, and said microprocessor is configured to store, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the movement data causing the second event occurred.

150. The device of claim 149, wherein said second event is a predetermined type of movement.

151. The device of claim 150, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

152. The device of claim 150, wherein the predetermined type of movement is movement exceeding a predefined speed.

153. The device of claim 150, wherein the predetermined type of movement is no movement for a predetermined amount of time.

154. The device of claim 150, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

155. The system of claim 13, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

wherein said microprocessor is configured to interpret said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.

156. The system of claim 155, wherein the output indicator is configured to display first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met, and configured to display second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.

157. The system of claim 156, wherein the displayed first information is different from the displayed second information.

158. The system of claim 13, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

159. The system of claim 13, wherein said first user-defined event is a predetermined type of movement.

160. The system of claim 159, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

161. The system of claim 159, wherein the predetermined type of movement is movement exceeding a predefined speed.

162. The system of claim 159, wherein the predetermined type of movement is no movement for a predetermined amount of time.

163. The system of claim 159, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

164. The system of claim 13, wherein said microprocessor is configured to detect a second event based on the movement data and at least one of the user-defined operational param-

US 6,059,576 C1

11

eters, and said microprocessor is configured to store, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the movement data causing the second event occurred.

165. The system of claim 164, wherein said second event is a predetermined type of movement.

166. The system of claim 165, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

167. The system of claim 165, wherein the predetermined type of movement is movement exceeding a predefined speed.

168. The system of claim 165, wherein the predetermined type of movement is no movement for a predetermined amount of time.

169. The system of claim 165, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

170. The system of claim 13, wherein said movement sensor comprises at least one accelerometer.

171. The method of claim 20, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

wherein said interpreting comprises interpreting said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.

172. The method of claim 171, further comprising:

displaying, using an output indicator included in the portable, self-contained movement measuring device, first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met and second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.

12

173. The method of claim 172, wherein the displayed first information is different from the displayed second information.

174. The method of claim 20, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

175. The method of claim 20, wherein said first user-defined event is a predetermined type of movement.

176. The method of claim 175, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

177. The method of claim 175, wherein the predetermined type of movement is movement exceeding a predefined speed.

178. The method of claim 175, wherein the predetermined type of movement is no movement for a predetermined amount of time.

179. The method of claim 175, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

180. The method of claim 20, further comprising:

detecting, using the microprocessor, a second event based on the movement data and at least one of the user-defined operational parameters; and

storing, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the movement data causing the second event occurred.

181. The method of claim 180, wherein said second event is a predetermined type of movement.

182. The method of claim 181, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

183. The method of claim 181, wherein the predetermined type of movement is movement exceeding a predefined speed.

184. The method of claim 181, wherein the predetermined type of movement is no movement for a predetermined amount of time.

185. The method of claim 181, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

\* \* \* \* \*

# EXHIBIT 3

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:  COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/976,228 | 11/21/97 | BRANN | T        13326/59157 |

| | EXAMINER |
|---|---|
| QM11/0204 | CHENG, J |

MICHAEL CAYWOOD
LOCKE PURNELL RAIN HARRELL
100 CONGRESS SUITE 300
AUSTIN TX 78701

| ART UNIT | PAPER NUMBER |
|---|---|
| 3713 | 3 |

DATE MAILED:

02/04/99

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks



| *Office Action Summary* | Application No. 08/976,228 | Applicant(s) Brann |
|---|---|---|
| | Examiner Joe H. Cheng | Group Art Unit 3713 |

☐ Responsive to communication(s) filed on _____ .

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ___*three*___ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *1-30* _____ is/are pending in the application.

   Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *1-30* _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is   ☐ approved.   ☐ disapproved.

☐ The specification is objected to by the Examiner.

☒ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

   ☐ All  ☐ Some*  ☐ None   of the CERTIFIED copies of the priority documents have been

      ☐ received.

      ☐ received in Application No. (Series Code/Serial Number) _____ .

      ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   *Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). ___*2*___

☐ Interview Summary, PTO-413

☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---

Application/Control Number: 08/976,228                                    Page 2

Art Unit: 3713

## DETAILED ACTION

### *Oath/Declaration*

1.      The oath or declaration is defective.  A new oath or declaration in compliance with 37

CFR 1.67(a) identifying this application by application number and filing date is required.  See

MPEP §§ 602.01 and 602.02.

        The oath or declaration is defective because:

        It does not state whether the inventor is a sole or joint inventor of the invention claimed.

### *Drawings*

2.      This application has been filed with informal drawings which are acceptable for

examination purposes only.  Formal drawings will be required when the application is allowed.

### *Claim Rejections - 35 USC § 112*

3.      The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and
> distinctly claiming the subject matter which the applicant regards as his invention.

4.      Claims 2 and 14-20 are rejected under 35 U.S.C. § 112, second paragraph, as being

indefinite for failing to particularly point out and distinctly claim the subject matter which

applicant regards as the invention.

Application/Control Number: 08/976,228                                    Page 3

Art Unit: 3713

Regarding claims 2 and 14-20, it is not understood as to whether the "at least one port" is

referred to the "download device" or not.  If it is not then what is it referred to?  If it is the same,

then it is confusing and misdescriptive.

### *Claim Rejections - 35 USC § 102*

5.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless --
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or
> on sale in this country, more than one year prior to the date of application for patent in the United States.

6.      Claims 1, 2, 4-7, 9-11, 13-17, 21, 23-27 and 29 are rejected under 35 U.S.C. 102(b) as

being anticipated by Stark et al (U.S. Pat. No. 5,052,375).

As per claims 1, 2, 4-7, 9-11, 13-17, 21, 23-27 and 29, Figs. 1-16C of Stack et al broadly

discloses the concept of the system and method for monitoring physical movement of the body

part during physical activity having the movement measuring device comprising the movement

sensor (4") having at least one accelerometer for simultaneously measuring angle along at least

two orthogonal axes, distance and speed of the movement and generating signals indicative of the

measured movement data, the microprocessor (64) for receiving, interpreting, storing and

responding to the measured movement data based on the user-defined operational parameters, the

power supply manager (66) connected between the power source (69) and the microprocessor, at

LT 0000659

Application/Control Number: 08/976,228                                    Page 4

Art Unit: 3713

least one user input switch (74) for controlling the operation of the device, the real-time clock

(72) connected to the microprocessor, memory (68, 70) for storing the movement data, at least

one port (78) which is the physical docking station (modem) for downloading and uploading the

data and the operational parameters to and from a network of other standard personal computer

for interpreting and reporting the movement data based on the operational parameter, and the

audio output indicator (78) and the visual output indicator (76) , so as to teach the user how to

properly perform the physical movement and for providing instant feedback regarding the

movement.  In addition, the movement sensor is housed separately from the microprocessor.  See

from column 7, line 9 to column 48, line 38.


### *Claim Rejections - 35 USC § 103*

7.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness

rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
> manner in which the invention was made.

The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103(a) are summarized as follows:

        1. Determining the scope and contents of the prior art.
        2. Ascertaining the differences between the prior art and the claims at issue.
        3. Resolving the level of ordinary skill in the pertinent art.

Application/Control Number: 08/976,228                                          Page 5

Art Unit: 3713

      4. Considering objective evidence present in the application indicating obviousness or
nonobviousness.


8.     Claims 8 and 18-20 are rejected under 35 U.S.C. 103(a) as being unpatentable over Stark

et al (U.S. Pat. No. 5,052,375).

     As per claims 8 and 18-20, it is noted that the teaching of Stark et al does not specifically

disclose the power converter (as per claim 8) and the download device is a wireless device (as per

claim 18), or uses radio frequency (as per claim 19), or infrared light (as per claim 20) as required.

However, such limitations of the power converter, and the wireless download device, or radio

frequency download device, or infrared light download device are old and well known, and are

considered an arbitrary obvious design choice, so as to convert the power source to the power

supply manager, and to provide different types of download device.


9.     Claims 3, 22, 28 and 30 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Stark et al (U.S. Pat. No. 5,052,375) as applied to claims 1, 2, 4-7, 9-11, 13-17, 21, 23-27 and 29

above, and further in view of Pratt, Jr. (U.S. Pat. No. 4,912,638).

     As per claims 3, 22, 28 and 30, it is noted that the teaching of Stark et al does not

specifically disclose the movement sensor for detecting the velocity of the movement (as per

claims 3 and 22) and the physical movement is physical labor (as per claim 28) or the exercise to

improve technique related to the athelia skill (as per claim 30) as required.  However, the teaching

LT 0000661

Application/Control Number: 08/976,228                                   Page 6

Art Unit: 3713

of Pratt, Jr. broadly discloses that such features of the movement sensor for detecting the velocity

of the movement (see column 3, lines 8-49) and the physical movement is physical labor or the

exercise to improve technique related to the athelia skill (see Figs. 1-10) are old and well known.

Hence, it would have been obvious to one of ordinary skill in the art to modify the system and

method of Stark et al with the feature of the velocity of the movement and the physical labor

movement or the technique related to the athelia skill as taught by Pratt, Jr. as both Stark et al and

Pratt, Jr. are directed to the system and method of monitoring physical movement of the body

part, so as to provide the safety aid for training the user during physical activity.


10.     Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Stark et al (U.S.

Pat. No. 5,052,375) as applied to claims 1, 2, 4-7, 9-11, 13-17, 21, 23-27 and 29 above, and

further in view of Plotke (U.S. Pat. No. 5,715,160) .

        As per claim 12, it is noted that the teaching of Stark et al does not specifically disclose

the output indicator is tactile as required.  However, the teaching of Plotke broadly discloses the

tactile output indicator (37).  Hence, it would have been obvious to one of ordinary skill in the art

to modify the system and method of Stark et al with the feature of the tactile output indicator as

taught by Plotke as both Stark et al and Plotke are directed to the system and method of

monitoring physical movement of the body part, so as to provide the tactile feedback to the user

during physical activity.

Application/Control Number: 08/976,228                                    Page 7

Art Unit: 3713


## *Conclusion*

11.     The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.  However, applicant is strongly urged to consider them carefully when amending the

claims in response to the current Office Action.

> Silverman et al (U.S. Pat. No. 4,571,682) - note Figs. 1-4B;
>
> Matsumoto et la (U.S. Pat. No. 4,911,427) - note Figs. 1-15;
>
> McIntosh (U.S. Pat. No. 4,934,694) - note Figs. 1-11;
>
> Prince et al (U.S. Pat. No. 5,348,519) - note Figs. 1-47.


12.     Any inquiry concerning this communication or earlier communications from the examiner
should be directed to Joe H. Cheng whose telephone number is (703) 308-2667.

        Any inquiry of a general nature or relating to the status of this application or proceeding
should be directed to the receptionist whose telephone number is (703) 308-1148.

Joe H. Cheng
Primary Examiner

Joe H. Cheng
January 30, 1999

LT 0000663

Attachment *08/976,>>8*

The drawings submitted with this application were declared informal by the applicant.  Accordingly they have not been reviewed by a draftsperson at this time.  When formal drawings are submitted, the draftsperson will perform a review.

Direct any inquires concerning drawing review to the Drawing Review Branch (703) 305-8404.

SUBSTITUTE PTO-948

LT 0000664

| **Notice of References Cited** | Application No.<br>08/976,228 | Applicant(s)<br>Brann | |
|---|---|---|---|
| | Examiner<br>Joe H. Cheng | Group Art Unit<br>3713 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|
| A | 4,571,682 | Feb. 1986 | Silverman et al | 482 | 903x |
| B | 4,911,427 | Mar. 1990 | Matsumoto et al | 482 | 902x |
| C | 4,912,638 | Mar. 1990 | Pratt, Jr. | 482 | 903x |
| D | 4,934,694 | Jun. 1990 | McIntosh | 482 | 902x |
| E | 5,052,375 | Oct. 1991 | Stark et al | 482 | 902x |
| F | 5,348,519 | Sep. 1994 | Prince et al | 482 | 903x |
| G | 5,715,160 | Feb. 1998 | Plotke | 482 | 902x |
| H | | | | | |
| I | | | | | |
| J | | | | | |
| K | | | | | |
| L | | | | | |
| M | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| N | | | | | | |
| O | | | | | | |
| P | | | | | | |
| Q | | | | | | |
| R | | | | | | |
| S | | | | | | |
| T | | | | | | |

### NON-PATENT DOCUMENTS

| | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|
| U | | |
| V | | |
| W | | |
| X | | |

LT 0000665 3

Form PTO-1449                                                                    Sheet 1 of 8 /

| IN RE: | Theodore L. Brann | § | | | |
|---|---|---|---|---|---|
| SERIAL NO.: | ~~Unknown~~ 08/976,228 | § | GROUP NO.: | ~~Unknown~~ 3713 | |
| FILED: | ~~Herewith~~ 11/21/97 | § | EXAMINER: | ~~Unknown~~ Chng | |
| FOR: | A TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY | § § § § § | ATTY DKT: | 13326/59157 | |

## LIST OF PRIOR ART CITED BY APPLICANT (S)

### U.S. Patent Documents

| Examiner Initial* | | Document Number | Issue Date | Name | Class | Sub Class | Filing Date |
|---|---|---|---|---|---|---|---|
| | A1 | 4,665,928 | 05/19/87 | Linial et al. | ~~128~~ | ~~782~~ | ~~06/24/85~~ |
| | A2 | 5,042,505 | 08/27/91 | Mayer et al. | ~~128~~ | ~~781~~ | ~~03/07/90~~ |
| | A3 | 5,128,655 | 07/07/92 | Shore | ~~340~~ | ~~573~~ | ~~01/09/91~~ |
| | A4 | 5,373,858 | 12/20/94 | Rose et al. | ~~128~~ | ~~782~~ | ~~07/09/93~~ |
| | A5 | 5,375,610 | 12/27/94 | LaCourse et al. | ~~128~~ | ~~782~~ | ~~04/28/92~~ |
| | A6 | 5,394,888 | 03/07/95 | Stone et al. | ~~128~~ | ~~782~~ | ~~12/17/92~~ |
| | A7 | 5,398,697 | 03/21/95 | Spielman | ~~128~~ | ~~781~~ | ~~05/10/94~~ |
| | A8 | 5,435,321 | 07/25/95 | McMillen et al. | ~~128~~ | ~~782~~ | ~~12/10/93~~ |
| | A9 | 5,462,065 | 10/31/95 | Cusimano | ~~128~~ | ~~782~~ | ~~08/17/94~~ |
| | A10 | 5,469,862 | 11/28/95 | Kovacevic | ~~128~~ | ~~782~~ | ~~04/21/94~~ |
| | A11 | 5,474,088 | 12/12/95 | Zaharkin et al. | ~~128~~ | ~~782~~ | ~~12/09/93~~ |
| | A12 | 5,513,651 | 05/07/96 | Cusimano et al. | ~~128~~ | ~~782~~ | ~~11/04/94~~ |
| | A13 | 5,588,444 | 12/31/96 | Petragallo | ~~128~~ | ~~782~~ | ~~02/28/94~~ |
| | A14 | 5,621,667 | 04/15/97 | Waters | ~~364~~ | ~~567~~ | ~~01/17/96~~ |

Examiner: _____                    Date Considered: _____1/14/98_____

*EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

LT 0000666

**Form PTO-1449**

| IN RE: | Theodore L. Brann | § | | |
| SERIAL NO.: | Unknown | § | GROUP NO.: | Unknown |
| FILED: | Herewith | § | EXAMINER: | Unknown |
| FOR: | A TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY | § § § § § | ATTY DKT: | 13326/59157 |

## Other Art

(including Author, Title, Pertinent Pages, etc.)

| Examiner Initial * | Author | Title | Page |
| --- | --- | --- | --- |
| _____ | | | |
| _____ | | | |

## Patent Documents Cited by Examiner

| Examiner Initial* | Document Number | Issue Date | Name | Sub Class | Class | Trans- lation |
| --- | --- | --- | --- | --- | --- | --- |
| _____ | | | | | | |
| _____ | | | | | | |

Examiner:_____   Date Considered:_____

*EXAMINER:  Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

LT 0000667

Form PTO-1449                                                                    Sheet 3 of 3

| | | | |
|---|---|---|---|
| IN RE: | Theodore L. Brann | § | |
| | | § | GROUP NO.:    Unknown |
| SERIAL NO.: | Unknown | § | |
| | | § | EXAMINER:    Unknown |
| FILED: | Herewith | § | |
| | | § | ATTY DKT:    13326/59157 |
| FOR: | A TRAINING AND SAFETY DEVICE, | § | |
| | SYSTEM AND METHOD TO AID IN | § | |
| | PROPER MOVEMENT DURING | § | |
| | PHYSICAL ACTIVITY | § | |

### Prior Art Cited by Applicant(s)

While the filing of prior art statements is voluntary, the procedure is governed by the guidelines of Section 609 of the Manual of Patent Examining Procedure and 37 C.F.R. §§ 1.97 and 1.98. To be considered a proper prior art statement, Form PTO-1449 shall be accompanied by an explanation of relevance of each listed item, a copy of each listed patent or publication or other item of information and a translation of the pertinent portions of foreign documents (if an existing translation is readily available to the applicant), and should be submitted in a timely manner as set out in MPEP Sec. 609.

Examiners will consider all prior art citations submitted in conformance with 37 C.F.R. § 1.98 and MPEP Sec. 609 and place their initials adjacent the citations in the spaces provided on this form. Examiners will also initial citations not in  conformance with the guidelines which may have been considered. A reference may be considered by the Examiner for any reason whether or not the citation is in full conformance with the guidelines. A line will be drawn through a citation if it is not in conformance with the guidelines AND has not been considered. A copy of the submitted form, as reviewed by the Examiner, will be returned to the applicant with the next communication. The original of the form will be entered into the application file.

Each citation initialed by the Examiner will be printed on the issued patent in the same manner as prior art cited by the Examiner on Form PTO-892.

The reference designations "A1", "A2", etc. (referring to Applicant's reference 1, Applicant's reference 2, etc.) will be used by the Examiner in the same manner as Examiner's reference designations "A", "B", "C", etc. on Office Action Form PTO-1142.

E:\CORP\13326\59157\PTO\1449.01

Examiner:_____          Date Considered:_____

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

LT 0000668



5-14-99

4/9

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| IN RE: | Theodore L. Brann | § | |
| SERIAL NO.: | 08/976,228 | § | GROUP NO.: 3713 |
| FILED: | November 21, 1997 | § | EXAMINER: Cheng, Joe H. |
| FOR: | A TRAINING AND SAFETY DEVICE, | § | ATTY DKT: 13326/59157 |
| | SYSTEM AND METHOD TO AID IN | § | |
| | PROPER MOVEMENT DURING | § | |
| | PHYSICAL ACTIVITY | § | |

BOX NON-FEE AMENDMENT
ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

RECEIVED

MAY 1 3 1999

Group 3700

### AMENDMENT & RESPONSE

In response to the Examiner's Office Action mailed February 4, 1999, applicant requests that the application be amended as follows.

In the Specification

Please amend the specification as follows:

1.     On page 16, line 19, delete "was".

In the Claims

Please delete claim 8.
Please amend the following claims as indicated (insert / [delete]):

2. (Amended) The device of claim 1 further comprising at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters to and from a computer.

---

CERTIFICATE OF EXPRESS MAILING (37 C.F.R. § 1.10)
EL382623201US
Express Mail Label Number
I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service as Express Mail Post Office to Addressee on the date shown below in an envelope with sufficient postage for and with Express Mail label number shown above, and is addressed to: Box Non-Fee Amendment, Assistant Commissioner for Patents, Washington, D.C. 20231.

CATHERINE A. BERGLUND

Date: May 4, 1999

Signature

LT 0000669

Subj B6>  14. (Amended) A system to aid in training and safety during physical activity, said system comprising

    a movement measuring device, said movement measuring device further comprising

        a movement sensor capable of measuring data associated with movement of said device and generating signals indicative of said movement;

        a power source;

        a microprocessor connected to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters;

        at least one user input connected to said microprocessor for controlling the operation of said device;

        a real-time clock connected to said microprocessor;

        memory for storing said movement data;

        at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters; and

        an output indicator connected to said microprocessor;

    a computer running a program capable of interpreting and reporting said movement data based on said operational parameters; and

    a download device electronically connected to said movement measuring device and said computer for transmitting said movement data and operational parameters between said movement measuring device and said computer for analysis, reporting and operation purposes.

## REMARKS

The Examiner has objected to the declaration for failing to state whether the inventor is a sole or joint inventor. In this application, claims 1-30 are pending. The Examiner has rejected claims 2 and 14-20 under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter of the invention. The Examiner has also rejected claims 1, 2, 4-7, 9-11, 13-17, 21, 23-27 and 29 under 35 U.S.C. 102(b) as being anticipated by Stark et al. The Examiner has rejected claims 8 and 18-20 under 35 U.S.C. 103(a) as being unpatentable over Stark. Claims 3, 22, 28 and 30 have been rejected as being unpatentable over Stark in view of Pratt. Claim 12 is rejected as being obvious in light of Stark and Plotke. Applicant respectfully disagrees with the Examiner as to the rejection of the claims and addresses the Examiner's rejections, in part, by amendment to the claims requested above and, in part, by the following discussion.

### Oath/Declaration

The Examiner's objection concerning the defective declaration has been addressed by filing a new declaration in compliance with 37 CFR 1.67(a) identifying the application by application number and filing date. Although the previously filed declaration was entitled "Declaration, Power of Attorney, and Petition of Sole Inventor," the new declaration more clearly states that the named inventor is the sole inventor.

### Claim Rejections – 35 USC 112

The Examiner's rejection of claims 2 and 14-20 has been duly noted. The Examiner expresses concern as to whether the "at least one port" refers to the "download device" described in the specification. This concern has been addressed by amending claims 2 and 14 to more explicitly refer to the input/output port (reference numeral 52 in Fig. 4) which is part of the movement measuring device 12

2

LT 0000670


and to distinguish the port from the download device (reference numeral 14 in Fig. 1) that serves as an interface (i.e., docking station) between the device 12 and the computer 16.

## Claim Rejections – 35 USC 102

The Examiner has rejected claims 1, 2, 4-7, 9-11, 13-17, 21, 23-27 and 29 under Section 102(b) as being anticipated by U.S. Pat. No. 5,052,375 issued to Stark et al. The Examiner states that Stark "broadly discloses the concept of the system and method for monitoring physical movement of the body part." The Examiner apparently misunderstands the applicant's invention. Stark describes an orthopedic limb immobilization device while applicant's invention is designed to measure an individual's free movement of limb or torso. In particular, Stark's invention is an orthopedic restraining device used to immobilize and rehabilitate injured human limbs by providing controlled resistance to movement of the limb. The device monitors the force exerted by the wearer via the injured limb through stress sensing means. And it is this sensed data which is monitored and recorded by the device. The only real movement measured by Stark's device is the relative angular position of the "distal end sections" of the device (col. 2, line 55-58) about an adjustable hinge. Stark does not describe a highly portable device used to measure torso or limb movement along multiple axes, including distance and speed of the movement, without any restraint to the movement as is taught by applicant's invention. Thus, Stark's disclosure does not anticipate any of the claims made by the applicant in the present invention.

## Claim Rejections – 35 USC 103

In order to support the rejection of claims under Section 103, the Examiner must identify something that suggests the various elements mentioned in the rejection be used together to achieve a useful purpose. See In re Fritch, 23 USPQ 2d 1780, 1983 (Fed. Cir. 1992), citing ACS Hosp. Systems, Inc. v. Montefiore Hosp., 732 F.2d 1572, 1577 (Fed. Cir. 1984) ("Obviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching or suggestion supporting the combination. Under Section 103, teachings of references can be combined only if there is some suggestion or incentive to do so."); In re Fine, 837 F.2d 1071 (Fed. Cir. 1988) (The PTO has the burden under section 103 to establish a prima facie case of obviousness . . . ). Nothing in the references cited by the Examiner suggests that these elements be combined or integrated in the unique way they have been integrated in the claims of the present invention.

I.      The Examiner has rejected claims 8 and 18-20 under Section 103 as unpatentable over Stark. In particular, the rejection of claims 8 and 18-20 are based solely on Stark without combining it with any other reference. Therefore, the combination of elements must be obvious from Stark alone. Applicant has deleted claim 8. However, because Stark does not disclose or imply the use of any type of download device or docking station from which data contained in the "control means" may be downloaded to a computer or other device for processing, Stark does not suggest or teach the use of such a download device in any form. Thus, claims 18-20, which describe various physical means for achieving the transfer of data from applicant's device for remote data processing, are not obvious in light of Stark.

II.     The Examiner has rejected claims 3, 22, 28 and 30 under Section 103 as being unpatentable over Stark in view of Pratt. However, this rejection is ill-founded. Pratt, just as with Stark, discloses a device which is a "resisting apparatus" (col. 3, lines 8-9). This is in direct opposition to applicant's device which allows the wearer to move in any desired direction and with any desired speed for purposes of monitoring the wearer's movement. Thus, while both Stark and Pratt disclose devices used to restrain or resist the wearer's movement, applicant's device does not and in fact could not in order for it to be used for its intended purpose. The wearer of the applicant's device is not restrained in any way, and this is critical in order to monitor the wearer's natural motion for analysis, whether while performing physical labor or

3

athletic drills. Furthermore, applicant's invention measures and records a wide variation of movement speeds whereas Pratt simply controls the device resistance in order to maintain constant speed throughout the movement (claim 6). Thus, nothing in these two references integrate to form the unique and non-obvious aspects claimed in claims 3, 22, 28 and 30.

III.    The Examiner has rejected claim 12 under Section 103 as unpatentable over Stark in view of Plotke. Because Stark describes an immobilization and restraining device that severely limits the wearer's movement and Plotke discloses a motion and force evaluation system for measuring physical movement, there is no suggestion to combine Stark with Plotke. Thus, Stark teaches away from the tactile device disclosed in Plotke.

## Request for Allowance

Applicant submits that: all of the rejections and objections cited by the Examiner have been addressed and that, with the above-requested amendments, all of the pending claims of the present application recite patentable improvements. Allowance and passage to issue of the present application is therefore respectfully requested.

RESPECTFULLY SUBMITTED,

Date: _May 4, 1999_

Registration No. 27,811
Registration No. 37,797

_Michael Caywood_

Jerry M. Keys
Michael Caywood
ATTORNEYS FOR APPLICANT
Locke Liddell & Sapp LLP
100 Congress Ave., Suite 300
Austin, Texas 78701
512/305-4724

13326:59157:AUSTIN:45752.1

LT 0000672



PATENT

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| IN RE: | Theodore L. Brann | § | |
| | | § | |
| SERIAL NO.: | 08/976,228 | § | GROUP NO.:   3713 |
| | | § | |
| FILED: | November 21, 1997 | § | EXAMINER:   Joe H. Cheng |
| | | § | |
| FOR: | A TRAINING AND SAFETY DEVICE, | § | ATTY DKT:   13326/59157 |
| | SYSTEM AND METHOD TO AID IN | § | |
| | PROPER MOVEMENT DURING | § | |
| | PHYSICAL ACTIVITY | § | |

BOX NON-FEE AMENDMENT
ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231



## DECLARATION, POWER OF ATTORNEY, AND PETITION OF SOLE INVENTOR

As below-named inventor, I hereby individually declare that:

### TYPE OF DECLARATION

This Declaration is of the following application type:

| | |
|---|---|
| [x] | Original |
| [ ] | Design |
| [ ] | Supplemental |
| [ ] | National Stage of PCT |
| [ ] | Divisional with Preliminary Amendment of Claims and Title |
| [ ] | Continuation |
| [ ] | Continuation-in-Part (CIP) |

### INVENTORSHIP IDENTIFICATION

My residence, post office address and citizenship are as stated below next to my name, I believe that I am the original, first and sole inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled:

---

CERTIFICATE OF EXPRESS MAILING (37 C.F.R. § 1.10)
EL382623201US
Express Mail Label Number
I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service as Express Mail Post Office to Addressee on the date shown below in an envelope with sufficient postage for and with Express Mail label number shown above, and is addressed to: Box Patent Application, Commissioner of Patents and Trademarks, Washington, D.C. 20231.

CATHERINE A. BERGLUND

Date: May 4, 1999

Catherine A. Berglund
Signature

G:\CORP\13326\59157\PTO\DEC_INV.WPD

LT 0000673

TITLE OF INVENTION

A TRAINING AND SAFETY DEVICE, SYSTEM AND
METHOD TO AID IN PROPER MOVEMENT
DURING PHYSICAL ACTIVITY


SPECIFICATION IDENTIFICATION

the specification of which

[ ]    is attached hereto.

[ X ]   was filed on _____November 21, 1997_____ and has been given
      Application Serial No.: ___08/976,228___ .

[ ]    was described and claimed in PCT International Application No. _____ filed on
      _____ (if applicable) and as amended under PCT Article 19 on
      _____ .


ACKNOWLEDGMENT OF REVIEW OF PAPERS AND DUTY OF CANDOR

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge that duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56(a).


DECLARATION

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that willful false statements may jeopardize the validity of the application or any patent issued thereon.


POWER OF ATTORNEY

I hereby appoint Jerry M. Keys, Registration No. 27,811 and/or Michael Caywood, Registration No. 37,797, Attorneys at Law, Locke Liddell & Sapp LLP, 100 Congress Ave., Suite 300, Austin, Texas 78701, (512) 305-4724, my attorneys, with full power of substitution and revocation, to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith.

And I hereby request that all correspondence be sent to:

Michael Caywood
Locke Liddell & Sapp LLP
100 Congress, Suite 300
Austin, Texas 78701

LT 0000674

# PETITION

Wherefore, I pray that Letters Patent be granted to me for the invention or discovery described and claimed in the foregoing specification and claims, and I hereby subscribe my name to the attached specification and claims, declaration, power of attorney and this petition.

Full Name of First Listed Inventor:        Theodore L. Brann

Inventor's Signature:        *Theodore L. Brann*
                             Theodore L. Brann

                             Date: *April 28, 1999*

Citizenship:        United States of America

Residence:        P.O. Box 1766
                  Boerne, Texas 78006

G:\CORP\13326\59157\PTO\DEC_INV.WPD

3

LT 0000675

ATTORNEY DOCKET NO. 13326/5                                    PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| IN RE: | Theodore L. Brann | § |
| | | § |
| SERIAL NO.: | 08/976,228 | § |
| | | § |
| FILED: | November 21, 1997 | § |
| | | § |
| FOR: | A Training and Safety Device, System and Method to Aid in Proper Movement During Physical Activity | § |

GROUP NO.:  3713

EXAMINER:  Cheng, Joe H.

**BOX NON-FEE AMENDMENT**
**Assistant Commissioner for Patents**
**Washington, D.C. 20231**

**RECEIVED**

**MAY 1 3 1999**

**Group 3700**

### TRANSMITTAL LETTER

Dear Sir:

Enclosed herewith please find the following documents for filing for the above-identified patent application:

1.   Amendment & Response:
2.   Declaration, Power of Attorney and Petition of Sole Inventor: and
3.   Self-Addressed and Stamped Return Receipt Postcard.

If any additional extension and/or fee is required or if any overpayment has been made, the Commissioner is hereby authorized to charge any deficit or credit any overpayment to Account No. 12-1781.

RESPECTFULLY SUBMITTED,

Date: May 4, 1999

Registration No. 27,811
Registration No. 37,797

*Michael Caywood*

Jerry M. Keys
Michael Caywood
ATTORNEYS FOR APPLICANT
Locke Liddell & Sapp, LLP
100 Congress Avenue, Suite 300
Austin, Texas  78701
Telephone: 512/305-4700
Facsimile: 512/305-4800

---

*CERTIFICATE OF EXPRESS MAILING (37 CFR ' 1.10)

EL382623201US

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service as Express Mail Post Office to Addressee on the date shown below in an envelope with sufficient postage for and with Express Mail label number shown above, and is addressed to:  BOX NON-FEE AMENDMENT, Assistant Commissioner for Patents, Washington, D.C. 20231.

Date: May 4, 1999

Catherine A. Berglund

*Catherine A. Berglund*
Signature

LT 0000676

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/976,228 | 11/21/97 | BRANN | 13326/59157 |

QM12/0720

MICHAEL CAYWOOD
LOCKE PURNELL RAIN HARRELL
100 CONGRESS SUITE 300
AUSTIN TX 78701

| EXAMINER |
|---|
| CHENG, J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3713 | 6 |

DATE MAILED:   07/20/99

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

LT 0000677

PTO-90C (Rev. 2/95)

1- File Copy

| *Office Action Summary* | Application No. 08/976,228 | Applicant(s) **Brann** |
|---|---|---|
| | Examiner Joe H. Cheng | Group Art Unit 3713 |



☒ Responsive to communication(s) filed on *May 4, 1999*_____.

☒ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ___*three*___ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

   ☒ Claim(s) *1-7 and 9-30*_____ is/are pending in the application.

   Of the above, claim(s) _____ is/are withdrawn from consideration.

   ☐ Claim(s) _____ is/are allowed.

   ☒ Claim(s) *1-7 and 9-30*_____ is/are rejected.

   ☐ Claim(s) _____ is/are objected to.

   ☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

   ☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

   ☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

   ☐ The proposed drawing correction, filed on _____ is  ☐ approved  ☐ disapproved.

   ☐ The specification is objected to by the Examiner.

   ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

   ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

      ☐ All  ☐ Some*  ☐ None   of the CERTIFIED copies of the priority documents have been

         ☐ received.

         ☐ received in Application No. (Series Code/Serial Number) _____ .

         ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

      *Certified copies not received: _____ .

   ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

   ☐ Notice of References Cited, PTO-892

   ☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

   ☐ Interview Summary, PTO-413

   ☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

   ☐ Notice of Informal Patent Application, PTO-152

**--- SEE OFFICE ACTION ON THE FOLLOWING PAGES ---**

Application/Control Number: 08/976,228                              Page 2

Art Unit: 3713

## DETAILED ACTION

1.      In response to the Amendment filed on May 4, 1999, claim 8 has been cancelled and

claims 1-7 and 9-30 are pending.

### *Claim Rejections - 35 USC § 102*

2.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the
basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless --
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or
> on sale in this country, more than one year prior to the date of application for patent in the United States.

3.      Claims 1, 2, 4-7, 9-11, 13-17, 21, 23-27 and 29 are rejected under 35 U.S.C. 102(b) as

being anticipated by Stark et al (U.S. Pat. No. 5,052,375) for the reasons set forth in the prior

Office action (see Paper No. 3) and incorporated herein.

### *Response to Arguments*

4.      Applicant's arguments filed on May 4, 1999 have been fully considered but they are not

deemed to be persuasive.  It is noted that applicant's own analysis of the Stark et al device

indicates how the device anticipates the claimed invention.  Namely applicant admits that Stark et

al "measures the relative angular position ..." .  This reads on the claimed language.  In addition,

applicant's argument directed to the "a *highly portable device* used to measure *torso or limb*

LT 0000679

Application/Control Number: 08/976,228                                    Page 3

Art Unit: 3713

*movement along multiple axes, including distance and speed of the movement, without any*

*restraint to the movement*".  Applicant is reading the limitations into the claim which is just not

there.  It is noted that the specification is not the measure of the invention.  Therefore, limitations

contained therein can not be read into the claims for the purpose of avoiding the prior art.  *In re*

*Sporck*, 55 CCPA 743, 386 F.2d 924, 155 USPQ 687 (1968).  Hence, applicant's argument is not

deemed to be persuasive and the rejection under 35 U.S.C. §102 (b) is proper and stand.

### *Claim Rejections - 35 USC § 103*

5.     The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness
rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
> manner in which the invention was made.

The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459
(1966), that are applied for establishing a background for determining obviousness under 35
U.S.C. 103(a) are summarized as follows:

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or
   nonobviousness.

LT 0000680

Application/Control Number: 08/976,228                                    Page 4

Art Unit: 3713


6.     Claims 8 and 18-20 are rejected under 35 U.S.C. 103(a) as being unpatentable over Stark

et al (U.S. Pat. No. 5,052,375) for the reasons set forth in the prior Office action (see Paper No.

3) and incorporated herein.


7.     Claims 3, 22, 28 and 30 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Stark et al (U.S. Pat. No. 5,052,375) as applied to claims 1, 2, 4-7, 9-11, 13-17, 21, 23-27 and 29

above, and further in view of Pratt, Jr. (U.S. Pat. No. 4,912,638) for the reasons set forth in the

prior Office action (see Paper No. 3) and incorporated herein.


8.     Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Stark et al (U.S.

Pat. No. 5,052,375) as applied to claims 1, 2, 4-7, 9-11, 13-17, 21, 23-27 and 29 above, and

further in view of Plotke (U.S. Pat. No. 5,715,160) for the reasons set forth in the prior Office

action (see Paper No. 3) and incorporated herein.


### *Response to Arguments*

9.     Applicant's arguments directed to the capability to modify the reference is not

obviousness.  It is noted that the disclosure in a reference must be evaluated for what they would

fairly teach one of ordinary skill in the art.  *In re Snow*, 471 F.2d 1400, 176 USPQ 328 (CCPA

1973); *In re Boe*, 355 F.2d 961, 148 USPQ 507 (CCPA 1966).  In considering the teachings of a

reference, it is proper to take into account not only the specific teachings of the reference, but

LT 0000681

Application/Control Number: 08/976,228                                            Page 5

Art Unit: 3713

also the inferences that one skilled in the art would reasonably have been expected to draw from

the reference. _In re Preda_, 401 F.2d 825, 159 USPQ 342 (CCPA 1968); _In re Shepard_, 319 F.2d

194, 138 USPQ 148 (CCPA 1963). In addition, it is proper to taken into consideration not only

the teachings of the prior art, but also the level of ordinary skill in the art. _In re Luck_, 476 F.2d

650, 177 USPQ 523 (CCPA 1973). Specifically, those of ordinary skill in the art are presumed to

have some knowledge of the art apart from what is expressly disclosed in the references. _In re_

_Jacoby_, 309 F.2d 513, 135 USPQ 317 (CCPA 1962). Hence, the type of download device or

docking station from which data contained in the control means may be downloaded to a

computer or other device for processing is a design consideration within the skill of the art. _In re_

_Reese_, 290 F.2d 839, 129 USPQ 402 (CCPA 1961). Further, "It should be too well settled now

to require citation or discussion that the test for combining references is not what the individual

references themselves suggest but rather what the combination of disclosures taken as a whole

would suggest to one of ordinary skill in the art. Any judgment on obviousness is in a sense

necessarily a reconstruction based upon hindsight reasoning, but so long as it takes into account

only knowledge which was within the level of ordinary skill at the time the claimed invention was

made and does not include knowledge gleaned only from applicant's disclosure, such

reconstruction is proper." _In re McLaughlin_, 443 F.2d 1392, 1395, 170 USPQ 209, 212 (CCPA

1971). Furthermore, where the structure and function of a prior art is similar to the structure and

function of the invention, the prior art device may be considered analogous to the invention. _In re_

_Mlot-Fijalkowski_, 676 F.2d 666, 213 USPQ 713 (CCPA 1982). Finally, "No reference need be

LT 0000682

Application/Control Number: 08/976,228                                        Page 6

Art Unit: 3713

cited by Patent Office to show lack of novelty in notoriously old business arrangement." *In re*

*Wiechers*, 146 USPQ 52.  Hence, applicant's argument is not deemed to be persuasive and the

rejections under 35 U.S.C. §103(a) are proper and stand.

### *Conclusion*

10.    **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time
policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE
MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO
MONTHS of the mailing date of this final action and the advisory action is not mailed until after
the end of the THREE-MONTH shortened statutory period, then the shortened statutory period
will expire on the date the advisory action is mailed, and any extension fee pursuant to 37
CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no event,
however, will the statutory period for reply expire later than SIX MONTHS from the mailing date
of this final action.

11.    Any inquiry concerning this communication or earlier communications from the examiner
should be directed to Joe H. Cheng whose telephone number is (703) 308-2667.

Any inquiry of a general nature or relating to the status of this application or proceeding
should be directed to the receptionist whose telephone number is (703) 308-1148.

Joe H. Cheng
Primary Examiner

Joe H. Cheng

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| | 11/21/97 | BRANN | 13328/39137 |

```
                          QM21/1008
  MICHAEL LAYWOOD
  LOCKE LIDDELL BAIN HARRELL
  100 CONGRESS SUITE 300
  AUSTIN TX 78701
```

| EXAMINER |
|---|
| CHENG, J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3713 | |

**DATE MAILED:** 10/08/99

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

LT 0000684

PTO-90C (Rev. 2/95)

1- File Copy



| | | | Application No. | Applicant(s) | |
|---|---|---|---|---|---|
| ***Interview Summary*** | | | 08/976,228 | Brann | |
| | | | Examiner | Group Art Unit | |
| | | | Joe H. Cheng | 3713 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Joe H. Cheng (examiner)*                    (3) _____

(2) *Michael Caywood (applicant's Attorney)*     (4) _____

Date of Interview _____ *Oct 5, 1999* _____

Type:   ☒ Telephonic   ☐ Personal (copy is given to   ☐ applicant   ☐ applicant's representative).

Exhibit shown or demonstration conducted:   ☐ Yes   ☒ No.  If yes, brief description:

_____

_____

Agreement   ☐ was reached.   ☒ was not reached.

Claim(s) discussed: *1-7 and 9-30*

Identification of prior art discussed:
*Linial et al (U.S. Pat. No. 4,665,928), Stark et al (U.S. Pat. No. 5,052,375), Pratt, Jr. (U.S. Pat. No. 4,912,638) and Prince et al (U.S. Pat. No. 5,348,519).*

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
*The aforementioned claims were discussed.  No agreement has been reached.  Applicant's attorney will file CPA in response to the Final Office Action in the forthcoming.*

_____

_____

_____

_____

_____

_____

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached.  Also, where no copy of the amendents which would render the claims allowable is available, a summary thereof must be attached.)

1.  ☐    It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph above has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a response to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.

2.  ☐    Since the Examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.  Applicant is not relieved from providing a separate record of the interview unless box 1 above is also checked.

JOE H. CHENG
PRIMARY EXAMINER
ART UNIT 3713

Examiner Note:  You must sign and stamp this form unless it is an attachment to a signed Office action.

ATTORNEY DOCKET NO: 13326/59157

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| IN RE: | Brann | § | |
| | | § | GROUP NO.: 3713 |
| SERIAL NO.: | 08/976,228 | § | |
| | | § | EXAMINER: Cheng, J. |
| FILED: | November 21, 1997 | § | |
| | | § | |
| FOR: | A TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY | § | |

RECEIVED

NOV 26 1999

Group 3700

Box CPA
FEE
ASSISTANT COMMISSIONER FOR PATENTS*
Washington, D.C. 20231

## CONTINUED PROSECUTION APPLICATION (CPA)
## (37 C.F.R. § 1.53(d))

1.     This is a request for the filing of a

      ☒  continuation
      ☐  divisional

continued prosecution application under 37 C.F.R. § 1.53(d) of the above-identified prior nonprovisional application.

      It is further requested that this continued prosecution application utilize the file jacket and contents of the prior application, including the specification, drawings, and oath or declaration from the prior application, to constitute this new application, and that the application number of the above-identified prior application be assigned for identification purposes. 37 C.F.R. § 1.53(d)(2)(iv).

      It is also requested that the above-identified prior application be expressly abandoned as of the filing date accorded this continued prosecution application. 37 C.F.R. § 1.53(d)(2)(v).

---

*CERTIFICATE OF EXPRESS MAILING (37 CFR § 1.10)

EL417713015US

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service as Express Mail Post Office to Addressee on the date shown below in an envelope with sufficient postage for and with Express Mail label number shown above, and is addressed to: BOX CPA, FEE, ASSISTANT COMMISSIONER FOR PATENTS, WASHINGTON, D.C. 20231.

Date: Nov. 22, 1999

CECILIA HOWELLS

Signature

11/24/1999 DVUONG    00000116 08976228
01 FC:231                              380.00 OP
02 FC:203                               81.00 OP

Repln. Ref: 11/24/1999 DVUONG    0021105700
DAR:121781   Name/Number:08976228
FC: 704                              $81.00 CR

1

LT 0000686

2.   With respect to the above-identified prior nonprovisional application, this continued prosecution application is being filed:

    A.   ☒   before the earliest of the:
          ☐   termination of the proceedings on the prior application (37 C.F.R. § 1.53(d)(1)(ii)(C))
          ☐   payment of the issue fee on the prior application  (37 C.F.R. § 1.53(d)(1)(ii)(A)).
          ☒   abandonment of the prior application (37 C.F.R. § 1.53(d)(1)(ii)(B))

OR

    B.   ☐   after the payment of the issue fee – but a petition under § 1.313(b)(5) has been granted in the prior application.  37 C.F.R. § 1.53(d)(1)(ii)(A).

    C.   The term for response or taking action in the prior application expires on November 20, 1999.

3.   It is noted that:

- This application discloses and claims only subject matter disclosed in the prior application.  37 C.F.R. § 1.53(d)(2)(ii).

- Filing of this continued prosecution application is to be construed to include a waiver of confidentiality by the applicant under 35 U.S.C. § 122, to the extent that any member of the public, who is entitled under the provisions of § 1.14 to access to, copies of, or information concerning, either the prior application or any continuing application filed under the provisions of 37 C.F.R. § 1.53(d), may be given similar access to, copies of, or similar information concerning the other application or applications in the file jacket.  37 C.F.R. § 1.53(d)(6).

- Filing of this request is the specific reference required by 35 U.S.C. § 120 to every application assigned the application number identified in this request.  No amendment in this application may delete this specific reference to any prior application.  37 C.F.R. §§ 1.53(d)(7) and 1.78(a)(2).

4.   This continued prosecution application names as inventors:

    ☒   the same inventor named in the prior application on the date this continued prosecution application under 37 C.F.R. § 1.53(d)(2)(iii) is being filed.

    ☐   fewer than all the inventors named in the prior application.  37 C.F.R. § (d)(4).

    ☐   Please delete the following names)s) as inventor(s), who are not inventor(s) of the invention being claimed in this new application:

_____

_____

    ☐   Please add the following name(s) as inventors:

_____

_____

    ☐   A petition under § 1.48 is attached.

2

LT 0000687

5.     **Information Disclosure Statement**

☐     Enclosed is an Information Disclosure Statement in accordance with the requirements of 37 C.F.R. § 1.98.

6.     **Fee Calculation (37 CFR 1.16)**

[ X ]     Regular application

CLAIMS AS FILED

| | Number Filed | Max | Above Max | Above Max Fee | | |
|---|---|---|---|---|---|---|
| Basic Fee 37 CFR §1.16(a) | | | | | | $760.00 |
| Total Claims 37 CFR §1.16(c) | 29 | - 20 | 9 | x $18.00 | = | $162.00 |
| Independent Claims 37 CFR §1.16(b) | 3 | - 3 | 0 | x $78.00 | = | $0.00 |
| Multiple Dependant Claims 37 CFR §1.16(d) | | | 0 | x $260.00 | = | $0.00 |

☐     An amendment canceling extra claims is enclosed

☐     An amendment deleting multiple-dependencies is enclosed.

☐     The fee for extra claims is not being paid at this time.

Filing Fee Total $922.00

After Small Entity Discount of 50%  $ 461.00

Filing Fee Calculation                                      $          461.00

3

LT 0000688

7.    **Small Entity Statement(s)**

☐    Statement(s) that this is filing by a small entity under 37 C.F.R. §§ 1.9 and 1.27 is(are) attached

☒    Status as a small entity was claimed in prior application **08/976,228**, filed on **November 21, 1997**, from which benefit is being claimed for this application under:

35 U.S.C. §
☐    119(e),
☒    120,
☐    121,
☐    365(c),

and which status as a small entity is still proper and desired.

☐    A copy of the statement in the prior application is included.

8.    **Fee Payment Being Made at This Time**

☐    Not enclosed

☒    Enclosed                                                                                            $_____597.00

9.    **Total Fee Calculation**

☒    Filing Fee                                                                                         $_____416.00

☐    No filing fee is to be paid at this time.

☐    Recording Assignment
($40.00—37 C.F.R. § 1.21(h))
(See attached "COVER SHEET
FOR ASSIGNMENT ACCOMPANYING
NEW APPLICATION.")                                                               $_____

☒    Petition fee for one month extension of time                           $_____55.00

**Total fees calculated**                                                                 $_____516.00

10.    Method of Payment of Fees

[X]    Attached is check number 7482 in the amount of $597.00.

[   ]  Charge Account No. 12-1781 the $ sum of _____. A duplicate of this transmittal is attached.

[X]    If any additional extension and/or fee is required or if any overpayment has been made, the Commissioner is hereby authorized to charge any deficit or credit any overpayment to Account No.12-1781.

LT 0000689

RESPECTFULLY SUBMITTED,

Date: *Nov. 22, 1999*
Registration No. 37,797

*Michael Caywood*
Michael Caywood
ATTORNEY FOR APPLICANT
Locke Liddell & Sapp LLP
100 Congress Avenue, Suite 300
Austin, Texas  78701
Telephone: 512/305-4700
Facsimile: 512/305-4800

13326:59157:AUSTIN:186897.1

5

LT 0000690

Atty. Docket No.: 13326/59157

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| IN RE: | Brann | § |
| | | § |
| SERIAL NO.: | 08/976,228 | § |
| | | § |
| FILED: | November 21, 1997 | § |
| | | § |
| FOR: | A TRAINING AND SAFETY DEVICE, | § |
| | SYSTEM AND METHOD TO AID | § |
| | IN PROPER MOVEMENT DURING | § |
| | PHYSICAL ACTIVITY | § |

GROUP NO.: 3713

EXAMINER: Cheng, J.

BOX CPA
FEE
ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

## PRELIMINARY AMENDMENT

This preliminary amendment is being included with the filing papers for a Continued Prosecution Application along with a one-month extension of time requested and paid for pursuant to the petition and fee for extension under 37 CFR 1.17(a)(1) referenced and provided for in the transmittal of the CPA. The Examiner issued a Final Office Action dated July 20, 1999.

---

*CERTIFICATE OF EXPRESS MAILING (37 CFR § 1.10)

EL417713015US

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service as Express Mail Post Office to Addressee on the date shown below in an envelope with sufficient postage for and with Express Mail label number shown above, and is addressed to: **BOX CPA, FEE, ASSISTANT COMMISSIONER FOR PATENTS,** WASHINGTON, D.C. 20231.

CECILIA HOWELLS

Date: Nov. 22, 1999

Signature

1

LT 0000693

AMENDMENT

Please amend the claims as follows:

1. (Amended) A <u>portable, self-contained</u> device for <u>monitoring</u> [detecting] movement of body parts during physical activity, said device comprising:

      a movement sensor capable of measuring data associated with <u>unrestrained</u> movement <u>in any direction</u> [of said device] and generating signals indicative of said movement;

      a power source;

      a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters;

      at least one user input connected to said microprocessor for controlling the operation of said device;

      a real-time clock connected to said microprocessor;

      memory for storing said movement data; and

      an output indicator connected to said microprocessor for signaling the occurrence of user-defined events<u>;</u>

      <u>wherein said movement sensor measures the angle and velocity of said movement.</u>

3. (Amended) The device of claim 1 wherein said <u>device is compact and weighs less than one pound</u> [movement sensor can detect the velocity of said movement].

5. (Amended) The device of claim 1 wherein said movement sensor can simultaneously detect <u>real time</u> movement along at least two orthogonal axes.

2



B4

7. (Amended) The device of claim 1 <u>wherein said monitored body part movement is torso or limb movement</u> [further comprising a power supply manager connected between said power source and said microprocessor].

B5

8 9. (Amended) The device of claim 1 wherein said data measured by said movement sensor includes <u>the</u> [angle,] distance [and speed] of said movement.



13 14. (Twice Amended) A system to aid in training and safety during physical activity, said system comprising

a <u>portable, self-contained</u> movement measuring device, said movement measuring device further comprising

a movement sensor capable of measuring data associated with <u>unrestrained</u> movement <u>in any direction</u> [of said device] and generating signals indicative of said movement;

a power source;

a microprocessor connected to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters;

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data;

at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters; and

an output indicator connected to said microprocessor;

a computer running a program capable of interpreting and reporting said movement data based on said operational parameters; and

3



LT 0000695

a download device electronically connected to said movement measuring device and said computer for transmitting said movement data and operational parameters between said movement measuring device and said computer for analysis, reporting and operation purposes; wherein said movement sensor measures the angle and velocity of said movement.

17 18. (Amended) The system of claim 13 wherein said computer is a [standalone] personal computer.

20 21. (Amended) A method to monitor physical movement of a body part comprising the steps of:

attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement in any direction;

measuring data associated with said physical movement;

interpreting said physical movement data based on user-defined operational parameters and a real-time clock; and

storing said data in memory.

26 27. (Amended) The method of claim 20 21 further comprising the step of providing real time [instant] feedback regarding said movement.

## REMARKS

Pursuant to the Office Action dated July 20, 1999 and the subsequent telephone interview with Examiner Cheng on October 5, 1999, the Applicant has amended the pending claims in order to overcome the rejections stated in the Office Action. Applicant files herewith a CPA along with this Preliminary Amendment. In particular, Applicant has amended the independent claims to more distinctly point out the unique aspects of the invention. These inventive aspects include the portability of Applicant's device and its

4

LT 0000696

use to measure underlined torso or limb movement along multiple axes. Once these limitations are taken into account, the rejections raised by the Examiner based on the patents issued to Stark, Platt and Plotke no longer apply. The amended claims also distinguish Applicant's claimed invention from those disclosed by Prince and Linial.

REQUEST FOR ALLOWANCE

Applicant submits that all of the pending claims of the present application are in condition for allowance. Therefore, allowance and passage to issue of the claims is respectfully requested.

RESPECTFULLY SUBMITTED,

Date: *Nov. 22, 1999*
Registration No. 37,797

*Michael Caywood*

Michael Caywood
ATTORNEY FOR APPLICANTS
Locke Liddell & Sapp LLP
100 Congress Ave., Suite 300
Austin, Texas 78701
512/305-4724

13326:59157:AUSTIN:186899.1

5

*B*

LT 0000697



ATTORNEY DOCKET NO. 5932-5029.2                                    **PATENT**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| IN RE: | Brann | § | |
| | | § | **GROUP NO.:** 3713 |
| SERIAL NO.: | 08/976,228 | § | |
| | | § | **EXAMINER:** Cheng, J. |
| FILED: | November 21, 1997 | § | |
| | | § | |
| FOR: | A TRAINING AND SAFETY DEVICE, | § | |
| | SYSTEM AND METHOD TO AID IN | § | |
| | PROPER MOVEMENT DURING | | |
| | PHYSICAL ACTIVITY | | |

BOX CPA
Fee
ASSISTANT COMMISSIONER FOR PATENTS*
WASHINGTON, D.C. 20231

## TRANSMITTAL LETTER

Dear Sir:

Enclosed with this letter please find the following in connection with the above-referenced application for U.S. patent:

1. Continued Prosecution Application (CPA) (37 C.F.R. § 1.53(d);

2. Petition for Extension of Time and Amendment Transmittal;

3. Preliminary Amendment;

4. Check No. 7482 in the amount of $597.00; and

5. Self-Addressed and Stamped Return Receipt Postcard.

---

\*              CERTIFICATE OF EXPRESS MAILING (37 C.F.R. § 1.10)
Express Mail Label Number
EL417713015US

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service as Express Mail Post Office to Addressee on the date shown below in an envelope with sufficient postage for and with Express Mail label number shown above, and is addressed to: Box CPA, Fee, Assistant Commissioner for Patents, Washington, D.C. 20231.

                                                        CECILIA HOWELLS

Date: *Nov. 22, 1999*

                                                        Signature

LT 0000698

    If any additional extension and/or fee is required or if any overpayment has been made, the Commissioner is hereby authorized to charge any deficit or credit any overpayment to Account No. 12-1781.

                                          RESPECTFULLY SUBMITTED,

Date: *Nov. 22, 1999*
Registration No. 37,797

                                          Michael Caywood
                                          ATTORNEY FOR APPLICANT
                                          Locke Liddell & Sapp LLP
                                          100 Congress Avenue, Suite 300
                                          Austin, Texas  78701
                                          (512) 305-4724

13326:59157:AUSTIN:186896.1



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

# NOTICE OF ALLOWANCE AND ISSUE FEE DUE

QM12/1206

MICHAEL CAYWOOD
LOCKE PURNELL RAIN HARRELL
100 CONGRESS SUITE 300
AUSTIN TX 78701

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 08/976,228 | 11/21/97 | 029 | CHENG, J | 3713 | 12/06/99 |

| First Named Applicant | BRANN, | | 35 USC 154(b) term ext. = | 0 Days. | |

**TITLE OF INVENTION** TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 3 | 13326/59157 | 434-247.000 | F27 | UTILITY | YES | $605.00 | 03/06/00 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. _PROSECUTION ON THE MERITS IS CLOSED._**

**THE ISSUE FEE MUST BE PAID WITHIN _THREE MONTHS_ FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. _THIS STATUTORY PERIOD CANNOT BE EXTENDED._**

## HOW TO RESPOND TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.
  If the SMALL ENTITY is shown as YES, verify your
  current SMALL ENTITY status:

  A. If the status is changed, pay twice the amount of the
     FEE DUE shown above and notify the Patent and
     Trademark Office of the change in status, or
  B. If the status is the same, pay the FEE DUE shown
     above.

If the SMALL ENTITY is shown as NO:

  A. Pay FEE DUE shown above, or

  B. File verified statement of Small Entity Status before, or with,
     payment of 1/2 the FEE DUE shown above.

II. Part B-Issue Fee Transmittal should be completed and returned to the Patent and Trademark Office (PTO) with your
  ISSUE FEE. Even if the ISSUE FEE has already been paid by charge to deposit account, Part B Issue Fee Transmittal
  should be completed and returned. If you are charging the ISSUE FEE to your deposit account, section "4b" of Part
  B-Issue Fee Transmittal should be completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give application number and batch number.
  Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance
fees when due.**

PATENT AND TRADEMARK OFFICE COPY
LT 0000700
PTOL-85 (REV. 10-96) Approved for use through 06/30/99. (0651-0033)                    *U.S. GPO: 1999-454-457/24601



| *Notice of Allowability* | Application No. 08/976,228 | Applicant(s) Brann |
|---|---|---|
| | Examiner Joe H. Cheng | Group Art Unit 3713 |

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

☒ This communication is responsive to *the Preliminary Amendment filed November 22, 1999* _____ .

☒ The allowed claim(s) is/are *1-7 and 9-30* _____ .

☐ The drawings filed on _____ are acceptable.

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    ☐ All ☐ Some* ☐ None   of the CERTIFIED copies of the priority documents have been

      ☐ received.

      ☐ received in Application No. (Series Code/Serial Number) _____ .

      ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE **THREE MONTHS** FROM THE "DATE MAILED" of this Office action. Failure to timely comply will result in ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

☒ Applicant MUST submit NEW FORMAL DRAWINGS

    ☐ because the originally filed drawings were declared by applicant to be informal.

    ☒ including changes required by the Notice of Draftsperson's Patent Drawing Review, PTO-948, attached hereto or to Paper No. _3_ .

    ☐ including changes required by the proposed drawing correction filed on _____ , which has been approved by the examiner.

    ☐ including changes required by the attached Examiner's Amendment/Comment.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings. The drawings should be filed as a separate paper with a transmittal lettter addressed to the Official Draftsperson.**

☐ Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any response to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

**Attachment(s)**

    ☐ Notice of References Cited, PTO-892

    ☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

    ☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

    ☐ Notice of Informal Patent Application, PTO-152

    ☐ Interview Summary, PTO-413

    ☐ Examiner's Amendment/Comment

    ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

    ☒ Examiner's Statement of Reasons for Allowance

Application/Control Number: 08/976,228                                    Page 2

Art Unit: 3713

## REASONS FOR ALLOWANCE

1.     The following is an examiner's statement of reasons for allowance:

None of the prior art of record shows the combination of the structure of the claimed

portable self-contained device and method for monitoring physical movement of body parts during

physical activity comprising the movement sensor capable of measuring data associated with

unrestrained movement in any direction and generating signals indicative of the movement, which

are the angle and velocity of the movement, the power source, the microprocessor capable of

receiving, interpreting, storing and responding to the movement data based on the user-defined

operational parameters, at least one user input connected to the microprocessor for controlling

the operation of the portable self-contained device, the real-time clock connected to the

microprocessor, memory for storing the movement data, and the output indicator connected to

the microprocessor for signaling the occurrence of user-defined events, or the combination of the

structure of the claimed system to aid in training and safety during physical activity comprising the

portable self-contained movement measuring device which comprising the movement sensor

capable of measuring data associated with unrestrained movement in any direction and generating

signals indicative of the movement, which are the angle and velocity of the movement, the power

source, the microprocessor capable of receiving, interpreting, storing and responding to the

movement data based on the user-defined operational parameters, at least one user input

connected to the microprocessor for controlling the operation of the portable self-contained

device, the real-time clock connected to the microprocessor, memory for storing the movement

Application/Control Number: 08/976,228                                    Page 3

Art Unit: 3713

data, at least one input/output port connected to the microprocessor for downloading the data and

uploading the operational parameters and the output indicator connected to the microprocessor,

the computer running a program capable of interpreting and reporting the movement data based

on the operational parameters, and the download device electronically connecting to the

movement measuring device and the computer for transmitting the movement data and

operational parameters between the movement measuring device and the computer for analysis,

reporting and operation purposes.

      Any comments considered necessary by applicant must be submitted no later than the
payment of the issue fee and, to avoid processing delays, should preferably accompany the issue
fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for
Allowance."


2.      Any inquiry concerning this communication or earlier communications from the examiner
should be directed to Joe H. Cheng whose telephone number is (703) 308-2667.

      Any inquiry of a general nature or relating to the status of this application or proceeding
should be directed to the receptionist whose telephone number is (703) 308-1148.


Joe H. Cheng
Primary Examiner


Joe H. Cheng
December 4, 1999

# EXHIBIT 4

PATENT APPLICATION

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE


In re application of

Theodore L. Brann

U.S. Patent No. 6,059,576

Filing Date:  April 4, 2014

Confirmation No.:  Not yet assigned

Docket No: A209779

Issued:  May 9, 2000

Application No. 08/976,228

Group Art Unit:  Not yet assigned

Examiner:  Not yet assigned


For:    TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER
        MOVEMENT DURING PHYSICAL ACTIVITY

REQUEST FOR *EX PARTE* REEXAMINATION
OF U.S. PATENT NO. 6,059,576 BY PATENT OWNER

MAIL STOP EX PARTE REEXAMINATION
ATTN:  CENTRAL REEXAMINATION UNIT
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**


**Sir:**

  Ex parte reexamination under 35 U.S.C. §§ 302-307 and 37 C.F.R. 1.510 is hereby

requested for claims 1, 13, 20, and 21 of United States Patent No. 6,059,576 which issued May 9,

2000 to Theodore L. Brann (hereinafter, the '576 Patent), directed to a Training and safety

device, system, and method to aid in proper movement during physical activity.  This patent has

not expired.  A copy of the '576 Patent is submitted herewith, in accordance with 37 C.F.R. §

1.510(b)(4).

  Pursuant to 37 C.F.R. § 1.510, included with this request for ex parte reexamination

(hereinafter, "Request") are:

- the fee for requesting *ex parte* reexamination;

LT 0000110

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

- an identification of every claim for which reexamination is requested;

- a statement pointing out each substantial new question of patentability based on the cited patents and printed publications;

- a detailed explanation of how the cited patents and printed publications are applied to every claim for which reexamination is requested;

- a copy of every patent or printed publication relied upon or referred to in the Request, accompanied by an English language translation of all the necessary and pertinent parts of any non-English language patent or printed publication; and

- a copy of the entire patent to be reexamined, including the front face, drawings, and specification/claims (in double column format), and a copy of any disclaimer, certificate of correction, or reexamination certificate issued in the patent.

A Table of Contents follows for convenience.

ii

LT 0000111

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

## TABLE OF CONTENTS

I.      **LISTING OF CLAIMS** .............................................1

II.     **STATUS OF THE CLAIMS AND EXEMPLARY SUPPORT FOR CLAIM AMENDMENTS** ..................................29

III.    **IDENTIFICATION OF EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED** ..................................33

IV.    **STATEMENT POINTING OUT EACH SUBSTANTIAL NEW QUESTION OF PATENTABILITY BASED ON CITED PATENTS AND PRINTED PUBLICATIONS** ..................................34

        **The '576 Patent and the claims being requested to be reexamined** ...............34

        **Prosecution History** ..................................34

        **There is a substantial new question of patentability for claims 1, 13, 20 and 21** ..................................40

        **Flentov raises a substantial new question of patentability for independent claims 1, 13, and 20** ..................................41

        **Flentov raises a substantial new question of patentability for claim 21** ........43

        **Gaudet raises a substantial new question of patentability for independent claims 1, 13, and 20** ..................................45

        **Vock raises a substantial new question of patentability for independent claims 1, 13, and 20** ..................................47

V.     **DETAILED EXPLANATION OF HOW THE CITED PATENTS AND PRINTED PUBLICATIONS ARE APPLIED TO EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED** ..................................49

        **Application of the art** ..................................49

        **Application of Flentov to claim 1** ..................................50

        **Application of Flentov to claim 13** ..................................54

iii

LT 0000112

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

**Application of Flentov to claim 20** .............................................59

**Application of Flentov to claim 21** .............................................62

**Application of Gaudet to claim 1** .............................................64

**Application of Gaudet to claim 13** .............................................71

**Application of Gaudet to claim 20** .............................................79

**Application of Vock to claim 1** .............................................84

**Application of Vock to claim 13** .............................................88

**Application of Vock to claim 20** .............................................95

VII.    NEW CLAIMS .............................................99

VIII.    CONCLUSION .............................................102

iv

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

## I.     LISTING OF CLAIMS

1. (original):  A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising:

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters;

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data; and

an output indicator connected to said microprocessor for signaling the occurrence of user-defined events;

wherein said movement sensor measures the angle and velocity of said movement.


2. (original):  The device of claim 1 further comprising at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters to and from a computer.

1

LT 0000114

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

3. (original):  The device of claim 1 wherein said device is compact and weighs less than one pound.

4. (original):  The device of claim 1 wherein said movement sensor comprises at least one accelerometer.

5. (original):  The device of claim 1 wherein said movement sensor can simultaneously detect real time movement along at least two orthogonal axes.

6. (original):  The device of claim 1 wherein said movement sensor is housed separately from said microprocessor.

7. (original):  The device of claim 1 wherein said monitored body part movement is torso or limb movement.

8. (original):  The device of claim 1 wherein said data measured by said movement sensor includes the distance of said movement.

9. (original):  The device of claim 1 wherein said output indicator is visual.

10. (original):  The device of claim 1 wherein said output indicator is audible.

11. (original):  The device of claim 1 wherein said output indicator is tactile.

2

LT 0000115

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

12. (original):  The device of claim 1 wherein said user input is a switch.

13. (original):  A system to aid in training and safety during physical activity, said system comprising

a portable, self-contained movement measuring device, said movement measuring device further comprising

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters;

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data;

at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters; and

an output indicator connected to said microprocessor;

a computer running a program capable of interpreting and reporting said movement data based on said operational parameters; and

3

LT 0000116

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

a download device electronically connected to said movement measuring device and said computer for transmitting said movement data and operational parameters between said movement measuring device and said computer for analysis, reporting and operation purposes;

wherein said movement sensor measures the angle and velocity of said movement.

14. (original):  The system of claim 13 wherein said computer is a personal computer.

15. (original):  The system of claim 13 wherein said computer is connected to a network of other computers.

16. (original):  The system of claim 13 wherein said download device is a physical docking station.

17. (original):  The system of claim 13 wherein said download device is a wireless device.

18. (original):  The system of claim 17 wherein said wireless device uses radio frequency.

19. (original):  The system of claim 17 wherein said wireless device uses infrared light.

4

LT 0000117

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

20. (original):  A method to monitor physical movement of a body part comprising the steps of:

attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement in any direction;

measuring data associated with said physical movement;

interpreting said physical movement data based on user-defined operational parameters and a real-time clock; and

storing said data in memory.

21. (original):  The method of claim 20 wherein said physical movement data includes velocity data of said movement, angle measurement data taken along at least two orthogonal axes, and related date and time data.

22. (original):  The method of claim 21 further comprising the step of defining said parameters for a specific physical movement prior to said interpreting step.

23. (original):  The method of claim 21 further comprising the step of downloading said data from said movement measuring device to a computer for reporting and analysis purposes.

24. (original):  The method of claim 21 wherein said interpreting step comprises teaching an individual how to properly perform said physical movement.

LT 0000118

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

25. (original):  The method of claim 20 wherein said movement measuring device is an accelerometer.

26. (original):  The method of claim 20 further comprising the step of providing real time feedback regarding said movement.

27. (original):  The method of claim 26 wherein said physical movement is physical labor.

28. (original):  The method of claim 26 wherein said physical movement is an exercise related to medical treatment.

29. (original):  The method of claim 26 wherein said physical movement is an exercise to improve technique related to an athletic skill.

6

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

30. (new):  The device of claim 1, wherein said microprocessor stores, in said memory, at least one time stamp in association with said movement data.

31. (new):  The device of claim 30, wherein said microprocessor stores, in said memory, a date associated with the at least one time stamp.

32. (new):  The device of claim 30, wherein said microprocessor retrieves said at least one time stamp from said real-time clock and associates the retrieved time stamp with said received movement data.

33. (new):  The device of claim 32, wherein said microprocessor retrieves said at least one time stamp from said real-time clock based on the occurrence of at least one of the user-defined events.

34. (new):  The device of claim 33, wherein said microprocessor identifies the at least one of the user-defined events based on interpretation of the movement data.

35. (new):  The device of claim 1, wherein said memory continues to store said movement data in response to battery power being lost from said power source.

36. (new):  The device of claim 1, wherein said movement sensor continuously checks for said movement.

7

LT 0000120

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

37. (new):  The device of claim 36, wherein said microprocessor continuously interprets, based on the user-defined operational parameters, said movement data received from said movement sensor.

38. (new):  The device of claim 1, wherein said output indicator displays information based on said movement data.

39. (new):  The device of claim 38, wherein said output indicator displays said information based on said movement data and at least one time stamp associated with said movement data.

40. (new):  The device of claim 30, wherein said output indicator displays information based on said movement data and the at least one time stamp associated with said movement data.

41. (new):  The device of claim 1, wherein said output indicator displays, based on said movement data, information indicating that a threshold is met.

42. (new):  The device of claim 41, wherein said threshold is based on information provided by the user.

8

LT 0000121

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

43. (new):  The device of claim 41, wherein said memory stores said information indicating that the threshold is met.

44. (new):  The device of claim 43, wherein said memory stores a time stamp in association with said information indicating that the threshold is met.

45. (new):  The device of claim 1, wherein said output indicator indicates a low battery condition of the device.

46. (new):  The device of claim 9, wherein said output indicator is selected from the group consisting of single monochromatic LEDs, multiple colored lights, and liquid crystal displays.

47. (new):  The device of claim 1, wherein said movement data stored in the memory is configured to be downloaded to a computer.

48.  (new):  The device of claim 47, further comprising:
software configured to communicate with external software, wherein the external software is configured to present the downloaded movement data to the user.

49.  (new):  The device of claim 48, wherein said external software is configured to run on the computer.

LT 0000122

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

50. (new):  The device of claim 49, wherein said downloaded movement data is analyzed by said user via said external software.

51. (new):  The device of claim 48, wherein said external software is configured to interpret said movement data and produce at least one report.

52. (new):  The device of claim 48, wherein said external software is configured to interpret said movement data and produce at least one history report.

53. (new):  The device of claim 52, wherein said at least one history report includes dates and times of said movement data.

54. (new):  The device of claim 48, wherein said external software is configured to allow the user to program additional reports and histories with respect to said movement data of said user.

55. (new):  The device of claim 47, wherein said movement data is configured to be downloaded to said computer via a wired connection.

56.  (new):  The device of claim 47, wherein said movement data is configured to be downloaded to said computer via a wireless connection.

LT 0000123

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

57.  (new):  The device of claim 1, wherein the microprocessor records, based on a threshold being met, the time and date of the threshold being met.

58.  (new):  The device of claim 57, wherein the output indicator provides a visual indicator to the user regarding the threshold being met.

59. (new):  The device of claim 58, wherein said user sets the threshold.

60. (new):   The device of claim 1, wherein the memory stores a plurality of thresholds respectively corresponding to a plurality of notifications.

61. (new):  The device of claim 60, wherein when one of the plurality of thresholds is met, the output indicator displays a corresponding one of the notifications.

62.  (new):  The device claim 61, wherein the microprocessor determines whether any of the thresholds are met by interpreting the movement data with respect to the thresholds.

63.  (new):  The device of claim 60, wherein at least one of the plurality of thresholds is set by the user.

64.  (new):  The device of claim 60, wherein the plurality of thresholds are different from each other.

11

LT 0000124

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

65.  (new):  The device of claim 60, wherein the plurality of notifications are different visual indicators.

66. (new):  The device of claim 65, wherein at least one of the visual indicators including a blinking indicator.

67. (new):  The device of claim 1, wherein said microprocessor interprets said movement data to determine whether a threshold is met, and said output indicator signals the occurrence of at least one of the user-defined events based on said microprocessor determining that the threshold is met.

68.  (new):  The device of claim 67, wherein said microprocessor interprets said movement data to determine whether the threshold is met by comparing said movement data to said threshold.

69. (new):  The device of claim 1, wherein said device is configured to be placed on said user's arm to monitor and record said movement data.

70.  (new):  The device of claim 69, wherein said movement sensor measures movement of said user's arm.

71. (new):  The device of claim 1, wherein said movement sensor measures a walking distance.

12

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

72. (new):  The device of claim 71, wherein said device is configured to be wearable by the user, and said movement sensor measures said walking distance of said user.

73. (new):  The device of claim 1, wherein said microprocessor stores, in said memory, (i) at least one time stamp in association with said movement data and (ii) a date associated with at the at least one time stamp,

wherein said movement sensor constantly checks for said movement,

wherein said output indicator displays, based on said movement data, information indicating that a threshold is met,

wherein said movement data stored in the memory is configured to be downloaded to a computer,

wherein the device further comprises software configured to communicate with external software configured to run on a computer and present the downloaded movement data,

wherein said external software is configured to produce at least one report based on said movement data,

wherein the memory stores a plurality of thresholds respectively corresponding to a plurality of notifications,

wherein said device is configured to be placed on said user's arm to monitor and record said movement data,

wherein said movement sensor measures movement of said user's arm.

13

LT 0000126

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

74. (new):  The system of claim 13, wherein said microprocessor stores, in said memory, at least one time stamp in association with said movement data..

75. (new):  The system of claim 74, wherein said microprocessor stores, in said memory, a date associated with the at least one time stamp.

76. (new):  The system of claim 74, wherein said microprocessor retrieves said at least one time stamp from said real-time clock and associates the retrieved time stamp with said received movement data.

77. (new):  The system of claim 76, wherein the output indicator is configured to signal the occurrence of user-defined events, and said microprocessor retrieves said at least one time stamp from said real-time clock based on the occurrence of at least one of the user-defined events.

78.  (new):  The system of claim 77, wherein said microprocessor identifies the at least one of the user-defined events based on interpretation of the movement data.

79. (new):  The system of claim 13, wherein said memory continues to store said movement data in response to battery power being lost from said power source.

80. (new):  The system of claim 13, wherein said movement sensor constantly checks for said movement.

LT 0000127

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

81. (new):  The system of claim 80, wherein said microprocessor constantly interprets, based on the user-defined operational parameters, said movement data received from said movement sensor.

82. (new):  The system of claim 13, wherein said output indicator displays information based on said movement data.

83. (new):  The system of claim 82, wherein said output indicator displays said information based on said movement data and at least one time stamp associated with said movement data.

84. (new):  The system of claim 74, wherein said output indicator displays information based on said movement data and the at least one time stamp associated with said movement data.

85. (new):  The system of claim 13, wherein said output indicator displays, based on said movement data, information indicating that a threshold is met.

86. (new):  The system of claim 85, wherein said threshold is based on information provided by the user.

15

LT 0000128

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

87. (new):  The system of claim 85, wherein said memory stores said information indicating that the threshold is met.

88. (new):  The system of claim 87, wherein said memory stores a time stamp in association with said information indicating that the threshold is met.

89. (new):  The system of claim 13, wherein said output indicator indicates a low battery condition of the device.

90. (new):  The system of claim 13, wherein said output indicator is visual, and aid output indicator is selected from the group consisting of single monochromatic LEDs, multiple colored lights, and liquid crystal displays.

91. (new):  The system of claim 13, wherein said movement data stored in the memory is configured to be downloaded to the computer.

92. (new):  The system of claim 91, wherein the portable, self-contained movement measuring device further comprises:
software configured to communicate with the program running on the computer, wherein the program is configured to present the downloaded movement data to the user.

93. (new):  The system of claim 92, wherein said downloaded movement data is analyzed by said user via said program.

LT 0000129

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

94. (new):  The system of claim 92, wherein said program is configured to interpret said movement data and produce at least one report.

95. (new):  The system of claim 92, wherein said program is configured to interpret said movement data and produce at least one history report.

96. (new):  The system of claim 95, wherein said at least one history report includes dates and times of said movement data.

97. (new):  The system of claim 92, wherein said program is configured to allow the user to program additional reports and histories with respect to said movement data of said user.

98. (new):  The system of claim 91, wherein said movement data is configured to be downloaded to said computer, using the download device, via a wired connection.

99.  (new):  The system of claim 91, wherein said movement data is configured to be downloaded to said computer, using the download device, via a wireless connection.

100. (new):  The system of claim 13, wherein the microprocessor records, based on a threshold being met, the time and date of the threshold being met.

17

LT 0000130

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

101.  (new):  The system of claim 100, wherein said output indicator provides a visual indicator to the user regarding the threshold being met.

102. (new):  The system of claim 101, wherein said user sets the threshold.

103. (new):  The system of claim 13, wherein the memory stores a plurality of thresholds respectively corresponding to a plurality of notifications.

104. (new):  The system of claim 103, wherein when one of the plurality of thresholds is met, the output indicator displays a corresponding one of the notifications.

105. (new):  The system of claim 104, wherein the microprocessor determines whether any of the thresholds are met by interpreting the movement data with respect to the thresholds.

106. (new):  The system of claim 103, wherein at least one of the plurality of thresholds is set by the user.

107. (new):  The system of claim 103, wherein the plurality of thresholds are different from each other.

108. (new):  The system of claim 103, wherein the plurality of notifications are different visual indicators.

18

LT 0000131

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

109. (new):  The system of claim 108, wherein at least one of the visual indicators includes a blinking indicator.

110. (new):  The system of claim 13, wherein said output indicator is configured to signal the occurrence of user-defined events, said microprocessor interprets said movement data to determine whether a threshold is met and said output indicator signals the occurrence of at least one of the user-defined events based on said microprocessor determining the threshold is met.

111. (new):  The system of claim 110, wherein said microprocessor interprets said movement data to determine whether the threshold is met by comparing said movement data to said threshold.

112. (new):  The system of claim 13, wherein said device is configured to be placed on said user's arm to monitor and record said movement data.

113. (new):  The system of claim 112, wherein said movement sensor measures movement of said user's arm.

114. (new):  The system of claim 13, wherein said movement sensor measures a walking distance.

LT 0000132

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

115. (new):  The system of claim 113, wherein said device is configured to be
wearable by the user, and said movement sensor measures said walking distance of said user.

116. (new):  The system of claim 13, wherein said microprocessor stores, in said
memory, (i) at least one time stamp in association with said movement data and (ii) a date
associated with at the at least one time stamp,

wherein said movement sensor constantly checks for said movement,

wherein said output indicator displays, based on said movement data, information
indicating that a threshold is met,

wherein said movement data stored in the memory is configured to be downloaded to
the computer,

wherein the device further comprises software configured to communicate with the
program which presents the downloaded movement data,

wherein said program is configured to produce at least one report based on said
movement data,

wherein the memory stores a plurality of thresholds respectively corresponding to a
plurality of notifications,

wherein said device is configured to be placed on said user's arm to monitor and
record said movement data,

wherein said movement sensor measures movement of said user's arm.

117.  (new):  The method of claim 20, wherein said storing further comprises storing,
in said memory, at least one time stamp associated with said physical movement data.

LT 0000133

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

118.  (new):  The method of claim 117, wherein the storing further comprises storing, in said memory, a date associated with the at least one time stamp.

119. (new):   The method of claim 117, further comprising:

retrieving said at least one time stamp from said real-time clock and associating the retrieved time stamp with said physical movement data.

120.  (new):  The method of claim 117, further comprising:

retrieving said at least one time stamp from said real-time clock based on the occurrence of at least one of a plurality of user-defined events.

121. (new):   The method of claim 120, further comprising:

identifying the occurrence of at least one of the user-defined events based on interpretation of said movement data.

122.  (new):  The method of claim 20, wherein said storing comprises continuously storing said movement data after battery power is lost from a power source of the portable, self-contained movement measuring device.

123.  (new):  The method of claim 20, further comprising:

continuously monitoring for said physical movement using a movement sensor of the portable, self-contained movement.

21

LT 0000134

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

124. (new):  The method of claim 123, wherein said interpreting comprises:

continuously interpreting, based on the user-defined operational parameters, said

physical movement data.

125.  (new):  The method of claim 20, further comprising:

displaying information based on said physical movement data using an output

indicator of the portable, self-contained movement measuring device.

126.  (new):  The method of claim 125, wherein said output indicator displays said

information based on said physical movement data and at least one time stamp associated

with said physical movement data.

127.  (new):  The method of claim 117, wherein an output indicator of the portable,

self-contained movement measuring device displays information based on said physical

movement data and the at least one time stamp associated with said physical movement data.

128. (new):  The method of claim 20, further comprising:

displaying, based on said physical movement data, information indicating that a

threshold is met, using an output indicator of the portable, self-contained movement

measuring device.

LT 0000135

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

129  (new):  The method of claim 128, wherein said threshold is based on information provided by the user.

130.  (new):  The method of claim 128, further comprising:

storing said information indicating that the threshold is met.

131.  (new):  The method of claim 130, further comprising:

storing a time stamp associated with said information indicating that the threshold is met.

132.  (new):  The method of claim 20, further comprising:

indicating a low battery condition, using an output indicator of the portable, self-contained movement measuring device.

133. (new):  The method of claim 20, wherein said physical movement data stored in the memory is the interpreted physical movement data, and said stored physical movement data is configured to be downloaded to a computer.

134.  (new):  The method of claim 133, further comprising:

communicating with external software, wherein the external software is configured to present said interpreted physical movement data to the user.

23

LT 0000136

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

135.  (new):  The method of claim 134, wherein said external software runs on a computer.

136.  (new):  The method of 20, further comprising:

producing a report based on said interpreted physical movement data.

137.  (new):  The method of 134, further comprising:

producing at least one report based on said interpreted physical movement data using the external software.

138. (new):  The method of claim 134, further comprising:

producing at least one history report based on said interpreted physical movement data using the external software.

139.  (new):  The method of claim 138, wherein said at least one history report includes dates and times of said physical movement data.

140.  (new):  The method of claim 134, further comprising:

providing additional reports and histories with respect to said interpreted physical movement data, wherein the additional reports and histories are programmed by the user via the external software.

24

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

141.  (new):  The method of claim 133, wherein said physical movement data is configured to be downloaded to said computer via a wired connection.

142.  (new):  The method of claim 133, wherein said movement data is configured to be downloaded to the computer via a wireless connection.

143.  (new):  The method of claim 20, further comprising:

recording, based on a threshold being met, the time and date of the threshold being met.

144.  (new):  The method of claim 143, further comprising:

providing, via an output indicator of the portable, self-contained movement measuring device, a visual indicator regarding the threshold being met.

145.  (new):  The method of claim 144, further comprising:

receiving the threshold from a user.

146.  (new):  The method of claim 20, further comprising:

storing a plurality of thresholds respectively corresponding to a plurality of notifications.

147.  (new):  The method of claim 146, further comprising:

LT 0000138

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

displaying, via an output indicator of the portable, self-contained movement measuring device, one of the notifications in response to one of the plurality of thresholds being met.

148.  (new):  The method of claim 147, further comprising:

determining whether any of the thresholds are met by interpreting the physical movement data with respect to the thresholds.

149.  (new):  The method of claim 146, further comprising:

receiving at least one of the plurality of the thresholds from a user.

150.  (new):  The method of claim 146, wherein the plurality of thresholds are different from each other.

151.  (new):  The method of claim 146, wherein the plurality of notifications are different visual indicators.

152. (new):  The method of claim 150, wherein at least one of the visual indicators includes a blinking indicator.

153. (new):  The method of claim 20, wherein the interpreting further comprises determining whether a threshold is met, and the method further comprises:

26

LT 0000139

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

signaling the occurrence of at least one user-defined event based on the determining of whether the threshold is met.

154. (new):  The method of claim 153, wherein the determining further comprises comparing said physical movement data to said threshold.

155.  (new):  The method of claim 20, wherein said body part is a user's arm, and said measuring the data comprises monitoring and recording the physical movement of said user's arm.

156.  (new):  The method of claim 155, wherein said measuring the data comprises measuring the data using a movement sensor of the portable, self-contained movement measuring device.

157. (new):  The method of claim 20, further comprising:
measuring a walking distance based on the interpreted physical movement data.

158. (new):  The method of claim 20, further comprising:
storing, in said memory, (i) at least one time stamp in association with said movement data and (ii) a date associated with at the at least one time stamp,
wherein said portable, self-contained movement measuring device constantly checks for said movement;

27

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

displaying, based on said physical movement data, information indicating that a threshold is met, using an output indicator of the portable, self-contained movement measuring device,

wherein said physical movement data stored in the memory is the interpreted physical movement data, and said stored physical movement data is configured to be downloaded to a computer;

communicating with external software configured to run on the computer and present said interpreted physical movement data to the user;

producing a report based on said interpreted physical movement data using the external software; and

storing a plurality of thresholds respectively corresponding to a plurality of notifications,

wherein said body part is a user's arm, and said measuring the data comprises monitoring and recording the physical movement of said user's arm.

LT 0000141

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

## II.   STATUS OF THE CLAIMS AND EXEMPLARY SUPPORT FOR CLAIM AMENDMENTS

| Claim No. | Status | Support in Specification |
|:---:|:---:|:---:|
| 1 | Pending | NA |
| 2 | Pending | NA |
| 3 | Pending | NA |
| 4 | Pending | NA |
| 5 | Pending | NA |
| 6 | Pending | NA |
| 7 | Pending | NA |
| 8 | Pending | NA |
| 9 | Pending | NA |
| 10 | Pending | NA |
| 11 | Pending | NA |
| 12 | Pending | NA |
| 13 | Pending | NA |
| 14 | Pending | NA |
| 15 | Pending | NA |
| 16 | Pending | NA |
| 17 | Pending | NA |
| 18 | Pending | NA |
| 19 | Pending | NA |
| 20 | Pending | NA |
| 21 | Pending | NA |
| 22 | Pending | NA |
| 23 | Pending | NA |
| 24 | Pending | NA |
| 25 | Pending | NA |
| 26 | Pending | NA |
| 27 | Pending | NA |
| 28 | Pending | NA |
| 29 | Pending | NA |
| 30 | New | col. 6, line 7 |
| 31 | New | col. 6, line 7 |
| 32 | New | col. 5, line 45; col. 6, line 7 |
| 33 | New | col. 5, line 45 |
| 34 | New | col. 5, line 45 |
| 35 | New | col. 5, lines 47-51 |
| 36 | New | col. 5, lines 40-41 |
| 37 | New | col. 6, lines 16-40 |
| 38 | New | col. 4, lines 5-14 |
| 39 | New | col. 4, lines 5-14 |

LT 0000142

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| 40 | New | col. 4, lines 5-14 |
|---|---|---|
| 41 | New | col. 5, lines 62 to col. 6, line 3 |
| 42 | New | col. 5, line 58 to col. 6, line 3 |
| 43 | New | col. 6, lines 6-9 |
| 44 | New | col. 6, lines 19-21 |
| 45 | New | col. 6, lines 27-39 |
| 46 | New | col. 5, lines 25-27 |
| 47 | New | col. 8, lines 31-55 |
| 48 | New | col. 8, lines 31-55 |
| 49 | New | col. 8, lines 31-55 |
| 50 | New | col. 8, lines 40-55 |
| 51 | New | col. 8, lines 40-55 |
| 52 | New | col. 8, lines 40-55 |
| 53 | New | col. 8, lines 40-55 |
| 54 | New | col. 8, lines 40-55 |
| 55 | New | col. 8, lines 30-55 |
| 56 | New | col. 8, lines 30-55 |
| 57 | New | col. 5, line 40 to col. 6, line 15 |
| 58 | New | col. 4, lines 9-14 |
| 59 | New | col. 5, line 58 to col. 6, line 3 |
| 60 | New | col. 5, line 58 to col. 6, line 15 |
| 61 | New | col. 5, line 58 to col. 6, line 15 |
| 62 | New | col. 5, line 58 to col. 6, line 15 |
| 63 | New | col. 5, line 58 to col. 6, line 15 |
| 64 | New | col. 5, line 58 to col. 6, line 15 |
| 65 | New | col. 4, lines 5-14 |
| 66 | New | col. 4, lines 5-14 |
| 67 | New | Paragraph bridging cols. 7-8 |
| 68 | New | Paragraph bridging cols. 7-8 |
| 69 | New | col. 4, line 62 |
| 70 | New | col. 4, line 62 |
| 71 | New | col. 3, line 45 |
| 72 | New | col. 3, line 45 |
| 73 | New | col. 3, line 45 col. 4, lines 5-14, 62; col. 5, lines 40-41; col. 5, line 47-51; col. 5 lines 58 to col. 6, line 9; col. 6, lines 19-21; col. 6, lines 27-39; col. 8, lines 30-55 |
| 74 | New | col. 6, line 7 |
| 75 | New | col. 6, line 7 |
| 76 | New | col. 5, line 45; col. 6, line 7 |
| 77 | New | col. 5, line 45 |
| 78 | New | col. 5, line 45 |
| 79 | New | col. 5, lines 47-51 |
| 80 | New | col. 5, lines 40-41 |
| 81 | New | col. 6, lines 16-40 |

LT 0000143

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| 82 | New | col. 4, lines 5-14 |
|---|---|---|
| 83 | New | col. 4, lines 5-14 |
| 84 | New | col. 4, lines 5-14 |
| 85 | New | col. 5, line 62 to col. 6, line 3 |
| 86 | New | col. 6, lines 6-9 |
| 87 | New | col. 6, lines 19-21 |
| 88 | New | col. 6, lines 19-21 |
| 89 | New | col. 6, lines 27-39 |
| 90 | New | col. 5, lines 25-27 |
| 91 | New | col. 8, line 31-55 |
| 92 | New | col. 8, line 31-55 |
| 93 | New | col. 8, line 40-55 |
| 94 | New | col. 8, line 40-55 |
| 95 | New | col. 8, line 40-55 |
| 96 | New | col. 8, line 40-55 |
| 97 | New | col. 8, line 40-55 |
| 98 | New | col. 8, line 30-45 |
| 99 | New | col. 5, line 40 to col. 6, line 15 |
| 100 | New | col. 4, lines 9-14 |
| 101 | New | col. 5, line 58 to col. 6, line 3 |
| 102 | New | col. 5, line 58 to col. 6, line 15 |
| 103 | New | col. 5, line 58 to col. 6, line 15 |
| 104 | New | col. 5, line 58 to col. 6, line 15 |
| 105 | New | col. 5, line 58 to col. 6, line 15 |
| 106 | New | col. 5, line 58 to col. 6, line 15 |
| 107 | New | col. 5, line 58 to col. 6, line 15 |
| 108 | New | col. 4, lines 5-14 |
| 109 | New | col. 4, lines 5-14 |
| 110 | New | paragraph bridging cols. 7-8 |
| 111 | New | paragraph bridging cols. 7-8 |
| 112 | New | col 4, line 62 |
| 113 | New | col 4, line 62 |
| 114 | New | col. 3, line 45 |
| 115 | New | col. 3, line 45 |
| 116 | New | col. 3, line 45 col. 4, lines 5-14, 62; col. 5, lines 40-41; col. 5, line 47-51; col. 5 lines 58 to col. 6, line 9; col. 6, lines 19-21; col. 6, lines 27-39; col. 8, lines 30-55 |
| 117 | New | col. 6, line 7 |
| 118 | New | col. 6, line 7 |
| 119 | New | col. 5, line 45; col. 6, line 7 |
| 120 | New | col. 5, line 45; col. 6, line 7 |
| 121 | New | col. 5, line 45; col. 6, line 7 |
| 122 | New | col. 5, lines 47-51 |
| 123 | New | col. 5, lines 40-41 |

LT 0000144

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| 124 | New | col. 6, lines 16-40 |
|---|---|---|
| 125 | New | col. 4, lines 5-14 |
| 126 | New | col. 4, lines 5-14 |
| 127 | New | col. 4, lines 5-14 |
| 128 | New | col. 5, line 62 to col. 6, line 3 |
| 129 | New | col. 5, line 62 to col. 6, line 3 |
| 130 | New | col. 6, lines 6-9 |
| 131 | New | col. 6, lines 19-21 |
| 132 | New | col. 6, lines 27-39 |
| 133 | New | col. 8, line 31-55 |
| 134 | New | col. 8, line 31-55 |
| 135 | New | col. 8, line 31-55 |
| 136 | New | col. 8, line 40-55 |
| 137 | New | col. 8, line 40-55 |
| 138 | New | col. 8, line 40-55 |
| 139 | New | col. 8, line 40-55 |
| 140 | New | col. 8, line 40-55 |
| 141 | New | col. 8, line 30-45 |
| 142 | New | col. 8, line 30-45 |
| 143 | New | col. 5, line 40 to col. 6, line 15 |
| 144 | New | col. 4, lines 9-14 |
| 145 | New | col. 5, line 58 to col. 6, line 3 |
| 146 | New | col. 5, line 58 to col. 6, line 15 |
| 147 | New | col. 5, line 58 to col. 6, line 15 |
| 148 | New | col. 5, line 58 to col. 6, line 15 |
| 149 | New | col. 5, line 58 to col. 6, line 15 |
| 150 | New | col. 5, line 58 to col. 6, line 15 |
| 151 | New | col. 4, lines 5-14 |
| 152 | New | col. 4, lines 5-14 |
| 153 | New | paragraph bridging cols. 7-8 |
| 154 | New | paragraph bridging cols. 7-8 |
| 155 | New | col 4, line 62 |
| 156 | New | col 4, line 62 |
| 157 | New | col. 3, line 45 |
| 158 | New | col. 3, line 45 col. 4, lines 5-14, 62; col. 5, lines 40-41; col. 5, line 47-51; col. 5 lines 58 to col. 6, line 9; col. 6, lines 19-21; col. 6, lines 27-39; col. 8, lines 30-55 |

32

LT 0000145

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

## III.   IDENTIFICATION OF EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED

The '576 Patent includes claims 1-29.  Reexamination is requested for claims 1, 13,

20, and 21.

33

LT 0000146

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

## IV.    STATEMENT POINTING OUT EACH SUBSTANTIAL NEW QUESTION OF PATENTABILITY BASED ON CITED PATENTS AND PRINTED PUBLICATIONS

**The '576 Patent and the claims being requested to be reexamined**

The '576 Patent, for which reexamination is requested, relates to the field of electronic training and safety devices used to monitor human physical activity (col. 1, lines 6-12).

More specifically, independent claims 1, 13, and 20 and dependent claim 21, for which reexamination is requested, are directed to a portable, self-contained device for monitoring movement of body parts during physical activity, a system to aid in training and safety during physical safety, and a method to monitor physical movement of a body part.

**Prosecution History**

Patent Owner (PO) filed the original utility application for the '576 Patent on November 21, 1997.

The first rejection

The Examiner rejected original independent claims 1, 14, and 21 as anticipated under pre-America Invents Act (pre-AIA) 35 U.S.C. § 102(b) by Stark (Non-final rejection of February 4, 1999).  Of note, claims 14 and 21 were later renumbered as claims 13 and 20, respectively, at the time of issuing the '576 Patent.

Further, the Examiner rejected original dependent method claim 22 (which was later renumbered as claim 21 at the time of issuing the '576 Patent) as being obvious under pre-AIA 35 U.S.C. § 103(a) based on Stark in view of Pratt.

34

LT 0000147

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

<u>The first response dealing with the Stark and Pratt references</u>

In response, PO presented remarks without substantively amending claims 1, 14, 21

or 22[1].

Regarding the Examiner's statement that Stark "broadly discloses the concept of the

system and method for monitoring physical movement of the body part" in rejecting claims 1,

14, and 21, PO argued that that

> "[t]he Examiner apparently misunderstands the applicant's invention.
> Stark describes an orthopedic limb immobilization device while
> applicant's invention is designed to measure an individual's free
> movement of limb or torso.  In particular, Stark's invention is an
> orthopedic <u>restraining</u> device used to immobilize and rehabilitate
> injured human limbs by providing controlled <u>resistance</u> to movement of
> the limb.  The device monitors the force exerted by the wearer via the
> injured limb through <u>stress sensing means</u>.  And it is this sensed data
> which is monitored and recorded by the device.  The only real
> movement measured by Stark's device is the relative angular position of
> the "distal end sections" of the device (col. 2, line 55-58) about an
> adjustable hinge.   Stark does not describe a highly portable device used
> to measure torso or limb movement along multiple axes, including
> distance and speed of the movement, <u>without</u> any restraint to the
> movement as is taught by applicant's invention.  Thus, Stark's
> disclosure does not anticipate any of the claims made by the applicant
> in the present invention".

(Response to non-final rejection filed May 4, 1999, emphasis in original)

Additionally, with respect to the § 103 rejection of claim 22, PO argued that

> "Pratt, just as with Stark, discloses a device which is a "resisting
> apparatus" (col. 3, lines 8-9).  This is in direct opposition to applicant's
> device which allows the wearer to move in any desired direction and
> with any desired speed for purposes of monitoring the wearer's
> movement.  Thus, while both Stark and Pratt disclose devices used to
> restrain or resist the wearer's movement, applicant's device does not and
> in fact could not in order for it to be used for its intended purpose.  The

---

[1] Only claim 14 was amended to address a rejection under 35 U.S.C. 112.

LT 0000148

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

> wearer of the applicant's device is not restrained in any way, and this is
> critical in order to monitor the wearer's natural motion for analysis,
> whether while performing physical labor or athletic drills…Thus,
> nothing in these two references integrate to form the unique and
> nonobvious aspects claimed in claims…22…"

(Response to non-final rejection filed May 4, 1999).

<u>The second rejection</u>

In the subsequent Final rejection mailed July 20, 1999, the Examiner maintained the rejection on the grounds that the "Applicant is reading the limitations into the claim which is [*sic*, are] just not there….limitations contained [in the specification] can not be read into the claims for the purpose of avoiding the prior art".

<u>Examiner Interview</u>

Before filing the next response, PO's representative conducted a telephonic interview with the Examiner - the interview included the discussion of claims 1, 14, 21, and 22, along with the Stark and Pratt references (Examiner's Interview Summary mailed October 8, 1999). In addition to Stark and Pratt, two additional references were discussed during the interview - Linial and Prince.  Linial was made of record by way of the Information Disclosure Statement filed concurrent with the filing of the original utility application for the '576 Patent in November, 1997.  Prince was cited (but not applied) in the Non-final rejection of February 4, 1999.

The Interview Summary described that the claims listed therein were discussed and that a Continued Prosecution Application (CPA) would be filed in response to the Final rejection.

36

LT 0000149

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

### The Linial reference

Linial is direct to "[a]n improved range of motion measuring and displaying device…which includes a modular housing containing a micro-computer and associated circuitry as well as input controls, display and printout facilities, input and output cord connections and a software receiving area which is provided so as to detachably connect to the modular housing diverse programs enabling diverse modes of operation of the invention" (Abstract, Figs. 1, 5, and 9). Linial is also discussed in the background of the '576 Patent where it is disclosed that references such as Linial "require that two people simultaneously use the device: the patient/wearer and the operator of the device. The purpose of these devices is to quantitatively determine a range of motion of a human joint in angular degrees… Although the devices disclosed in these patents [such as Linial] serve the purposes for which they are intended, they do not warn the device wearer when the wearer is nearing, or has reached, a potentially dangerous angle of movement" (col. 1, lines 24-36).

### The Prince reference

Coming to Prince, it is noted that there is no discussion on the record regarding the Prince reference other than its citation by the Examiner in the Non-final rejection and the Examiner's notation in the Interview Summary that this reference was discussed during the interview.

Prince relates generally to systems for testing and improving human performance and more specifically to systems for lift task exercise and diagnosis (col. 1, lines 12-16). Prince discloses that "[i]t is a specific object of this invention to provide a lift task system of the type in which the patient interface device is free to move throughout a substantial working area in

37

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

a horizontal plane while maintaining accurate control of simulated weight and inertia of the interface device" (col. 2, lines 48-54).  Accordingly, Prince discloses "a method for controlling the performance of a lift task by a human subject using an interface means adapted to be grasped and lifted by the human subject with the method involving the steps of:

      a. presetting a simulated mass value for the interface means;

      b. measuring the amount of vertical force exerted on the interface means by the human subject; and

      c. controlling the vertical movement of the interface means in accordance with a prearranged function of the simulated mass value and the amount of vertical force such that the interface means responds to the vertical force in a manner that simulates substantially the inertia of a body having the simulated mass value in a gravitational field" (col. 2, line 57 to col. 3, line 4).

### The CPA and Preliminary Amendment

Subsequently, PO amended independent claims 1, 14, and 21 (by way a Preliminary Amendment filed with the CPA on November 22, 1999) to recite, in some variation, a portable, self-contained movement measuring device for measuring data associated with unrestrained movement in any direction.  Claim 22 was not amended.

In the Remarks accompanying the Preliminary Amendment, PO stated the following:

"Applicant has amended the independent claims to more distinctly point out the unique aspects of the invention.  These inventive aspects include the portability of Applicant's device and its use to measure unrestricted torso or limb movement along multiple axes.  Once these limitations are taken into account, the rejections raised by the Examiner based on the patents issued to Stark, Pratt and Plotke no longer apply.

LT 0000151

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

> The amended claims also distinguish Applicant's claimed invention
> from those disclosed by Prince and Linial."

(Preliminary Amendment filed November 22, 1999, emphasis in original).

<u>Allowance</u>

In response to the CPA and Preliminary Amendment, the Examiner issued a Notice of

Allowance on December 6, 1999.

In the Reasons for Allowance, the Examiner grouped independent method claim 21

with independent apparatus claim 1 and independent system claim 13, stating that

> "None of the prior art of record shows the combination of the structure of
> the claimed portable self-contained device and method for monitoring
> physical movement of body parts during physical activity comprising the
> movement sensor capable of measuring data associated with unrestrained
> movement in any direction and generating signals indicative of the
> movement, which are the angle and velocity of the movement, the power
> source, the microprocessor capable of receiving, interpreting, storing and
> responding to the movement data based on the user-defined operational
> parameters, at least one user input connected to the microprocessor for
> controlling the operation of the portable self-contained device, the real-
> time clock connected to the microprocessor, memory for storing the
> movement data, and the output indicator connected to the microprocessor
> for signaling the occurrence of user-defined events, or the combination of
> the structure of the claimed system to aid in training and safety during
> physical activity comprising the portable self-contained movement
> measuring device which comprising [*sic*, comprises] the movement sensor
> capable of measuring data associated with unrestrained movement in any
> direction…"

(Notice of Allowance mailed December 6, 1999).

LT 0000152

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

## There is a substantial new question of patentability for claims 1, 13, 20 and 21

As discussed above, the references considered by the Examiner during prosecution of the '576 Patent were primarily concerned with measuring restricted or restrained body movement and to the extent that the Examiner considered references that were generally directed to monitoring physical movements of a body part, the Examiner apparently did not find any references that disclosed or suggested attaching a <u>portable, self-contained</u> movement measuring device to said body part <u>for measuring unrestrained movement in any direction</u>.

The newly found prior art, (1) a patent to Flentov *et al.* (U.S. Patent No. 5,636,146, "Flentov"), (2) a patent to Gaudet *et al.* (U.S. Patent No. 6,018,705, "Gaudet"), and (3) a patent to Vock *et al.* (U.S. Patent No. 6,266,623, "Vock"), are relevant in this regard as they present a new, non-cumulative technological teaching, with respect to one or more features of claims 1, 13, 20 and 21, that was not previously considered and discussed on the record during the prosecution of the application that resulted in the '576 Patent for which reexamination is now requested.

In other words, the present request to reexamine claims 1, 13, 20 and 21 is on the basis of new information about preexisting technology which may have escaped review at the time of the initial examination of the patent application.

LT 0000153

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

**Flentov raises a substantial new question of patentability for independent claims 1, 13, and 20**

Flentov discloses a loft sensor (e.g., system 10 shown in Figs. 1 and 2) which detects the loft time and/or speed of a vehicle, such as a sporting vehicle, during activities of moving and jumping. The loft sensor detects when the vehicle leaves the ground and when the vehicle returns to the ground. Flentov discloses that its "invention can be used, for example, in sporting activities such as snowboarding where users loft into the air on ski jumps and catch "air" time but have no quantitative measure of the actual time lapse in the air. Therefore, users in skiing can use [the] invention to record, store, and playback selected information relating to their sporting day, including the total amount of "air" time for the day and information such as dead time, i.e., time not spent on the slopes" (Abstract).

Although most embodiments of Flentov relate to the loft sensor being mounted to a sporting vehicle such as a ski (e.g., Fig. 2 – system 10 is mounted on ski 26), Flentov contemplates mounting the loft sensor directly on the user (col. 3, lines 64-65 and col. 19, lines 12-16).

Flentov discloses the following about its invention at col. 5, line 65 to col. 6, line 30:

"The system 10 is incorporated into a relatively small housing, shown by the outline [housing] 24…
Briefly, the invention shown in FIG. 1 operates as follows. The housing 24 is attached or mounted to a sporting device, such as a ski or mountain bike, such that a user of the ski or mountain bike can access the system 10. During motion of the ski or mountain bike, the speed sensor 18 sends velocity information (over communication line 11a) to the microprocessor subsystem 12; while the loft sensor 20 sends loft or "air" time information (over communication line 11b) to the microprocessor subsystem 12. The speed information and loft time information are processed by the microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and actual loft time, e.g., in seconds. The actual speed and loft time are thereafter stored in internal memory 13 until, at least, the speed and time data are accessed by a user of the system 10. Upon access through the user interface 14 (communicating with the microprocessor subsystem

41

LT 0000154

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

> 12 via communication line 11c), a user of the system 10 can command the
> display of the speed and loft time data (sent across communication line
> 11d) on the display 16 in order to evaluate his or her performance in the
> sporting activity."

These new technological teachings in Flentov raise a substantial new question of patentability with respect to claims 1, 13, and 20, as "there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication [i.e., Flentov] important in deciding whether or not the claim is patentable"(MPEP 2242).

Flentov teaches a limitation found to be missing in the prior examination. That is, in view of the above-noted teachings of Flentov, it may teach a portable, self-contained loft sensor for measuring unrestrained movement of said user.

42

LT 0000155

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

**Flentov raises a substantial new question of patentability for claim 21**

Flentov discloses a pressure-based speed sensor embodiment at col. 19, lines 23-53 as

follows:

> "…Pressure sensors according to the invention convert air pressure to an
> analog voltage.  When mounted to a snowboard 220, such as shown in
> FIGS. 15 and 15A, the pressure sensor 221 is used to determine the
> altitude of the snowboarder.  This voltage is read by the microprocessor
> subsystem (e.g., the subsystem 12 of FIG. 1) at a fixed rate and
> differentiated to determine rate of descent or speed in the vertical
> direction.  This may be converted to speed along the path by knowing the
> grade or angle of descent.  Angle of descent is known by predetermining
> the geometry of the ski path or by the addition of a inclinometer 222
> which gives a voltage dependent upon the angle, with respect to vertical,
> of the platform.  The inclinometer 222 measures zero when the ski is
> traveling along a level path and the pressure sensor is showing a constant
> pressure. When the ski moves downhill, for example, the inclinometer 222
> measures the angle of descent and the pressure sensor measures ever
> increasing pressure. Since the angle of descent is known, as is the rate of
> descent, the true speed is determined and displayed.
> Those skilled in the art should understand that the elements 221 and 222
> are connected in circuit with the further elements of the invention, e.g., the
> microprocessor subsystem 12 of FIG. 1; and that elements 221 and 222 are
> shown in FIG. 15 for illustrative purposes only when in fact they exist
> integrally with the system of the invention, e.g., the system 10 of FIG. 1."

Flentov further discloses obtaining efficiency information for addressing "dead" time.

"This efficiency information is available in accord with the invention because the

microprocessor subsystem 12 of FIG. 1 preferably includes a clock element (readily known to

those skilled in the art) for indicating processed time over a selectable period (the

microprocessor subsystem 12 can in fact include a 24- hour clock element, much the way a

digital wrist-watch includes 24-hour information)" (col. 9, lines 27-35).

This additional new technological teaching in Flentov, in conjunction with the other

teachings of Flentov noted above, raises a substantial new question of patentability of claim

21, as "there is a substantial likelihood that a reasonable examiner would consider the prior

43

LT 0000156

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

art patent or printed publication [i.e., Flentov] important in deciding whether or not the claim

is patentable"(MPEP 2242).

Flentov teaches a limitation found to be missing in the prior examination.  That is, in

view of the above-noted teachings of Flentov, it may teach that the data collected by the

sensor(s) in Flentov includes velocity data of said movement, angle measurement data taken

along at least two orthogonal axes, and related date and time data (claim 21).

44

LT 0000157

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

**Gaudet raises a substantial new question of patentability for independent claims 1, 13, and 20**

In Gaudet, "a method and an apparatus are disclosed in which an output of an accelerometer is used to determine: (1) instances at which a foot of a user in locomotion leaves a surface, and (2) instances at which the foot of the user impacts the surface. By measuring the time difference between each instance at which the foot impacts the surface and the following instance at which the foot leaves the surface, several periods of time that the foot was in contact with the surface during strides taken by the user, i.e., several foot contact times, may be measured accurately and reliably…" (col. 2, lines 5-26).

Further, Gaudet discloses "a device for analyzing the motion of a foot relative to a surface includes an accelerometer and a signal processing circuit. The accelerometer is supported in relation to the foot and is configured and arranged to provide an output signal indicative of the acceleration of the foot. The signal processing circuit is coupled to the accelerometer to receive the output signal from it, and is configured to analyze the output signal to determine at least one moment that the foot leaves the surface" (col. 2, line 65 to col. 3, line 7).

In particular, "FIG. 2 illustrates how a device according to the invention may be mounted on a user. Each of devices 20A-20C shown in FIG. 2 has a particular axis in which it senses acceleration, i.e., an acceleration sensing axis. According to one embodiment of the invention, each of the devices should be mounted such that the acceleration sensing axis of the device is oriented substantially parallel to a bottom surface of the foot of the user. For example, device 20A is mounted on the ankle of the user, device 20B is mounted on or within the shoe of the user, and device 20C is mounted on the waist of the user, with the acceleration sensing axises of the devices being oriented as indicated by arrows 80A, 80B and 80C,

45

LT 0000158

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

respectively.  In each case, this positioning of the acceleration sensing axis has been found to produce an output signal that is most strongly indicative of both: (1) the moment at which the foot of the user leaves the surface, and (2) the moment at which the foot of the user comes into contact with the surface…" (col. 4, line 50 to col. 5, line 5).

These new technological teachings in Gaudet raise a substantial new question of patentability with respect to claims 1, 13, and 20, as "there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication [i.e., Gaudet] important in deciding whether or not the claim is patentable"(MPEP 2242).

Gaudet teaches a limitation found to be missing in the prior examination.  That is, in view of the above-noted teachings of Gaudet, it may teach a portable, self-contained loft sensor for measuring unrestrained movement of said user.

LT 0000159

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

## Vock raises a substantial new question of patentability for independent claims 1, 13, and 20

Vock discloses a system including a loft sensor (e.g., system 10 shown in Figs. 1 and 2) which detects the loft time and/or speed of a vehicle, such as a sporting vehicle, during activities of moving and jumping.  The loft sensor detects when the vehicle leaves the ground and when the vehicle returns to the ground.  Vock discloses that its "invention thus provides a series of unique sensing technologies which are appropriate for sporting activities such as skiing, snowboarding, windsurfing, skate-boarding, mountain biking, and roller-blading. Specifically, the invention is used to "sense," quantify and communicate to the user selected motions for various sporting activities.  These motions include [Air Time, Speed, and Power]…" (col. 24, line 42 to col. 25, line 65).

Although most embodiments of Vock relate to the system being mounted to a sporting vehicle such as a ski (e.g., Fig. 2 – system 10 is mounted on ski 26), Vock contemplates attaching the system to the user instead of the vehicle (col. 13, lines 58-67).

Vock discloses the following about its invention at col. 7, line 57 to col. 8, line 22:

"The system 10 is incorporated into a relatively small housing, shown by
the outline [housing] 24…
Briefly, the invention shown in FIG. 1 operates as follows.  The housing
24 is attached or mounted to a sporting device, such as a ski or mountain
bike, such that a user of the ski or mountain bike can access the system 10.
During motion of the ski or mountain bike, the speed sensor 18 sends
velocity information (over communication line 11a) to the microprocessor
subsystem 12; while the loft sensor 20 sends loft or "air" time information
(over communication line 11b) to the microprocessor subsystem 12.  The
speed information and loft time information are processed by the
microprocessor subsystem 12 to quantify actual speed, e.g., in miles per
hour, and actual loft time, e.g., in seconds.  The actual speed and loft time
are thereafter stored in internal memory 13 until, at least, the speed and
time data are accessed by a user of the system 10.  Upon access through
the user interface 14 (communicating with the microprocessor subsystem
12 via communication line 11c), a user of the system 10 can command the
display of the speed and loft time data (sent across communication line

47

LT 0000160

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

> 11d) on the display 16 in order to evaluate his or her performance in the
> sporting activity."

These new technological teachings in Vock raise a substantial new question of
patentability with respect to claims 1, 13, and 20, as "there is a substantial likelihood that a
reasonable examiner would consider the prior art patent or printed publication [i.e., Vock]
important in deciding whether or not the claim is patentable"(MPEP 2242).

Vock teaches a limitation found to be missing in the prior examination.  That is, in
view of the above-noted teachings of Vock, it may teach a portable, self-contained system for
measuring unrestrained movement of said user.

48

LT 0000161

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

**V.    DETAILED EXPLANATION OF HOW THE CITED PATENTS AND
PRINTED PUBLICATIONS ARE APPLIED TO EVERY CLAIM FOR
WHICH REEXAMINATION IS REQUESTED**

<u>**Application of the art**</u>

Reexamination of claims 1, 13, 20, and 21 is requested in view of Flentov.

For the convenience of the Examiner, an element-by-element comparison of the pertinent

portions of Flentov and claims 1, 13, 20, and 21 of the '576 Patent for which reexamination is

being requested is set forth below.  As verified by the element-by-element comparison below,

Flentov raises a substantial new question of patentability with respect to claims 1, 13, 20 and

21.

49

LT 0000162

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

Application of Flentov to claim 1

| Claim 1 | Application of Flentov |
|---|---|
| | |
| **1.** A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising: | For example, at col. 1, lines 60-65, Flentov discloses that "The invention provides… [an] apparatus for determining the loft time of a moving vehicle off of a surface.  A loft sensor senses a first condition that is indicative of the vehicle leaving the surface, and further senses a second condition indicative of the vehicle returning to the surface", where the moving vehicle could be the user (human) (col. 3, lines 64-65 and col. 19, lines 12-16).<br><br>Further, Flentov's system 10 is "portable" and "self-contained" as Flentov discloses that "[t]he system 10 is incorporated into a relatively small housing, shown by the outline 24.  The housing 24 is preferably arranged to protect the components 12,14,16,18 and 20 [microprocessor subsystem 12, user interface 14, display 16, speed sensor 18, and loft sensor 20] from the elements of nature - such as rain, snow, sand and dust, each of which is expected during the ordinary course of usage on a ski slope and/or mountain bike trail.  In addition, the housing 24 is attachable to a vehicle, such as a ski or mountain bike, by means such as a glue or a mechanical mount, e.g., screws". |
| a movement sensor capable of measuring data associated with unrestrained movement and generating signals indicative of said movement [[**but not unrestrained movement "in any direction"**]]; | Flentov discloses at col. 6, lines 14-22 that "[d]uring motion of the ski or mountain bike, the speed sensor 18 sends velocity information (over communication line 11a) to the microprocessor subsystem 12; while the loft sensor 20 sends loft or "air" time information (over communication line 11b) to the microprocessor subsystem 12.  The speed information and loft time information are processed by the microprocessor subsystem 12 to quantify actual speed, e.g., |

50

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | in miles per hour, and actual loft time, e.g., in seconds". **However, the unrestrained movement that is being measured in Flentov is not measured "in any direction" as required by claim 1. Rather, the "unrestrained movement" being measured in Flentov is restricted to the "forward axis" (parallel to vehicle movement along surface) and the "height axis" (perpendicular to vehicle movement along surface) (e.g., see claim 11 of Flentov, also see Fig. 14A and its corresponding description at col. 19, lines 5-11). Therefore, Flentov does not disclose or even suggest "a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement" as required by claim 1.** |
| a power source; | Flentov discloses at col. 2, lines 2-7 that "a power module such as a battery is included in the apparatus to power the several components". |
| a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters; | For example, Flentov discloses that "…the loft sensor of the invention senses a spectrum of information, e.g., a vibrational or sound spectrum, and the microprocessor subsystem determines the first and second conditions relative to a change in the spectrum of information. Further, the microprocessor subassembly interprets the change in the spectrum to determine the loft time" (col. 3, lines 1-7). Further, Flentov discloses that "[b]ecause these spectrums are influenced by the particular activity of a user, e.g., standing in a ski line, a microprocessor subsystem of the invention preferably includes means for |

51

LT 0000164

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

|  |  |
|---|---|
|  | assessing boundary conditions of the spectrum and for excluding certain conditions from the determination of loft time. Accordingly, if a skier is in a lift line, such conditions are effectively ignored…Because these boundary conditions are important in the aspects of the invention which utilize a spectrum of information, the apparatus preferably utilizes a user interface for providing selective external inputs to the microprocessor subsystem and for adjusting the boundary conditions selectively" (col. 3, lines 8-37). |
| at least one user input connected to said microprocessor for controlling the operation of said device; | For instance, Flentov discloses that "the invention includes a user interface for providing external inputs to the apparatus, including one or more of the following: a start/stop button for selectively starting and stopping the acquisition of data by the apparatus; a display-operate button for activating the display means selectively;…" (col. 2, lines 36-54). |
| a real-time clock connected to said microprocessor; | Flentov discloses that "the microprocessor subsystem 12 of FIG. 1 preferably includes a clock element (readily known to those skilled in the art) for indicating processed time over a selectable period (the microprocessor subsystem 12 can in fact include a 24- hour clock element, much the way a digital wrist-watch includes 24-hour information)" (col. 9, lines 22-34). |
| memory for storing said movement data; and | For instance, at col. 6, lines 22-25, Flentov discloses that "[t]he actual speed and loft time are thereafter stored in internal memory 13 until, at least, the speed and time data are accessed by a user of the system 10". |
| an output indicator connected to said microprocessor for signaling the occurrence of user-defined events; | Flentov discloses that "the invention includes a user interface for providing external inputs to the apparatus, including one or more of the following:…a speed/loft toggle button for alternatively commanding a display of loft time information and speed information of the vehicle; means for commanding a display of successive records of loft time information selectively;…and means for commanding a display of real activity time" (col. 2, lines 36- |

LT 0000165

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

|  | 54). |
|---|---|
| wherein said movement sensor measures the angle and velocity of said movement. | For example, Flentov discloses "[o]ne preferred aspect of the invention includes a speed sensor, connected to the microprocessor subsystem, which senses a third condition that is indicative of a velocity of the vehicle" (col. 2, lines 15-18). Flentov also discloses that "the inclinometer 222 measures the angle of descent..." (col. 19, lines 39-46). |

In view of the foregoing, PO respectfully submits that a substantial new question of patentability exists with respect to claim 1.  However, it is further noted that "[i]t is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim.  Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications" (MPEP 2242).

That applies here, as the newly found Flentov reference presents a new, non-cumulative technological teaching, with respect to one or more features of claim 1, that was not previously considered and discussed on the record during the prosecution of the application that resulted in the '576 Patent.  However, Flentov still does not disclose or suggest all the features of 1 because, as discussed above, it does not disclose measuring unrestrained movement "in any direction" as required by claim 1.

53

LT 0000166

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

Application of Flentov to claim 13

| Claim 13 | Application of Flentov |
|---|---|
| | |
| **13.** A system to aid in training and safety during physical activity, said system comprising: a portable, self-contained movement measuring device, said movement measuring device further comprising | For example, at col. 1, lines 60-65, Flentov discloses that "The invention provides… [an] apparatus for determining the loft time of a moving vehicle off of a surface. A loft sensor senses a first condition that is indicative of the vehicle leaving the surface, and further senses a second condition indicative of the vehicle returning to the surface", where the moving vehicle could be the user (human) (col. 3, lines 64-65 and col. 19, lines 12-16). Further, Flentov's system 10 is "portable" and "self-contained" as Flentov discloses that "[t]he system 10 is incorporated into a relatively small housing, shown by the outline 24. The housing 24 is preferably arranged to protect the components 12,14,16,18 and 20 [microprocessor subsystem 12, user interface 14, display 16, speed sensor 18, and loft sensor 20] from the elements of nature - such as rain, snow, sand and dust, each of which is expected during the ordinary course of usage on a ski slope and/or mountain bike trail. In addition, the housing 24 is attachable to a vehicle, such as a ski or mountain bike, by means such as a glue or a mechanical mount, e.g., screws". |
| a movement sensor capable of measuring data associated with unrestrained movement and generating signals indicative of said movement [[**but not unrestrained movement "in any direction"**]]; | Flentov discloses at col. 6, lines 14-22 that "[d]uring motion of the ski or mountain bike, the speed sensor 18 sends velocity information (over communication line 11a) to the microprocessor subsystem 12; while the loft sensor 20 sends loft or "air" time information (over communication line 11b) to the microprocessor subsystem 12. The speed information and loft time information are processed by the microprocessor subsystem 12 to quantify actual speed, e.g., |

LT 0000167

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | in miles per hour, and actual loft time, e.g., in seconds". **However, the unrestrained movement that is being measured in Flentov is not measured "in any direction" as required by claim 13. Rather, the "unrestrained movement" being measured in Flentov is restricted to the "forward axis" (parallel to vehicle movement along surface) and the "height axis" (perpendicular to vehicle movement along surface) (e.g., see claim 11 of Flentov, also see Fig. 14A and its corresponding description at col. 19, lines 5-11). Therefore, Flentov does not disclose or even suggest "a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement" as required by claim 13.** |
| a power source; | Flentov discloses at col. 2, lines 2-7 that "a power module such as a battery is included in the apparatus to power the several components". |
| a microprocessor connected to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters; | For example, Flentov discloses that "…the loft sensor of the invention senses a spectrum of information, e.g., a vibrational or sound spectrum, and the microprocessor subsystem determines the first and second conditions relative to a change in the spectrum of information. Further, the microprocessor subassembly interprets the change in the spectrum to determine the loft time" (col. 3, lines 1-7). Further, Flentov discloses that "[b]ecause these spectrums are influenced by the particular activity of a user, e.g., standing in a ski line, a microprocessor subsystem of the invention preferably includes means for |

55

LT 0000168

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | assessing boundary conditions of the spectrum and for excluding certain conditions from the determination of loft time. Accordingly, if a skier is in a lift line, such conditions are effectively ignored…Because these boundary conditions are important in the aspects of the invention which utilize a spectrum of information, the apparatus preferably utilizes a user interface for providing selective external inputs to the microprocessor subsystem and for adjusting the boundary conditions selectively" (col. 3, lines 8-37). |
| at least one user input connected to said microprocessor for controlling the operation of said device; | For instance, Flentov discloses that "the invention includes a user interface for providing external inputs to the apparatus, including one or more of the following: a start/stop button for selectively starting and stopping the acquisition of data by the apparatus; a display-operate button for activating the display means selectively;…" (col. 2, lines 36-54). |
| a real-time clock connected to said microprocessor; | Flentov discloses that "the microprocessor subsystem 12 of FIG. 1 preferably includes a clock element (readily known to those skilled in the art) for indicating processed time over a selectable period (the microprocessor subsystem 12 can in fact include a 24- hour clock element, much the way a digital wrist-watch includes 24-hour information)" (col. 9, lines 22-34). |
| memory for storing said movement data; | For instance, at col. 6, lines 22-25, Flentov discloses that "[t]he actual speed and loft time are thereafter stored in internal memory 13 until, at least, the speed and time data are accessed by a user of the system 10". |
| at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters; and | For instance, Flentov discloses that the microprocessor subsystem 150 includes "interface electronics 156" and "conditioning electronics 158", where "[t]he user interface 160, such as the interface 14 of FIG. 1, and including the button inputs of FIG. 3, connects to the subsystem such as shown and directly to the conditioning electronics 158" (paragraph bridging cols. 13-14); and "the apparatus preferably utilizes a user |

56

LT 0000169

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | interface for providing selective external inputs to the microprocessor subsystem and for adjusting the boundary conditions selectively" (col. 3, lines 8-37). |
|---|---|
| an output indicator connected to said microprocessor; | Flentov discloses that "the invention includes a user interface for providing external inputs to the apparatus, including one or more of the following:…a speed/loft toggle button for alternatively commanding a display of loft time information and speed information of the vehicle; means for commanding a display of successive records of loft time information selectively;…and means for commanding a display of real activity time" (col. 2, lines 36-54). |
| a computer running a program [[but **not a computer running a program "capable of interpreting and reporting said movement data based on said operational parameters**]]; and | Flentov discloses that "FIG. 10 shows microprocessor subsystem 150 constructed according to the invention and including a Central Processing Unit (CPU) 152, memory 154, interface electronics 156, and conditioning electronics 158…. The CPU 152 includes a microprocessor 152a, Read Only Memory (ROM) 152b (used to store instructions that the processor may fetch in executing its program)," (col. 13, line 59 to col. 14, line 25). However, Flentov does not disclose or suggest any computer running a program capable of **interpreting and reporting said movement data based on said operational parameters**, as required by claim 13. |
| a download device electronically connected to said movement measuring device and said computer for transmitting said movement data and operational parameters between said movement measuring device and said computer for analysis, reporting and operation purposes; | As noted in the preceding section, the microprocessor subsystem 150 includes "interface electronics 156" and "conditioning electronics 158", where "[t]he user interface 160, such as the interface 14 of FIG. 1, and including the button inputs of FIG. 3, connects to the subsystem such as shown and directly to the conditioning electronics 158" (paragraph bridging cols. 13-14). |
| wherein said movement sensor measures the angle and velocity of said movement. | For example, Flentov discloses "[o]ne preferred aspect of the invention includes a speed sensor, connected to the microprocessor subsystem, which senses a third condition that is indicative of a velocity |

57

LT 0000170

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

|  | of the vehicle" (col. 2, lines 15-18). Flentov also discloses that "the inclinometer 222 measures the angle of descent..." (col. 19, lines 39-46). |
| --- | --- |

In view of the foregoing, PO respectfully submits that a substantial new question of patentability exists with respect to claim 13.  However, it is further noted that "[i]t is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim.  Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications" (MPEP 2242).

That applies here, as the newly found Flentov reference presents a new, non-cumulative technological teaching, with respect to one or more features of claim 13, that was not previously considered and discussed on the record during the prosecution of the application that resulted in the '576 Patent.  However, Flentov still does not disclose or suggest all the features of 13 because, as discussed above, it does not disclose measuring unrestrained movement "in any direction" as required by claim 13.

LT 0000171

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

Application of Flentov to claim 20

| Claim 20 | Application of Flentov |
|---|---|
| | |
| **20.** A method to monitor physical movement of a body part comprising the steps of: | For example, at col. 4, lines 37-45, Flentov discloses that "…the invention provides a method for determining the loft time of a moving vehicle off a surface", where the moving vehicle could be the user (human) (col. 3, lines 64-65 and col. 19, lines 12-16). |
| attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement [[**but <u>not</u> unrestrained movement "in any direction"**]]; | For example, at col. 19, lines 12-16, Flentov discloses that "the whole of the system according to the invention can be mounted to a user of the system directly, rather than directly to a vehicle"<br><br>Further, Flentov's system 10 is "portable" and "self-contained" as Flentov discloses that "[t]he system 10 is incorporated into a relatively small housing, shown by the outline 24.  The housing 24 is preferably arranged to protect the components 12,14,16,18 and 20 [microprocessor subsystem 12, user interface 14, display 16, speed sensor 18, and loft sensor 20] from the elements of nature - such as rain, snow, sand and dust, each of which is expected during the ordinary course of usage on a ski slope and/or mountain bike trail.  In addition, the housing 24 is attachable to a vehicle, such as a ski or mountain bike, by means such as a glue or a mechanical mount, e.g., screws".<br><br>Plus Flentov's system 10 is attached to said user (body part) for measuring unrestrained movement as Flentov discloses at col. 6, lines 14-22 that "[d]uring motion of the ski or mountain bike, the speed sensor 18 sends velocity information (over communication line 11a) to the microprocessor subsystem 12; while the loft sensor 20 sends loft or "air" time information (over communication line 11b) to the microprocessor subsystem 12. The speed information and loft time |

59

LT 0000172

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | information are processed by the microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and actual loft time, e.g., in seconds". <br><br> **However, the unrestrained movement that is being measured in Flentov is not measured "in any direction" as required by claim 20. Rather, the "unrestrained movement" being measured in Flentov is restricted to the "forward axis" (parallel to vehicle movement along surface) and the "height axis" (perpendicular to vehicle movement along surface) (e.g., see claim 11 of Flentov, also see Fig. 14A and its corresponding description at col. 19, lines 5-11). Therefore, Flentov does not disclose or even suggest "attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement in any direction" as required by claim 20.** |
| measuring data associated with said physical movement; | For example, as noted above, Flentov discloses at col. 6, lines 14-22 that "[d]uring motion of the ski or mountain bike, the speed sensor 18 sends velocity information (over communication line 11a) to the microprocessor subsystem 12; while the loft sensor 20 sends loft or "air" time information (over communication line 11b) to the microprocessor subsystem 12. The speed information and loft time information are processed by the microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and actual loft time, e.g., in seconds". <br><br> **However, as noted above, in Flentov the measured data is associated with said physical movement in at most the "forward axis" and the "height axis" – i.e., the measured physical movement is not just "in any direction" as required by claim 20.** |

60

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| interpreting said physical movement data based on user-defined operational parameters and a real-time clock; and | For example, Flentov discloses that efficiency information of a user is available because "the microprocessor subsystem 12 of FIG. 1 preferably includes a clock element (readily known to those skilled in the art) for indicating processed time over a selectable period (the microprocessor subsystem 12 can in fact include a 24- hour clock element, much the way a digital wrist-watch includes 24-hour information)" (col. 9, lines 22-34). |
|---|---|
| storing said data in memory. | For instance, at col. 6, lines 22-25, Flentov discloses that "[t]he actual speed and loft time are thereafter stored in internal memory 13 until, at least, the speed and time data are accessed by a user of the system 10". |

In view of the foregoing, PO respectfully submits that a substantial new question of patentability exists with respect to claim 20. However, it is further noted that "[i]t is not necessary that a *prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim. Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications" (MPEP 2242).

That applies here, as the newly found Flentov reference presents a new, non-cumulative technological teaching, with respect to one or more features of claim 20, that was not previously considered and discussed on the record during the prosecution of the application that resulted in the '576 Patent. However, Flentov still does not disclose or suggest all the features of 20 because, as discussed above, it does not disclose measuring unrestrained movement "in any direction" as required by claim 20.

LT 0000174

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

Application of Flentov to claim 21

| Claim 21 | Application of Flentov |
|---|---|
| | |
| **21.** The method of claim 20 wherein said physical movement data includes velocity data of said movement, angle measurement data taken along at least two orthogonal axes, and related date and time data. | For example, Flentov discloses "[o]ne preferred aspect of the invention includes a speed sensor, connected to the microprocessor subsystem, which senses a third condition that is indicative of a velocity of the vehicle" (col. 2, lines 15-18). Flentov also discloses that "the inclinometer 222 measures the angle of descent..." (col. 19, lines 39-46). Further, as noted previously, Flentov discloses that efficiency information of a user is available because "the microprocessor subsystem 12 of FIG. 1 preferably includes a clock element (readily known to those skilled in the art) for indicating processed time over a selectable period (the microprocessor subsystem 12 can in fact include a 24- hour clock element, much the way a digital wrist-watch includes 24-hour information)" (col. 9, lines 22-34). <br><br> **To the extent that this portion of Flentov may suggest "date and time data" as claimed, PO submits that this "date and time data" is not "related" to the claimed physical movement data as required by claim 21.** <br> **In other words, since claim 21 recites that "said physical movement data includes velocity data of said movement, angle measurement data taken along at least two orthogonal axes, and related date and time data", a skilled artisan would interpret this claim in light of the specification of the '576 Patent to mean that the "date and time data" is "related" to the claimed physical movement data.** <br> **On the other hand, Flentov does not disclose or suggest that the sensed velocity of the vehicle or the measured angle of descent are** |

62

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | **related to date and time data obtained from its 24-hour clock element.** |
|---|---|

In view of the foregoing, PO respectfully submits that a substantial new question of patentability exists with respect to claim 21.  However, it is further noted that "[i]t is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim.  Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications" (MPEP 2242).

That applies here, as the newly found Flentov reference presents a new, non-cumulative technological teaching, with respect to one or more features of claim 21, that was not previously considered and discussed on the record during the prosecution of the application that resulted in the '576 Patent.  However, Flentov still does not disclose or suggest all the features of 21 because, as discussed above, it does not disclose that said physical movement data includes velocity data of said movement, angle measurement data taken along at least two orthogonal axes, and "related date and time data" as required by claim 21.

LT 0000176

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

<u>Application of Gaudet to claim 1</u>

| Claim 1 | Application of Gaudet |
|---|---|
| | |
| **1.** A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising: | • "The present invention relates to the monitoring of the orthopedic motion of a person and, more particularly, to the measuring of . . . speed and/or pace of a person in locomotion."  (col. 1, lines 7-10);<br>• "A device for analyzing motion of a foot of a person relative to a surface, comprising an accelerometer supported in relation to the foot, the accelerometer being configured and arranged to provide an output signal indicative of motion of the foot during at least one footstep taken by the person . . . and a signal processor coupled to the accelerometer to receive the output signal therefrom. . . ." (col. 19, lines 41-50). |
| a movement sensor capable of measuring data associated with unrestrained movement and generating signals indicative of said movement [[**but <u>not</u> unrestrained movement "in any direction"**]]; | • "A device for analyzing motion of a foot of a person relative to a surface, comprising an accelerometer supported in relation to the foot, the accelerometer being configured and arranged to provide an output signal indicative of motion of the foot during at least one footstep taken by the person . . . ." (col. 19, lines 41-46);<br>• Users of the invention are identified as including "a walker, jogger, or runner" (col. 4, lines 30-31)<br>• "[T]he output signal of the accelerometer . . . is fed to a signal processing circuit configured to analyze the signal to determine a moment that the foot leaves the surface."  (col. 2, lines 31-35)<br>• "The accelerometer is supported in relation to the foot and is configured and arranged to provide an output signal |

LT 0000177

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | indicative of the acceleration of the foot. The signal processing circuit is coupled to the accelerometer to receive the output signal from it, and is configured to analyze the output signal to determine at least one moment that the foot leaves the surface." (col. 2, line 67 to col. 3, line 7)<br><br>**However, the unrestrained movement that is being measured in Gaudet is not measured "in any direction" as required by claim 1.  Rather, the "unrestrained movement" being measured in Gaudet is restricted to a direction that is substantially parallel to the bottom surface of the user's foot (e.g., see claim 3 of Gaudet).**<br>**In particular, Gaudet discloses that "FIG. 2 illustrates how a device according to the invention may be mounted on a user. Each of devices 20A-20C shown in FIG. 2 has a particular axis in which it senses acceleration, i.e., an acceleration sensing axis.  According to one embodiment of the invention, each of the devices should be mounted such that the acceleration sensing axis of the device is oriented substantially parallel to a bottom surface of the foot of the user" (col. 4, line 50 to col. 5, line 5)** |
| a power source; | Gaudet discloses a "battery" in the paragraph bridging cols. 5-6 and a "power supply" at col. 12, lines 41-44. |
| a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters; | • "The accelerometer is supported in relation to the foot and is configured and arranged to provide an output signal indicative of the acceleration of the foot. The signal processing circuit is coupled to the accelerometer to receive the output signal from it, and is configured to analyze the output signal to determine at |

LT 0000178

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

<table>
<tr>
<td></td>
<td>

least one moment that the foot leaves the surface." (col. 2, line 67 to col. 3, line 7)

- [Referring to continuous-loop subroutines] "These routines could be user initiated, or, preferredly, are initiated automatically upon power-up of micro-controller 40." (col. 8, lines 37-39)

The microprocessor is capable of receiving, interpreting, storing and responding to movement data based on user-defined operational parameters:

Receiving:

- "[T]he output signal of the accelerometer . . . is fed to a signal processing circuit configured to analyze the signal to determine a moment that the foot leaves the surface." (col. 2, lines 31-35)
- "The accelerometer is supported in relation to the foot and is configured and arranged to provide an output signal indicative of the acceleration of the foot. The signal processing circuit is coupled to the accelerometer to receive the output signal from it, and is configured to analyze the output signal to determine at least one moment that the foot leaves the surface." (col. 2, line 67 to col. 3, line 7)
- "[A] device for determining the rate at which a user in locomotion is moving includes processing circuitry adapted to receive information regarding a foot contact time." (col. 3, lines 18-21)

Interpreting:

- "[T]he output signal of the accelerometer . . . is fed to a signal processing circuit configured to analyze the signal to determine a moment that the foot leaves the surface." (col. 2, lines 31-35)
- "The accelerometer is supported in relation to the foot and is configured and arranged to provide an output signal indicative of the acceleration of the foot.

</td>
</tr>
</table>

66

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | The signal processing circuit is coupled to the accelerometer to receive the output signal from it, and is configured to analyze the output signal to determine at least one moment that the foot leaves the surface." (col. 2, line 67 to col. 3, line 7)<br><br>Storing:<br><br>• "Memory unit 28 is coupled to network processing circuitry 30 and is used to store programming and data for network processing circuitry 30 and/or to log data processed by circuitry 30." (col. 4, lines 24-28)<br><br>Responding:<br><br>• "By receiving information from the outputs of foot contact time / foot loft time generators 20A and 20B, heart rate monitor 22, and respiratory monitor 24, as well as inputs from any other type of electronic health monitoring device, network processing circuitry 30 is able to process all such information and provide a user with a fitness metric, to help the user attain a peak fitness level in the most efficient manner possible . . . ." (col. 4, lines 41-48).<br><br>Based on user-defined operational parameters:<br><br>• "User interface 32 also is coupled to network processing circuitry and permits a user . . . to input particular operating parameters, or to select particular outputs for display 26A and/or audio or vibrational indicator 26B." (col. 4, lines 28-34) |
| at least one user input connected to said microprocessor for controlling the operation of said device; | • "User interface 32 also is coupled to network processing circuitry and permits a user . . . to input particular operating parameters, or to select particular outputs |

LT 0000180

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | for display 26A and/or audio or vibrational indicator 26B." (col. 4, lines 28-34) |
| | • "User interface 58 may be activated conventionally by means of buttons, switches, or other physically actuated devices, or may be voice activated using a commercially available voice activation device. . . .  [U]ser interface 58 may be used, for example: . . . . to select any of several possible outputs for the user, e.g., outputs could be displayed on display 56A or could provide a user with an audio or vibrational indication via audio or vibrational indicator 56B, or to select features which are implemented through software routines called automatically responsive to user inputs."  (col. 5, lines 23-31) |
| a real-time clock connected to said microprocessor; | • "[F]oot contact time / foot loft time generator 20 includes a micro-controller having virtually all circuitry, e.g., memory, times and analog-to-digital (A/D) converters, on board . . . ." (col. 5, lines 12-15) <br> • "This micro-controller includes on-board memory, A/D converters, and timers." (col. 6, lines 14-15) |
| memory for storing said movement data; and | • "Memory unit 28 is coupled to network processing circuitry 30 and is used to store programming and data for network processing circuitry 30 and/or to log data processed by circuitry 30."  (col. 4, lines 24-28) <br> • "[F]oot contact time / foot loft time generator 20 includes a micro-controller having virtually all circuitry, e.g., memory, times and analog-to-digital (A/D) converters, on board, so that memory unit 54 need only be used to perform functions such as permanently storing data produced by foot contact time / foot loft time generator 20." (col. 5, |

LT 0000181

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | lines 12-18) |
| an output indicator connected to said microprocessor for signaling the occurrence of user-defined events; | • "User interface 32 also is coupled to network processing circuitry and permits a user . . . to select particular outputs for display 26A and/or audio or vibrational indicator 26B." (col. 4, lines 28-34)<br>• *See also* claims 31-33, reciting using an electronic device to display the rate at which the user is traveling. (col. 20, lines 42-63) |
| wherein said movement sensor measures the velocity of said movement [[but **not** "angle" of said movement"]]. | • "The present invention relates to the monitoring of the orthopedic motion of a person and, more particularly, to the measuring of . . . speed and/or pace of a person in locomotion." (col. 1, lines 7-10);<br>• "[A] device for determining the rate at which a user in locomotion is moving includes processing circuitry adapted to receive information regarding a foot contact time." (col. 3, lines 18-21)<br>• "The present inventors have discovered that it is advantageous to use at least two distinct equations to derive the pace of the user based upon the measured foot contact time. That is, for a measured foot contact time that is less than a particular value (e.g., 400 ms), a first equation should be used to derive the pace of the user therefrom, while for a measured foot contact time that is greater than the particular value (e.g., 400 ms), a second equation should be used." (col. 15, lines 58-65).<br><br>**However, there is no disclosure or even a suggestion in Gaudet that the movement sensor measures the angle of a user's movement.** |

69

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

In view of the foregoing, PO respectfully submits that a substantial new question of patentability exists with respect to claim 1.  However, it is further noted that "[i]t is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim.  Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications" (MPEP 2242).

That applies here, as the newly found Gaudet reference presents a new, non-cumulative technological teaching, with respect to one or more features of claim 1, that was not previously considered and discussed on the record during the prosecution of the application that resulted in the '576 Patent.  However, Gaudet still does not disclose or suggest all the features of 1 because, as discussed above, it does not disclose at least (i) measuring unrestrained movement "in any direction" and (ii) measuring the angle of said movement, as required by claim 1.

70

LT 0000183

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

Application of Gaudet to claim 13

| Claim 13 | Application of Gaudet |
|---|---|
| | |
| **13.** A system to aid in training [[**and safety**]] during physical activity, said system comprising: <br> a portable, self-contained movement measuring device, said movement measuring device further comprising | • "The present invention relates to the monitoring of the orthopedic motion of a person and, more particularly, to the measuring of . . . speed and/or pace of a person in locomotion." (col. 1, lines 7-10); <br> • "A device for analyzing motion of a foot of a person relative to a surface, comprising an accelerometer supported in relation to the foot, the accelerometer being configured and arranged to provide an output signal indicative of motion of the foot during at least one footstep taken by the person . . . and a signal processor coupled to the accelerometer to receive the output signal therefrom. . . ." (col. 19, lines 41-50). <br> • "The variable StepCount is reset prior to the user beginning a training regime so that its running total accurately measures the number of footsteps taken by one foot of the user during the training period." (col. 11, lines 16-19) <br><br> **However, there is no disclosure in Gaudet that its system for monitoring activity of a person is to aid in safety during the activity. (col. 5, lines 5-32)** |
| a movement sensor capable of measuring data associated with unrestrained movement and generating signals indicative of said movement [[**but <u>not</u> unrestrained movement "in any direction"**]]; | • "A device for analyzing motion of a foot of a person relative to a surface, comprising an accelerometer supported in relation to the foot, the accelerometer being configured and arranged to provide an output signal indicative of motion of the foot during at least one footstep taken by the person . . . ." (col. 19, lines 41-46); <br> • Users of the invention are identified as |

71

LT 0000184

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | including "a walker, jogger, or runner" (col. 4, lines 30-31)<br>• "[T]he output signal of the accelerometer . . . is fed to a signal processing circuit configured to analyze the signal to determine a moment that the foot leaves the surface." (col. 2, lines 31-35)<br>• "The accelerometer is supported in relation to the foot and is configured and arranged to provide an output signal indicative of the acceleration of the foot. The signal processing circuit is coupled to the accelerometer to receive the output signal from it, and is configured to analyze the output signal to determine at least one moment that the foot leaves the surface." (col. 2, line 67 to col. 3, line 7)<br><br>**However, the unrestrained movement that is being measured in Gaudet is not measured "in any direction" as required by claim 13. Rather, the "unrestrained movement" being measured in Gaudet is restricted to a direction that is substantially parallel to the bottom surface of the user's foot (e.g., see claim 3 of Gaudet).**<br>**In particular, Gaudet discloses that "FIG. 2 illustrates how a device according to the invention may be mounted on a user. Each of devices 20A-20C shown in FIG. 2 has a particular axis in which it senses acceleration, i.e., an acceleration sensing axis. According to one embodiment of the invention, each of the devices should be mounted such that the acceleration sensing axis of the device is oriented substantially parallel to a bottom surface of the foot of the user" (col. 4, line 50 to col. 5, line 5)** |

LT 0000185

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| a power source; | Gaudet discloses a "battery" in the paragraph bridging cols. 5-6 and a "power supply" at col. 12, lines 41-44. |
| a microprocessor connected to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters; | • "The accelerometer is supported in relation to the foot and is configured and arranged to provide an output signal indicative of the acceleration of the foot. The signal processing circuit is coupled to the accelerometer to receive the output signal from it, and is configured to analyze the output signal to determine at least one moment that the foot leaves the surface." (col. 2, line 67 to col. 3, line 7) <br><br> The microprocessor is capable of receiving, interpreting, storing and responding to movement data based on user-defined operational parameters: <br><br> Receiving: <br><br> • "[T]he output signal of the accelerometer . . . is fed to a signal processing circuit configured to analyze the signal to determine a moment that the foot leaves the surface." (col. 2, lines 31-35) <br> • "The accelerometer is supported in relation to the foot and is configured and arranged to provide an output signal indicative of the acceleration of the foot. The signal processing circuit is coupled to the accelerometer to receive the output signal from it, and is configured to analyze the output signal to determine at least one moment that the foot leaves the surface." (col. 2, line 67 to col. 3, line 7) <br> • "[A] device for determining the rate at which a user in locomotion is moving includes processing circuitry adapted to receive information regarding a foot contact time." (col. 3, lines 18-21) |

LT 0000186

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | Interpreting: |
|---|---|
| | • "[T]he output signal of the accelerometer . . . is fed to a signal processing circuit configured to analyze the signal to determine a moment that the foot leaves the surface." (col. 2, lines 31-35)<br><br>• "The accelerometer is supported in relation to the foot and is configured and arranged to provide an output signal indicative of the acceleration of the foot. The signal processing circuit is coupled to the accelerometer to receive the output signal from it, and is configured to analyze the output signal to determine at least one moment that the foot leaves the surface." (col. 2, line 67 to col. 3, line 7)<br><br>Storing:<br><br>• "Memory unit 28 is coupled to network processing circuitry 30 and is used to store programming and data for network processing circuitry 30 and/or to log data processed by circuitry 30." (col. 4, lines 24-28)<br><br>Responding:<br><br>• "By receiving information from the outputs of foot contact time / foot loft time generators 20A and 20B, heart rate monitor 22, and respiratory monitor 24, as well as inputs from any other type of electronic health monitoring device, network processing circuitry 30 is able to process all such information and provide a user with a fitness metric, to help the user attain a peak fitness level in the most efficient manner possible . . . ." (col. 4, lines 41-48).<br><br>Based on user-defined operational parameters:<br><br>• "User interface 32 also is coupled to network processing circuitry and permits |

LT 0000187

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | a user . . . to input particular operating parameters, or to select particular outputs for display 26A and/or audio or vibrational indicator 26B." (col. 4, lines 28-34) |
| at least one user input connected to said microprocessor for controlling the operation of said device; | • "User interface 32 also is coupled to network processing circuitry and permits a user . . . to input particular operating parameters, or to select particular outputs for display 26A and/or audio or vibrational indicator 26B." (col. 4, lines 28-34)<br><br>• "User interface 58 may be activated conventionally by means of buttons, switches, or other physically actuated devices, or may be voice activated using a commercially available voice activation device. . . .   [U]ser interface 58 may be used, for example: . . . . to select any of several possible outputs for the user, e.g., outputs could be displayed on display 56A or could provide a user with an audio or vibrational indication via audio or vibrational indicator 56B, or to select features which are implemented through software routines called automatically responsive to user inputs." (col. 5, lines 23-31) |
| a real-time clock connected to said microprocessor; | • "[F]oot contact time / foot loft time generator 20 includes a micro-controller having virtually all circuitry, e.g., memory, times and analog-to-digital (A/D) converters, on board . . . ." (col. 5, lines 12-15)<br>• "This micro-controller includes on-board memory, A/D converters, and timers." (col. 6, lines 14-15) |
| memory for storing said movement data; | • "Memory unit 28 is coupled to network processing circuitry 30 and is used to store programming and data for network processing circuitry 30 and/or to log data processed by circuitry 30." (col. 4, lines |

LT 0000188

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | 24-28) |
|---|---|
| | • "[F]oot contact time / foot loft time generator 20 includes a micro-controller having virtually all circuitry, e.g., memory, times and analog-to-digital (A/D) converters, on board, so that memory unit 54 need only be used to perform functions such as permanently storing data produced by foot contact time / foot loft time generator 20." (col. 5:12-18) |
| at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters; and | No express disclosure is made of an I/O port connected to the microprocessor.<br><br>However, Gaudet discloses that the computer and other system components "may be linked together, for example, via direct wiring or capacitive coupling, by using radio-frequency (RF) or infra-red (IR) transmitters/receivers, or by any other information transmission medium known to those skilled in the art." (col. 4, lines 17-21).<br><br>As such, the disclosure of the possible use of a personal computer to process information from various components of the system (col. 4, lines 23-25) would appear to require the I/O port, as claimed. |
| an output indicator connected to said microprocessor; | • "User interface 32 also is coupled to network processing circuitry and permits a user . . . to select particular outputs for display 26A and/or audio or vibrational indicator 26B." (col. 4:28-34)<br>*See also* claims 31-33, reciting using an electronic device to display the rate at which the user is traveling. (col. 20:42-63) |
| a computer running a program capable of interpreting and reporting said movement data based on said operational parameters; and | "Network processing circuitry 30 may include a personal computer, or any other device capable of processing information from the various inputs of network 70." (col. 4, lines 23-25) |
| a download device electronically connected to said movement measuring device and said computer for transmitting said movement data and operational parameters between said movement measuring device and said | Gaudet discloses that the computer and other system components "may be linked together, for example, via direct wiring or capacitive coupling, by using radio-frequency (RF) or infra-red (IR) transmitters/receivers, or by |

76

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| computer for analysis, reporting and operation purposes; | any other information transmission medium known to those skilled in the art." (col. 4, lines 17-21)<br><br>As such, the disclosure of the possible use of a personal computer to process information from various components of the system (col. 4, lines 23-25) would appear to require a download device, as claimed. |
| wherein said movement sensor measures the velocity of said movement [[but **not** "angle" of said movement"]]. | • "The present invention relates to the monitoring of the orthopedic motion of a person and, more particularly, to the measuring of . . . speed and/or pace of a person in locomotion." (col. 1, lines 7-10);<br><br>• "[A] device for determining the rate at which a user in locomotion is moving includes processing circuitry adapted to receive information regarding a foot contact time." (col. 3, lines 18-21)<br><br>• "The present inventors have discovered that it is advantageous to use at least two distinct equations to derive the pace of the user based upon the measured foot contact time. That is, for a measured foot contact time that is less than a particular value (e.g., 400 ms), a first equation should be used to derive the pace of the user therefrom, while for a measured foot contact time that is greater than the particular value (e.g., 400 ms), a second equation should be used." (col. 15, lines 58-65).<br><br>**However, there is no disclosure or even a suggestion in Gaudet that the movement sensor measures the angle of a user's movement.** |

LT 0000190

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

In view of the foregoing, PO respectfully submits that a substantial new question of patentability exists with respect to claim 13.  However, it is further noted that "[i]t is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim.  Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications" (MPEP 2242).

That applies here, as the newly found Gaudet reference presents a new, non-cumulative technological teaching, with respect to one or more features of claim 13, that was not previously considered and discussed on the record during the prosecution of the application that resulted in the '576 Patent.  However, Gaudet still does not disclose or suggest all the features of 13 because, as discussed above, it does not disclose at least (i) a system to aid in safety during physical activity, (ii) measuring unrestrained movement "in any direction", and (iii) measuring the angle of said movement, as required by claim 13.

LT 0000191

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

Application of Gaudet to claim 20

| Claim 20 | Application of Gaudet |
|---|---|
| | |
| **20.** A method to monitor physical movement of a body part comprising the steps of: | • "The present invention relates to the monitoring of the orthopedic motion of a person and, more particularly, to the measuring of . . . speed and/or pace of a person in locomotion."  (col. 1, lines 7-10);<br><br>• Gaudet further discloses "a method for analyzing the motion of a foot relative to a surface includes using an output of an accelerometer to determine a moment that the foot leaves the surface" (col. 2, lines 27-30). |
| attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement [[but <u>not</u> unrestrained movement "in any direction"]]; | • "A device for analyzing motion of a foot of a person relative to a surface, comprising an accelerometer supported in relation to the foot, the accelerometer being configured and arranged to provide an output signal indicative of motion of the foot during at least one footstep taken by the person . . . ." (col. 19, lines 41-46)<br><br>• "FIG. 2 illustrates how a device according to the invention may be mounted on a user…such that the acceleration sensing axis of the device is oriented substantially parallel to a bottom surface of the foot of the user," (col. 4, lines 50-57)<br><br>• Users of the invention are identified as including "a walker, jogger, or runner" (col. 4, lines 30-31)<br><br>**However, the unrestrained movement that is being measured in Gaudet is not measured "in any direction" as required by claim 20.  Rather, the "unrestrained movement" being measured in Gaudet is** |

LT 0000192

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | **restricted to a direction that is substantially parallel to the bottom surface of the user's foot (e.g., see claim 3 of Gaudet).**<br><br>**In particular, Gaudet discloses that "FIG. 2 illustrates how a device according to the invention may be mounted on a user. Each of devices 20A-20C shown in FIG. 2 has a particular axis in which it senses acceleration, i.e., an acceleration sensing axis.  According to one embodiment of the invention, each of the devices should be mounted such that the acceleration sensing axis of the device is oriented substantially parallel to a bottom surface of the foot of the user" (col. 4, line 50 to col. 5, line 5)** |
| measuring data associated with said physical movement; | • "A device for analyzing motion of a foot of a person relative to a surface, comprising an accelerometer supported in relation to the foot, the accelerometer being configured and arranged to provide an output signal indicative of motion of the foot during at least one footstep taken by the person . . . and a signal processor coupled to the accelerometer to receive the output signal therefrom. . . ." (col. 19, lines 41-50).<br>• "By measuring the time difference between peak 47W and peak 49W of curve 46W, the foot contact time of the user when the user is in locomotion may be ascertained." (col. 6, lines 54-57)<br>• "[B]y measuring the time difference between high peak 49W and low peak 53W in curve 46W, the foot loft time of the user is ascertainable." (col. 6, lines 62-54)<br>• "[F]oot contact time and foot loft time measurement . . . are obtained, when a user is running, by measuring time differences between high and low peaks . . . ." (col. 8, lines 20-22)<br>• "The occurrence of a negative spike event |

LT 0000193

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

|  | causes an 'air time' (Ta) timer in micro-controller to stop and a 'contact time' (Tc) timer to start." (col. 9, lines 8-10)<br><br>However, as noted above, in Gaudet the measured data associated with said physical movement is restricted to a direction that is substantially parallel to the bottom surface of the user's foot (e.g., see claim 3 of Gaudet). |
|---|---|
| interpreting said physical movement data based on user-defined operational parameters and a real-time clock; and | • "The accelerometer is supported in relation to the foot and is configured and arranged to provide an output signal indicative of the acceleration of the foot. The signal processing circuit is coupled to the accelerometer to receive the output signal from it, and is configured to analyze the output signal to determine at least one moment that the foot leaves the surface." (col. 2, line 67 to col. 3, line 7)<br>• "[T]he output signal of the accelerometer . . . is fed to a signal processing circuit configured to analyze the signal to determine a moment that the foot leaves the surface." (col. 2, lines 31-35)<br>• "User interface 32 also is coupled to network processing circuitry 30 and permits a user . . . to input particular operating parameters, or to select particular outputs for display 26A and/or audio or vibrational indicator 26B." (col. 4, lines 28-34)<br><br>• "[F]oot contact time / foot loft time generator 20 includes a micro-controller having virtually all circuitry, e.g., memory, times and analog-to-digital (A/D) converters, on board . . . ." (col. 5, lines 12-15)<br>• "This micro-controller includes on-board memory, A/D converters, and timers." (col. 6, lines 14-15)<br><br>• "By measuring the time difference |

LT 0000194

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | between peak 47W and peak 49W of curve 46W, the foot contact time of the user when the user is in locomotion may be ascertained." (col. 6, lines 54-57)<br><br>• "[B]y measuring the time difference between high peak 49W and low peak 53W in curve 46W, the foot loft time of the user is ascertainable." (col. 6, lines 62-54) |
| storing said data in memory. | • "Memory unit 28 is coupled to network processing circuitry 30 and is used to store programming and data for network processing circuitry 30 and/or to log data processed by circuitry 30."  (col. 4, lines 4-28)<br><br>• "[F]oot contact time / foot loft time generator 20 includes a micro-controller having virtually all circuitry, e.g., memory, times and analog-to-digital (A/D) converters, on board, so that memory unit 54 need only be used to perform functions such as permanently storing data produced by foot contact time / foot loft time generator 20." (col. 5, lines 12-18) |

In view of the foregoing, PO respectfully submits that a substantial new question of patentability exists with respect to claim 20.  However, it is further noted that "[i]t is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim.  Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications" (MPEP 2242).

That applies here, as the newly found Gaudet reference presents a new, non-cumulative technological teaching, with respect to one or more features of claim 20, that was not

LT 0000195

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

previously considered and discussed on the record during the prosecution of the application

that resulted in the '576 Patent.  However, Gaudet still does not disclose or suggest all the

features of 20 because, as discussed above, it does not disclose at least measuring

unrestrained movement "in any direction" as required by claim 20.

83

LT 0000196

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

Application of Vock to claim 1

| Claim 1 | Application of Vock |
|---------|---------------------|
| | |
| **1.** A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising: | Vock "provide[s] apparatus and methods for determining the "air" time of participants in sporting activities such as skiing and mountain biking" (col. 1, lines 58-62). <br><br> Further, Vock's system 10 is "portable" and "self-contained" as Vock discloses that "[t]he system 10 is incorporated into a relatively small housing, shown by the outline 24. The housing 24 is preferably arranged to protect the components 12,14,16,18 and 20 [microprocessor subsystem 12, user interface 14, display 16, speed sensor 18, and loft sensor 20] from the elements of nature - such as rain, snow, sand and dust, each of which is expected during the ordinary course of usage on a ski slope and/or mountain bike trail. In addition, the housing 24 is attachable to a vehicle, such as a ski or mountain bike, by means such as a glue or a mechanical mount, e.g., screws" (col. 7, line 57 to col. 8, line 2). <br><br> Vock discloses that its system can be attached to the user instead of the vehicle (col. 13, lines 58-67). |
| a movement sensor capable of measuring data associated with unrestrained movement and generating signals indicative of said movement [[**but not unrestrained movement "in any direction"**]]; | Vock discloses at col. 8, lines 6-15 that "[d]uring motion of the ski or mountain bike, the speed sensor 18 sends velocity information (over communication line 11a) to the microprocessor subsystem 12; while the loft sensor 20 sends loft or "air" time information (over communication line 11b) to the microprocessor subsystem 12. The speed information and loft time information are processed by the microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and actual loft time, e.g., in seconds". |

LT 0000197

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | **However, the unrestrained movement that is being measured in Vock is not measured "in any direction" as required by claim 1. Rather, the "unrestrained movement" being measured in Vock is restricted to "upwards" or "downwards" (e.g., see col. 19, lines 60-67 and col. 21, lines 23-30 of Vock with reference to Fig. 14A). Therefore, Vock does not disclose or even suggest "a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement" as required by claim 1.** |
| a power source; | Vock discloses at col. 2, lines 31-33 that "a power module such as a battery is included in the apparatus to power the several components". |
| a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters; | For example, Vock discloses that "…the loft sensor of the invention senses a spectrum of information, e.g., a vibrational or sound spectrum, and the microprocessor subsystem determines the first and second conditions relative to a change in the spectrum of information.  Further, the microprocessor subassembly interprets the change in the spectrum to determine the loft time" (col. 3, lines 30-36).<br><br>Further, Vock discloses that "[b]ecause these spectrums are influenced by the particular activity of a user, e.g., standing in a ski line, a microprocessor subsystem of the invention preferably includes means for assessing boundary conditions of the spectrum and for excluding certain conditions from the determination of loft time.  Accordingly, if a skier is in a lift line, such conditions are effectively ignored…Because these boundary conditions are important in the aspects of the invention which utilize a spectrum of |

85

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | information, the apparatus preferably utilizes a user interface for providing selective external inputs to the microprocessor subsystem and for adjusting the boundary conditions selectively" (col. 3, lines 45-67). |
| at least one user input connected to said microprocessor for controlling the operation of said device; | For instance, Vock discloses that "the invention includes a user interface for providing external inputs to the apparatus, including one or more of the following: a start/stop button for selectively starting and stopping the acquisition of data by the apparatus; a display-operate button for activating the display means selectively;…" (col. 2, line 66 to col. 3, line 16). |
| a real-time clock connected to said microprocessor; | Vock discloses that "the microprocessor subsystem 12 of FIG. 1 preferably includes a clock element (readily known to those skilled in the art) for indicating processed time over a selectable period (the microprocessor subsystem 12 can in fact include a 24- hour clock element, much the way a digital wrist-watch includes 24-hour information)" (col. 11, lines 18-25). |
| memory for storing said movement data; and | For instance, at col. 8, lines 15-18, Vock discloses that "[t]he actual speed and loft time are thereafter stored in internal memory 13 until, at least, the speed and time data are accessed by a user of the system 10". |
| an output indicator connected to said microprocessor for signaling the occurrence of user-defined events; | Vock discloses that "the invention includes a user interface for providing external inputs to the apparatus, including one or more of the following:…a speed/loft toggle button for alternatively commanding a display of loft time information and speed information of the vehicle; means for commanding a display of successive records of loft time information selectively;…and means for commanding a display of real activity time" (col. 2, line 66 to col. 3, line 16). |
| wherein said movement sensor measures the angle and velocity of said movement. | For example, Vock discloses "[o]ne preferred aspect of the invention includes a speed sensor, connected to the microprocessor subsystem, which senses a third condition that is indicative of a velocity of the vehicle" (col. 2, lines 45-48). Vock also discloses that "the inclinometer |

86

LT 0000199

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | 222 measures the angle of descent..." (col. 21, lines 61-65). |
|---|---|

In view of the foregoing, PO respectfully submits that a substantial new question of patentability exists with respect to claim 1.  However, it is further noted that "[i]t is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim.  Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications" (MPEP 2242).

That applies here, as the newly found Vock reference presents a new, non-cumulative technological teaching, with respect to one or more features of claim 1, that was not previously considered and discussed on the record during the prosecution of the application that resulted in the '576 Patent.  However, Vock still does not disclose or suggest all the features of 1 because, as discussed above, it does not disclose measuring unrestrained movement "in any direction" as required by claim 1.

LT 0000200

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

Application of Vock to claim 13

| Claim 13 | Application of Vock |
|---|---|
| | |
| **13.** A system to aid in training and safety during physical activity, said system comprising: a portable, self-contained movement measuring device, said movement measuring device further comprising | Vock "provide[s] apparatus and methods for determining the "air" time of participants in sporting activities such as skiing and mountain biking" (col. 1, lines 58-62).<br><br>Further, Vock's system 10 is "portable" and "self-contained" as Vock discloses that "[t]he system 10 is incorporated into a relatively small housing, shown by the outline 24. The housing 24 is preferably arranged to protect the components 12,14,16,18 and 20 [microprocessor subsystem 12, user interface 14, display 16, speed sensor 18, and loft sensor - 20] from the elements of nature - such as rain, snow, sand and dust, each of which is expected during the ordinary course of usage on a ski slope and/or mountain bike trail. In addition, the housing 24 is attachable to a vehicle, such as a ski or mountain bike, by means such as a glue or a mechanical mount, e.g., screws" (col. 7, line 57 to col. 8, line 2).<br><br>Vock discloses that its system can be attached to the user instead of the vehicle (col. 13, lines 58-67). |
| a movement sensor capable of measuring data associated with unrestrained movement and generating signals indicative of said movement **[[but not unrestrained movement "in any direction"]]**; | Vock discloses at col. 8, lines 6-15 that "[d]uring motion of the ski or mountain bike, the speed sensor 18 sends velocity information (over communication line 11a) to the microprocessor subsystem 12; while the loft sensor 20 sends loft or "air" time information (over communication line 11b) to the microprocessor subsystem 12. The speed information and loft time information are processed by the microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and actual loft time, e.g., in |

88

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | seconds".<br><br>**However, the unrestrained movement that is being measured in Vock is not measured "in any direction" as required by claim 13. Rather, the "unrestrained movement" being measured in Vock is restricted to "upwards" or "downwards" (e.g., see col. 19, lines 60-67 and col. 21, lines 23-30 of Vock with reference to Fig. 14A). Therefore, Vock does not disclose or even suggest "a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement" as required by claim 13.** |
| a power source; | Vock discloses at col. 2, lines 31-33 that "a power module such as a battery is included in the apparatus to power the several components". |
| a microprocessor connected to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters; | For example, Vock discloses that "…the loft sensor of the invention senses a spectrum of information, e.g., a vibrational or sound spectrum, and the microprocessor subsystem determines the first and second conditions relative to a change in the spectrum of information. Further, the microprocessor subassembly interprets the change in the spectrum to determine the loft time" (col. 3, lines 30-36).<br><br>Further, Vock discloses that "[b]ecause these spectrums are influenced by the particular activity of a user, e.g., standing in a ski line, a microprocessor subsystem of the invention preferably includes means for assessing boundary conditions of the spectrum and for excluding certain conditions from the determination of loft time. Accordingly, if a skier is in a lift line, such conditions are effectively ignored…Because these boundary |

LT 0000202

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

|  | conditions are important in the aspects of the invention which utilize a spectrum of information, the apparatus preferably utilizes a user interface for providing selective external inputs to the microprocessor subsystem and for adjusting the boundary conditions selectively" (col. 3, lines 45-67). |
|---|---|
| at least one user input connected to said microprocessor for controlling the operation of said device; | For instance, Vock discloses that "the invention includes a user interface for providing external inputs to the apparatus, including one or more of the following: a start/stop button for selectively starting and stopping the acquisition of data by the apparatus; a display-operate button for activating the display means selectively;…" (col. 2, line 66 to col. 3, line 16). |
| a real-time clock connected to said microprocessor; | Vock discloses that "the microprocessor subsystem 12 of FIG. 1 preferably includes a clock element (readily known to those skilled in the art) for indicating processed time over a selectable period (the microprocessor subsystem 12 can in fact include a 24- hour clock element, much the way a digital wrist-watch includes 24-hour information)" (col. 11, lines 18-25). |
| memory for storing said movement data; | For instance, at col. 8, lines 15-18, Vock discloses that "[t]he actual speed and loft time are thereafter stored in internal memory 13 until, at least, the speed and time data are accessed by a user of the system 10". |
| at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters; and | For instance, "[a]s shown in FIG. 22, a pair of power meters 600 is also used to quantify competitions such as mogul competitions. One power meter 600A mounts to the ski 602, and another power meter 600B mounts or attaches to the user's upper body 604; and an RF signal generator 606 communicates (via antenna 606a) the power information to a controller at a base facility 608 (e.g., a judges center for judging the mogul skiers).  Those skilled in the art should appreciate that one or both power meters 600 can communicate the information to the base, as shown; however, one power meter can also communicate to the other power meter so that one communicates to the base.  However, in either case, an RF |

90

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | transmitter and receiver is needed at each meter.  Alternatively, other inter-power meter communication paths are needed, e.g., wiring, laser or IR data paths, and other techniques known to those in the art. …A computer at the base station 608 can easily divide one signal by the other to get a ratio of the two meters 600 during the run. The meters 600 start transmitting data at the starting gate 610 and continue to give data to the base 608 during the whole run on the slope 612" (col. 25, line 66 to col. 26, line 30).<br><br>"The accelerometer 624 output can also be processed through an RMS circuit.  The Root Mean Square acceleration is then determined from the following formula:<br><br>$$A_{\text{RMS}} = \frac{1}{T}\left[\int_0^T A^2(t)\partial t\right]^{\frac{1}{2}}$$<br><br>where T is the period of the measurement and A (t) is the instantaneous accelerometer output at any time t.  The period T may be varied by the user and the output is a staircase where each staircase is of width T" (col. 27, lines 48-59).<br><br>In another embodiment, Vock discloses that the microprocessor subsystem 150 includes "interface electronics 156" and "conditioning electronics 158", where "[t]he user interface 160, such as the interface 14 of FIG. 1, and including the button inputs of FIG. 3, connects to the subsystem such as shown and directly to the conditioning electronics 158" (paragraph bridging cols. 15-16); and "the apparatus preferably utilizes a user interface for providing selective external inputs to the microprocessor subsystem and for adjusting the boundary conditions selectively" (col. 3, lines 37-67). |
| an output indicator connected to said microprocessor; | Vock discloses that "the invention includes a user interface for providing external inputs to the apparatus, including one or more of the |

LT 0000204

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | following:…a speed/loft toggle button for alternatively commanding a display of loft time information and speed information of the vehicle; means for commanding a display of successive records of loft time information selectively;…and means for commanding a display of real activity time" (col. 2, line 66 to col. 3, line 16). |
| a computer running a program capable of interpreting and reporting said movement data based on said operational parameters; and | For instance, "[a]s shown in FIG. 22, a pair of power meters 600 is also used to quantify competitions such as mogul competitions. One power meter 600A mounts to the ski 602, and another power meter 600B mounts or attaches to the user's upper body 604; and an RF signal generator 606 communicates (via antenna 606a) the power information to a controller at a base facility 608 (e.g., a judges center for judging the mogul skiers). Those skilled in the art should appreciate that one or both power meters 600 can communicate the information to the base, as shown; however, one power meter can also communicate to the other power meter so that one communicates to the base. However, in either case, an RF transmitter and receiver is needed at each meter. Alternatively, other inter-power meter communication paths are needed, e.g., wiring, laser or IR data paths, and other techniques known to those in the art. …A computer at the base station 608 can easily divide one signal by the other to get a ratio of the two meters 600 during the run. The meters 600 start transmitting data at the starting gate 610 and continue to give data to the base 608 during the whole run on the slope 612" (col. 25, line 66 to col. 26, line 30). "The accelerometer 624 output can also be processed through an RMS circuit. The Root Mean Square acceleration is then determined from the following formula: $$A_{\text{RMS}} = \frac{1}{T}\left[\int_0^T A^2(t)\partial t\right]^{\frac{1}{2}}$$ |

92

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | where T is the period of the measurement and A (t) is the instantaneous accelerometer output at any time t.  The period T may be varied by the user and the output is a staircase where each staircase is of width T" (col. 27, lines 48-59). |
| a download device electronically connected to said movement measuring device and said computer for transmitting said movement data and operational parameters between said movement measuring device and said computer for analysis, reporting and operation purposes; | As noted in the preceding section, Vock discloses that "[t]hose skilled in the art should appreciate that one or both power meters 600 can communicate the information to the base, as shown; however, one power meter can also communicate to the other power meter so that one communicates to the base.  However, in either case, an RF transmitter and receiver is needed at each meter.  Alternatively, other inter-power meter communication paths are needed, e.g., wiring, laser or IR data paths, and other techniques known to those in the art" (col. 25, line 66 to col. 26, line 30). |
| wherein said movement sensor measures the angle and velocity of said movement. | For example, Vock discloses "[o]ne preferred aspect of the invention includes a speed sensor, connected to the microprocessor subsystem, which senses a third condition that is indicative of a velocity of the vehicle" (col. 2, lines 45-48). Vock also discloses that "the inclinometer 222 measures the angle of descent..." (col. 21, lines 61-65). |

In view of the foregoing, PO respectfully submits that a substantial new question of patentability exists with respect to claim 13.  However, it is further noted that "[i]t is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim.  Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner

93

LT 0000206

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the

prior art patents or printed publications" (MPEP 2242).

That applies here, as the newly found Vock reference presents a new, non-cumulative

technological teaching, with respect to one or more features of claim 13, that was not

previously considered and discussed on the record during the prosecution of the application

that resulted in the '576 Patent. However, Vock still does not disclose or suggest all the

features of 13 because, as discussed above, it does not disclose measuring unrestrained

movement "in any direction" as required by claim 13.

94

LT 0000207

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

Application of Vock to claim 20

| Claim 20 | Application of Vock |
|---|---|
| | |
| **20.** A method to monitor physical movement of a body part comprising the steps of: | For example, at col. 5, lines 1-8, Vock discloses that "…the invention provides a method for determining the loft time of a moving vehicle off of a surface". |
| attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement **[[but <u>not</u> unrestrained movement "in any direction"]]**; | For example, Vock discloses that its system can be attached to the user instead of the vehicle (col. 13, lines 58-67)<br><br>Further, Vock's system 10 is "portable" and "self-contained" as Vock discloses that "[t]he system 10 is incorporated into a relatively small housing, shown by the outline 24.  The housing 24 is preferably arranged to protect the components 12,14,16,18 and 20 [microprocessor subsystem 12, user interface 14, display 16, speed sensor 18, and loft sensor 20] from the elements of nature - such as rain, snow, sand and dust, each of which is expected during the ordinary course of usage on a ski slope and/or mountain bike trail.  In addition, the housing 24 is attachable to a vehicle, such as a ski or mountain bike, by means such as a glue or a mechanical mount, e.g., screws" (col. 7, line 57 to col. 8, line 2).<br><br>Vock discloses at col. 8, lines 6-15 that "[d]uring motion of the ski or mountain bike, the speed sensor 18 sends velocity information (over communication line 11a) to the microprocessor subsystem 12; while the loft sensor 20 sends loft or "air" time information (over communication line 11b) to the microprocessor subsystem 12.  The speed information and loft time information are processed by the microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and actual loft time, e.g., in seconds". |

LT 0000208

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

| | |
|---|---|
| | **However, the unrestrained movement that is being measured in Vock is not measured "in any direction" as required by claim 20. Rather, the "unrestrained movement" being measured in Vock is restricted to "upwards" or "downwards" (e.g., see col. 19, lines 60-67 and col. 21, lines 23-30 of Vock with reference to Fig. 14A). Therefore, Vock does not disclose or even suggest "a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement" as required by claim 20.** |
| measuring data associated with said physical movement; | For example, as noted above, Vock discloses at col. 8, lines 6-15 that "[d]uring motion of the ski or mountain bike, the speed sensor 18 sends velocity information (over communication line 11a) to the microprocessor subsystem 12; while the loft sensor 20 sends loft or "air" time information (over communication line 11b) to the microprocessor subsystem 12.  The speed information and loft time information are processed by the microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and actual loft time, e.g., in seconds".<br><br>**However, as noted above, in Vock the measured data associated with said physical movement is restricted to "upwards" or "downwards" (e.g., see col. 19, lines 60-67 and col. 21, lines 23-30 of Vock with reference to Fig. 14A).** |
| interpreting said physical movement data based on user-defined operational parameters and a real-time clock; and | For example, Vock discloses that "…the loft sensor of the invention senses a spectrum of information, e.g., a vibrational or sound spectrum, and the microprocessor subsystem determines the first and second conditions relative to a change in the spectrum of information.  Further, the microprocessor subassembly interprets the change in the spectrum to determine the loft time" (col. 3, lines 30-36). |

96

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

|  | Further, Vock discloses that "[b]ecause these spectrums are influenced by the particular activity of a user, e.g., standing in a ski line, a microprocessor subsystem of the invention preferably includes means for assessing boundary conditions of the spectrum and for excluding certain conditions from the determination of loft time.  Accordingly, if a skier is in a lift line, such conditions are effectively ignored…Because these boundary conditions are important in the aspects of the invention which utilize a spectrum of information, the apparatus preferably utilizes a user interface for providing selective external inputs to the microprocessor subsystem and for adjusting the boundary conditions selectively" (col. 3, lines 45-67). |
|  | Vock also discloses that "the microprocessor subsystem 12 of FIG. 1 preferably includes a clock element (readily known to those skilled in the art) for indicating processed time over a selectable period (the microprocessor subsystem 12 can in fact include a 24- hour clock element, much the way a digital wrist-watch includes 24-hour information)" (col. 11, lines 18-25) |
| storing said data in memory. | For instance, at col. 8, lines 15-18, Vock discloses that "[t]he actual speed and loft time are thereafter stored in internal memory 13 until, at least, the speed and time data are accessed by a user of the system 10". |

In view of the foregoing, PO respectfully submits that a substantial new question of patentability exists with respect to claim 20.  However, it is further noted that "[i]t is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim.  Thus, "a substantial

97

LT 0000210

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

new question of patentability" as to a patent claim could be present even if the examiner

would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the

prior art patents or printed publications" (MPEP 2242).

   That applies here, as the newly found Vock reference presents a new, non-cumulative

technological teaching, with respect to one or more features of claim 20, that was not

previously considered and discussed on the record during the prosecution of the application

that resulted in the '576 Patent.  However, Vock still does not disclose or suggest all the

features of 20 because, as discussed above, it does not disclose measuring unrestrained

movement "in any direction" as required by claim 20.

98

LT 0000211

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

## VII.   NEW CLAIMS

Claims 30-158 have been added.  All of the amendments to the claims are fully

supported by the specification.  Each one of claims 30-158 depend, either directly or

indirectly, from claims 1, 13, or 20 and are, therefore, each separately patentable as it has

been shown above that claims 1, 13, and 20 are patentable over the newly found references.

Moreover, the features set forth in new claims 30-158 are not disclosed or even

suggested by the newly found references.

### Claims 30, 74, and 117

For instance, the newly found references do not teach or suggest storing, in the memory,

at least one time stamp in association with said movement data as set forth in some variation

in claims 30, 74, and 117.

### Claims 31, 75, and 118

For instance, the newly found references do not teach or suggest storing, in the memory,

a date associated with the at least one time stamp at least one time stamp in association with

said movement data as set forth in some variation in claims 31, 75, and 118.

99

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

### Claims 41, 85, and 128

For instance, the newly found references do not teach or suggest displaying, based on said movement data, information indicating that a threshold is met as set forth in some variation in claims 41, 85, and 128.

### Claims 42, 86, and 129

For instance, the newly found references do not teach or suggest that the threshold is based on information provided by the user as set forth in some variation in claims 42, 86, and 129.

### Claims 43, 87, and 130

For instance, the newly found references do not teach or suggest storing, in the memory, said information indicating that the threshold is met as set forth in some variation in claims 43, 87, and 130.

### Claims 51, 94, and 137

For instance, the newly found references do not teach or suggest that the external software is configured to interpret said movement data and produce at least one report as set forth in some variation in claims 51, 94, and 137.

100

LT 0000213

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

### Claims 57, 100, and 143

For instance, the newly found references do not teach or suggest recording, based on a threshold being met, the time and date of the threshold being met as set forth in some variation in claims 57, 100, and 143.

### Claims 58, 101, and 144

For instance, the newly found references do not teach or suggest the output indicator providing a visual indicator to the user regarding the threshold being met as set forth in some variation in claims 58, 101, and 144.

### Claims 60, 103, and 146

For instance, the newly found references do not teach or suggest storing a plurality of thresholds respectively corresponding to a plurality of notifications as set forth in some variation in claims 60, 103, and 146.

### Claims 61, 104, and 147

For instance, the newly found references do not teach or suggest that when one of the plurality of thresholds is met, the output indicator displays a corresponding one of the notifications as set forth in some variation in claims 61, 104, and 147.

LT 0000214

Request for Ex Parte Reexamination by Patent Owner
U.S. Patent No. 6,059,576

## VIII.   CONCLUSION

In view of the foregoing, reexamination of claims 1, 13, 20, and 21 of the '576 Patent is respectfully requested, and it is respectfully requested that reexamination be granted, and that all claims, including claims 1, 13, 20 and 21, be held patentable in view of the differences between the subject claims and the newly found references.

The USPTO is directed and authorized to charge all Requester's required fees associated with this request to Deposit Account No. 19-4880.  Please also credit any overpayments to said Deposit Account.

Respectfully submitted,

/William H. Mandir/

SUGHRUE MION, PLLC                    William H. Mandir
Telephone:  202.293.7060              Registration No. 32,156
Facsimile:  202.293.7860

WASHINGTON OFFICE
23373
CUSTOMER NUMBER

Date:  April 4, 2014

102

LT 0000215

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/013,201 | 04/04/2014 | 6059576 | A209779 | 9930 |

23373          7590          04/15/2014
SUGHRUE MION, PLLC
2100 PENNSYLVANIA AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20037

| EXAMINER |
|---|
| DEMILLE, DANTON D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/15/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**LT 0000244**

| *Ex Parte Reexamination Interview Summary – Pilot Program for Waiver of Patent Owner's Statement* | Control No. 90/013,201 | Patent Under Reexamination is Requested 6059576 |
|---|---|---|
| | Examiner DANTON DEMILLE | Art Unit 3993 |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --**

**All participants (USPTO official and patent owner):**

(1)  Patricia Volpe, CRU

(3)  Quadeer Ahmed, 60,835

(2)  William H. Mandir, 32153

(4)

Date of Telephonic Interview:04/14/2014.

**A.  The USPTO official requested waiver of the patent owner's statement pursuant to the pilot program for waiver of patent owner's statement in** *ex parte* **reexamination proceedings.**\*

☒  The patent owner **agreed** to waive its right to file a patent owner's statement under 35 U.S.C. 304 in the event reexamination is ordered for the above-identified patent.

☐  The patent owner **did not agree** to waive its right to file a patent owner's statement under 35 U.S.C. 304 at this time.

☐  USPTO personnel were unable to reach the patent owner.\*\*

**B.  The Patent Owner of record telephoned the Office and indicated they would like to participate in the pilot program for waiver of patent owner's statement in** *ex parte* **reexamination proceedings.**\*

☐  The Patent owner of record telephoned the Office and **agreed** to waive its right to file a patent owner's statement under 35 U.S.C. 304 in the event reexamination is ordered for the above-identified patent.

The patent owner is not required to file a written statement of this telephone communication under 37 CFR 1.560(b) or otherwise.  However, any disagreement as to this interview summary must be brought to the immediate attention of the USPTO, and no later than one month from the mailing date of this interview summary.  Extensions of time are governed by 37 CFR 1.550(c).

\*For more information regarding this pilot program, see *Pilot Program for Waiver of Patent Owner's Statement in Ex Parte Reexamination Proceedings*, 75 *Fed. Reg.* 47269 (August 5, 2010), available at the USPTO Web site at http://www.uspto.gov/patents/law/notices/2010.jsp.

\*\*The patent owner may contact the USPTO personnel at (571) 272-7705 or at the telephone number provided below if the patent owner decides to waive the right to file a patent owner's statement under 35 U.S.C. 304.

/Patricia Volpe/                                                  (571)272-6825
Signature and telephone number of the USPTO official, who contacted, was contacted by, or attempted to contact the patent owner.

LT 0000245

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/013,201 | 04/04/2014 | 6059576 | A209779 | 9930 |

| | |
|---|---|
| 23373        7590        06/03/2014 | EXAMINER |
| SUGHRUE MION, PLLC | DEMILLE, DANTON D |
| 2100 PENNSYLVANIA AVENUE, N.W. | |
| SUITE 800 | ART UNIT        PAPER NUMBER |
| WASHINGTON, DC 20037 | 3993 |
| | MAIL DATE        DELIVERY MODE |
| | 06/03/2014        PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

LT 0000246

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/013,201 | 6059576 |
| | Examiner | Art Unit |
| | DANTON DE MILLE | 3993 |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>04 April 2014</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐  PTO-892,          b)☐  PTO/SB/08,          c)☒  Other: <u>IDS</u>

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)).  **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐  by Treasury check or,

b) ☐  by credit to Deposit Account No. _____,  or

c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

| /D. D./<br>Primary Examiner, Art Unit 3993 | | |
|---|---|---|

cc:Requester ( if third party requester )

LT 0000247

Application/Control Number: 90/013,201                                      Page 2
Art Unit: 3993

## DECISION GRANTING *EX PARTE* REEXAMINATION

A substantial new Question (SNQ) of patentability affecting claims 1, 13, 20 and 21 of
US Patent No. 6,059,576 (hereinafter "the '576 patent") is raised by the patent owner for *ex
parte* reexamination.

### Prosecution History for the '576 Patent

The '576 patent issued from Application Serial No. 08/976,228 ("the '228 Application"),
which was filed on 21 November 1997.  A first Office action rejection was made applying Stark
(U.S. Pat. No. 5,052,375) alone and with secondary references.  An amendment was filed which
cancelled claim 8 and further defined a "port" to an "input/output" port.  The rejection was made
final.  After an interview, the patent owner filed a Continued Prosecution Application with
amendments to the first two independent claims that further limited the device to a "portable,
self-contained" device for "monitoring" movement where the movement sensor is capable of
measuring "unrestrained" movement "in any direction".  These claims were also amended to
include a wherein clause "wherein said movement sensor measures the angle and velocity of said
movement".  The third independent claim was amended to further define the method of attaching
a "portable, self-contained" movement measuring device "for measuring unrestrained movement
in any direction".  The following Office action was an allowance.

On 06 December 1999, the Examiner issued a Notice of Allowability which included
reasons for allowance as follows:

> None of the prior art of record shows the combination of the structure of the
> claimed portable self-contained device and method for monitoring physical
> movement of body parts during physical activity comprising the movement sensor

LT 0000248

Application/Control Number: 90/013,201                                                Page 3
Art Unit: 3993

capable of measuring data associated with unrestrained movement in any
direction and generating signals indicative of the movement, which are the angle
and velocity of the movement, the power source, the microprocessor capable of
receiving, interpreting, storing and responding to the movement data based on the
user-defined operational parameters, at least one user input connected to the
microprocessor for controlling the operation of the portable self-contained device,
the real-time clock connected to the microprocessor, memory for storing the
movement data, and the output indicator connected to the microprocessor for
signaling the occurrence of user-defined events, or the combination of the
structure of the claimed system to aid in training and safety during physical
activity comprising the portable self-contained movement measuring device
which comprising the movement sensor capable of measuring data associated
with unrestrained movement in any direction and generating signals indicative of
the movement, which are the angle and velocity of the movement, the power
source, the microprocessor capable of receiving, interpreting, storing and
responding to the movement data based on the user-defined operational
parameters, at least one user input connected to the microprocessor for controlling
the operation of the portable self-contained device, the real-time clock connected
to the microprocessor, memory for storing the movement data, at least one
input/output port connected to the microprocessor for downloading the data and
uploading the operational parameters and the output indicator connected to the
microprocessor, the computer running a program capable of interpreting and
reporting the movement data based on the operational parameters, and the
download device electronically connecting to the movement measuring device
and the computer for transmitting the movement data and operational parameters
between the movement measuring device and the computer for analysis, reporting
and operation purposes.

### Discussion of Prior Art

Flentov et al.   U.S. Patent No. 5,636,146, issued 03 June 1997. Flentov et al. was not
considered during the previous examination.  Flentov et al. is prior art
under 35 USC § 102(e) filed 21 November 1994.
A detailed explanation regarding the applicability of Flentov et al. to the
above identified claims of the '576 patent is provided in the Request on
pages 41-44 and 50-63.


Gaudet        U.S. Patent No. 6,018,705, issued 25 January 2000. Gaudet was not
considered during the previous examination.  Gaudet is prior art under 35
USC § 102(e) filed 02 October 1997.

LT 0000249

Application/Control Number: 90/013,201                                          Page 4
Art Unit: 3993

A detailed explanation regarding the applicability of Gaudet to claims 1, 13 and 20 of the '576 patent is provided on pages 45-46 and 64-83.

Vock et al.      U.S. Patent No. 6,266,623, issued 24 July 2001. Vock et al. was not considered during the previous examination. Vock et al. is prior art under 35 USC § 102(e) filed 02 June 1997.
A detailed explanation regarding the applicability of Vock et al. to claims 1, 13 and 20 of the '576 patent is provided on pages 47-48 and 84-98.

***Substantial New Questions of Patentability Proposed by Patent Owner***

The Patent Owner requested reexamination of claims 1, 13, 20 and 21 of the '576 patent based upon the following proposed rejections supported by alleged substantial new questions of patentability (SNQs):

1.      Flentov raises a substantial new question of patentability for independent claims 1, 13 and 20.

2.      Flentov raises a substantial new question of patentability for claim 21.

3.      Gaudet raises a substantial new question of patentability for independent claims 1, 13 and 20.

4.      Vock raises a substantial new question of patentability for independent claims 1, 13 and 20.

***Analysis of proposed SNQs***

**Proposed SNQs 1 and 2:  Flentov**

It is agreed that Flentov teaches a portable, self-contained device 10 for monitoring movement of body parts during physical activity.  Flentov discloses that "[t]he invention provides... [an] apparatus for determining the loft time of a moving vehicle off of a surface. A

LT 0000250

Application/Control Number: 90/013,201                                                    Page 5
Art Unit: 3993

loft sensor senses a first condition that is indicative of the vehicle leaving the surface, and further

senses a second condition indicative of the vehicle returning to the surface", where the moving

vehicle could be the user (human) (col. 3, lines 64-65 and col. 19, lines 12-16).  The loft sensor is

capable of measuring data associated with unrestrained movement in any direction because it is

within housing 24 that is mounted on ski 26 as shown in figure 2.  The user is able to move

unrestrained in any direction on skis 26.

 A power source or battery 22 is taught, along with a microprocessor 12, a user input 14, a

24-hour time clock, column 9, lines 29-34:

> the microprocessor subsystem 12 of FIG. 1 preferably includes a clock element
> (readily known to those skilled in the art) for indicating processed time over a
> selectable period (the microprocessor subsystem 12 can in fact include a 24-hour
> clock element, much the way a digital wrist-watch includes 24-hour information)

 The microprocessor subsystem 12 is capable of receiving sensory input, interpreting the

information, storing the information in memory 13 and responding to the movement data by

displaying the information on display 16 based on user-defined operations parameters between

when "[a] user presses the start/stop button 58 at the start of activity – such as at the start of

skiing down a slope or biking down a trail – and presses the button 58 at the completion of the

activity to cease the acquisition of data", column 7, lines 38-41.  Flentov teaches the system can

include "pressure sensor 221 is used to determine the altitude of the snowboarder. This voltage is

read by the microprocessor subsystem (e.g., the subsystem 12 of FIG. 1) at a fixed rate and

differentiated to determine rate of descent or speed in the vertical direction. This may be

converted to speed along the path by knowing the grade or angle of descent. Angle of descent is

known by predetermining the geometry of the ski path or by the addition of a inclinometer 222

which gives a voltage dependent upon the angle, with respect to vertical, of the platform",

Application/Control Number: 90/013,201                                    Page 6
Art Unit: 3993

column 19, lines 30-39.  Therefore the Flentov system teaches measuring the angle and velocity

of the movement of the portable, self-contained device.

Therefore, Flentov appears to have teachings relevant to the limitations determined

allowable in the prosecution of the '576 patent.  Further, there is a substantial likelihood that a

reasonable examiner would consider these teachings important in deciding whether or not claims

1, 13, 20 and 21 are patentable.  Accordingly, Flentov raises an SNQ as to claims 1, 13, 20,

which has not been decided in a previous examination of the '576 patent.

**Proposed SNQ 3:  Gaudet**

It is agreed that Gaudet teaches a portable, self-contained "device for analyzing motion of

a foot of a person relative to a surface, comprising an accelerometer supported in relation to the

foot, the accelerometer being configured and arranged to provide an output signal indicative of

motion of the foot during at least one footstep taken by the person ...." (col. 19, lines 41-46).  The

accelerometer is a motion sensor capable of measuring data associated with unrestrained

movement in any direction.  A "power source" is mentioned in column 12, lines 41-44.  In the

abstract the microprocessor is mentioned:

> The output of the accelerometer is high-pass filtered, amplified, and fed to the
> input of a micro-controller, which monitors the signal for positive and negative
> signal spikes that are indicative, respectively, of the moment that the foot of the
> user leaves the ground and the moment that the foot impacts with the ground. By
> measuring time intervals between these positive and negative spikes, average
> 'foot contact times' and 'foot loft times' of the user may be calculated. To derive
> the pace of the user, the average foot contact time is multiplied by a first constant
> if it is less than 400 milli-seconds (ms) and is multiplied by a second constant if it
> is greater than 400 ms. This pace value may, in turn, be used to calculate the
> distance traveled by the user.

The microprocessor receives input from the accelerometer from each foot contact time/foot loft time generator and calculates the pace and distance traveled.  The "timers" are used to measure the real time between positive and negative spikes to determine pace and distance.

In column 5, lines 7-18 Gaudet teaches an output indicator:

> the system 72 includes a foot contact time/foot loft time generator 20 (which could correspond to either of foot contact time/foot loft time generators 20A and 20B in FIG. 1), a memory unit 54, a user interface 58, a display 56A, and an audio or vibrational indicator 56B. According to one embodiment, foot contact time/foot loft time generator 20 includes a micro-controller having virtually all circuitry, e.g., memory, timers and analog-to-digital (A/D) converters, on board, so that memory unit 54 need only be used to perform functions such as permanently storing data produced by foot contact time/foot loft time generator 20.

Gaudet teaches the "foot contact time/foot loft time generator 20 includes a micro-controller having virtually all circuitry, e.g., memory, timers… to perform functions such as permanently storing data produced by foot contact time/foot loft time generator 20".

Regarding claim 13, Gaudet discloses that the computer and other system components "may be linked together, for example, via direct wiring or capacitive coupling, by using radio-frequency (RF) or infra-red (IR) transmitters/receivers, or by any other information transmission medium known to those skilled in the art." (col. 4, lines 17-21). As such, the disclosure of the possible use of a personal computer to process information from various components of the system (col. 4, lines 23-25) would appear to require the I/O port, as claimed.  The personal computer would appear to require a download device to transfer information.

Therefore, Gaudet appears to have teachings relevant to the limitations determined allowable in the prosecution of the '576 patent.  Further, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not claims

Application/Control Number: 90/013,201                                   Page 8
Art Unit: 3993

1, 13 and 20 are patentable.  Accordingly, Gaudet raises an SNQ as to claims 1, 13 and 20, which

has not been decided in a previous examination of the '576 patent.

**Proposed SNQ 4:  Vock**

As set forth in the request, Vock teaches a portable, self-contained device 10, 24 for

monitoring movement of body parts during physical activity in column 1, lines 15-17:

> The invention relates generally to the measurement of the loft time, power
> absorbed and speed of a vehicle relative to the ground.

The device include a movement sensor 18, 20 capable of measuring data associated with

unrestrained movement in any direction and generating signals indicative of said movement,

Column 8, lines 4-11:

> The housing 24 is attached or mounted to a sporting device, such as a ski or
> mountain bike, such that a user of the ski or mountain bike can access the system
> 10. During motion of the ski or mountain bike, the speed sensor 18 sends velocity
> information (over communication line 11a) to the microprocessor subsystem 12;
> while the loft sensor 20 sends loft or "air" time information (over communication
> line 11b) to the microprocessor subsystem 12. The speed information and loft
> time information are processed by the microprocessor subsystem 12 to quantify
> actual speed, e.g., in miles per hour, and actual loft time, e.g., in seconds.

The device includes a power source 22.  A user interface 14 for controlling the operation

of the device.

Vock teaches a real-time clock in column 11, lines 20-25:

> the microprocessor subsystem 12 of FIG. 1 preferably includes a [clock] element
> (readily known to those skilled in the art) for indicating processed time over a
> selectable period (the microprocessor subsystem 12 can in fact include a 24-hour
> clock element, much the way a digital wrist-watch includes 24-hour information).

The clock element keeps real-time.

Vock teaches the invention includes memory in column 2, lines 37-43:

LT 0000254

the invention includes memory for storing information representative of at least
one of the following: (i) the first and second conditions, (ii) the loft time, (iii) a
speed of the vehicle, (iv) successive records of loft time, (v) an average loft time,
(vi) a total loft time, (vii) a dead time, (viii) a real activity time, and (ix) a
numerical ranking of successive records.

Vock also teaches an output indicator 16 for displaying selective information including

one or more of successive records of speed information, distance traveled and an indication of a

number of a successive record relative to all successive records.

The system also measures the angle and velocity or speed of movement in column 21,

lines 46-59 (emphasis added):

Pressure sensors according to the invention convert air pressure to an analog
voltage. When mounted to a snowboard 220, such as shown in FIGS. 15 and 15A,
the pressure sensor 221 is used to determine the altitude of the snowboarder. This
voltage is read by the microprocessor subsystem (e.g., the subsystem 12 of FIG.
1) at a fixed rate and differentiated to determine rate of descent or speed in the
vertical direction. This may be converted to **speed** along the path by knowing the
grade or **angle of descent**. **Angle of descent** is known by predetermining the
geometry of the ski path.

Vock teaches an RF transmitter and receiver that is used for transferring data to and from

the remote base 608.

Therefore, Vock appears to have teachings relevant to the limitations determined

allowable in the prosecution of the '576 patent.  Further, there is a substantial likelihood that a

reasonable examiner would consider these teachings important in deciding whether or not claims

1, 13 and 20 are patentable.  Accordingly, Vock raises an SNQ as to claims 1, 13 and 20, which

has not been decided in a previous examination of the '576 patent.

### *Extensions of Time*

Extensions of time under 37 C.F.R. 1.136(a) will not be permitted in these
proceedings because the provisions of 37 C.F.R. 1.136 apply only to "an applicant" and not to

Application/Control Number: 90/013,201                                    Page 10
Art Unit: 3993

parties in a reexamination proceedings.  Additionally, 35 U.S.C. 305 requires that *ex parte*
reexamination proceedings "will be conducted with special dispatch" (37 C.F.R. 1.550(a)).
Extensions of time in *ex parte* reexamination proceedings are provided for in 37 C.F.R. 1.550(c).

### Notification of Concurrent Proceedings

The patent owner is reminded of the continuing responsibility under 37 C.F.R. 1.565(a)
to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving
the patent throughout the course of this reexamination proceeding. Likewise, if present, the third
party requester is also reminded of the ability to similarly apprise the Office of any such activity
or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282
and 2286.

### Service of Papers

After filing of a request for ex parte reexamination by a third party requester, any
document filed by either the patent owner or the third party requester must be served on the other
party (or parties where two or more third party requester proceedings are merged) in the
reexamination proceeding in the manner provided in 37 CFR 1.248.  The document must reflect
service or the document may be refused consideration by the Office.  See 37 CFR 1.550(f).

### Conclusion

**All** correspondence relating to this *ex parte* reexamination proceeding should be directed:

By EFS:        Registered users may submit via the electronic filing system EFS-Web, at
               https://efs.uspto.gov/efile/myportal/efs-registered.

By Mail to:    Mail Stop *Ex Parte* Reexam
               Central Reexamination Unit
               Commissioner for Patents
               United States Patent & Trademark Office
               P.O. Box 1450 Alexandria, VA 22313-1450

By FAX to:     (571) 273-9900
               Central Reexamination Unit

By hand:       Customer Service Window
               Randolph Building
               401 Dulany Street
               Alexandria, VA 22314

LT 0000256

Application/Control Number: 90/013,201                                    Page 11
Art Unit: 3993

For EFS-Web transmissions, 37 CFR 1.8(a)(1)(i) (C) and (ii) states that correspondence (except for a request for reexamination and a corrected or replacement request for reexamination) will be considered timely filed if (a) it-is transmitted via the Office's electronic- filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a certificate of transmission for each piece of correspondence stating the date of transmission, which is prior to the expiration of the set period of time in the Office action.

Any inquiry concerning this communication or earlier communications from the Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Telephone Number for reexamination inquiries:

Reexamination and Amendment Practice          (571) 272-7703
Central Reexam Unit (CRU)                     (571) 272-7705
Reexamination Facsimile Transmission No.      (571) 273-9900

/Danton  DeMille/
Patent Reexamination Specialist
Central Reexamination Unit 3993
(571) 272-4974
2 June 2014

Conferee:  /JGF/                              Conferee:/EDL/

| *Reexamination* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90/013,201 | 6059576 |
| | Certificate Date | Certificate Number |

| Requester | Correspondence Address: | ☒ Patent Owner | ☐ Third Party |
|---|---|---|---|

SUGHRUE MION, PLLC
2100 PENNSYLVANIA AVENUE, N.W.
SUITE 800
WASHINGTON, DC  20037

| LITIGATION REVIEW ☒ | /DDD/ | 5/9/14 |
|---|---|---|
| | (examiner initials) | (date) |
| Case Name | | Director Initials |
| NONE | | |
| | | |
| | | |
| | | |
| | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| TYPE OF PROCEEDING | NUMBER |
| 1.    NONE | |
| 2. | |
| 3. | |
| 4. | |

U.S. Patent and Trademark Office

DOC. CODE **RXFILJKT**

LT 0000258

Receipt date: 04/04/2014                                                                90013201 - GAU: 3993

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Not for submission under 37 CFR 1.99) | Application Number | Not Yet Assigned |
|---|---|---|
| | Confirmation Number | Not Yet Assigned |
| | Filing Date | April 4, 2014 |
| | First Named Inventor | Theodore L. Brann |
| | Art Unit | Not Yet Assigned |
| | Examiner Name | Not Yet Assigned |
| | Attorney Docket Number | A209779 |

## U.S. PATENTS

| Examiner Initials | Cite No | Patent Number | Kind Code | Issue Date | Name of Patentee or Applicant of cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1. | 5636146 | | 1997-06-03 | Flentov et al. | |
| | 2. | 6018705 | | 2000-01-25 | Gaudet et al. | |
| | 3. | 6266623 | B1 | 2001-07-24 | Vock et al. | |

## U.S. PATENT APPLICATION PUBLICATIONS

| Examiner Initials | Cite No | Publication Number | Kind Code | Publication Date | Name of Patentee or Applicant of cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No | Foreign Document Number | Country Code | Kind Code | Publication Date | Name of Patentee or Applicant of cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

## NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city, and/or country where published. | T |
|---|---|---|---|
| | | | |

## EXAMINER SIGNATURE

| Examiner Signature | /Danton DeMille/ (05/20/2014) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /DD/

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

1 See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. 2 Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). 3 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 4 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 5 Applicant is to place a check mark here if English language translation is attached.

[Page 1 of 2]                                                                              LT 0000259

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/013,201 | 04/04/2014 | 6059576 | A209779 | 9930 |

23373          7590          08/13/2014
SUGHRUE MION, PLLC
2100 PENNSYLVANIA AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20037

| EXAMINER |
|---|
| DEMILLE, DANTON D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/13/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**LT 0000260**

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

SUGHRUE MION, PLLC
2100 PENNSYLVANIA AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20037

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/013,201*.

PATENT NO. *6059576*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

LT 0000261

| *Office Action in Ex Parte Reexamination* | Control No. 90/013,201 | Patent Under Reexamination 6059576 |
| | Examiner DANTON DE MILLE | Art Unit 3993 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☐ Responsive to the communication(s) filed on _____ .
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☐ This action is made FINAL.

c. ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire _2_ month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
2. ☒ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

Part II    SUMMARY OF ACTION

1a. ☒ Claims _1,13,20,21 and 30-158_ are subject to reexamination.
1b. ☒ Claims _2-12,14-19 and 22-29_ are not subject to reexamination.
2. ☐ Claims _____ have been canceled in the present reexamination proceeding.
3. ☐ Claims _____ are patentable and/or confirmed.
4. ☒ Claims _1,13,20,21 and 30-158_ are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ The drawings, filed on _____ are acceptable.
7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.
8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All  b) ☐ Some*  c) ☐ None    of the certified copies have
    1 ☐ been received.
    2 ☐ not been received.
    3 ☐ been filed in Application No. _____ .
    4 ☐ been filed in reexamination Control No. _____.
    5 ☐ been received by the International Bureau in PCT application No. _____.
    * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

Application/Control Number: 90/013,201                                        Page 2
Art Unit: 3993

### *Ex Parte Reexamination Office Action*

Reexamination was requested and ordered for claims 1, 13, 20 and 21 of United States

Patent Number 6,059,576 (hereinafter, "the '576 patent").  Patent owner also submitted new

claims 30-158 at the time of filing.  Therefore, this reexamination will be over claims 1, 13, 20,

21 and 30-158.

### *Prior Art Relied Upon by the Requester*

Flentov et al.           (U.S. Pat. No. 5,636,146) cited by requester

Gaudet et al.            (U.S. Pat. No. 6,018,705) cited by requester

Vock et al.              (U.S. Pat. No. 6,266,623) cited by requester

Burdea et al.            (U.S. Pat. No. 5,429,140) cited by examiner

### *Claim Rejections*

### *Claim Rejections - 35 USC § 112*

**Claims 93, 123, 149 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA),**

**second paragraph, as being indefinite for failing to particularly point out and distinctly**

**claim the subject matter which the inventor or a joint inventor, or for pre-AIA the**

**applicant regards as the invention.**

Claim 93 fails to further limit the system that has already been set forth.  Claim 93 merely

recites that the downloaded movement data is analyzed by the user via said program.  This does

not further restrict the system already claimed.  This merely describes the action of the user.

Application/Control Number: 90/013,201                                               Page 3
Art Unit: 3993

Regarding claim 123, there is no clear antecedent basis for "the portable, self-contained movement".

Regarding claim 149, it is not clear *what* is "receiving at least one of the plurality of the thresholds from a user."  Is it the memory, the microprocessor, the external computer, etc.?

### *Claim Rejections - 35 USC § 102*

**Claims 1 and 20 are rejected under pre-AIA 35 U.S.C. 102(b) as being anticipated by Flentov et al.**

Flentov teaches a portable, self-contained device 10 for monitoring movement of body parts 28 during physical activity, column 1, lines 6-10:

> The invention relates generally to the measurement of the loft time and speed of a vehicle relative to the ground. Such measurements are particularly useful in sporting activities like skiing and mountain biking where users desire information relating to their speed and/or loft, or "air" time.

The device 10 comprising a movement sensor 18, 20, capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement.  The device 10 is attached to the ski of the user which would generate signals indicative of the unrestrained movement as the user freely navigates over the downhill course.  The device also includes a power source 22.

A microprocessor subsystem 12 is also taught capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters from user input 14.  The device includes at least one user input 14 in the form of at least buttons 58, 60, 62, 66 and 67.  Flentov teaches in column 2, lines 36-40, "a user interface for providing external

LT 0000264

inputs to the apparatus, including one or more of the following: a start/stop button for selectively

starting and stopping the acquisition of data by the apparatus".

As noted above, the movement sensor 18, 20 send signals indicative of the unrestrained

movement to the microprocessor subsystem 12.  The microprocessor 12 interprets the signals

from the sensor, column 6, lines 19-22:

> The speed information and loft time information are processed by the
> microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and
> actual loft time, e.g., in seconds.

The microprocessor stores the information, column 6 in lines 22-25, "[t]he actual speed

and loft time are thereafter stored in internal memory 13".

The microprocessor responds to the movement data based on user-defined operational

parameters from the user input 14.  Figure 4 illustrates a graph 70 of a representative vibrational

spectrum 72 that is stored into the microprocessor subsystem 12, column 10, lines 29-37:

> The vibrational spectrum between t1 and t2 [FIG. 4] is comparatively smooth as
> compared to the spectrum outside this region because the user's sporting vehicle
> (e.g., the ski or mountain bike) is in the air and is not therefore subjected to the
> random vibrations of the road or ski slope. Accordingly, this relatively smooth
> spectrum between t1 and t2 can be readily discerned from the rest of the spectrum
> by the microprocessor subsystem 12 and evaluated for "air" time: specifically,
> "air" time is t2-t1.

The microprocessor subsystem 12 responds to the vibrational spectrum 72 of the

movement data based on user-defined operational parameters such as loft or "air" time derived

from the "relatively smooth spectrum" between t1 and t2.  The information is then displayed on

display 16.

Flentov teaches many different embodiments for the speed sensor and the loft sensor.  In

column 17 Flentov teaches a loft sensor that is accelerometer based.  In column 17, lines 24-37:

Application/Control Number: 90/013,201                                    Page 5
Art Unit: 3993

FIG. 13 illustrates a speed sensor 200 constructed according to the invention and which includes a plurality of accelerometers 202a-202d. The accelerometers 202a-202d sense various accelerations in their respective axes (accelerometers sense acceleration along a predefined axis, translational or rotational), and each of the outputs from the accelerometers are input to the microprocessor subsystem 204, e.g., the subsystem 12 of FIG. 1, via communication lines 206a-206d. The orientation of the sensitive axis of each accelerometer 202a-202d is stored in the microprocessor subsystem 204 so that a particular acceleration in one axis is properly combined with acceleration values in other axes (as described in more detail below in connection with FIGS. 14 and 14a).

Additionally, Flentov teaches in lines 58-62 of column 17:

It should be clear to those skilled in the art that fewer, or greater, numbers of accelerometers are within the scope of the invention, so long as they collectively determine speed. In effect, the fewer number of accelerometers results in reduced accuracy; not reduced functionality. Rather, in an ideal situation, one accelerometer can be used to detect speed; which is the integral of the acceleration over time. Further, a double integration over the same period provides distance; and, therefore, the invention can also provide distance in at least one embodiment of the invention.

Flentov teaches that one accelerometer can be used to detect speed and distance.

Flentov also teaches in column 18, lines 17-20 of using six accelerometers:

Specifically, six accelerometers are connected with various sensitive orientations to collect pitch 207a yaw 207b, roll 207c, surge 207d, heave 207e, and sway 207f accelerations.

Flentov also teaches how to derive speed and direction in column 18, lines 52-61:

Also shown in FIG. 14A are translational integrators 209a-209c which convert the compensated accelerations from inputs 207d-207f to translational velocities by integration. Integrators 210a-210c likewise integrate inputs of pitch 207a, yaw 207b, and roll 207c to angular velocity while integrators 211a-211c provide a further integration to convert the angular velocities to angular position. The angular positional information and translational velocity information is combined and processed at the speed and direction resolution section 212 to derive speed and direction.

Therefore, the movement sensor 200 measures the speed, angle and velocity of the

movement. Speed and direction are calculated using the signals from the plural accelerometers of

Application/Control Number: 90/013,201                                      Page 6
Art Unit: 3993

the speed sensor 200.  The direction is an angle of the movement of the device in at least two

axes i.e., horizontal and vertical.

Therefore, Flentov teaches speed sensor 200 provides a movement sensor that measures

the angular position and translational velocity.

Flentov teaches the microprocessor subsystem 12 includes a clock element in column 9,

lines 28-34:

> the microprocessor subsystem 12 of FIG. 1 preferably includes a clock element
> (readily known to those skilled in the art) for indicating processed time over a
> selectable period (the microprocessor subsystem 12 can in fact include a 24-hour
> clock element, much the way a digital wrist-watch includes 24-hour information).

While the 24-hour clock element of Flentov is not recited as "a real-time clock" however,

it is a computer clock that keeps track of the current time in order to determine loft time.

Therefore it would appear that the 24-hour clock element recited by Flentov is "a real-time

clock" for purposes of storing time in human units.  This is different from hardware clocks which

are only signals that govern digital electronics.

Flentov teaches an output indicator 16.

Therefore, it would appear that Flentov anticipates the invention as broadly claimed.


**Claims 1 and 20 are rejected under 35 U.S.C. 102(e) as being clearly anticipated by**

**Gaudet et al.**

Gaudet teaches a portable, self-contained device and method of monitoring

physical movement of a body part comprising attaching a portable, self-contained movement

measuring device 20, for example, to the body for measuring unrestrained movement in any

direction.  The movement measuring device 20 is attached to the body of the user.  The user

moves unrestrained in any direction.  The movement measuring device 20 measures acceleration in any direction the user moves.

Gaudet teaches in column 4, lines 51-53, "[e]ach of devices 20A-20C shown in FIG. 2 has a particular axis in which it senses acceleration, i.e., an acceleration sensing axis."  However, because the device 20A-20C is attached to the body of the user, the movement of the device has unrestrained movement in any direction as the user moves in any direction and therefore, the acceleration sensing axis will also move unrestrained in any direction.  The foot contact time/foot loft time generators 20A-20C will generate acceleration signals along that axis.  The axis of the device is oriented substantially parallel to a bottom surface of the foot of the user. The rate of travel is the speed of travel along the acceleration sensing axis.  Therefore, the movement sensor 20A-20C measures the angle and velocity of the movement.

Gaudet teaches in column 2, lines 16-20:

> By calculating an average of these several measured foot contact times, an average foot contact time may be determined, from which information such as the pace of the user, rate of travel, distance traveled, etc., may be calculated.

The pace of the user, rate of travel and the distance traveled by the user are determined from the "foot contact times" and the "foot loft times".

Column 4, lines 10-22, figure 1 shows a:

> network 70 includes network processing circuitry 30, a memory unit 28, a user interface 32, a display 26A, and an audio or vibrational indicator 26B. Network processing circuitry 30 also is coupled to receive inputs from one or more monitoring devices, such as foot contact time/foot loft time generators 20A and 20B, heart rate monitor 22, and respiratory monitor 24. The devices shown in FIG. 1 may be linked together, for example, via direct wiring or capacitive coupling, by using radio-frequency (RF) or infa-red (IR) transmitters/receivers, or by any other information transmission medium known to those skilled in the art.

Application/Control Number: 90/013,201                                    Page 8
Art Unit: 3993

The monitoring devices include movement sensors or foot contact time/foot loft time

generators 20A and 20B.  The movement sensors 20A, 20B transmit movement data using

transmitters/receivers.  Transmitters/receivers require power to transfer and receive data.

Obviously there is a power source within the movement sensors 20A and 20B in order to

transmit data.

The network processing circuitry 30 interprets the movement data based on user-defined

operational parameters, column 4, lines 28-33:

> User interface 32 also is coupled to network processing circuitry 30 and permits a
> user, e.g., a walker, jogger or runner, to select a particular feature implemented by
> operation of a software routine, to input particular operating parameters, or to
> select particular outputs for display 26A and/or audio or vibrational indicator 26B.

Gaudet also teaches in column 4, lines 22-27:

> Network processing circuitry 30 may include a personal computer, or any other
> device capable of processing information from the various inputs of network 70.
> Memory unit 28 is coupled to network processing circuitry 30 and is used to store
> programming and data for network processing circuitry 30 and/or to log data
> processed by circuitry 30.

Gaudet teaches a memory unit 28 is coupled to network processing circuitry 30 and is

used to store programming and data for network processing circuitry 30 and/or to log data

processed by circuitry 30.

Gaudet also teaches using timers, column 5, lines 12-14 (emphasis added):

> According to one embodiment, foot contact time/foot loft time generator 20
> includes a micro-controller having virtually all circuitry, e.g., memory, *timers* and
> analog-to-digital (A/D) converters, on board, so that memory unit 54 need only be
> used to perform functions such as permanently storing data produced by foot
> contact time/foot loft time generator 20.

Gaudet teaches a timer is part of the movement measuring device 20.  The timers are

used to measure time periods in seconds.  Gaudet teaches in column 9, lines 10-15:

LT 0000269

> The time measured by the air time (Ta) timer represents the time difference
> between the last "positive spike event" (defined below) and the negative spike
> event just detected. When a negative spike event occurs, a "StepCount" value, i.e.,
> a counted number of footsteps of the user, also is increment.

Air time timer Ta measure the time difference between the last positive spike event to the

negative spike event.  Therefore as defined by the instant invention, Gaudet records in real-time

the time between the negative spike event and the positive spike event.  This timer would appear

to be a real-time clock because the timer records the time.  It would appear that Gaudet

anticipates the invention as broadly claimed.


**Claims 1 and 20 are rejected under 35 U.S.C. 102(e) as being clearly anticipated by**

**Vock et al.**

Vock teaches a self-contained device 10 comprising a movement sensor 18, a

power source 22, a microprocessor 12, a user input 14, memory 13 and an output indicator 16 or

display.

The movement sensor 18 measures data associated with unrestrained movement in any

direction and generating signals indicative of said movement.  As shown in figure 2 the portable,

self-contained device 10 is mounted to the ski of the user.  The user can manipulate the skis in an

unrestrained movement in any direction.  The sensor 18 generates signals indicative of the

unrestrained movement.

The microprocessor 12 is connected to the movement sensor 18 and the power source 22

and is capable of receiving, interpreting, storing and responding to the movement data based on

user-defined operational parameters.  Vock teaches in column 8, lines 3-22:

Briefly, the invention shown in FIG. 1 operates as follows. The housing 24 is attached or mounted to a sporting device, such as a ski or mountain bike, such that a user of the ski or mountain bike can access the system 10. During motion of the ski or mountain bike, the speed sensor 18 sends velocity information (over communication line 11a) to the microprocessor subsystem 12; while the loft sensor 20 sends loft or "air" time information (over communication line 11b) to the microprocessor subsystem 12. The speed information and loft time information are processed by the microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and actual loft time, e.g., in seconds. The actual speed and loft time are thereafter stored in internal memory 13 until, at least, the speed and time data are accessed by a user of the system 10. Upon access through the user interface 14 (communicating with the microprocessor subsystem 12 via communication line 11c), a user of the system 10 can command the display of the speed and loft time data (sent across communication line 11d) on the display 16 in order to evaluate his or her performance in the sporting activity.

The user, through the user interface 14, commands the microprocessor 12 to display the speed and loft time data on the display 16 in order to evaluate his or her performance in the sporting activity.

Vock also teaches a clock element in column 3, lines 17-21:

Preferably, the microprocessor subsystem of the invention includes a [clock] element, e.g., a 24-hour clock, for providing information convertible to an elapsed time. Accordingly, the subsystem can perform various calculations, e.g., dead time, on the data acquired by the apparatus for display to a user.

The clock of Vock appears to be used for calculating the various elapsed times. These elapsed times would be real-time because it is measuring time in human terms and therefore would appear to comprehend the claimed real-time clock.

Vock teaches many different types of speed and loft sensors for acquiring velocity and loft or "air" time. In one embodiment of column 21 the speed sensor is pressure based. In this embodiment the speed sensor of Vock measures the angle and velocity of the movement. In column 21, lines 47-59:

Application/Control Number: 90/013,201                                   Page 11
Art Unit: 3993

> Pressure sensors according to the invention convert air pressure to an analog
> voltage. When mounted to a snowboard 220, such as shown in FIGS. 15 and 15A,
> the pressure sensor 221 is used to determine the altitude of the snowboarder. This
> voltage is read by the microprocessor subsystem (e.g., the subsystem 12 of FIG.
> 1) at a fixed rate and differentiated to determine rate of descent or speed in the
> vertical direction. This may be converted to speed along the path by knowing the
> grade or angle of descent. Angle of descent is known by predetermining the
> geometry of the ski path or by the addition of a inclinometer 222 which gives a
> voltage dependent upon the angle, with respect to vertical, of the platform. The
> inclinometer 222 measures zero when the ski is traveling along a level path and
> the pressure sensor is showing a constant pressure. When the ski moves downhill,
> for example, the inclinometer 222 measures the angle of descent and the pressure
> sensor measures ever increasing pressure. Since the angle of descent is known, as
> is the rate of descent, the true speed is determined and displayed.

Vock teaches the speed sensor includes a pressure sensor 221 to determine the altitude of

the user and inclinometer 222 gives a voltage dependent upon the angle with respect to vertical.

The pressure sensor 221 determines the speed of vertical descent and the inclinometer 222

determines the angle.  Since the angle of descent is known, and the rate of descent is known, the

true speed is determined and displayed.  Therefore, it would appear that Vock anticipates the

invention as broadly recited.

**Claims 1, 13, 20, 21, 30-158 are rejected under pre-AIA 35 U.S.C. 103(a) as being**

**unpatentable over Flentov et al. in view of Burdea et al.**

**Regarding claims 1, 13, 20, 21, 125-128** Flentov teaches a portable, self-contained

device 10 for monitoring movement of body parts 28 during physical activity, column 1, lines 6-

10:

> The invention relates generally to the measurement of the loft time and speed of a
> vehicle relative to the ground. Such measurements are particularly useful in
> sporting activities like skiing and mountain biking where users desire information
> relating to their speed and/or loft, or "air" time.

LT 0000272

Application/Control Number: 90/013,201                                      Page 12
Art Unit: 3993

The device 10 comprising a movement sensor 18, 20, capable of measuring data

associated with unrestrained movement in any direction and generating signals indicative of said

movement.  The device 10 is attached to the ski of the user which would generate signals

indicative of the unrestrained movement as the user freely navigates over the downhill course.

The device also includes a power source 22.

A microprocessor subsystem 12 is also taught capable of receiving, interpreting, storing

and responding to said movement data based on user-defined operational parameters from user

input 14.  The device includes at least one user input 14 in the form of at least buttons 58, 60, 62,

66 and 67.  Flentov teaches in column 2, lines 36-40, "a user interface for providing external

inputs to the apparatus, including one or more of the following: a start/stop button for selectively

starting and stopping the acquisition of data by the apparatus".

As noted above, the movement sensor 18, 20 send signals indicative of the unrestrained

movement to the microprocessor subsystem 12.  The microprocessor 12 interprets the signals

from the sensor, column 6, lines 19-22:

> The speed information and loft time information are processed by the
> microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and
> actual loft time, e.g., in seconds.

The microprocessor stores the information, column 6 in lines 22-25, "[t]he actual speed

and loft time are thereafter stored in internal memory 13".

The microprocessor responds to the movement data based on user-defined operational

parameters from the user input 14.  Figure 4 illustrates a graph 70 of a representative vibrational

spectrum 72 that is stored into the microprocessor subsystem 12, column 10, lines 29-37:

> The vibrational spectrum between t1 and t2 [FIG. 4] is comparatively smooth as
> compared to the spectrum outside this region because the user's sporting vehicle

(e.g., the ski or mountain bike) is in the air and is not therefore subjected to the random vibrations of the road or ski slope. Accordingly, this relatively smooth spectrum between t1 and t2 can be readily discerned from the rest of the spectrum by the microprocessor subsystem 12 and evaluated for "air" time: specifically, "air" time is t2-t1.

The microprocessor subsystem 12 responds to the vibrational spectrum 72 of the movement data based on user-defined operational parameters such as loft or "air" time derived from the "relatively smooth spectrum" between t1 and t2.  The information is then displayed on display 16.

Flentov teaches many different embodiments for the speed sensor and the loft sensor.  In column 17 Flentov teaches a loft sensor that is accelerometer based.  In column 17, lines 24-37:

> FIG. 13 illustrates a speed sensor 200 constructed according to the invention and which includes a plurality of accelerometers 202a-202d. The accelerometers 202a-202d sense various accelerations in their respective axes (accelerometers sense acceleration along a predefined axis, translational or rotational), and each of the outputs from the accelerometers are input to the microprocessor subsystem 204, e.g., the subsystem 12 of FIG. 1, via communication lines 206a-206d. The orientation of the sensitive axis of each accelerometer 202a-202d is stored in the microprocessor subsystem 204 so that a particular acceleration in one axis is properly combined with acceleration values in other axes (as described in more detail below in connection with FIGS. 14 and 14a).

Additionally, Flentov teaches in lines 58-62 of column 17:

> It should be clear to those skilled in the art that fewer, or greater, numbers of accelerometers are within the scope of the invention, so long as they collectively determine speed. In effect, the fewer number of accelerometers results in reduced accuracy; not reduced functionality. Rather, in an ideal situation, one accelerometer can be used to detect speed; which is the integral of the acceleration over time. Further, a double integration over the same period provides distance; and, therefore, the invention can also provide distance in at least one embodiment of the invention.

Flentov teaches that one accelerometer can be used to detect speed and distance.

Flentov also teaches in column 18, lines 17-20 of using six accelerometers:

Specifically, six accelerometers are connected with various sensitive orientations to collect pitch 207*a* yaw 207*b*, roll 207*c*, surge 207*d*, heave 207*e*, and sway 207*f* accelerations.

Flentov also teaches how to derive speed and direction in column 18, lines 52-61:

Also shown in FIG. 14A are translational integrators 209*a*-209*c* which convert the compensated accelerations from inputs 207*d*-207*f* to translational velocities by integration. Integrators 210*a*-210*c* likewise integrate inputs of pitch 207*a,* yaw 207*b*, and roll 207*c* to angular velocity while integrators 211*a*-211*c* provide a further integration to convert the angular velocities to angular position. The angular positional information and translational velocity information is combined and processed at the speed and direction resolution section 212 to derive speed and direction.

Therefore, the movement sensor 200 measures the speed, angle and velocity of the movement. Speed and direction are calculated using the signals from the plural accelerometers of the speed sensor 200.  The direction is an angle of the movement of the device in at least two axes i.e., horizontal and vertical.

Therefore, Flentov teaches speed sensor 200 provides a movement sensor that measures the angular position and translational velocity.

Flentov teaches the microprocessor subsystem 12 includes a clock element in column 9, lines 28-34:

the microprocessor subsystem 12 of FIG. 1 preferably includes a clock element (readily known to those skilled in the art) for indicating processed time over a selectable period (the microprocessor subsystem 12 can in fact include a 24-hour clock element, much the way a digital wrist-watch includes 24-hour information).

While the 24-hour clock element of Flentov is not recited as "a real-time clock" however, it is a computer clock that keeps track of the current time in order to determine loft time.

Therefore it would appear that the 24-hour clock element recited by Flentov is "a real-time

LT 0000275

clock" for purposes of storing time in human units.  This is different from hardware clocks which

are only signals that govern digital electronics.

The instant invention defines the "real-time clock" in column 5, lines 33-37:

> The microprocessor 32 is connected to a clock 46 which is used as an internal
> clock for coordinating the functioning of the microprocessor 32. The clock 46
> also serves as a real time clock to provide date and time information to the
> microprocessor 32.

There does not appear to be any special definition for the term "real-time clock" as long

as the clock serves to provide date and time information to the microprocessor.

Burdea teaches a method to monitor physical movement of a body part.  The system

employs an electronic device which tracks and monitors an individual's motion through the use

of sensors capable of measuring parameters associated with the individual's movement.  In

column 6, lines 30-33,

> Patient data can be stored in database 114 for statistical purposes.  Database 114
> can include a time stamp for providing a time history of updates of the patient
> information.

Burdea teaches the convention of storing performance data over time that includes a time

stamp for providing a time history of updates.  A clock would be required in order to associate a

specific time and day with each piece of performance data, in order to evaluate the user's

progress over time.  It would have been obvious to one of ordinary skill in the art to modify

Flentov to include a date and time stamp as taught by Burdea in order to provide a time history

of user's performances to evaluate user's progress.

**Regarding claims 13, 133-135,** in addition to the limitations of claim 1, claim 13 also

recites an input/output port, a computer capable of interpreting and reporting the movement data

based on operational parameters, and a download device connected to the movement measuring

Application/Control Number: 90/013,201                                    Page 16
Art Unit: 3993

device and the computer for transmitting the movement data and operational parameters between

the movement measuring device and the computer for analysis, reporting and operation purposes.

Burdea shows in figure 1, network 22 is capable of transmitting the movement data and

operational parameters between the movement measuring device or sensing glove 30 and the

remote computer 20.  The remote workstation is used for receiving diagnostic information and

communicating rehabilitation instructions to the movement measuring device.  Burdea column 4,

lines 46-50:

> Remote workstation 20 can be coupled over network 22 to computer workstation
> 14.  Remote workstation 20 can be used at a medical specialist location for
> receiving diagnostic information and communicating rehabilitation instructions to
> computer workstation 14.

Broadly, the network 22 includes the input/output port and the network card is the

download device electronically connected to said movement measuring device 30 and a remote

computer 20 for transmitting and receiving information.  It would have been obvious to one of

ordinary skill in the art to further modify Flentov to include an input/output port, computer and

download device as taught by Burdea so that a remote specialist can review historical data and

suggest new instructions.

**Regarding claim 20,** Flentov teaches a method of monitoring physical movement of a

body part comprising the steps of attaching a portable, self-contained movement measuring

device 10 to the body part of the ski 26 for measuring unrestrained movement in any direction.

The sensor 200 measures data associated with physical movement and the microprocessor 13

interprets the physical movement data based on user-defined operational parameters from user

input 14.  Burdea teaches using a "real-time clock" for adding a time stamp to the movement

data so that the user movement data can be stored for statistical purposes.  It would have been

Application/Control Number: 90/013,201                                   Page 17
Art Unit: 3993

obvious to one of ordinary skill in the art to modify Flentov to include a "real-time clock" for

adding a time stamp to the movement data as taught by Burdea to be stored in memory for

statistical purposes.

**Regarding claim 21,** as set forth above in rejection of claim 1, Flentov teaches velocity

data and angular movement data along with related date and time data as provided by Burdea.

Flentov was modified to include the date and time stamp taught by Burdea.

**Regarding claim 30,** as noted above, Burdea teaches including a time stamp for

associating the time/date stamp with the movement data for providing a time history of updates

of the user performance for storing in memory.

**Regarding claim 31,** the microprocessor also stores in memory the date associated with

the time stamp.

**Regarding claim 32,** the microprocessor retrieves the time stamp with the date from the

real-time clock to associate the time stamp with the retrieved movement data.

**Regarding claim 33,** the microprocessor retrieves the time stamp from the real-time

clock based on the occurrence of the user defined events which are the speed and loft time.

**Regarding claim 34,** the microprocessor identifies the user defined event based on

interpretation of the movement data such as the fastest speed or the longest loft time.

**Regarding claim 35,** Flentov teaches "[t]he memory may be nonvolatile such as battery

backed RAM or Electrically Erasable Programmable Read Only Memory (EEPROM)" column

14, lines 33-35.  Therefore, the memory continues to store movement data in response to battery

power being lost from said power source.

Application/Control Number: 90/013,201                                    Page 18
Art Unit: 3993

**Regarding claim 36,** Flentov teaches in column 2, lines 36-40, "a user interface for providing external inputs to the apparatus, including one or more of the following: a start/stop button for selectively starting and stopping the acquisition of data by the apparatus". The movement sensor continuously checks for movement when the user presses the start button. It will stop checking for movement when the stop button is pushed.

**Regarding claim 37,** the microprocessor also continuously interprets movement data received from the movement sensor when the user presses the start button which is a user-defined operational parameter.

**Regarding claim 38,** the output indicator displays information based on the movement data. When the user requests speed data, the output indicator displays speed data.

**Regarding claim 39,** the output indicator displays the movement data and the time stamp associated with the movement data.

**Regarding claim 40,** the output indicator displays information based on movement data and the time stamp associated with the movement data.

**Regarding claim 41,** Flentov teaches in column 2, lines 38-40:

> a start/stop button for selectively starting and stopping the acquisition of data by the apparatus;

The threshold of the movement data is met when the user stops the acquisition of data. The threshold limit is reached when the user hits the stop button. The output indicator displays the results such as speed and loft time.

Flentov also teaches in column 2, lines 40-45:

> a display-operate button for activating the display means selectively; a speed/loft toggle button for alternatively commanding a display of loft time information and speed information of the vehicle

LT 0000279

Application/Control Number: 90/013,201                                    Page 19
Art Unit: 3993

The output indicator displays information indicating that a threshold is met based on the movement data such as speed and loft time.

**Regarding claim 42,** the threshold is based on information provided by the user when the user starts the acquisition of data and continues until the user stops the acquisition of data.

**Regarding claim 43,** the microprocessor stores in memory all of the movement data including the peak threshold speed achieved during a given activity.

**Regarding claim 44,** as taught by Burdea, the microprocessor associates the time/date stamp with each piece of movement data, including the peak threshold, in order to store the user's performance data for statistical purposes.

**Regarding claim 45,** one of ordinary skill in the art having devices that include batteries would require some form of output to let the user know when the batteries are about to die.

**Regarding claim 46,** Flentov teaches at the top of column 2, the display can be a LCD or LED display.

**Regarding claim 47,** the movement data stored in memory is configured to be downloaded to a computer.  Any data stored in memory can be downloaded to a computer.

**Regarding claim 48,** as noted above, Burdea teaches remote workstation 20 can be coupled over network 22 to computer workstation 14.  Obviously, computer workstation 14 has software configured to communicate with external software in the remote workstation 20 wherein the external software is configured to present the downloaded movement data to the user in the display.  It would have been obvious to download the physical activity from the local microprocessor to an external computer over a network as taught by Burdea in order to have the

LT 0000280

Application/Control Number: 90/013,201                                          Page 20
Art Unit: 3993

information saved at a different location so the information can be analyzed and processed for

improving the user's performance.

**Regarding claim 49,** the external software is configured to run on the external computer.

**Regarding claim 50,** the downloaded movement data is analyzed by said user via said

external software.

**Regarding claims 51, 136, 137, 138, 139, 140,** the external software is configured to

interpret the movement data and produce at least one report.  The purpose of the external

computer is to analyze the data and to communicate new instructions for the user to the local

workstation 14.  Producing reports on the movement data including historical data would be

obvious to one of ordinary skill in the art in order to develop new instructions for the user.

Burdea teaches, column 4, lines 43-50, the workstation 14 is coupled to hard copy device 18 for

producing a hard copy of diagnostic information including rehabilitation progress charts.  The

external computer would be better adapted to generate reports.  Such would have been an

obvious provision in Vock.

**Regarding claims 52, 140,** the external software is configured to interpret the movement

data and produce at least one history report.  The purpose of the external computer is to analyze

the historical data.  Producing reports on the movement data including historical data would be

obvious to one of ordinary skill in the art in order to develop new instructions for the user.

**Regarding claim 53,** the history report obviously includes dates and time of the

movement data.  This is how one can analyze the data over time in order to develop improved

physical activity.

Application/Control Number: 90/013,201                                             Page 21
Art Unit: 3993

**Regarding claim 54,** the external software is configured to allow the user to program additional reports and histories with respect to the movement data.

**Regarding claims 55, 141,** the movement data is configured to be downloaded to the computer via a wired connection.  Network 22 is a wired connection.

**Regarding claims 56, 142,** wireless connections are old and well known and an obvious equivalent means of communicating information from one computer to another.

**Regarding claim 57,** the microprocessor records, based on a threshold being met, the time and date of the threshold being met.  As noted above regarding claim 41, the threshold is the peak speed during an activity.  The microprocessor records, based on the peak speed being met, the time and date of the peak threshold being met.  The microprocessor records the time and date for all movement data.

**Regarding claim 58,** the output indicator 52 provides a visual indicator to the user regarding the threshold being met in display 52 of Flentov.

**Regarding claims 59, 129,** Flentov teaches in column 8, lines 35-39:

> In addition, the highest number displayed within the portion 68 refers to the total number of "air" times for the selected activity period (thus for example a user can determine the total number of jumps achieved for a given day).

The user would press the start/stop button to start recording the movement data and press the start/stop button again to complete the acquisition of data.  The user has thus set the threshold of how much data to collect to determine the total number of jumps achieved for a given period of time.

**Regarding claims 60, 130, 146, 147,** the memory stores a plurality of thresholds respectively corresponding to a plurality of notifications.  When the user starts and stops the

collection of movement data, the user has set the threshold amount of movement data to collect
to determine the total number of jumps during that period of time.  The peak "air" time and the
peak speed are additional thresholds that are saved in memory.  Each of these threshold data
points correspond to a plurality of notifications on the display.

**Regarding claims 61, 145, 147,** when one of the plurality of thresholds is met, the output
indicator displays a corresponding one of the notifications such as the peak "air" time or peak
speed during a run.

**Regarding claims 62, 148,** the microprocessor determines whether any of the thresholds
are met by interpreting the movement data with respect to the thresholds.  After the
microprocessor determines the speed of the user, it compares the speed with the highest speed
recorded so far.  The threshold at any point in time is the highest speed recorded so far.  As the
microprocessor collects more and more speed data points it is comparing the current speed with
the threshold speed recorded so far.  Therefore as the microprocessor is interpreting the
movement data with respect to the highest threshold at that time and if the movement data
exceeds the highest threshold it will replace the highest threshold with the new threshold.  At the
end of the collection of movement data, the microprocessor has determined the threshold.

**Regarding claim 63,** as set forth above regarding claim 59, the user would press the
start/stop button to start recording the movement data and press the start/stop button again to
complete the acquisition of data.  The user has thus set the threshold of how much data to collect
to determine the total number of jumps achieved for a given period of time.

**Regarding claim 64,** as noted above regarding claim 62, the plurality of thresholds are
different from each other until the final maximum threshold is recorded.

LT 0000283

Application/Control Number: 90/013,201                                                Page 23
Art Unit: 3993

**Regarding claim 65,** the plurality of notifications are different visual indicators. The peak "air" time and the peak speed are two different notifications would be two different indicators in the display.

**Regarding claim 66,** the prior art has already established the user of using visual indicators and including a blinking indicator is old and well known and an obvious provision in the art of displaying information on a display screen. Where the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation. *In re Swain et al.*, 33 CCPA (Patents) 1250, 156 F.2d 239, 70 USPQ 412; *Minnesota Mining and Mfg. Co. v. Coe*, 69 App. D.C. 217, 99 F.2d 986, 38 USPQ 213; *Allen et al. v. Coe*, 77 App. D.C. 324, 135 F.2d 11, 57 USPQ 136. Providing blinking lights to highlight a portion of the display is well within the realm of the artisan of ordinary skill in the art of displaying information on a display screen.

**Regarding claims 67, 131, 144, 153,** Flentov teaches in column 8, lines 32-33, when the microprocessor determines when a threshold has been met, the display will signal the occurrence that the user-defined threshold has been met by illustrating "1" as meaning that the threshold peak "air" time has been met.

**Regarding claims 68, 154,** as the microprocessor compares the movement data with the current speed threshold it will update the current speed threshold if the movement data is greater than the current speed threshold.

**Regarding claims 69, 155,** Flentov teaches in column 19, lines 12-16:

> It should be apparent to those in the art that the accelerometers of FIG. 13-14 provide sufficiently detailed information such that the whole of the system according to the invention can be mounted to a user of the system directly, rather than directly to a vehicle.

Application/Control Number: 90/013,201                                      Page 24
Art Unit: 3993

The sensor can be mounted on the user of the system directly.

**Regarding claims 70, 156,** the sensor can be mounted on the arm of the user and therefore measures movement of the user's arm.

**Regarding claims 71, 72, 157,** as noted above, Flentov measures distance as well as speed. Flentov teaches in column 17, lines 63-66, "one accelerometer can be used to detect speed; which is the integral of the acceleration over time. Further, a double integration over the same period provides distance". Therefore, the movement sensor of Flentov would also measure walking distance if one so chooses.

**Regarding claims 73, 116, 143, 158,** as noted above, Burdea teaches including a time stamp for associating the time/date stamp with the movement data for providing a time history of updates of the user performance for storing in memory. The microprocessor also stores in memory the date associated with the time stamp. The microprocessor also continuously checks movement data received from the movement sensor when the user presses the start button which is a user-defined operational parameter. The output indicator displays information based on the movement data indicating that a threshold has been met such as the peak speed data or peak "air" time. The movement data stored in memory is configured to be downloaded to a computer. Any data stored in memory can be downloaded to a computer. The device comprises software configured to communicate with external software configured to run on a computer and present the downloaded movement data. The purpose of the external computer is to analyze the historical data. Producing reports on the movement data including historical data would be obvious to one of ordinary skill in the art in order to develop new instructions for the user. The memory stores a plurality of thresholds respectively corresponding to a plurality of notifications

Application/Control Number: 90/013,201                                               Page 25
Art Unit: 3993

such as peak speed and peak "air" time including the time/date of the movement data.  The

sensor can be mounted on the arm of the user and therefore measures movement of the user's

arm.  A speed sensor on the arm of the user would be able to measure the speed of the user.

     **Regarding claims 74, 75, 143,** as noted above, Burdea teaches including a time stamp

for associating the time/date stamp with the movement data for providing a time history of

updates of the user performance for storing in memory.

     **Regarding claim 76,** the microprocessor retrieves the time stamp from the real-time

clock and associates the time stamp with the received movement data as taught by Burdea.

     **Regarding claim 77,** the output indicator is configured to signal the occurrence of user-

defined events such as peak speed and peak "air" time, and the microprocessor retrieves the time

stamp from the real-time clock based on the occurrence of at least one of the user-defined events.

     **Regarding claim 78,** the microprocessor identifies the user-defined events such as peak

speed and peak "air" time based on interpretation of the movement data.

     **Regarding claims 79, 122,** memory continues to store movement data in response to

battery power being lost from the power source because the memory is nonvolatile such as

battery backed RAM or Electrically Erasable Programmable Read Only Memory (EEPROM)",

Flentov column 14, lines 33-35.

     **Regarding claims 80, 81, 123, 124,** the microprocessor also continuously interprets

movement data received from the movement sensor when the user presses the start button which

is a user-defined operational parameter.

     **Regarding claim 82,** the output indicator displays information based on movement data

such as peak speed and peak "air" time.

Application/Control Number: 90/013,201                                    Page 26
Art Unit: 3993

   **Regarding claims 83 and 84,** the output indicator displays information based on
movement data such as peak speed and peak "air" time.

   **Regarding claims 85 and 86,** the output indicator displays information indicating that a
threshold is met such as peak speed and peak "air" time.

   **Regarding claim 87,** memory stores the information indicating that the threshold is met
such as peak speed and peak "air" time.

   **Regarding claim 88,** memory stores the information indicating that the threshold is met
such as peak speed and peak "air" time including a time stamp.

   **Regarding claims 89, 132,** one of ordinary skill in the art having devices that include
batteries would require some form of output to let the user know when the batteries are about to
die.

   **Regarding claim 90,** Flentov teaches at the top of column 2, the display can be a LCD or
LED display.

   **Regarding claim 91,** the movement data stored in the memory is configured to be
downloaded to the computer as is any data stored in memory.

   **Regarding claims 92, 93,** as noted above, Burdea teaches remote workstation 20 can be
coupled over network 22 to computer workstation 14.  Obviously, computer workstation 14 has
software configured to communicate with external software in the remote workstation 20
wherein the external software is configured to present the downloaded movement data to the user
in the display to be analyzed.

   **Regarding claim 94,** the purpose of the external computer is to analyze the data and to
communicate new instructions for the user to the local workstation 14.  Producing reports on the

movement data including historical data would be obvious to one of ordinary skill in the art in order to properly analyze the data to develop new instructions for the user. Burdea teaches, column 4, lines 43-50, the workstation 14 is coupled to hard copy device 18 for producing a hard copy of diagnostic information including rehabilitation progress charts. Such can also be applied to the external computer 20.

**Regarding claim 95,** the external software is configured to interpret the movement data and produce at least one history report. The purpose of the external computer is to analyze the historical data. Producing reports on the movement data including historical data would be obvious to one of ordinary skill in the art in order to develop new instructions for the user.

**Regarding claim 96,** the history report obviously includes dates and time of the movement data. This is how one can analyze the data.

**Regarding claim 97,** the external software is configured to allow the user to program additional reports and histories with respect to the movement data.

**Regarding claim 98,** the movement data is configured to be downloaded to the computer via a wired connection. Network 22 is a wired connection.

**Regarding claim 99,** wireless connections are old and well known and an obvious equivalent means of communicating information over air waves.

**Regarding claim 100,** the microprocessor records, based on a threshold being met, the time and date of the threshold being met. As noted above regarding claim 41, the threshold is the peak speed during an activity. The microprocessor records, based on the peak speed being met, the time and date of the peak threshold being met. The microprocessor records the time and date for all movement data.

LT 0000288

Application/Control Number: 90/013,201                                    Page 28
Art Unit: 3993

**Regarding claim 101,** the output indicator 16 provides a visual indicator to the user

regarding the threshold being met such as peak speed and peak "air" time.

**Regarding claims 102, 149,** Flentov teaches in column 8, lines 35-39:

> In addition, the highest number displayed within the portion 68 refers to the total
> number of "air" times for the selected activity period (thus for example a user can
> determine the total number of jumps achieved for a given day).

The user would press the start/stop button to start recording the movement data and press

the start/stop button again to complete the acquisition of data.  The user has thus set the threshold

of how much data to collect to determine the total number of jumps achieved for a given period

of time.

**Regarding claim 103,** memory stores a plurality of thresholds respectively

corresponding to a plurality of notifications.  Each of the thresholds of peak speed and peak "air"

time would be store in memory.

**Regarding claim 104,** when one of the thresholds is met such as peak speed, the output

indicator displays a corresponding notification of peak speed.

**Regarding claim 105,** the microprocessor determines whether any of the thresholds are

met by interpreting the movement data with respect to the thresholds.  After the microprocessor

determines the speed of the user, it compares the speed with the highest speed recorded so far.

The threshold at any point in time is the highest speed recorded so far.  As the microprocessor

collects more and more speed data points, it is comparing the current speed with the threshold

speed recorded so far.  Therefore, the microprocessor is interpreting the movement data with

respect to the highest threshold at that time.  If the movement data exceeds the highest threshold

LT 0000289

Application/Control Number: 90/013,201                                          Page 29
Art Unit: 3993

it will replace the highest threshold with the new threshold.  At the end of the collection of

movement data, the microprocessor has determined the threshold.

**Regarding claim 106,** the user would press the start/stop button to start recording the

movement data and press the start/stop button again to complete the acquisition of data.  The

user has thus set the threshold of how much data to collect to determine the total number of

jumps achieved for a given period of time.

**Regarding claims 107, 150,** the plurality of thresholds are different from each other

because peak speed is different from peak "air" time.

**Regarding claims 108, 151, 152,** the plurality of notifications are different visual

indicators because the peak speed measures miles per hour, peak "air" time measures in seconds.

**Regarding claims 109, 152,** the prior art has already established the user of using visual

indicators and including a blinking indicator is old and well known and an obvious provision in

the art of displaying information on a display screen.  Where the general conditions of a claim

are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by

routine experimentation. *In re Swain et al.*, 33 CCPA (Patents) 1250, 156 F.2d 239, 70 USPQ

412; *Minnesota Mining and Mfg. Co. v. Coe*, 69 App. D.C. 217, 99 F.2d 986, 38 USPQ 213;

*Allen et al. v. Coe*, 77 App. D.C. 324, 135 F.2d 11, 57 USPQ 136.  Providing blinking lights to

highlight a portion of the display is well within the realm of the artisan of ordinary skill in the art

of displaying information on a display screen.

**Regarding claim 110,** the microprocessor processes the movement data to determine

whether a threshold is met e.g., maximum speed or maximum "air" time.  The output indicator is

configured to signal the occurrence of the user-defined events such as peak "air" time with "the

Application/Control Number: 90/013,201                                                    Page 30
Art Unit: 3993

illustrated '1' number means the highest 'air' time record is currently being displayed", column

8, lines 32-34.

Regarding claim 111, the microprocessor interprets the movement data to determine

whether the threshold is met by comparing the movement data to the threshold.  The threshold is

the highest or peak "air" time the microprocessor has determined so far.  The microprocessor

continually compares the current "air" time with the peak "air" time.

Regarding claim 112, Flentov teaches in column 19, lines 12-16:

> It should be apparent to those in the art that the accelerometers of FIG. 13-14
> provide sufficiently detailed information such that the whole of the system
> according to the invention can be mounted to a user of the system directly, rather
> than directly to a vehicle.

The sensor can be mounted on the user of the system directly e.g., the arm of the user.

Regarding claim 113, as quoted above, Flentov teaches that the whole of the system can

be mounted to a user of the system directly, rather than directly to a vehicle.  When attached to

the arm of the user it will measure movement of the arm as well as the whole of the body.  The

system will still measure movement of the body and the ski as a whole.

Regarding claim 114, the system of Flentov measures distance as noted above regardless

of whether the user is walking, running, skiing or biking.

Regarding claim 115, as noted above, the whole of the system 10 can be mounted to the

use and therefore is wearable and measures distances including walking, running, skiing or

biking.

Regarding claims 117, 118, 119, 120, as set forth above, Burdea teaches adding a

time/date stamp to movement data that is stored in memory in order to create a time history of

movement data.

LT 0000291

**Regarding claim 121,** the microprocessor identifies the occurrence of at least one user-defined event such as "air" time that occurs between t1 and t2 in figure 4.

**Claims 1, 13, 20, 21 and 30-40, 45-56, 69-72, 74-84, 89-99, 109, 112-115, 117-127, 132-142, 155-157 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Gaudet et al. in view of Burdea et al.**

**Regarding claims 1, 13, 30-34, 38, 39, 117-120,** Gaudet teaches a method of monitoring physical movement of a body part comprising attaching a portable, self-contained movement measuring device 20, for example, to the body for measuring unrestrained movement in any direction. The movement measuring device 20 is attached to the body of the user. The user moves unrestrained in any direction. The movement measuring device 20 measures acceleration in any direction the user moves.

Gaudet teaches in column 4, lines 51-53, "[e]ach of devices 20A-20C shown in FIG. 2 has a particular axis in which it senses acceleration, i.e., an acceleration sensing axis." However, because the device 20A-20C is attached to the body of the user, the movement of the device has unrestrained movement in any direction as the user moves in any direction and therefore, the acceleration sensing axis will also move unrestrained in any direction. The foot contact time/foot loft time generators 20A-20C will generate acceleration signals along that axis. The axis of the device is oriented substantially parallel to a bottom surface of the foot of the user. The rate of travel is the speed of travel along the acceleration sensing axis. Therefore, the movement sensor 20A-20C measures the angle and velocity of the movement.

Gaudet teaches in column 2, lines 16-20:

Application/Control Number: 90/013,201                                    Page 32
Art Unit: 3993

By calculating an average of these several measured foot contact times, an
average foot contact time may be determined, from which information such as the
pace of the user, rate of travel, distance traveled, etc., may be calculated.

The pace of the user, rate of travel and the distance traveled by the user are determined

from the "foot contact times" and the "foot loft times".

Column 4, lines 10-22, figure 1 shows a:

network 70 includes network processing circuitry 30, a memory unit 28, a user
interface 32, a display 26A, and an audio or vibrational indicator 26B. Network
processing circuitry 30 also is coupled to receive inputs from one or more
monitoring devices, such as foot contact time/foot loft time generators 20A and
20B, heart rate monitor 22, and respiratory monitor 24. The devices shown in
FIG. 1 may be linked together, for example, via direct wiring or capacitive
coupling, by using radio-frequency (RF) or infa-red (IR) transmitters/receivers, or
by any other information transmission medium known to those skilled in the art.

The monitoring devices include movement sensors or foot contact time/foot loft time

generators 20A and 20B.  The movement sensors 20A, 20B transmit movement data using

transmitters/receivers.  Transmitters/receivers require power to transfer and receive data.

Obviously there is a power source within the movement sensors 20A and 20B in order to

transmit data.

The network processing circuitry 30 interprets the movement data based on user-defined

operational parameters, column 4, lines 28-33:

User interface 32 also is coupled to network processing circuitry 30 and permits a
user, e.g., a walker, jogger or runner, to select a particular feature implemented by
operation of a software routine, to input particular operating parameters, or to
select particular outputs for display 26A and/or audio or vibrational indicator 26B.

Gaudet also teaches in column 4, lines 22-27:

Network processing circuitry 30 may include a personal computer, or any other
device capable of processing information from the various inputs of network 70.
Memory unit 28 is coupled to network processing circuitry 30 and is used to store

LT 0000293

programming and data for network processing circuitry 30 and/or to log data processed by circuitry 30.

Gaudet teaches a memory unit 28 is coupled to network processing circuitry 30 and is used to store programming and data for network processing circuitry 30 and/or to log data processed by circuitry 30.

Gaudet also teaches using timers, column 5, lines 12-14 (emphasis added):

> According to one embodiment, foot contact time/foot loft time generator 20 includes a micro-controller having virtually all circuitry, e.g., memory, **timers** and analog-to-digital (A/D) converters, on board, so that memory unit 54 need only be used to perform functions such as permanently storing data produced by foot contact time/foot loft time generator 20.

Gaudet teaches a timer is part of the movement measuring device 20. Gaudet appears silent with the exact details of what type to timer is used however, Gaudet does teach "**permanently** storing data produced by the foot contact time/foot loft time generator 20" (emphasis added). If the information is **permanently** stored, the data would have to include date attributes to distinguish one day's data from another day's data. A real-time clock would be able to attribute a date and time to the data in order to differentiate data from different days.

Burdea is cited to teach the convention of storing data for statistical purposes by including a time stamp associated with the data thereby providing historical progress, see column 6, lines 30-33. Any conventional means to tag a date and time stamp to the movement data for providing statistical information over time would have been obvious to one of ordinary skill. A real-time clock is a well-known example of a means to provide a date and time stamp. It would have been obvious to one of ordinary skill in the art to modify Gaudet to associate a time stamp with the user data as taught by Burdea such as real-time clock in order to track the movement data over time.

Application/Control Number: 90/013,201                                    Page 34
Art Unit: 3993

**Regarding claims 13,** in addition to the limitations of claim 1, claim 13 also recites an

input/output port, a computer capable of interpreting and reporting the movement data based on

operational parameters, and a download device connected to the movement measuring device

and the computer for transmitting the movement data and operational parameters between the

movement measuring device and the computer for analysis, reporting and operation purposes.

Burdea shows in figure 1, network 22 is capable of transmitting the movement data and

operational parameters between the movement measuring device or sensing glove 30 and the

remote computer 20.  The remote workstation is used for receiving diagnostic information and

communicating rehabilitation instructions to the movement measuring device.  Burdea column 4,

lines 46-50:

> Remote workstation 20 can be coupled over network 22 to computer workstation
> 14.  Remote workstation 20 can be used at a medical specialist location for
> receiving diagnostic information and communicating rehabilitation instructions to
> computer workstation 14.

Broadly, the network 22 includes the input/output port and the network card is the

download device electronically connected to said movement measuring device 30 and a remote

computer 20 for transmitting and receiving information.  It would have been obvious to one of

ordinary skill in the art to further modify Gaudet to include an input/output port, computer and

download device as taught by Burdea so that a remote specialist can review historical data and

suggest new instructions.

**Regarding claim 20,** Gaudet teaches attaching a portable, self-contained movement

measuring device 20A, 20B to the body part, measuring data associated with the physical

movement where the networking processing circuitry 30 interprets the physical movement data

LT 0000295

based on user-defined operational parameters and a real-time clock, as taught by Burdea.  The

data is then stored in memory 28.

      **Regarding claims 21, 39,** Gaudet teaches "[e]ach of devices 20A-20C shown in FIG. 2

has a particular axis in which it senses acceleration, i.e., an acceleration sensing axis."  The

speed or acceleration is along this "acceleration sensing axis".  Gaudet was modified to associate

the date and time stamp taught by Burdea.

      **Regarding claim 35,** conventional memory includes nonvolatile memory such as battery

backed RAM or Electrically Erasable Programmable Read Only Memory (EEPROM).  Such is

well-known to the artisan of ordinary skill.  EEPROM is a well-known form of Read Only

Memory used to store small amounts of data that must be saved when power is removed.

Therefore, the memory continues to store movement data in response to battery power being lost

from said power source.

      **Regarding claims 36, 37,** Gaudet teaches in column 8, lines 54-59:

> Essentially, continuous-loop portion 101 continuously monitors the voltage across
> inputs 46 and 48 of micro-controller 40 to determine when negative and positive
> voltages differences (between inputs 46 and 48) in excess of predetermined
> thresholds occur. These negative and positive voltage differences are indicative,
> respectively, of the foot of a user impacting with and leaving the ground.

      In figure 5 of Gaudet, the output of accelerometer 32 is fed into the amplifier circuit 38

whose output is input to the microcontroller 40.  Therefore the microcontroller has a continuous-

loop portion 101 that continuously monitors the voltage across amplified signals from the

accelerometer.

      **Regarding claim 40,** Gaudet teaches in column 1, lines 7-10:

> It is known that useful information may be derived from the measurement of the
> "foot contact time" of a person in locomotion, wherein "foot contact time" refers

to the period of time that a foot of a person is in contact with the ground during a stride taken by the person. Once the foot contact time of a person is known, other information, such as rate of travel, distance traveled and ambulatory expended energy may be calculated based upon this measured foot contact time.

Additionally, Gaudet teaches in column 4, lines 29-34:

User interface 32 also is coupled to network processing circuitry 30 and permits a user, e.g., a walker, jogger or runner, to select a particular feature implemented by operation of a software routine, to input particular operating parameters, or to select particular outputs for display 26A and/or audio or vibrational indicator 26B.

When the user selects useful information that can be derived from the measurement of the "foot contact time", it is displayed from the output indicator which is based on movement data and the time stamp provided by Burdea.

**Regarding claims 45, 132,** Gaudet teaches the foot contact time/foot loft time generators 20 include a battery in column 6, lines 3-4.  One of ordinary skill in the art having battery operated devices would require some form of output to let the user know when the batteries are about to die.

**Regarding claims 46, 90,** Gaudet appears silent with regard to exactly what type of displays 26A, 56A are used.  Any conventional display would have been obvious to anyone of ordinary skill in the art.  LEDs and LCDs are well-known examples of displays to display information to the user.  Such would have been an obvious provision in the modification of Gaudet.

**Regarding claims 47, 91, 133,** the movement data stored in memory is configured to be downloaded to a computer.  Any data stored in memory can be downloaded to a computer.

**Regarding claims 48, 92, 93, 134,** as noted above, Burdea teaches remote workstation 20 can be coupled over network 22 to computer workstation 14.  Obviously, computer workstation

14 has software configured to communicate with external software in the remote workstation 20

wherein the external software is configured to present the downloaded movement data to the user

in the display.  Remote workstation 20 is for receiving performance data, analyze data and

communicate new rehabilitation instructions to computer workstation 14.

**Regarding claims 49, 135,** the external software is configured to run on the external

computer.

**Regarding claims 50,** the downloaded movement data is displayed by said external

software and can be analyzed by the user.

**Regarding claims 51, 136-140,** the external software is configured to interpret the

movement data and produce at least one report.  The purpose of the external computer is to

analyze the data and to communicate new instructions for the user to the local workstation 14.

Producing reports on the movement data including historical data would be obvious to one of

ordinary skill in the art in order to develop new instructions for the user.  Burdea teaches, column

4, lines 43-50, the workstation 14 is coupled to hard copy device 18 for producing a hard copy of

diagnostic information including rehabilitation progress charts.

**Regarding claims 52, 140,** the external software is configured to interpret the movement

data and produce at least one history report.  The purpose of the external computer is to analyze

the historical data.  Producing reports on the movement data including historical data would be

obvious to one of ordinary skill in the art in order to develop new instructions for the user.

**Regarding claims 53, 139,** the history report obviously includes dates and time of the

movement data.  This is how one can analyze the data in order to develop instructions to improve

the user's physical ability.

**Regarding claims 54, 140,** the external software is configured to allow the user to program additional reports and histories with respect to the movement data.

**Regarding claims 55, 141,** the movement data is configured to be downloaded to the computer via a wired connection.  Network 22 is a wired connection.

**Regarding claims 56, 142,** wireless connections are old and well known and an obvious equivalent means of communicating information.

**Regarding claims 109,** the prior art has already established the convention of using visual indicators to display different results.  Using a blinking indicator is old and well known and an obvious provision in the art of displaying information on a display screen in order to highlight one particular piece of data.  Where the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation. *In re Swain et al.*, 33 CCPA (Patents) 1250, 156 F.2d 239, 70 USPQ 412; *Minnesota Mining and Mfg. Co. v. Coe*, 69 App. D.C. 217, 99 F.2d 986, 38 USPQ 213; *Allen et al. v. Coe*, 77 App. D.C. 324, 135 F.2d 11, 57 USPQ 136.  Providing blinking lights to highlight a portion of the display is well within the realm of the artisan of ordinary skill in the art of displaying information on a display screen.

**Regarding claims 69, 112, 155,** Gaudet teaches the sensors 20A-20C are placed on the body.  The sensors can also be placed on the arm and record said movement data such as acceleration of the user.

**Regarding claims 70, 113, 156,** the movement sensor measures movement of the user's upper arm which also measures the acceleration of the user.

Application/Control Number: 90/013,201                                              Page 39
Art Unit: 3993

  **Regarding claims 71, 72, 114, 115, 157,** the distance traveled is measured by sensors 20A-20C which can be the walking distance, the jogging distance or the running distance.

  **Regarding claims 74, 75, 76,** as noted above, Burdea teaches the convention of associating a time/date stamp to movement data in order to record over time the performance of the user.  The time/date stamp would necessarily be retrieved from a real-time clock in order to associate an accurate time and date stamp.

  **Regarding claims 77,** the output indicator is configured to signal the occurrence of user-defined events such as pace of the user, rate of travel, distance traveled, etc.  The microprocessor retrieves the time/date stamp from the real-time clock based on the occurrence of the user defined events such as pace of the user, rate of travel, distanced traveled, etc.

  **Regarding claims 78, 121,** the microprocessor identifies the user-defined events based on interpretation of the movement data.  The microprocessor has to interpret the acceleration data in order to identify the pace of the user, rate of travel, distance traveled, etc.

  **Regarding claims 79, 122,** conventional memory includes nonvolatile memory such as battery backed RAM or Electrically Erasable Programmable Read Only Memory (EEPROM).  Such is well-known to the artisan of ordinary skill.  EEPROM is a well-known form of Read Only Memory used to store data that must be saved when power is removed.  Therefore, the memory continues to store movement data in response to battery power being lost from said power source.

  **Regarding claims 80, 81, 123, 124,** Gaudet teaches in column 8, lines 54-59:

    Essentially, continuous-loop portion 101 continuously monitors the voltage across inputs 46 and 48 of micro-controller 40 to determine when negative and positive voltages differences (between inputs 46 and 48) in excess of predetermined

Application/Control Number: 90/013,201                                      Page 40
Art Unit: 3993

thresholds occur. These negative and positive voltage differences are indicative, respectively, of the foot of a user impacting with and leaving the ground.

In figure 5 of Gaudet, the output of accelerometer 32 is fed into the amplifier circuit 38 whose output is input to the microcontroller 40. Therefore the microcontroller has a continuous-loop algorithm 101 that continuously monitors the voltage across amplified signals from the accelerometer.

**Regarding claims 82, 83, 84, 125, 126, 127,** the output indicator displays the occurrence of user-defined events such as pace of the user, rate of travel, distance traveled, etc. which is based on movement data. The display also displays the time/date stamp from the real-time clock based on the occurrence of the user defined events such as pace of the user, rate of travel, distanced traveled, etc.

**Regarding claim 89,** Gaudet teaches the foot contact time/foot loft time generators 20 include a battery in column 6, lines 3-4. One of ordinary skill in the art having battery operated devices would require some form of output to let the user know when the batteries are about to die.

**Regarding claims 94-97,** Gaudet teaches in column 4, lines 43-46:

> Workstation 14 can be coupled to hard copy device 18 for producing a hard copy of diagnostic information and rehabilitation instructions or rehabilitation progress charts. Remote workstation 20 can be coupled over network 22 to computer workstation 14. Remote workstation 20 can be used at a medical specialist location for receiving diagnostic information and communicating rehabilitation instructions to computer workstation 14.

Gaudet teaches producing hard copies of diagnostic information and rehabilitation instructions or rehabilitation progress charts. The diagnostic information and rehabilitation progress charts are reports of the physical activity. Progress charts are history reports. Progress

LT 0000301

Application/Control Number: 90/013,201                                                  Page 41
Art Unit: 3993

charts would necessarily include dates and times in order to compare past performances to

present performance.

      **Regarding claim 98,** Burdea teaches using a network 22 to communicate with a remote

computer 20.  A well-known means to communicate with a remote computer is a wired

connection such as Ethernet using a download device e.g., a network interface card.

      **Regarding claim 99,** wireless connection between computers is also obvious and well-

known means to communicate between computers.  Such would have been an obvious provision.


      **Claims 1, 13, 20 and 21, 30-158 are rejected under pre-AIA 35 U.S.C. 103(a) as**

**being unpatentable over Vock et al. in view of Burdea et al.**

      **Regarding claims 1, 13, 20, 21, 30-34,** Vock teaches a self-contained device 10

comprising a movement sensor 18, a power source 22, a microprocessor 12, a user input 14,

memory 13 and an output indicator 16 or display.

      The movement sensor 18 measures data associated with unrestrained movement in any

direction and generating signals indicative of said movement.  As shown in figure 2 the portable,

self-contained device 10 is mounted to the ski of the user.  The user can manipulate the skis in an

unrestrained movement in any direction.  The sensor 18 generates signals indicative of the

unrestrained movement.

      The microprocessor 12 is connected to the movement sensor 18 and the power source 22

and is capable of receiving, interpreting, storing and responding to the movement data based on

user-defined operational parameters.  Vock teaches in column 8, lines 3-22:

            Briefly, the invention shown in FIG. 1 operates as follows. The housing 24 is
            attached or mounted to a sporting device, such as a ski or mountain bike, such that

> a user of the ski or mountain bike can access the system 10. During motion of the
> ski or mountain bike, the speed sensor 18 sends velocity information (over
> communication line 11a) to the microprocessor subsystem 12; while the loft
> sensor 20 sends loft or "air" time information (over communication line 11b) to
> the microprocessor subsystem 12. The speed information and loft time
> information are processed by the microprocessor subsystem 12 to quantify actual
> speed, e.g., in miles per hour, and actual loft time, e.g., in seconds. The actual
> speed and loft time are thereafter stored in internal memory 13 until, at least, the
> speed and time data are accessed by a user of the system 10. Upon access through
> the user interface 14 (communicating with the microprocessor subsystem 12 via
> communication line 11c), a user of the system 10 can command the display of the
> speed and loft time data (sent across communication line 11d) on the display 16 in
> order to evaluate his or her performance in the sporting activity.

The user, through the user interface 14, commands the microprocessor 12 to display the speed and loft time data on the display 16 in order to evaluate his or her performance in the sporting activity.

Vock also teaches a clock element in column 3, lines 17-21:

> Preferably, the microprocessor subsystem of the invention includes a [clock]
> element, e.g., a 24-hour clock, for providing information convertible to an elapsed
> time. Accordingly, the subsystem can perform various calculations, e.g., dead
> time, on the data acquired by the apparatus for display to a user.

The clock of Vock appears to be used for calculating the various elapsed times however, providing a clock that can also associate dates as well as times to the movement data, the user can thereby collect data over days, weeks or months to track performance over time.  Such would have been an obvious provision to one of ordinary skill in the art as exemplified by Burdea.

Burdea is cited to teach the convention of storing data for statistical purposes by including a time stamp associated with the data thereby providing historical progress, see column 6, lines 30-33.  Any conventional means to tag a date and time stamp to the movement data for providing statistical information over time would have been obvious to one of ordinary skill.  A real-time clock is a well-known example of a means to provide a date and time stamp.  It would

have been obvious to one of ordinary skill in the art to modify Vock to include a time/date stamp

as taught by Burdea such as real-time clock in order to track the movement data over time.

Vock teaches many different types of speed and loft sensors for acquiring velocity and

loft or "air" time.  In one embodiment of column 21 the speed sensor is pressure based.  In this

embodiment the speed sensor of Vock measures the angle and velocity of the movement.  In

column 21, lines 47-59:

> Pressure sensors according to the invention convert air pressure to an analog
> voltage. When mounted to a snowboard 220, such as shown in FIGS. 15 and 15A,
> the pressure sensor 221 is used to determine the altitude of the snowboarder. This
> voltage is read by the microprocessor subsystem (e.g., the subsystem 12 of FIG.
> 1) at a fixed rate and differentiated to determine rate of descent or speed in the
> vertical direction. This may be converted to speed along the path by knowing the
> grade or angle of descent. Angle of descent is known by predetermining the
> geometry of the ski path or by the addition of a inclinometer 222 which gives a
> voltage dependent upon the angle, with respect to vertical, of the platform. The
> inclinometer 222 measures zero when the ski is traveling along a level path and
> the pressure sensor is showing a constant pressure. When the ski moves downhill,
> for example, the inclinometer 222 measures the angle of descent and the pressure
> sensor measures ever increasing pressure. Since the angle of descent is known, as
> is the rate of descent, the true speed is determined and displayed.

Vock teaches the speed sensor includes a pressure sensor 221 to determine the altitude of

the user and inclinometer 222 gives a voltage dependent upon the angle with respect to vertical.

The pressure sensor 221 determines the speed of vertical descent and the inclinometer 222

determines the angle.  Since the angle of descent is known, and the rate of descent is known, the

true speed is determined and displayed.

**Claim 13,** recites, in addition to the limitations of claim 1, an input/output port, a

computer capable of interpreting and reporting the movement data based on operational

parameters, and a download device connected to the movement measuring device and the

LT 0000304

Application/Control Number: 90/013,201                                    Page 44
Art Unit: 3993

computer for transmitting the movement data and operational parameters between the movement

measuring device and the computer for analysis, reporting and operation purposes.

Burdea shows in figure 1, network 22 is capable of transmitting the movement data and

operational parameters between the movement measuring device 14 and the remote computer 20.

The remote computer 20 is used for receiving diagnostic information and communicating

rehabilitation instructions to the movement measuring device.  Burdea column 4, lines 46-50:

> Remote workstation 20 can be coupled over network 22 to computer workstation
> 14.  Remote workstation 20 can be used at a medical specialist location for
> receiving diagnostic information and communicating rehabilitation instructions to
> computer workstation 14.

Broadly, the network 22 is the input/output port and the network interface card is the

download device electronically connected to the movement measuring device and a remote

computer for transmitting and receiving information.

It would have been obvious to one of ordinary skill in the art to further modify Vock to

use the input/output port of the network 22, and the network card as a download device and

remote computer as taught by Burdea for communicating movement data and operational

parameters with a person for analysis.

**Regarding claim 20,** Vock teaches attaching a portable, self-contained movement

measuring device 10 to the body part of the skis for measuring unrestrained movement in any

direction.  The sensors 221 and 222 measure data associated with the physical movement.  The

processor 12 interprets the physical movement data based on user-defined operational parameters

and with the real-time clock, as taught by Burdea above, storing the data in memory 13 for

storing historical data for a person to analyze.

Application/Control Number: 90/013,201                                              Page 45
Art Unit: 3993

**Regarding claim 21,** Vock teaches using pressure sensors 221 to determine speed and inclinometers 222 to determine the angle. The angle data would be taken along two orthogonal axes i.e., horizontal and vertical.

**Regarding claims 33, 34,** the microprocessor interprets the movement data based on the user-defined operational parameters to identify at least one user-defined event and retrieve the time stamp.

**Regarding claims 35, 79, 122, 132,** conventional memory includes nonvolatile memory such as battery backed RAM or Electrically Erasable Programmable Read Only Memory (EEPROM). Such is well-known to the artisan of ordinary skill. EEPROM is a well-known form of Read Only Memory used to store data that must be saved when power is removed. Therefore, the memory continues to store movement data in response to battery power being lost from said power source.

**Regarding claims 36, 37, 80, 81,** Vock teaches in column 26, lines 20-23:

> The meters 600 start transmitting data at the starting gate 610 and continue to give data to the base 608 during the whole run on the slope 612.

The meters 600 continue to transmit movement data from the starting gate during the whole run on the slope. If the meters 600 continue to transmit movement data, then the microprocessor continuously interprets the movement data received from the movement sensor.

**Regarding claims 38, 82,** meters 600 include an output indicator display 630 for displaying information based on the movement data.

**Regarding claims 39, 40, 83, 84,** the same display 630 would display at least one time stamp associated with the movement data. As set forth in claim 1, Burdea teaches including a time/date stamp for each piece of movement data.

Application/Control Number: 90/013,201                                    Page 46
Art Unit: 3993

**Regarding claims 41, 85,** Vock teaches in column 9, lines 30-33:

> A user presses the start/stop button 58 at the start of activity--such as at the start
> of skiing down a slope or biking down a trail--and presses the button 58 at the
> completion of activity to cease the acquisition of data

The threshold of the movement data is met when the user stops the acquisition of data.
That is the limit of data collected. The output indicator displays the information such as speed
and loft time.

Vock also teaches in column 9, lines 35-37:

> A user pressed the display-operate button 60 to activate the display 52 so that a
> user can view recorded information from the sporting activity on the display 52.

The output indicator displays information indicating that a threshold is met based on the
movement data such as peak speed and peak loft time.

**Regarding claims 42, 86,** Vock in column 2, line 66 to column 3, line 3, "a user interface
for providing external inputs to the apparatus, including one or more of the following: a start/stop
button for selectively starting and stopping the acquisition of data by the apparatus". The
threshold is met when the user stops the acquisition of data. That is the threshold of data
collected. The output indicator displays the information such as speed and loft time.

**Regarding claims 43, 44, 87, 88,** memory stores the information indicating the threshold
is met including the time/date stamp.

**Regarding claims 45, 89,** one of ordinary skill in the art having devices that include
batteries would require some form of output to let the user know when the batteries are about to
die.

**Regarding claims 46, 90,** the output indicator can include LCD and LED displays, see
Vock, column 2, lines 30-31.

LT 0000307

**Regarding claims 47, 91,** the movement data stored in memory is configured to be downloaded to a computer.

**Regarding claims 48, 92,** as noted above, Burdea teaches remote workstation 20 can be coupled over network 22 to computer workstation 14.  Obviously, computer workstation 14 has software configured to communicate with external software in the remote workstation 20 wherein the external software is configured to present the downloaded movement data to the user in the display.  It would have been obvious to download the physical activity from the local microprocessor to an external computer over a network as taught by Burdea in order to have the information saved at a different location so the information can be analyzed and processed for improving the user's performance.

**Regarding claim 49,** the external software is configured to run on the external computer.

**Regarding claims 50, 93,** the downloaded movement data is analyzed using the external software.  The information on the remote workstation can be analyzed by the user.

**Regarding claims 51, 94, 136, 137, 138, 139, 140,** the external software is configured to interpret the movement data and produce at least one report.  The purpose of the external computer is to analyze the data and to communicate new instructions for the user to the local workstation 14.  Producing reports on the movement data including historical data would be obvious to one of ordinary skill in the art in order to develop new instructions for the user. Burdea teaches, column 4, lines 43-50, the workstation 14 is coupled to hard copy device 18 for producing a hard copy of diagnostic information including rehabilitation progress charts.  The external computer would be better adapted to generate reports.  Such would have been an obvious provision in Vock.

**Regarding claims 52, 95, 140,** the external software is configured to interpret the movement data and produce at least one history report.  The purpose of the external computer is to analyze the historical data.  Producing reports on the movement data including historical data would be obvious to one of ordinary skill in the art in order to develop new instructions for the user.

**Regarding claims 53, 96,** the history report obviously includes dates and time of the movement data.  It is important to include the dates and times in order to develop a new training program for the user.

**Regarding claims 54, 97,** the external software is configured to allow the user to program additional reports and histories with respect to the movement data.

**Regarding claims 55, 98, 141,** the movement data is configured to be downloaded to the computer via a wired connection.  Network 22 is a wired connection.

**Regarding claims 56, 99, 142,** wireless connections are old and well known and an obvious equivalent means of communicating information over air waves.

**Regarding claim 57, 100, 131, 143,** the microprocessor records the time and date of the threshold being met.  The microprocessor records the time and date for all movement data.

**Regarding claim 58, 101, 144,** the output indicator provides a visual indicator to the user regarding the threshold being met.  Displays 16, 52, 162, 630 would display the speed of the user, distance traveled, etc. based on the microprocessor determining that the threshold is met.

**Regarding claim 59, 102, 145, 149,** the threshold is met when the user stops the acquisition of data.  This sets the threshold for the amount of movement data to collect.

Application/Control Number: 90/013,201                                          Page 49
Art Unit: 3993

     **Regarding claim 60, 103, 106, 130, 146,** memory stores a plurality of thresholds respectively corresponding to a plurality of notifications such as peak speed and peak loft time. Each time the user sets the threshold, a new set of notifications would be stored along with the thresholds.

     **Regarding claims 61, 104, 147,** each time the user sets the threshold, the plurality of user-defined events would be displayed with a corresponding notification.

     **Regarding claims 62, 105, 148,** the microprocessor interprets the movement data to determine whether a threshold is met such as peak speed or peak loft time.  The microprocessor compares one movement data for the speed and compares it to the next movement data for the speed to determine which is the maximum or peak speed value.  It continues to compare the current peak speed to the next movement data speed value until all of the movement data values has been compared.  The threshold has been met when the microprocessor has determined the threshold peak speed or loft time from all of the movement data during the physical activity.  The output indicator signals the occurrence of at least one of the user-defined events such as peak speed and peak loft based on the microprocessor determining that the maximum threshold is met.

     **Regarding claims 63, 129, 149,** at least one of the plurality of thresholds is set by the user when they stop collecting the movement data.  This sets the threshold for the amount of movement data to collect.

     **Regarding claims 64, 150,** the plurality of thresholds are different from each other because they are collected at different times or different physical activities plus.

     **Regarding claims 65, 107, 108, 151,** the plurality of notifications have different visual indicators because one measures speed and another measures loft time.

Application/Control Number: 90/013,201                                    Page 50
Art Unit: 3993

**Regarding claims 66, 109, 152,** the prior art has already established the convention of using visual indicators to display different results. Using a blinking indicator is old and well known and an obvious provision in the art of displaying information on a display screen in order to highlight one particular piece of data. Where the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation. *In re Swain et al.*, 33 CCPA (Patents) 1250, 156 F.2d 239, 70 USPQ 412; *Minnesota Mining and Mfg. Co. v. Coe*, 69 App. D.C. 217, 99 F.2d 986, 38 USPQ 213; *Allen et al. v. Coe*, 77 App. D.C. 324, 135 F.2d 11, 57 USPQ 136. Providing blinking lights to highlight a portion of the display is well within the realm of the artisan of ordinary skill in the art of displaying information on a display screen.

**Regarding claims 67, 68, 110, 111,** the microprocessor interprets the movement data to determine whether a threshold is met such as peak speed or peak loft time. The microprocessor compares one movement data for the speed and compares it to the speed of the next movement data to determine which is the maximum or peak speed value. It continues to compare the current peak speed to the next movement data speed value until all of the movement data values has been compared. The threshold has been met when the microprocessor has determined the threshold peak speed or loft time from all of the movement data during the physical activity. The output indicator signals the occurrence of at least one of the user-defined events such as peak speed and peak loft based on the microprocessor determining that the maximum threshold is met.

**Regarding claims 69, 112, 155,** Vock teaches in column 19, line 15 that the device can be mounted to the user. Therefore, the device is capable of being placed on the user's arm and still be able to perform the function of recording the speed of the user, for example.

   **Regarding claims 70, 72, 113, 155,** with the device attached to the user's arm the sensor

measures movement of the user's arm which will measure the speed of the user.

   **Regarding claims 71, 72, 114, 115, 157,** the movement sensor measures distance as well

as speed.  Vock teaches in column 20, lines 6-9, "one accelerometer can be used to detect speed;

which is the integral of the acceleration over time.  Further, a double integration over the same

period provides distance".  Therefore, the movement sensor of Vock would also measure

walking distance if one so chooses.

   **Regarding claims 73, 116-121, 123, 124, 134-138, 140, 158,** as noted above, Burdea

teaches including a time stamp for associating the time/date stamp with the movement data and

user-defined events for providing a time history of updates of the user performance for storing in

memory.  The microprocessor also stores in memory the date associated with the time stamp.

The microprocessor also continuously checks movement data received from the movement

sensor after the user presses the start button which is a user-defined operational parameter.  The

output indicator displays information based on the movement data indicating that a threshold has

been met such as the peak speed data or peak "air" time.  The movement data stored in memory

is configured to be downloaded to an external computer.  Any data stored in memory can be

downloaded to an external computer.  The device comprises software configured to

communicate with external software configured to run on a computer and present the

downloaded movement data.  The purpose of the external computer is to analyze the historical

data.  Producing reports on the movement data including historical data would be obvious to one

of ordinary skill in the art in order to develop new instructions for the user.  The memory stores a

plurality of thresholds on different days respectively corresponding to a plurality of notifications

Application/Control Number: 90/013,201                                      Page 52
Art Unit: 3993

such as peak speed and peak "air" time including the time/date of the movement data.  The

sensor can be mounted on the arm of the user and measures the movement of the user's arm to

determine the speed of the user.  A sensor on the arm of the user would be able to measure the

speed of the user.

**Regarding claims 74-78, 125-128, 139,** as noted above, Burdea teaches including a time

stamp for associating the time/date stamp with the movement data so as to provide a time history

of the user performance to be stored in memory.  The output indicator or displays 16, 52, 162,

630 are configured to signal the occurrence of user-defined events such as peak speed and peak

loft time which is based on movement data.  The microprocessor retrieves the time/date stamp

from the real-time clock based on the user-defined events.

**Regarding claim 133,** the physical movement data stored in memory is the interpreted

physical movement data such as speed and loft time, and the stored physical movement data is

configured to be downloaded to a computer as taught by Burdea.

**Regarding claim 153,** Vock teaches signaling the occurrence of a user-defined event

such as peak speed or peak loft time which is based on the threshold being met.

**Regarding claim 154,** Vock teaches using the output indicator to signal the occurrence

of a user-defined event such as peak speed and peak loft time which is based on determining of

whether the threshold is met.  The physical movement data is compared to the peak speed or

peak loft time which when all of the movement data has been processed, the threshold for the

peak speed and peak loft time has been met.

**Regarding claim 156,** Vock teaches measuring the movement data to determine the

speed or loft time of the portable, self-contained movement measuring device.

### Amendment in Reexamination Proceedings

In any reexamination proceeding under this chapter, the patent owner will be permitted to propose any amendment to his patent and a new claim or claims thereto, in order to distinguish the invention as claimed from the prior art cited under the provisions of section 301 of this title, or in response to a decision adverse to the patentability of a claim of a patent. See 35 U.S.C. 305. **For this reason, patent owner is notified that** *any* **amendment to a claim not involved in the reexamination proceeding may not be entered, and if entered, will bring that claim into the reexamination proceeding.** See 37 CFR 1.104.

Patent owner is also notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 C.F.R. 1.530(d)-(j), must be formally presented pursuant to 37 C.F.R. 1.52(a) and (b), and must contain any fees required by 37 C.F.R. 1.20(c). See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings. Also, in accordance with 37 CFR 1.530(e), each claim amendment must be accompanied by an explanation of the support in the disclosure of the patent for the amendment (i.e., support for the changes made in the claim(s), support for any insertions and deletions). The failure to submit an explanation will generally result in a noncompliant response since the failure to set forth the support in the disclosure goes to the merits of the case (see MPEP § 2266.01). Such an amendment submitted after final rejection will not be entered.

### Extensions of Time

Extensions of time under 37 C.F.R. 1.136(a) will not be permitted in these proceedings because the provisions of 37 C.F.R. 1.136 apply only to "an applicant" and not to parties in a reexamination proceedings.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 C.F.R. 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 C.F.R. 1.550(c).

### Notification of Concurrent Proceedings

The patent owner is reminded of the continuing responsibility under 37 C.F.R. 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the patent throughout the course of this reexamination proceeding. Likewise, if present, the third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

### Service of Papers

Application/Control Number: 90/013,201                                          Page 54
Art Unit: 3993

        After filing of a request for ex parte reexamination by a third party requester, any
document filed by either the patent owner or the third party requester must be served on the other
party (or parties where two or more third party requester proceedings are merged) in the
reexamination proceeding in the manner provided in 37 CFR 1.248.  The document must reflect
service or the document may be refused consideration by the Office.  See 37 CFR 1.550(f).


                                     *Conclusion*

        **All** correspondence relating to this *ex parte* reexamination proceeding should be directed:

By EFS:          Registered users may submit via the electronic filing system EFS-Web, at
                 https://efs.uspto.gov/efile/myportal/efs-registered.

By Mail to:      Mail Stop *Ex Parte* Reexam
                 Central Reexamination Unit
                 Commissioner for Patents
                 United States Patent & Trademark Office
                 P.O. Box 1450 Alexandria, VA 22313-1450

By FAX to:       (571) 273-9900
                 Central Reexamination Unit

By hand:         Customer Service Window
                 Randolph Building
                 401 Dulany Street
                 Alexandria, VA 22314

For EFS-Web transmissions, 37 CFR 1.8(a)(1)(i) (C) and (ii) states that correspondence
(except for a request for reexamination and a corrected or replacement request for
reexamination) will be considered timely filed if (a) it-is transmitted via the Office's
electronic- filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a
certificate of transmission for each piece of correspondence stating the date of
transmission, which is prior to the expiration of the set period of time in the Office action.

Any inquiry concerning this communication or earlier communications from the
Examiner, or as to the status of this proceeding, should be directed to the Central
Reexamination Unit at telephone number (571) 272-7705.

Telephone Number for reexamination inquiries:

Reexamination and Amendment Practice          (571) 272-7703
Central Reexam Unit (CRU)                     (571) 272-7705
Reexamination Facsimile Transmission No.      (571) 273-9900

LT 0000315

Case 1:21-cv-00385-JDW   Document 58-1   Filed 09/21/22   Page 260 of 478 PageID #: 889

/Danton  DeMille/
Patent Reexamination Specialist
Central Reexamination Unit 3993
(571) 272-4974
12 August 2014

Conferee:        /RMF/                        Conferee: /EDL/

LT 0000316

| *Notice of References Cited* | Application/Control No. 90/013,201 | Applicant(s)/Patent Under Reexamination 6059576 | |
|---|---|---|---|
| | Examiner DANTON DE MILLE | Art Unit 3993 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,429,140 | 07-1995 | Burdea et al. | 600/587 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20140509

LT 0000317

Receipt date: 04/04/2014                                                                   90013201 - GAU: 3993

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | Not Yet Assigned |
| Confirmation Number | Not Yet Assigned |
| Filing Date | April 4, 2014 |
| First Named Inventor | Theodore L. Brann |
| Art Unit | Not Yet Assigned |
| Examiner Name | Not Yet Assigned |
| Attorney Docket Number | A209779 |

### U.S. PATENTS

| Examiner Initials | Cite No | Patent Number | Kind Code | Issue Date | Name of Patentee or Applicant of cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1. | 5636146 | | 1997-06-03 | Flentov et al. | |
| | 2. | 6018705 | | 2000-01-25 | Gaudet et al. | |
| | 3. | 6266623 | B1 | 2001-07-24 | Vock et al. | |

### U.S. PATENT APPLICATION PUBLICATIONS

| Examiner Initials | Cite No | Publication Number | Kind Code | Publication Date | Name of Patentee or Applicant of cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No | Foreign Document Number | Country Code | Kind Code | Publication Date | Name of Patentee or Applicant of cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

### NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city, and/or country where published. | T |
|---|---|---|---|
| | | | |

### EXAMINER SIGNATURE

| Examiner Signature | /Danton DeMille/ (05/20/2014) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /DD/

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

1 See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. 2 Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). 3 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 4 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 5 Applicant is to place a check mark here if English language translation is attached.

[Page 1 of 2]                                                                          LT 0000318

Uᴎɪᴛᴇᴅ Sᴛᴀᴛᴇꜱ Pᴀᴛᴇᴎᴛ ᴀᴎᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/013,201 | 04/04/2014 | 6059576 | A209779 | 9930 |

23373        7590        09/12/2014
SUGHRUE MION, PLLC
2100 PENNSYLVANIA AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20037

| EXAMINER |
|---|
| DEMILLE, DANTON D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/12/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

LT 0000319

| ***Ex Parte Reexamination Interview Summary*** | Control No.<br>90/013,201 | Patent Under Reexamination<br>6059576 |
|---|---|---|
| | Examiner<br>DANTON DE MILLE | Art Unit<br>3993 |

All participants (USPTO personnel, patent owner, patent owner's representative):

| (1) _Danton De Mille_ | (4) _Quadeer Ahmed_ |
|---|---|
| (2) _Eileen Lillis_ | (5) _Carl Pellegrini_ |
| (3) _Robert Fetsuga_ | (6) _William Mandir_ |

Date of Interview: _03 September 2014_

Type :  a)☐  Telephonic   b)☐  Video Conference
c)☒ Personal (copy given to:  1)☐ patent owner   2)☐ patent owner's representative)

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☒  No.
If Yes, brief description: _____

Agreement with respect to the claims  f)☐  was reached.   g)☒  was not reached.   h)☐  N/A.
Any other agreement(s) are set forth below under "Description of the general nature of what was agreed to…"

Claim(s) discussed: _32,33,60,76,77,103,119,120 and 146_.

Identification of prior art discussed: _art of record_.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
_See Continuation Sheet._

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims patentable, if available, must be attached.  Also, where no copy of the amendments that would render the claims patentable is available, a summary thereof must be attached.)

A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION MUST INCLUDE PATENT OWNER'S STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  (See MPEP § 2281). IF A RESPONSE TO THE LAST OFFICE ACTION HAS ALREADY BEEN FILED, THEN PATENT OWNER IS GIVEN **ONE MONTH** FROM THIS INTERVIEW DATE TO PROVIDE THE MANDATORY STATEMENT OF THE SUBSTANCE OF THE INTERVIEW (37 CFR 1.560(b)). THE REQUIREMENT FOR PATENT OWNER'S STATEMENT CAN NOT BE WAIVED. **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

| /Danton De Mille/<br>Primary Examiner, Art Unit 3993 | /RMF/ | /EDL/ |
|---|---|---|

cc: Requester (if third party requester)

LT 0000320

*Ex Parte* Reexamination Interview Summary Paper No. 20140903

LT 0000321

**Continuation Sheet (PTOL-474)**                                    **Reexam Control No.  90/013,201**

Continuation of Description of the general nature of what was agreed to if an agreement was reached, or any other comments:

Patent owner argued that the time stamp taught by Burdea is related to the update time at which point the patient data is updated at the database 114.  Burdea's time stamp is associated with the entire physical therapy session when stored in database 114 and not when the movement data is stored.  The instant invention's time stamp is related to the movement time at which the movement sensor senses the movement.

The Office's position is that the claims recite the time stamp is associated with the received movement data which is equivalent to the loft or "air" time recorded in Flentov.  Flentov's invention is designed to record a plurality of movement data such as loft or "air" time which is recorded and stored. Burdea teaches storing patient data in database 114. Flentov's patent data would be the "air" time recorded and stored with the time stamp in order to provide a time history of patent information.

Discussed changes to better define the time stamp is associated with the time the user defined event occurs.  Also discussed changes to better define the difference between the threshold and user defined events.  No agreement was reached.  Formal amendment will follow.

LT 0000322

# FAX COVER SHEET

| TO | (Manual Fax Entry) |
| --- | --- |
| COMPANY | Fax Recipient |
| FAX NUMBER | 15712734974 |
| FROM | SUGHRUE MION |
| DATE | 2014-08-29 17:51:08 EDT |
| RE | [9253] Agenda for Personal Interview (Control No. 90/013,201; |
| Attorney Docket: A209779) | |

## COVER MESSAGE

Dear Examiner DeMille,

Please find attached the agenda for the personal interview scheduled for September 3, 2014 at 1pm.

Looking forward to the meeting,

Best Regards,
Quadeer A. Ahmed

Sughrue Mion, PLLC | ,   Office: | Fax:

Warning: In rare cases, our e-mail filtering software may eliminate legitimate email from clients unnoticed. Therefore, if your mail contains important instructions, please make sure that we acknowledge receipt of those instructions.

This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail to coordinate retrieval or deletion of this message. Thank you.

LT 0000323

WWW.EFAX.COM

**Control No.: 90/013,201**    *FOR DISCUSSION ONLY, DO NOT ENTER*
**Atty. Docket No.: A209779**

# Agenda for the Personal Interview

Date / time of Interview

September 3, 2014 at 1 PM

Scheduled Participants

Applicant's representative(s):    William H. Mandir, Reg. No. 32,156
                                  Carl J. Pellegrini, Reg. No. 40,766
                                  Chandran B. Iyer, Reg, No, 48,434
                                  Quadeer A. Ahmed, Reg. No. 60,835
                                  (202) 857-3207 (voice - Quadeer)

USPTO:                            Examiner Danton DeMille
                                  (571) 272-4974 (voice)
                                  (571) 273-4974 (fax)

**It is Applicant's intention that such an interview will lead to an agreeable resolution of the rejected claims.**

Claims 1, 13, 20, 21, and 30-158 are all the claims subject to this reexamination. Claims 1, 13, and 20 are the independent claims.

During the interview, Applicant's representatives would appreciate the opportunity to primarily highlight the differences between some of the dependent claims and the cited references, as briefly discussed below.

Proposed amendments to overcome the rejections under 35 U.S.C. 112, second paragraph will also be discussed.

## I. Burdea does not cure the deficient teachings of Flentov, Gaudet, and Vock with respect to the dependent claims

Burdea is cited for allegedly curing the deficient teachings of Flentov, Gaudet, and Vock with respect to many of the dependent claims 30-158. However, as discussed below in the context of some representative dependent claims, the dependent claims are patentable over the asserted combination of Burdea with Flentov, Gaudet, or Vock.

### Claims 32, 76, and 119

Claims 32, 76, and 119 recite, in some variation, that the microprocessor retrieves said at least one time stamp from said real-time clock and associates the retrieved time stamp with said received movement data.

Claim 32 appears to be addressed at page 17 of the Office Action, but it is unclear here how the reference(s) are being applied to claim 32.

Page 1 of 5

**LT 0000324**

**Control No.: 90/013,201**                                    *FOR DISCUSSION ONLY, DONOTENTER*
**Atty. Docket No.: A209779**

Based on the discussion at page 15 of the Office Action, it appears that Burdea's col. 6, lines 30-33 are relied upon to teach the above-noted features. It is believed, however, that the Examiner is misinterpreting and/or misapplying the teachings of Burdea in this regard.

For instance, the cited portion of Burdea discloses that "[p]atient data can be stored in database 114 for statistical purposes. Database 114 can include a time stamp for providing a time history of updates of the patient information."

That is, the time stamp described in Burdea is related to the <u>update time</u> at which the patient data (allegedly the claimed movement data) is updated at the database 114.

On the other hand, in the claimed invention, the time stamp is related to the <u>movement time</u> at which the movement sensor senses the movement.

For example, as described at col. 6, lines 15-19 of the subject patent, "[a] significant feature of the device 12 of the present invention is that it gives instant information to the wearer at the moment of incorrect movement and also records the information for future reference and analysis. The device 12 monitors a wide variety of "events" and records each event with a date/time stamp…"

As such, rather than maintaining time stamps with respect to the times at which movement data is updated in a database (as disclosed by Burdea), in the claimed invention, the microprocessor (which is included in the claimed portable, self-contained device) retrieves at least one time stamp from the real-time clock and associates the retrieved time stamp with the received movement data.

### Claims 33, 77, and 120

Claims 33, 77, and 120 recite, in some variation, that the microprocessor retrieves at least one time stamp from the real-time clock based on the occurrence of at least one of the user-defined events.

For example, as described at col. 6, lines 19-40, "[m]any different types of "events" may be defined to be monitored by the device 12. As previously stated, any movement which surpasses any identified angle limit of movement (based on the specific physical task being accomplished and the range of motion needed to execute the task properly) is a standard recordable event. In addition, the device will record when no discernable movement has occurred for a predetermined amount of time (idle function), when the wearer has pressed the MUTE switch in response to an alarm (MUTE function), when the wearer's speed of movement exceeds a predefined speed (quickness function),…"

So in the claimed invention, the occurrence of a user-defined event triggers the microprocessor to retrieve the time stamp from the real-time clock.

It is unclear from the Office Action how the Examiner intends to apply the reference(s) to these claim features (e.g., see page 17 of Office Action).

It appears that the Examiner is referring to "the speed and loft time" of Flentov as the user-defined events. However, the Examiner already seems to acknowledge that Flentov does not teach retrieval of any time stamps in relation to the movement data.

Moreover, it has been shown above that Burdea also does not teach this feature.

As such, it is believed that claims 33, 77, and 120 are patentable over the cited references.

**Control No.: 90/013,201**

*FOR DISCUSSION ONLY, DO NOT ENTER*

**Atty. Docket No.: A209779**

Claims 60, 103, and 146

Claims 60, 103, and 146 recite, in some variation, that the memory stores a plurality of thresholds respectively corresponding to a plurality of notifications.

For example, as disclosed with respect to a non-limiting embodiment at col. 7, lines 5-43 of the subject patent:

"…The user may program the microprocessor 32 with an array of functions for the device 12 to perform. Primary among these is the ability to change the angular levels at which notices will be generated in order to fulfill particular application needs. In this way, the user may choose the angular positions at which he wants to be warned when they are exceeded. In the preferred device, up to three angle limits may be monitored by the device; however, any number of angles may be tracked depending upon the application.....

As mentioned above, once a wearer of the device 12 exceeds the first defined angle limit, a notice for that limit is given to the wearer. The notice may be a combination of a visual warning, a tactile warning, and/or an audible warning. The microprocessor 32 also stores the specific angle limit which was exceeded along with the date/time stamp. Upon exceeding the second defined angle, the wearer is issued a second notice which may be the same as or different from the first notice. These different notice characteristics may include a change in pitch for audible alarms, a difference in duration for tactile alarms, and/or a blinking, different colored, or other visual warning."

So an example of a threshold is an angular level/angle limit and an example of a corresponding notification is a visual warning. As discussed in the above-noted portion of the patent, multiple angle limits can be stored and upon exceeding each angle limit, the same or different notices can be given to the user (*see also*: claims 64 and 65).

At pages 21-22, it is asserted that **Flentov** discloses this feature because allegedly, "[w]hen the user starts and stops the collection of movement data, the user has set the threshold amount of movement data to collect to determine the total number of jumps during that period of time. The peak "air" time and the peak speed are additional thresholds that are saved in memory. Each of these threshold data points correspond to a plurality of notifications on the display."

However, it is unclear how the user's starting and stopping of the movement data collection corresponds to the plurality of thresholds stored in memory. Also, the peak "air" time and peak speed in Flentov are naturally not stored in advance since they are only obtained after analyzing the data collected from the sensor.

The start and stop signals or the peak air time/peak speed are not compatible with the plain and ordinary meaning of a threshold (e.g., see claim 61, which recites that "*when one of the plurality of thresholds is met*, the output indicator displays a corresponding one of the notifications").

Therefore, Flentov does not disclose storing a plurality of thresholds, let alone storing a plurality of thresholds respectively corresponding to a plurality of notifications.

Page 3 of 5

**LT 0000326**

**Control No.: 90/013,201**                            *FOR DISCUSSION ONLY, DO NOT ENTER*
**Atty. Docket No.: A209779**

   At page 49, it is asserted that **Vock** discloses storing "a plurality of thresholds respectively corresponding to a plurality of notifications such as peak speed and peak loft time. Each time the user sets the threshold, a new set of notifications would be stored along with the thresholds."

   As noted above with respect to Flentov, the peak speed and peak loft time are naturally not stored in advance. Nor are they consistent with the plain and ordinary meaning of the term "threshold".

   Therefore, Vock does not disclose storing a plurality of thresholds, let alone storing a plurality of thresholds respectively corresponding to a plurality of notifications.


**II.  Proposed amendments in relation to rejections under 35 U.S.C. 112**

   As shown in the attached Appendix, amendments are proposed to claims 93, 123, and 149 to address the rejections under 35 U.S.C. 112, second paragraph.

   Further, with respect to claim 149, it is noted that this claim is directed to a method and thus it does not seem necessary to specify *what* is "receiving at least one of the plurality of the thresholds from a user." The Examiner questions "[i]s it the memory, the microprocessor, the external computer, etc.?" (Office Action, page 3).

   It is noted, however, that the claims from which claim 149 depends do not introduce any of these components since these are method claims.

   Nonetheless, to expedite prosecution, the proposed amendment to claim 149 recites "receiving, via the portable, self-contained movement measuring device, at least one of..."


**III.  Conclusion**

   In view of the foregoing, it is believed that the proposed arguments and amendments discussed above would overcome the relevant rejections of record and thus would place the subject claims in allowable condition.

   However, if the Examiners have any additional suggestions for further clarifying the claimed subject matter and to advance prosecution, Applicant's representatives would welcome such suggestions during the personal interview.

**Control No.: 90/013,201**
**Atty. Docket No.: A209779**                    *FOR DISCUSSION ONLY, DONOTENTER*

# **APPENDIX**

## PROPOSED AMENDMENTS TO THE CLAIMS

93. (PROPOSED AMENDMENT):  The system of claim 92, wherein said downloaded movement data is configured to be analyzed by said user via said program.

123.  (PROPOSED AMENDMENT):  The method of claim 20, further comprising:

continuously monitoring for said physical movement using a movement sensor of the portable, self-contained movement measuring device.

149.  (PROPOSED AMENDMENT):  The method of claim 146, further comprising:

receiving, via the portable, self-contained movement measuring device, at least one of the plurality of the thresholds from a user.

**LT 0000328**

PATENT APPLICATION

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of                                           Docket No:  A209779

Theodore L. Brann

Appln. No.:  90/013,201                               Group Art Unit:  3993

Confirmation No.: 9930                              Examiner:  DEMILLE, DANTON D

Filed:  April 4, 2014

For:  TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER
        MOVEMENT DURING PHYSICAL ACTIVITY

### STATEMENT OF SUBSTANCE OF INTERVIEW

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Please review and enter the following remarks summarizing the personal interview

conducted on September 3, 2014.

As an initial matter, Applicant's representatives thank the Examiners for the courtesies

extended during the personal interview.

During the interview, differences between dependent claims 30, 32, 33, 60, 61, and 67

and the cited references (primarily Flentov, Vock, and Burdea) were discussed.

The Examiner's Interview Summary dated September 12, 2014 additionally lists claims

76, 77, 103, 119, 120, and 146 as being discussed during the interview.  It is noted that these

claims recite features similar to *at least* some of the dependent claims listed above.

With respect to the "time stamp" feature set forth in claims 30, 32, and 33, the Examiners

indicated that the claims, as currently drafted, may not reflect the feature as intended to be

STATEMENT OF SUBSTANCE OF INTERVIEW                Attorney Docket No.:  A209779
Appln. No.:  90/013,201

interpreted by the Patent Owner.  Some proposed clarifying amendments were discussed in this regard.

There was a similar discussion regarding claims 60, 61, and 67 relating to the storage of a plurality of thresholds corresponding to a plurality of notifications, and how the threshold relates to a user-defined event in the claims.  The Examiners thought that the claims broadly read on a certain interpretation of the cited reference(s).  Again, some possibly clarifying amendments were generally discussed that would preclude the claims from being read on the cited reference(s).

The Examiners agreed that if a formal response is filed with clarifying amendments along the lines discussed during the interview, the Examiners would reconsider their current position regarding the combination of Flentov/Vock with Burdea.

It is respectfully submitted that the instant STATEMENT OF SUBSTANCE OF INTERVIEW complies with the requirements of 37 C.F.R. §§1.2 and 1.133 and MEP §713.04.

**It is believed that no petition or fee is required.**  However, if the USPTO deems otherwise, Patent Owner hereby petitions for any extension of time which may be required to maintain the pendency of this case, and any required fee, except for the Issue Fee, for such extension is to be charged to Deposit Account No. 19-4880.

Respectfully submitted,

/Abdul-Quadeer Ahmed/

SUGHRUE MION, PLLC                    Quadeer A. Ahmed
Telephone:  202.293.7060              Registration No. 60,835
Facsimile:  202.293.7860

WASHINGTON OFFICE
23373
CUSTOMER NUMBER

Date:  October 3, 2014

2

LT 0000330

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 20321319 |
| **Application Number:** | 90013201 |
| **International Application Number:** | |
| **Confirmation Number:** | 9930 |
| **Title of Invention:** | TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY |
| **First Named Inventor/Applicant Name:** | 6059576 |
| **Customer Number:** | 23373 |
| **Filer:** | Quadeer A. Ahmed/Shanele Jones |
| **Filer Authorized By:** | Quadeer A. Ahmed |
| **Attorney Docket Number:** | A209779 |
| **Receipt Date:** | 03-OCT-2014 |
| **Filing Date:** | 04-APR-2014 |
| **Time Stamp:** | 12:10:05 |
| **Application Type:** | Reexam (Patent Owner) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Applicant summary of interview with examiner | A209779StatementofSubstanceofInterviewasfiled.pdf | 22333 7e7facfa626ee54dd3a4a1cfc9e37451ff4afca7 | no | 2 |

| | |
|---|---|
| Warnings: | |
| Information: | LT 0000331 |

**Total Files Size (in bytes):**                                    22333

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

LT 0000332

REEXAMINATION

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| *In re* Patent of | Docket No:  A209779 |
| Theodore L. Brann | |
| Control No.:  90/013,201 | Group Art Unit:  3993 |
| Confirmation No.: 9930 | Examiner:  DEMILLE, DANTON D |
| Filed:  April 4, 2014 | |

For:  TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER
MOVEMENT DURING PHYSICAL ACTIVITY

## RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION

**MAIL STOP *Ex Parte* Reexam**
Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

In response to the Office Action dated August 13, 2014, Patent Owner respectfully
requests reconsideration of this reexamination application in light of the following amendments
and remarks.

It is noted that October 13, 2014 was a federal holiday and thus the USPTO was closed.
Accordingly, this Response is being timely filed on October 14, 2014, within the shortened
statutory period for responding within two months from the mailing date of August 13, 2014.

## TABLE OF CONTENTS

I. AMENDMENTS TO THE CLAIMS .................................................................................2

II. STATUS OF THE CLAIMS AND EXEMPLARY SUPPORT FOR CLAIM
AMENDMENTS ...........................................................................................................41

III. REMARKS ....................................................................................................................47

LT 0000333

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

## I.     AMENDMENTS TO THE CLAIMS

**This listing of claims will replace all prior versions and listings of claims in the**

**proceeding:**

**LISTING OF CLAIMS:**

1. (currently amended):  A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising:

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters, detecting a first user-defined event based on at least one of the user-defined operational parameters and the movement data, and storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the first user-defined event occurred;

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data; and

an output indicator connected to said microprocessor for signaling the occurrence of user-defined events;

wherein said movement sensor measures the angle and velocity of said movement.

2

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

2. (original):  The device of claim 1 further comprising at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters to and from a computer.

3. (original):  The device of claim 1 wherein said device is compact and weighs less than one pound.

4. (original):  The device of claim 1 wherein said movement sensor comprises at least one accelerometer.

5. (original):  The device of claim 1 wherein said movement sensor can simultaneously detect real time movement along at least two orthogonal axes.

6. (original):  The device of claim 1 wherein said movement sensor is housed separately from said microprocessor.

7. (original):  The device of claim 1 wherein said monitored body part movement is torso or limb movement.

8. (original):  The device of claim 1 wherein said data measured by said movement sensor includes the distance of said movement.

3

LT 0000335

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

9. (original):  The device of claim 1 wherein said output indicator is visual.

10. (original):  The device of claim 1 wherein said output indicator is audible.

11. (original):  The device of claim 1 wherein said output indicator is tactile.

12. (original):  The device of claim 1 wherein said user input is a switch.

13. (currently amended):  A system to aid in training and safety during physical activity, said system comprising

a portable, self-contained movement measuring device, said movement measuring device further comprising

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters, detecting a first user-defined event based on at least one of the user-defined operational parameters and the movement data, and storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the first user-defined event occurred;

LT 0000336

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data;

at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters; and

an output indicator connected to said microprocessor;

a computer running a program capable of interpreting and reporting said movement data based on said operational parameters; and

a download device electronically connected to said movement measuring device and said computer for transmitting said movement data and operational parameters between said movement measuring device and said computer for analysis, reporting and operation purposes;

wherein said movement sensor measures the angle and velocity of said movement.


14. (original):  The system of claim 13 wherein said computer is a personal computer.


15. (original):  The system of claim 13 wherein said computer is connected to a network of other computers.


16. (original):  The system of claim 13 wherein said download device is a physical docking station.

5

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

17. (original):  The system of claim 13 wherein said download device is a wireless device.

18. (original):  The system of claim 17 wherein said wireless device uses radio frequency.

19. (original):  The system of claim 17 wherein said wireless device uses infrared light.

20. (currently amended):  A method to monitor physical movement of a body part comprising the steps of:

attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement in any direction;

measuring data associated with said physical movement;

interpreting, using a microprocessor included in the portable, self-contained movement measuring device, said physical movement data based on user-defined operational parameters and a real-time clock; [and]

storing said data in memory;

detecting, using the microprocessor, a first user-defined event based on at least one of the user-defined operational parameters and the movement data; and

storing, in said memory, first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the first user-defined event occurred.

6

LT 0000338

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

21. (original):  The method of claim 20 wherein said physical movement data includes velocity data of said movement, angle measurement data taken along at least two orthogonal axes, and related date and time data.

22. (original):  The method of claim 21 further comprising the step of defining said parameters for a specific physical movement prior to said interpreting step.

23. (original):  The method of claim 21 further comprising the step of downloading said data from said movement measuring device to a computer for reporting and analysis purposes.

24. (original):  The method of claim 21 wherein said interpreting step comprises teaching an individual how to properly perform said physical movement.

25. (original):  The method of claim 20 wherein said movement measuring device is an accelerometer.

26. (original):  The method of claim 20 further comprising the step of providing real time feedback regarding said movement.

27. (original):  The method of claim 26 wherein said physical movement is physical labor.

LT 0000339

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

28. (original):  The method of claim 26 wherein said physical movement is an exercise related to medical treatment.


29. (original):  The method of claim 26 wherein said physical movement is an exercise to improve technique related to an athletic skill.

8

LT 0000340

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

**Cancel claim 30.**

31. (new):  The device of claim 1, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information.

32. (new):  The device of claim 1, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock and associate the retrieved first time stamp information with said first user-defined event.

33. (new):  The device of claim 32, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock based on the detection of the user-defined event.

**Cancel claim 34.**

35. (new):  The device of claim 1, wherein said memory is configured to continue to store said movement data in response to battery power being lost from said power source.

36. (new):  The device of claim 1, wherein said movement sensor is configured to continuously check for said movement.

LT 0000341

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

37. (new):  The device of claim 36, wherein said microprocessor is configured to continuously interpret, based on the user-defined operational parameters, said movement data received from said movement sensor.

38. (new):  The device of claim 1, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event.

39. (new):  The device of claim 38, wherein said output indicator is configured to display said information signaling the occurrence of the first user-defined event based on said first time stamp information.

40. (new):  The device of claim 1, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

41. (new):  The device of claim 1, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.

LT 0000342

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

42. (new):  The device of claim 41, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.

43. (new):  The device of claim 41, wherein said memory is configured to store said first event information indicating that the predetermined threshold is met.

44. (new):  The device of claim 43, wherein said memory is configured to store the first time stamp information in association with said first event information.

45. (new):  The device of claim 1, wherein said output indicator is configured to indicate a low battery condition of the device.

46. (new):  The device of claim 9, wherein said output indicator is selected from the group consisting of single monochromatic LEDs, multiple colored lights, and liquid crystal displays.

47. (new):  The device of claim 1, wherein said movement data stored in the memory is configured to be downloaded to a computer.

48.  (new):  The device of claim 47, further comprising:

11

LT 0000343

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

software configured to communicate with external software, wherein the external

software is configured to present the downloaded movement data to the user.

49.  (new):  The device of claim 48, wherein said external software is configured to run

on the computer.

50. (new):  The device of claim 49, wherein said downloaded movement data is

configured to be analyzed by said user via said external software.

51. (new):  The device of claim 48, wherein said external software is configured to

interpret said movement data and produce at least one report.

52. (new):  The device of claim 48, wherein said external software is configured to

interpret said movement data and produce at least one history report.

53. (new):  The device of claim 52, wherein said at least one history report includes dates

and times of said movement data.

54. (new):  The device of claim 48, wherein said external software is configured to allow

the user to program additional reports and histories with respect to said movement data of said

user.

LT 0000344

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

55. (new):  The device of claim 47, wherein said movement data is configured to be downloaded to said computer via a wired connection.

56.  (new):  The device of claim 47, wherein said movement data is configured to be downloaded to said computer via a wireless connection.

**Cancel claim 57.**

58.  (new):  The device of claim 41, wherein the output indicator is configured to provide a visual indicator to the user regarding the predetermined threshold being reached.

**Cancel claim 59.**

60. (new):   The device of claim 1, wherein the memory is configured to store  the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred.

61. (new):  The device of claim 60, wherein when the microprocessor detects that  one of the user-defined events occurred based on the movement data reaching one of the plurality of the

LT 0000345

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

thresholds, the output indicator displays a corresponding one of the notifications indicating that one of the user-defined events has occurred.

**Cancel claim 62.**

**Cancel claim 63.**

64.  (new):  The device of claim 60, wherein the plurality of thresholds are different from each other.

65.  (new):  The device of claim 60, wherein the plurality of notifications are different visual indicators.

66. (new):  The device of claim 65, wherein at least one of the visual indicators includes a blinking indicator.

**Cancel claim 67.**

68.  (new):  The device of claim 41, wherein said microprocessor is configured to detect occurrence of the first user-defined event by comparing said movement data to said predetermined threshold.

LT 0000346

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

69. (new):  The device of claim 1, wherein said device is configured to be placed on said user's arm to monitor and record said movement data.

70.  (new):  The device of claim 69, wherein said movement sensor is configured to measure movement of said user's arm.

71. (new):  The device of claim 1, wherein said movement sensor is configured to measure a walking distance.

72. (new):  The device of claim 71, wherein said device is configured to be wearable by the user, and said movement sensor is configured to measure said walking distance of said user.

73. (new):  The device of claim 1, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information,

wherein said movement sensor is configured to continuously check for said movement,

wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information,

wherein the device further comprises software configured to communicate with external software configured to run on a computer and present the downloaded movement data,

wherein said external software is configured to produce at least one report based on said movement data,

15

LT 0000347

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

wherein the memory is configured to store  the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred,

wherein said device is configured to be placed on said user's arm to monitor and record said movement data,

wherein said movement sensor is configured to measure movement of said user's arm.


**Cancel claim 74.**


75. (new):  The system of claim 13, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information.


76. (new):  The system of claim 13, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock and associate the retrieved first time stamp information with said first user-defined event.


77. (new):  The system of claim 76, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock based on the detection of the first user-defined event.

LT 0000348

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

**Cancel claim 78.**

79. (new):  The system of claim 13, wherein said memory is configured to continue to store said movement data in response to battery power being lost from said power source.

80. (new):  The system of claim 13, wherein said movement sensor is configured to constantly checks for said movement.

81. (new):  The system of claim 80, wherein said microprocessor is configured to continuously interpret, based on the user-defined operational parameters, said movement data received from said movement sensor.

82. (new):  The system of claim 13, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event.

83. (new):  The system of claim 82, wherein said output indicator is configured to display said information signaling the occurrence of the first user-defined event based on said first time stamp information.

LT 0000349

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

84. (new):  The system of claim 13, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

85. (new):  The system of claim 13, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.

86. (new):  The system of claim 85, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.

87. (new):  The system of claim 85, wherein said memory is configured to store said first event information indicating that the predetermined threshold is met.

88. (new):  The system of claim 87, wherein said memory is configured to store the first time stamp information in association with said first event information.

89. (new):  The system of claim 13, wherein said output indicator is configured to indicate a low battery condition of the device.

LT 0000350

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

90. (new):  The system of claim 13, wherein said output indicator is visual, and said output indicator is selected from the group consisting of single monochromatic LEDs, multiple colored lights, and liquid crystal displays.

91. (new):  The system of claim 13, wherein said movement data stored in the memory is configured to be downloaded to the computer.

92. (new):  The system of claim 91, wherein the portable, self-contained movement measuring device further comprises:
      software configured to communicate with the program running on the computer, wherein the program is configured to present the downloaded movement data to the user.

93. (new):  The system of claim 92, wherein said downloaded movement data is configured to be analyzed by said user via said program.

94. (new):  The system of claim 92, wherein said program is configured to interpret said movement data and produce at least one report.

95. (new):  The system of claim 92, wherein said program is configured to interpret said movement data and produce at least one history report.

LT 0000351

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

96. (new):  The system of claim 95, wherein said at least one history report includes dates and times of said movement data.

97. (new):  The system of claim 92, wherein said program is configured to allow the user to program additional reports and histories with respect to said movement data of said user.

98. (new):  The system of claim 91, wherein said movement data is configured to be downloaded to said computer, using the download device, via a wired connection.

99.  (new):  The system of claim 91, wherein said movement data is configured to be downloaded to said computer, using the download device, via a wireless connection.

**Cancel claim 100.**

101.  (new):  The system of claim 85, wherein the output indicator is configured to provide a visual indicator to the user regarding the predetermined threshold being reached.

**Cancel claim 102.**

103. (new):  The system of claim 13, wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the

20

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of a plurality of user-defined events occurred.

104. (new):  The system of claim 103, wherein when the microprocessor detects that one of the user-defined events occurred based on the movement data reaching one of the plurality of the thresholds, the output indicator displays a corresponding one of the notifications indicating that one of the user-defined events has occurred.

**Cancel claim 105.**

**Cancel claim 106.**

107. (new):  The system of claim 103, wherein the plurality of thresholds are different from each other.

108. (new):  The system of claim 103, wherein the plurality of notifications are different visual indicators.

109. (new):  The system of claim 108, wherein at least one of the visual indicators includes a blinking indicator.

LT 0000353

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

110. (new):  The system of claim 13, wherein said output indicator is configured to signal the occurrence of user-defined events.

111. (new):  The system of claim 85, wherein said microprocessor is configured to detect occurrence of the first user-defined event by comparing said movement data to said predetermined threshold.

112. (new):  The system of claim 13, wherein said device is configured to be placed on said user's arm to monitor and record said movement data.

113. (new):  The system of claim 112, wherein said movement sensor configured to measure movement of said user's arm.

114. (new):  The system of claim 13, wherein said movement sensor configured to measure a walking distance.

115. (new):  The system of claim 114, wherein said device is configured to be wearable by the user, and said movement sensor is configured to measure said walking distance of said user.

116. (new):  The system of claim 13, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information,

22

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

wherein said movement sensor is configured to continuously check for said movement,

wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information,

wherein said movement data stored in the memory is configured to be downloaded to the computer,

wherein the device further comprises software configured to communicate with the program which presents the downloaded movement data,

wherein said program is configured to produce at least one report based on said movement data,

wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred,

wherein said device is configured to be placed on said user's arm to monitor and record said movement data,

wherein said movement sensor configured to measure movement of said user's arm.

**Cancel claim 117.**

118. (new): The method of claim 20, further comprising:

LT 0000355

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

storing, in said memory, date information associated with the first time stamp

information.

119. (new):   The method of claim 20, further comprising:

retrieving said first time stamp information from said real-time clock and associate the

retrieved first time stamp information with said first user-defined event.

120.  (new):  The method of claim 119, further comprising:

retrieving said first time stamp information from said real-time clock based on the

detection of the first user-defined event.

**Cancel claim 121.**

122. (new):  The method of claim 20, wherein said storing comprises continuously

storing said movement data after battery power is lost from a power source of the portable, self-

contained movement measuring device.

123.  (new):  The method of claim 20, further comprising:

continuously monitoring for said physical movement using a movement sensor of the

portable, self-contained movement measuring device.

124. (new):  The method of claim 123, wherein said interpreting comprises:

LT 0000356

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

continuously interpreting, based on the user-defined operational parameters, said physical movement data.

125.  (new):  The method of claim 20, further comprising:

displaying, using an output indicator of the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the user-defined event.

126.  (new):  The method of claim 125, wherein said output indicator displays said information signaling the occurrence of the first user-defined event based on said first time stamp information.

127.  (new):  The method of claim 20, further comprising:

displaying, using an output indicator included the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

128. (new):  The method of claim 20, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.

LT 0000357

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

129  (new):  The method of claim 128, wherein an output indicator of the portable, self-contained movement measuring device displays information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.

130.  (new):  The method of claim 128, further comprising:

storing, in said memory, said first event information indicating that the predetermined threshold is met.

131.  (new):  The method of claim 130, further comprising:

storing, in said memory, the first time stamp information in association with said first event information.

132.  (new):  The method of claim 20, further comprising:

indicating a low battery condition, using an output indicator of the portable, self-contained movement measuring device.

133. (new):  The method of claim 20, wherein said physical movement data stored in the memory is the interpreted physical movement data, and said stored physical movement data is configured to be downloaded to a computer.

134.  (new):  The method of claim 133, further comprising:

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

communicating with external software, wherein the external software is configured to present said interpreted physical movement data to the user.

135.  (new):  The method of claim 134, wherein said external software is configured to run on a computer.

136.  (new):  The method of 20, further comprising:

producing a report based on said interpreted physical movement data.

137.  (new):  The method of 134, further comprising:

producing at least one report based on said interpreted physical movement data using the external software.

138. (new):  The method of claim 134, further comprising:

producing at least one history report based on said interpreted physical movement data using the external software.

139.  (new):  The method of claim 138, wherein said at least one history report includes dates and times of said physical movement data.

140.  (new):  The method of claim 134, further comprising:

27

LT 0000359

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

providing additional reports and histories with respect to said interpreted physical movement data, wherein the additional reports and histories are programmed by the user via the external software.

141.  (new):  The method of claim 133, wherein said physical movement data is configured to be downloaded to said computer via a wired connection.

142.  (new):  The method of claim 133, wherein said movement data is configured to be downloaded to the computer via a wireless connection.

**Cancel claim 143.**

144.  (new):  The method of claim 128, further comprising:

providing, via an output indicator of the portable, self-contained movement measuring device, a visual indicator to the user regarding the predetermined threshold being reached.

**Cancel claim 145.**

146.  (new):  The method of claim 20, further comprising:

storing the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications,

LT 0000360

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

wherein the detecting comprises detecting occurrence of one of a plurality of user-defined events each time the movement data reaches one of the plurality of the thresholds.


147.  (new):  The method of claim 146, wherein in response to detecting that one of the user-defined events occurred based on the movement data reaching one of the plurality of thresholds, the method further comprises:

displaying, via an output indicator of the portable, self-contained movement measuring device, a corresponding one of the notifications indicating that one of the user-defined events has occurred.


**Cancel claim 148.**


**Cancel claim 149.**


150.  (new):  The method of claim 146, wherein the plurality of thresholds are different from each other.


151.  (new):  The method of claim 146, wherein the plurality of notifications are different visual indicators.


152. (new):  The method of claim 151, wherein at least one of the visual indicators includes a blinking indicator.

29

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

153. (new):  The method of claim 20, further comprising:

signaling, using an output indicator included in the portable, self-contained movement

measuring device, the occurrence of user-defined events.

154. (new):  The method of claim 128, wherein the detecting comprises comparing said

physical movement data to said predetermined threshold.

155.  (new):  The method of claim 20, wherein said body part is a user's arm, and said

measuring the data comprises monitoring and recording the physical movement of said user's

arm.

156.  (new):  The method of claim 155, wherein said measuring the data comprises

measuring the data using a movement sensor of the portable, self-contained movement

measuring device.

157. (new):  The method of claim 20, further comprising:

measuring a walking distance based on the interpreted physical movement data.

158. (new):  The method of claim 20, further comprising:

storing, in said memory, date information associated with the first time stamp

information;

30

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

continuously monitoring for said physical movement using a movement sensor of the portable, self-contained movement measuring device;

displaying, using an output indicator included the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information,

wherein said physical movement data stored in the memory is the interpreted physical movement data, and said stored physical movement data is configured to be downloaded to a computer;

communicating with external software configured to run on the computer and present said interpreted physical movement data to the user;

producing a report based on said interpreted physical movement data using the external software; and

storing the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein the detecting comprises detecting occurrence of one of a plurality of user-defined events each time the movement data reaches one of the plurality of the thresholds,

wherein said body part is a user's arm, and said measuring the data comprises monitoring and recording the physical movement of said user's arm.

159. (new):  The device of claim 1, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

LT 0000363

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

wherein said microprocessor is configured to interpret said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.

160. (new):  The device of claim 159, wherein the output indicator is configured to display first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met, and configured to display second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.

161. (new):  The device of claim 160, wherein the displayed first information is different from the displayed second information.

162. (new):  The device of claim 1, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

163. (new): The device of claim 1, wherein said first user-defined event is a predetermined type of movement.

LT 0000364

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

164. (new):  The device of claim 163, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

165. (new):  The device of claim 163, wherein the predetermined type of movement is movement exceeding a predefined speed.

166. (new):  The device of claim 163, wherein the predetermined type of movement is no movement for a predetermined amount of time.

167. (new):  The device of claim 163, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

168. (new): The device of claim 1, wherein said microprocessor is configured to detect a second event based on at least one of the user-defined operational parameters and the movement data, and said microprocessor is configured to store, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the second event occurred.

169. (new): The device of claim 168, wherein said second event is a predetermined type of movement.

33

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

170. (new):  The device of claim 169, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

171. (new):  The device of claim 169, wherein the predetermined type of movement is movement exceeding a predefined speed.

172. (new):  The device of claim 169, wherein the predetermined type of movement is no movement for a predetermined amount of time.

173. (new):  The device of claim 169, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

174. (new):  The system of claim 13, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

   wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

   wherein said microprocessor is configured to interpret said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.

LT 0000366

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

175. (new):  The system of claim 174, wherein the output indicator is configured to display first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met, and configured to display second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.

176. (new):  The system of claim 175, wherein the displayed first information is different from the displayed second information.

177. (new):  The system of claim 13, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

178. (new): The system of claim 13, wherein said first user-defined event is a predetermined type of movement.

179. (new):  The system of claim 178, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

180. (new):  The system of claim 178, wherein the predetermined type of movement is movement exceeding a predefined speed.

35

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

181. (new):  The system of claim 178, wherein the predetermined type of movement is no movement for a predetermined amount of time.

182. (new):  The system of claim 178, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

183. (new): The system of claim 13, wherein said microprocessor is configured to detect a second event based on at least one of the user-defined operational parameters and the movement data, and said microprocessor is configured to store, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the second event occurred.

184. (new): The system of claim 183, wherein said second event is a predetermined type of movement.

185. (new):  The system of claim 184, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

186. (new):  The system of claim 184, wherein the predetermined type of movement is movement exceeding a predefined speed.

36

LT 0000368

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

187. (new):  The system of claim 184, wherein the predetermined type of movement is no movement for a predetermined amount of time.


188. (new):  The system of claim 184, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.


189. (new):  The system of claim 13, wherein said movement sensor comprises at least one accelerometer.


190. (new):  The method of claim 20, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

wherein said interpreting comprises interpreting said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.


191. (new):  The method of claim 190, further comprising:

displaying, using an output indicator included in the portable, self-contained movement measuring device, first information indicating occurrence of the first user-defined event when it

LT 0000369

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

is determined that the first predetermined threshold is met and second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.

192. (new):  The method of claim 191, wherein the displayed first information is different from the displayed second information.

193. (new):  The method of claim 20, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

194. (new): The method of claim 20, wherein said first user-defined event is a predetermined type of movement.

195. (new):  The method of claim 194, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

196. (new):  The method of claim 194, wherein the predetermined type of movement is movement exceeding a predefined speed.

197. (new):  The method of claim 194, wherein the predetermined type of movement is no movement for a predetermined amount of time.

LT 0000370

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

198. (new):  The method of claim 194, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

199. (new): The method of claim 20, further comprising:

detecting, using the microprocessor, a second event based on at least one of the user-defined operational parameters and the movement data; and

storing, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the second event occurred.

200. (new): The method of claim 199, wherein said second event is a predetermined type of movement.

201. (new):  The method of claim 200, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

202. (new):  The method of claim 200, wherein the predetermined type of movement is movement exceeding a predefined speed.

203. (new):  The method of claim 200, wherein the predetermined type of movement is no movement for a predetermined amount of time.

LT 0000371

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

204. (new):  The method of claim 200, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

LT 0000372

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

## II.     STATUS OF THE CLAIMS AND EXEMPLARY SUPPORT FOR CLAIM AMENDMENTS

| Claim No. | Status | Support in Specification |
|---|---|---|
| 1 | Pending | col. 5, line 59 to col. 6, line 9 |
| 2 | Pending | NA |
| 3 | Pending | NA |
| 4 | Pending | NA |
| 5 | Pending | NA |
| 6 | Pending | NA |
| 7 | Pending | NA |
| 8 | Pending | NA |
| 9 | Pending | NA |
| 10 | Pending | NA |
| 11 | Pending | NA |
| 12 | Pending | NA |
| 13 | Pending | col. 5, line 59 to col. 6, line 9 |
| 14 | Pending | NA |
| 15 | Pending | NA |
| 16 | Pending | NA |
| 17 | Pending | NA |
| 18 | Pending | NA |
| 19 | Pending | NA |
| 20 | Pending | col. 5, line 59 to col. 6, line 9 |
| 21 | Pending | NA |
| 22 | Pending | NA |
| 23 | Pending | NA |
| 24 | Pending | NA |
| 25 | Pending | NA |
| 26 | Pending | NA |
| 27 | Pending | NA |
| 28 | Pending | NA |
| 29 | Pending | NA |
| 30 | Canceled | NA |
| 31 | New | col. 6, lines 5-9 |
| 32 | New | col. 5, line 44; col. 6, line 9 |
| 33 | New | col. 5, line 44; col. 6, line 9 |
| 34 | Canceled | NA |
| 35 | New | col. 5, lines 47-51 |
| 36 | New | col. 5, lines 40-41 |
| 37 | New | col. 6, lines 16-40 |

LT 0000373

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

| 38 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
|----|-----|---------------------------------------------|
| 39 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 40 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 41 | New | col. 5, line 59 to col. 6, line 9 and col. 7, lines 6-30 |
| 42 | New | col. 5, line 58 to col. 6, line 3 and col. 6, lines 41-43 |
| 43 | New | col. 6, lines 6-9 |
| 44 | New | col. 6, lines 6-9 and col. 6, lines 19-21 |
| 45 | New | col. 6, lines 27-39 |
| 46 | New | col. 5, lines 25-27 |
| 47 | New | col. 8, lines 31-55 |
| 48 | New | col. 8, lines 31-55 |
| 49 | New | col. 8, lines 31-55 |
| 50 | New | col. 8, lines 40-55 |
| 51 | New | col. 8, lines 40-55 |
| 52 | New | col. 8, lines 40-55 |
| 53 | New | col. 8, lines 40-55 |
| 54 | New | col. 8, lines 40-55 |
| 55 | New | col. 8, lines 30-55 |
| 56 | New | col. 8, lines 30-55 |
| 57 | Canceled | NA |
| 58 | New | col. 4, lines 9-14 |
| 59 | Canceled | NA |
| 60 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 61 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 62 | Canceled | NA |
| 63 | Canceled | NA |
| 64 | New | col. 5, line 58 to col. 6, line 15 |
| 65 | New | col. 4, lines 5-14 |
| 66 | New | col. 4, lines 5-14 |
| 67 | Canceled | NA |
| 68 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 69 | New | col. 3, lines 59-62 |
| 70 | New | col. 3, lines 59-62 |
| 71 | New | col. 3, lines 45-47 |
| 72 | New | col. 3, lines 45-47 |
| 73 | New | col. 3, lines 59-62, col. 4, lines 5-14, col. 5, lines 40-41, col. 5, line 58 to col. 6, line 15, col. 7, lines 6-30, and col. 8, lines 30-55 |
| 74 | Canceled | NA |
| 75 | New | col. 6, lines 5-9 |
| 76 | New | col. 5, line 44; col. 6, line 9 |
| 77 | New | col. 5, line 44; col. 6, line 9 |
| 78 | Canceled | NA |

LT 0000374

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

| 79 | New | col. 5, lines 47-51 |
|---|---|---|
| 80 | New | col. 5, lines 40-41 |
| 81 | New | col. 6, lines 16-40 |
| 82 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 83 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 84 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 85 | New | col. 5, line 59 to col. 6, line 9 and col. 7, lines 6-30 |
| 86 | New | col. 5, line 58 to col. 6, line 3 and col. 6, lines 41-43 |
| 87 | New | col. 6, lines 6-9 |
| 88 | New | col. 6, lines 6-9 and col. 6, lines 19-21 |
| 89 | New | col. 6, lines 27-39 |
| 90 | New | col. 5, lines 25-27 |
| 91 | New | col. 8, line 31-55 |
| 92 | New | col. 8, line 31-55 |
| 93 | New | col. 8, line 40-55 |
| 94 | New | col. 8, line 40-55 |
| 95 | New | col. 8, line 40-55 |
| 96 | New | col. 8, line 40-55 |
| 97 | New | col. 8, line 40-55 |
| 98 | New | col. 8, line 30-45 |
| 99 | New | col. 8, lines 30-55 |
| 100 | Canceled | NA |
| 101 | New | col. 4, lines 9-14 |
| 102 | Canceled | NA |
| 103 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 104 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 105 | Canceled | NA |
| 106 | Canceled | NA |
| 107 | New | col. 5, line 58 to col. 6, line 15 |
| 108 | New | col. 4, lines 5-14 |
| 109 | New | col. 4, lines 5-14 |
| 110 | New | col. 4, lines 3-14 |
| 111 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 112 | New | col. 3, lines 59-62 |
| 113 | New | col. 3, lines 59-62 |
| 114 | New | col. 3, lines 45-47 |
| 115 | New | col. 3, lines 45-47 |
| 116 | New | col. 3, lines 59-62, col. 4, lines 5-14, col. 5, lines 40-41, col. 5, line 58 to col. 6, line 15, col. 7, lines 6-30, and col. 8, lines 30-55 |
| 117 | Canceled | NA |
| 118 | New | col. 6, lines 5-9 |
| 119 | New | col. 5, line 44; col. 6, line 9 |

LT 0000375

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

| 120 | New | col. 5, line 44; col. 6, line 9 |
|---|---|---|
| 121 | Canceled | NA |
| 122 | New | col. 5, lines 47-51 |
| 123 | New | col. 5, lines 40-41 |
| 124 | New | col. 6, lines 16-40 |
| 125 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 126 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 127 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 128 | New | col. 5, line 59 to col. 6, line 9 and col. 7, lines 6-30 |
| 129 | New | col. 5, line 58 to col. 6, line 3 and col. 6, lines 41-43 |
| 130 | New | col. 6, lines 6-9 |
| 131 | New | col. 6, lines 6-9 and col. 6, lines 19-21 |
| 132 | New | col. 6, lines 27-39 |
| 133 | New | col. 8, line 31-55 |
| 134 | New | col. 8, line 31-55 |
| 135 | New | col. 8, line 31-55 |
| 136 | New | col. 8, line 40-55 |
| 137 | New | col. 8, line 40-55 |
| 138 | New | col. 8, line 40-55 |
| 139 | New | col. 8, line 40-55 |
| 140 | New | col. 8, line 40-55 |
| 141 | New | col. 8, line 30-45 |
| 142 | New | col. 8, line 30-45 |
| 143 | Canceled | NA |
| 144 | New | col. 4, lines 9-14 |
| 145 | Canceled | NA |
| 146 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 147 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 148 | Canceled | NA |
| 149 | Canceled | NA |
| 150 | New | col. 5, line 58 to col. 6, line 15 |
| 151 | New | col. 4, lines 5-14 |
| 152 | New | col. 4, lines 5-14 |
| 153 | New | col. 4, lines 3-14 |
| 154 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 155 | New | col. 3, lines 59-62 |
| 156 | New | col. 4, lines 38-45 |
| 157 | New | col. 3, lines 45-47 |
| 158 | New | col. 3, lines 59-62, col. 4, lines 5-14, col. 5, lines 40-41, col. 5, line 58 to col. 6, line 15, col. 7, lines 6-30, and col. 8, lines 30-55 |
| 159 | New | col. 5, line 58 to col. 6, line 40 and col. 7, lines 6-30 |
| 160 | New | col. 4, lines 5-14 |

LT 0000376

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

| 161 | New | col. 4, lines 5-14 |
|---|---|---|
| 162 | New | col. 5, line 59 to col. 6, line 15 |
| 163 | New | col. 6, lines 16-40 and col. 10, lines 50-54 |
| 164 | New | col. 6, lines 19-26 |
| 165 | New | col. 6, lines 19-40 |
| 166 | New | col. 6, lines 19-40 |
| 167 | New | paragraph bridging cols. 7-8 |
| 168 | New | col. 5, line 59 to col. 6, line 9, and col. 7, lines 6-30 |
| 169 | New | col. 6, lines 16-40 and col. 10, lines 50-54 |
| 170 | New | col. 6, lines 19-26 |
| 171 | New | col. 6, lines 19-40 |
| 172 | New | col. 6, lines 19-40 |
| 173 | New | paragraph bridging cols. 7-8 |
| 174 | New | col. 5, line 58 to col. 6, line 40 and col. 7, lines 6-30 |
| 175 | New | col. 4, lines 5-14 |
| 176 | New | col. 4, lines 5-14 |
| 177 | New | col. 5, line 59 to col. 6, line 15 |
| 178 | New | col. 6, lines 16-40 and col. 10, lines 50-54 |
| 179 | New | col. 6, lines 19-26 |
| 180 | New | col. 6, lines 19-40 |
| 181 | New | col. 6, lines 19-40 |
| 182 | New | paragraph bridging cols. 7-8 |
| 183 | New | col. 5, line 59 to col. 6, line 9, and col. 7, lines 6-30 |
| 184 | New | col. 6, lines 16-40 and col. 10, lines 50-54 |
| 185 | New | col. 6, lines 19-26 |
| 186 | New | col. 6, lines 19-40 |
| 187 | New | col. 6, lines 19-40 |
| 188 | New | paragraph bridging cols. 7-8 |
| 189 | New | col. 4, lines 38-45 |
| 190 | New | col. 5, line 58 to col. 6, line 40 and col. 7, lines 6-30 |
| 191 | New | col. 4, lines 5-14 |
| 192 | New | col. 4, lines 5-14 |
| 193 | New | col. 5, line 59 to col. 6, line 15 |
| 194 | New | col. 6, lines 16-40 and col. 10, lines 50-54 |
| 195 | New | col. 6, lines 19-26 |
| 196 | New | col. 6, lines 19-40 |
| 197 | New | col. 6, lines 19-40 |
| 198 | New | paragraph bridging cols. 7-8 |
| 199 | New | col. 5, line 59 to col. 6, line 9, and col. 7, lines 6-30 |
| 200 | New | col. 6, lines 16-40 and col. 10, lines 50-54 |
| 201 | New | col. 6, lines 19-26 |
| 202 | New | col. 6, lines 19-40 |

LT 0000377

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

| 203 | New | col. 6, lines 19-40 |
| 204 | New | paragraph bridging cols. 7-8 |

LT 0000378

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

## III.    REMARKS

Claims 1, 13, 20, 21, and 30-158 are subject to reexamination.  All the reexamined claims are rejected.

By this Amendment, previously added claims 30, 34, 57, 59, 62, 63, 67, 74, 78, 100, 102, 105, 106, 117, 121, 143, 145, 148, and 149 have been canceled without prejudice or disclaimer.

New claims 159-204 have been added.

Accordingly, claims 1-29, 31-33, 35-56, 58, 60, 61, 64-66, 68-73, 75-77, 79-99, 101, 103, 104, 107-116, 118-120, 122-142, 144, 146, 147, and 150-204 are all the claims pending in the proceeding.

Claims 1, 13, and 20 are the independent claims.


**Summary or claim amendments and response**

As an initial matter, Patent Owner's (PO's) representatives would again like to thank Examiners Danton De Mille along with Eileen Lillis and Robert Fetsuga for the courtesies extended during the personal interview conducted on September 3, 2014 (*see* Examiner's Interview Summary dated September 12, 2014 and Statement of Substance of Interview filed October 3, 2014).

During the interview, differences between the claimed invention and the cited references (primarily Flentov, Vock, and Burdea) were highlighted by the PO's representatives.

With respect to the "time stamp" feature set forth in claims 30, 32, and 33, the Examiners indicated that the claims, as currently drafted, may not reflect the feature as intended to be interpreted by the PO.  Some proposed clarifying amendments were discussed in this regard.

47

LT 0000379

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

There was a similar discussion regarding claims 60, 61, and 67 relating to the storage of a plurality of thresholds corresponding to a plurality of notifications, and how the threshold relates to a user-defined event in the claims. The Examiners thought that the claims broadly read on a certain interpretation of the cited reference(s). Again, some possibly clarifying amendments were generally discussed that would preclude the claims from being read on the cited reference(s).

The Examiners agreed that if a formal response is filed with clarifying amendments along the lines discussed during the interview, the Examiners would reconsider their current position regarding the combination of Flentov/Vock with Burdea.

Accordingly, by way of this Amendment, independent claims 1, 13, and 20 have been amended to recite, in some variation, that the microprocessor detects a first user-defined event based on at least one of the user-defined operational parameters and the movement data, and stores first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the first user-defined event occurred.

For example, in a non-limiting embodiment of the claimed invention, a user can define certain operational parameters such as angle limits in the device 12, and the microprocessor 32 detects whether the user's movement has passed the given angle limit(s) (an example of detecting a user-defined event) based on the given angle and the movement data received from the movement sensor 30 (patent specification, col. 5, line 59 to col. 6, line 9). The microprocessor 32 obtains time stamp information from a clock 46 and stores the obtained time stamp information along with information about the angle limit that was exceeded into memory 50. *Id.*

LT 0000380

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

As discussed below in further detail, the cited references do not teach or suggest the features set forth in the amended independent claims.

Further, additional new claims have been added (see claims 159-204) which are necessarily patentable *at least* by virtue of their dependency. Moreover, these claims recite features that are in and of themselves novel and non-obvious.

For example, claims 159, 174, and 190 specify that the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold, and that the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold. That is, in the claimed invention, at least two different events can be detected based on different predetermined thresholds. For instance, in the non-limiting embodiment(s), a plurality of angular levels at which notices will be generated are stored in the device 12, and this way, the user may choose the angular positions at which the user wants to be warned (i.e., when the angular levels are exceeded) (e.g., patent specification, col. 5, line 58 to col. 6, line 40 and col. 7, lines 6-30).

Similarly, claims 162, 176, and 193 recite in some variation that the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

Further, new claims 163-167 and 169-173 specify the first and second events as predetermined types of movements (e.g., movement exceeding a predetermined angle limit, movement exceeding a predefined speed, no movement for a predetermined amount of time, or a maximum number of incorrect movements allowed in a predetermined time period).

49

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

These features are not disclosed or suggested by the cited references.

Accordingly, as discussed in further detail below, the instant Amendment places the claims in condition for immediate allowance.  Consequently, PO respectfully requests the Examiner to issue a Notice of Intent to Issue *Ex Parte* Reexamination Certificate responsive to this Amendment.

## Claim Rejections - 35 USC § 112

Claims 93, 123, 149 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as allegedly being indefinite.

In view of the clarifying amendments to claims 93 and 123 being made herein, withdrawal of the rejections thereto is respectfully requested.

Since claim 149 has been canceled, the rejection thereto is rendered moot.

## Claim Rejections - 35 USC §102

Claims 1 and 20 are rejected under pre-AIA 35 U.S.C. 102(b) as allegedly being anticipated by Flentov et al.

Claims 1 and 20 are rejected under 35 U.S.C. 102(e) as allegedly being anticipated by Gaudet et al.

Claims 1 and 20 are rejected under 35 U.S.C. 102(e) as allegedly being anticipated by Vock et al.

As discussed above, claims 1 and 20 have been amended to recite, in some variation, that the microprocessor detects a first user-defined event based on at least one of the user-defined

50

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

operational parameters and the movement data, and stores first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the first user-defined event occurred.

Flentov, Gaudet, and Vock do not disclose these features in as complete detail as set forth in the claims.

Accordingly, these rejections are rendered moot.

## Claim Rejections - 35 USC §103

Claims 1, 13, 20, 21, and 30-158 are rejected under pre-AIA 35 U.S.C. 103(a) as allegedly being unpatentable over Flentov et al. in view of Burdea et al.

Claims 1, 13, 20, 21, 30-40, 45-56, 69-72, 74-84, 89-99, 109, 112-115, 117-127, 132-142, and 155-157 are rejected under pre-AIA 35 U.S.C. 103(a) as allegedly being unpatentable over Gaudet et al. in view of Burdea et al.

Claims 1, 13, 20, 21, and 30-158 are rejected under pre-AIA 35 U.S.C. 103(a) as allegedly being unpatentable over Vock et al. in view of Burdea et al.

For *at least* the following reasons, PO respectfully traverses these rejections.

As discussed above, claims 1, 13, and 20 have been amended to recite, in some variation, that the microprocessor detects a first user-defined event based on at least one of the user-defined operational parameters and the movement data, and stores first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the first user-defined event occurred.

LT 0000383

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

These claim amendments have been made by the PO in light of the Examiners' suggestions during the aforementioned interview.

In particular, based on the Examiner's comments in the Office Action and the explanation provided by the Examiner during the personal interview, it is understood that the Examiner is primarily relying on the air time or loft time in Flentov and Vock for allegedly teaching the claimed user-defined event.  It is acknowledged that Flentov and Vock do not teach or suggest the claimed time stamp information (e.g., see Office Action, page 15 and Examiner's Interview Summary dated September 12, 2014, page 3).  However, Burdea is relied upon for allegedly curing these deficient teachings of Flentov and Vock.  *Id*.

PO respectfully submits that even if the teachings of Flentov/Vock are combined with Burdea, the proposed combination of the references still does not teach or suggest the features set forth in independent claims 1, 13, and 20, which were amended along the lines discussed during the personal interview.

For example, in the claimed invention, the microprocessor detects a first user-defined event based on at least one of the user-defined operational parameters and the movement data and stores first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the first user-defined event occurred.

Assuming *arguendo* that the air time or loft time in Flentov/Vock correspond to the claimed user-defined event, then the proposed modification with Burdea would result in the user's air times or loft times for their entire skiing session to be stored in a database at the end of the session along with a time stamp indicating the time at which the database was updated.

52

LT 0000384

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

As such, the stored time stamp in the proposed modification would not result in the storing of the claimed first time stamp information reflecting a time at which the first user-defined event (air time or loft time) occurred, as required by independent claims 1, 13, and 20. Rather, if Burdea's teachings are incorporated into Flentov/Vock or *vice versa*, then in the modified system, the time stamp associated with the stored air/loft time data would reflect the time at which the air/loft time data are stored in the database - not the time at which the air/loft time occurred.

In further detail, Burdea discloses that "[p]atient data can be stored in database 114 for statistical purposes. Database 114 can include a time stamp for providing a time history of updates of the patient information" (Burdea, col. 6, lines 30-33). That is, the time stamp described in Burdea is related to the update time at which the patient data (allegedly interchangeable with the air/loft time data in Flentov/Vock) is updated at the database 114.

On the other hand, in the claimed invention, the first time stamp information reflects the time at which the first user-defined vent occurred.

Gaudet does not cure the above-noted deficient teachings of Flentov, Vock, and Burdea.

Accordingly, PO respectfully submits that claims 1, 13, and 20 are patentable over the asserted combinations of Flentov, Vock, or Gaudet with Burdea.

PO respectfully submits that the remaining claims are patentable *at least* by virtue of their dependency.

Moreover, PO respectfully submits that claims 41, 85, and 128 are patentable for reasons in addition to their dependency, as discussed below.

LT 0000385

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

Claims 41, 85, and 128

Claims 41, 85, and 128, in view of clarifying amendments being made herein, recite that at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold[1].

Flentov and/or Vock appear to be generally relied upon in the Office Action to teach a threshold (e.g., see pages 21-22 and 49 of Office Action.

For example, at pages 21-22 of the Office Action, it is asserted that Flentov discloses the threshold feature because allegedly, "[w]hen the user starts and stops the collection of movement data, the user has set the threshold amount of movement data to collect to determine the total number of jumps during that period of time.  The peak "air" time and the peak speed are additional thresholds that are saved in memory…"

However, it is unclear how the user's starting and stopping of the movement data collection corresponds to a predetermined threshold stored in memory.  Also, the peak "air" time and peak speed in Flentov are naturally not stored in advance since they are only obtained after analyzing the data collected from the sensor.

To expedite prosecution, claim 41 has been amended to recite that at least one of the user-defined operational parameters is a *predetermined* threshold, and that the user-defined event occurs when the movement data reaches the *predetermined* threshold, as noted above.

The start and stop signals or the peak air time/peak speed are not compatible with the plain and ordinary meaning of a predetermined threshold, as claimed.

---

[1] Supported by *at least* col. 5, lines 59-66 and col. 7, lines 5-43 of U.S. Patent No. 6,059,576.

LT 0000386

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

Moreover, the cited references do not and cannot teach or suggest that the air time or loft time (alleged user-defined events) occur when the movement data reaches the start/stop signals or the peak air time/peak speed (alleged thresholds).

Therefore, PO respectfully submits that claims 41, 85, and 128 are patentable over the cited references alone, or in combination.

**New claims**

It is noted that new claims 30-158 were proposed as new claims in the Request for *Ex Parte* Reexamination filed April 4, 2014.

By way of this Amendment, some of these claims have been canceled without prejudice or disclaimer while other claims have been revised to maintain consistency with the amendments to the independent claims.  Support for the revised new claims is shown in Section II above.

PO submits that the above statement complies with MPEP 2250, Section IV(E), which states that "[a]lthough the presentation of the amended claim does not contain any indication of what is changed from a previous version of the [new] claim, patent owner must point out what is changed, in the "Remarks" portion of the amendment."

It is respectfully submitted that new claims 159-204 are patentable *at least* by virtue of their dependency.  Moreover, the cited references do not teach or suggest the features set forth therein.

For example, the cited references do not teach or suggest that:

the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold, wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second

LT 0000387

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

user-defined event occurs when the movement data reaches the second predetermined threshold, wherein said microprocessor is configured to interpret said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold (claims 159, 174, and 190);

the output indicator is configured to display first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met, and configured to display second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met (claims 161, 176, and 192);

the user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit (claims 162, 177, and 193);

said first user-defined event is a predetermined type of movement (claims 163. 178, and 194);

the predetermined type of movement is movement exceeding a predetermined angle limit (claims 164, 179, and 195);

the predetermined type of movement is movement exceeding a predefined speed (claims 165, 180, and 196);

the predetermined type of movement is no movement for a predetermined amount of time (claims 166, 181, and 197);

the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period (claims 167, 182, and 198); and

said microprocessor is configured to detect a second event based on at least one of the user-defined operational parameters and the movement data, and said microprocessor is configured to store, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the second event occurred (claims 168, 183, and 199).


Take, for example, claims 168, 183, and 199.

As noted above, these claims recite in some variation that said microprocessor is

configured to detect a second event based on at least one of the user-defined operational

parameters and the movement data, and said microprocessor is configured to store, in said

56

LT 0000388

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the second event occurred.

That is, in the claimed invention, in addition to storing a detected first user-defined event along with first time stamp information reflecting a time at which the first user-defined event occurred, the microprocessor additionally detects a second event based on the movement data, and stores, in said memory, second time stamp information in association with said second event. The second time stamp information reflects a time at which the second event occurred.

So *at least* two different events are detected and corresponding time stamp information reflecting the time at which these events occurred is stored in the claimed invention (*also see* claims 159, 174, and 190).

Flentov, Gaudet, and Vock do not disclose or even suggest storing time stamp information in association with the time at which the alleged events in those references occur (e.g., air time in Flentov).  As discussed above, Burdea does not cure these deficient teachings of Flentov, Gaudet, and Vock because the time stamp in Burdea reflects the time at which the patient data is updated in the database, not the time at which an event detected based on movement data occurred.

Therefore, it is respectfully submitted that claims 168, 183, and 199 are patentable over the cited references, alone or in combination.


Moreover, it is noted that in the claimed invention, the first user-defined event and second event could be predetermined types of movement (e.g., claims 163 and 169).  The predetermined types of movement could be movement exceeding a predetermined angle limit

LT 0000389

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

(e.g., claims 164 and 170), or movement exceeding a predefined speed (e.g., claims 165 and 171), no movement for a predetermined amount of time (e.g., claims 166 and 172), and a maximum number of incorrect movements allowed in a predetermined time period (e.g., claims 167 and 173).

There is no disclosure or suggestion in the cited references regarding detecting such predetermined types of movement, let alone detecting such predetermined types of movement and associating with the detected events time stamp information reflecting a time at which the subject events occurred, in as complete detail as set forth in the claims.

## **Conclusion**

In view of the above, reconsideration and issuance of a Notice of Intent to Issue *Ex Parte* Reexamination Certificate in this proceeding are now believed to be in order, and such actions are hereby solicited.  If any points remain in issue which the Examiner feels may be best resolved through a personal or telephone interview, the Examiner is kindly requested to contact the undersigned at the telephone number listed below.

LT 0000390

RESPONSE TO *EX PARTE* REEXAMINATION OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779


The USPTO is directed and authorized to charge all required fees, except for the Issue

Fee and the Publication Fee, to Deposit Account No. 19-4880.  Please also credit any

overpayments to said Deposit Account.

Respectfully submitted,

/Abdul-Quadeer Ahmed/

SUGHRUE MION, PLLC                           Quadeer A. Ahmed
Telephone:  202.293.7060                     Registration No. 60,835
Facsimile:  202.293.7860

WASHINGTON OFFICE
23373
CUSTOMER NUMBER

Date:  October 14, 2014

59

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 90013201 |
| **Filing Date:** | 04-Apr-2014 |
| **Title of Invention:** | TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY |
| **First Named Inventor/Applicant Name:** | 6059576 |
| **Filer:** | Quadeer A. Ahmed/Shanele Jones |
| **Attorney Docket Number:** | A209779 |

Filed as Large Entity

## ex parte reexam Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Reexamination claims in excess of 20 | 1822 | 27 | 80 | 2160 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

LT 0000392

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **2160** |

LT 0000393

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 20412812 |
| **Application Number:** | 90013201 |
| **International Application Number:** | |
| **Confirmation Number:** | 9930 |
| **Title of Invention:** | TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER MOVEMENT DURING PHYSICAL ACTIVITY |
| **First Named Inventor/Applicant Name:** | 6059576 |
| **Customer Number:** | 23373 |
| **Filer:** | Quadeer A. Ahmed/Shanele Jones |
| **Filer Authorized By:** | Quadeer A. Ahmed |
| **Attorney Docket Number:** | A209779 |
| **Receipt Date:** | 14-OCT-2014 |
| **Filing Date:** | 04-APR-2014 |
| **Time Stamp:** | 16:54:05 |
| **Application Type:** | Reexam (Patent Owner) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $ 2160 |
| RAM confirmation Number | 3891 |
| Deposit Account | 194880 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

LIT_0000394

Charge any Additional Fees required under 37 C.F.R. Section 1.19 (Document supply fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Response after non-final action-owner timely | A209779Amendmentasfiled. pdf | 206140 9e1533469f71bbbb3083ed5b526a8a4e006d231ee | no | 59 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30510 a5e3146bdd66ee6f3da080f5658f418a33a39f0 | no | 2 |

**Warnings:**

**Information:**

| | | Total Files Size (in bytes): | 236650 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

LT 0000395

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/013,201 | 04/04/2014 | 6059576 | A209779 | 9930 |

23373        7590        12/10/2014
SUGHRUE MION, PLLC
2100 PENNSYLVANIA AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20037

| EXAMINER |
|---|
| DEMILLE, DANTON D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/10/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

LT 0000396

| *Office Action in Ex Parte Reexamination* | **Control No.** 90/013,201 | **Patent Under Reexamination** 6059576 |
|---|---|---|
| | **Examiner** DANTON DE MILLE | **Art Unit** 3993 | **AIA (First Inventor to File) Status** No |

-- <b>The MAILING DATE of this communication appears on the cover sheet with the correspondence address</b> --

a.☒ Responsive to the communication(s) filed on <u>10/14/2014</u> .

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on \_\_\_\_\_.

b.☒ This action is made FINAL.

c.☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire <u>2</u> month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination
certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days
will be considered timely.

Part I  THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.   3. ☐ Interview Summary, PTO-474.

2. ☐ Information Disclosure Statement, PTO/SB/08.   4. ☐ \_\_\_\_\_.

Part II  SUMMARY OF ACTION

1a. ☒ Claims <u>1,13,20,21,31-33,35-56,58,60,61,64-66,68-73,75-77,79-99,101,103,104,107-116,118-120,122-142,144,146,147 and 150-204</u> are subject to reexamination.

1b. ☒ Claims <u>2-12,14-19 and 22-29</u> are not subject to reexamination.

2. ☒ Claims <u>30,34,57,59,62,63,67,74,78,100,102,105,106,117,121,143,145,148 and 149</u> have been canceled in the present reexamination proceeding.

3. ☒ Claims <u>162,164-167,170-173,177,179-182,185-188,193,195-198 and 201-204</u> are patentable and/or confirmed.

4. ☒ Claims <u>1,13,20,21,31-33,35-56,58,60,61,64-66,68-73,75-77,79-99,101,103,104,107-116,118-120,122-142,144,146,147,150-161,163,168,169,174-176,178,183,184,189-192,194,199 and 200</u> are rejected.

5. ☐ Claims \_\_\_\_\_ are objected to.

6. ☐ The drawings, filed on \_\_\_\_\_ are acceptable.

7. ☐ The proposed drawing correction, filed on \_\_\_\_\_ has been (7a) ☐ approved (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some*  c)☐ None  of the certified copies have

       1 ☐ been received.

       2 ☐ not been received.

       3 ☐ been filed in Application No. \_\_\_\_\_ .

       4 ☐ been filed in reexamination Control No. \_\_\_\_\_.

       5 ☐ been received by the International Bureau in PCT application No. \_\_\_\_\_.

    * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal
matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D.
11, 453 O.G. 213.

10. ☐ Other: \_\_\_\_\_

LT 0000397

cc: Requester (if third party requester)

U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-13)

**Office Action in Ex Parte Reexamination**

Part of Paper No. 20141021

LT 0000398

Application/Control Number: 90/013,201                                          Page 2
Art Unit: 3993

### *Ex Parte Reexamination Office Action*

Reexamination was requested and ordered for claims 1, 13, 20 and 21 of United States

Patent Number 6,059,576 (hereinafter, "the '576 patent"). There were originally 29 claims in the

patent. Patent owner also submitted new claims 30-158 at the time of filing. A non-final Office

action was mailed out 13 August 2014. In response thereto, patent owner cancelled claims 30,

34, 57, 59, 62, 63, 67, 74, 78, 100, 102, 105, 106, 117, 121, 143, 145, 148, and 149 and added

claims 159-204. Accordingly, claims 1, 13, 20, 21, 31-33, 35-56, 58, 60, 61, 64-66, 68-73, 75-

77, 79-99, 101,103, 104, 107-116, 118-120, 122-142, 144, 146, 147, and 150-204 are all the

claims pending in this proceeding. Claims 1, 13 and 20 are the independent claims.

### *Prior Art Relied Upon by the Requester*

Flentov et al.          (U.S. Pat. No. 5,636,146) cited by requester

Gaudet et al.           (U.S. Pat. No. 6,018,705) cited by requester

Vock et al.             (U.S. Pat. No. 6,266,623) cited by requester

Burdea et al.           (U.S. Pat. No. 5,429,140) cited by examiner

### *Claim Rejections - 35 USC § 103*

**Claims 1, 13, 20, 21, 31-33, 35-56, 58, 60, 61, 64-66, 68-73, 75-77, 79-99, 101, 103, 104,**

**107-116, 118-120, 122-142, 144, 146, 147, 150-161, 163, 168, 169, 174-176, 178, 183, 184, 189-**

**192, 194, 199, 200 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over**

**Flentov et al. in view of Burdea et al.**

LT 0000399

Application/Control Number: 90/013,201                                                      Page 3
Art Unit: 3993

**Regarding claims 1, 13, 20, 21, 130, 131, 189,** Flentov teaches a portable, self-contained

device 10 for monitoring movement of body parts 28 during physical activity, column 1, lines 6-

10:

> The invention relates generally to the measurement of the loft time and speed of a
> vehicle relative to the ground. Such measurements are particularly useful in
> sporting activities like skiing and mountain biking where users desire information
> relating to their speed and/or loft, or "air" time.

The device 10 comprising a movement sensor 18, 20, capable of measuring data

associated with unrestrained movement in any direction and generating signals indicative of said

movement. The device 10 is attached to the ski of the user which would generate signals

indicative of the unrestrained movement as the user freely navigates over the downhill course.

The device also includes a power source 22.

A microprocessor subsystem 12 is also capable of receiving, interpreting, storing and

responding to said movement data based on user-defined operational parameters from user input

14. The device includes at least one user input 14 in the form of at least buttons 58, 60, 62, 66

and 67. Flentov teaches in column 2, lines 36-40, "a user interface for providing external inputs

to the apparatus, including one or more of the following: a start/stop button for selectively

starting and stopping the acquisition of data by the apparatus".

As noted above, the movement sensor 18, 20 send signals indicative of the unrestrained

movement to the microprocessor subsystem 12. The microprocessor 12 interprets the signals

from the sensor, column 6, lines 19-22:

> The speed information and loft time information are processed by the
> microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and
> actual loft time, e.g., in seconds.

LT 0000400

Application/Control Number: 90/013,201                                        Page 4
Art Unit: 3993

The microprocessor stores the information, column 6 in lines 22-25, "[t]he actual speed and loft time are thereafter stored in internal memory 13".

The microprocessor responds to the movement data based on user-defined operational parameters from the user input 14.  Figure 4 illustrates a graph 70 of a representative vibrational spectrum 72 that is stored into the microprocessor subsystem 12, column 10, lines 29-37:

> The vibrational spectrum between t1 and t2 [FIG. 4] is comparatively smooth as compared to the spectrum outside this region because the user's sporting vehicle (e.g., the ski or mountain bike) is in the air and is not therefore subjected to the random vibrations of the road or ski slope. Accordingly, this relatively smooth spectrum between t1 and t2 can be readily discerned from the rest of the spectrum by the microprocessor subsystem 12 and evaluated for "air" time: specifically, "air" time is t2-t1.

The microprocessor subsystem 12 responds to the vibrational spectrum 72 of the movement data based on user-defined operational parameters such as loft or "air" time derived from the "relatively smooth spectrum" between t1 and t2.  The information is then displayed on display 16.

Flentov teaches many different embodiments for the speed sensor and the loft sensor.  In column 17 Flentov teaches a loft sensor that is accelerometer based.  In column 17, lines 24-37:

> FIG. 13 illustrates a speed sensor 200 constructed according to the invention and which includes a plurality of accelerometers 202a-202d. The accelerometers 202a-202d sense various accelerations in their respective axes (accelerometers sense acceleration along a predefined axis, translational or rotational), and each of the outputs from the accelerometers are input to the microprocessor subsystem 204, e.g., the subsystem 12 of FIG. 1, via communication lines 206a-206d. The orientation of the sensitive axis of each accelerometer 202a-202d is stored in the microprocessor subsystem 204 so that a particular acceleration in one axis is properly combined with acceleration values in other axes (as described in more detail below in connection with FIGS. 14 and 14a).

Additionally, Flentov teaches in lines 58-62 of column 17:

Application/Control Number: 90/013,201                                           Page 5
Art Unit: 3993

> It should be clear to those skilled in the art that fewer, or greater, numbers of
> accelerometers are within the scope of the invention, so long as they collectively
> determine speed. In effect, the fewer number of accelerometers results in reduced
> accuracy; not reduced functionality. Rather, in an ideal situation, one
> accelerometer can be used to detect speed; which is the integral of the
> acceleration over time. Further, a double integration over the same period
> provides distance; and, therefore, the invention can also provide distance in at
> least one embodiment of the invention.

Flentov teaches that one accelerometer can be used to detect speed and distance.

Flentov also teaches in column 18, lines 17-20 of using six accelerometers:

> Specifically, six accelerometers are connected with various sensitive orientations
> to collect pitch 207*a* yaw 207*b*, roll 207*c*, surge 207*d*, heave 207*e*, and sway 207*f*
> accelerations.

Flentov also teaches how to derive speed and direction in column 18, lines 52-61:

> Also shown in FIG. 14A are translational integrators 209*a*-209*c* which convert the
> compensated accelerations from inputs 207*d*-207*f* to translational velocities by
> integration. Integrators 210*a*-210*c* likewise integrate inputs of pitch 207*a,* yaw
> 207*b*, and roll 207*c* to angular velocity while integrators 211*a*-211*c* provide a
> further integration to convert the angular velocities to angular position. The
> angular positional information and translational velocity information is combined
> and processed at the speed and direction resolution section 212 to derive speed
> and direction.

Therefore, the movement sensor 200 measures the speed, angle and velocity of the

movement. Speed and direction are calculated using the signals from the plural accelerometers of

the speed sensor 200.  The direction is an angle of the movement of the device in at least two

axes i.e., horizontal and vertical.

Therefore, Flentov teaches speed sensor 200 provides a movement sensor that measures

the angular position and translational velocity.

Flentov teaches the microprocessor subsystem 12 includes a clock element in column 9,

lines 28-34:

> the microprocessor subsystem 12 of FIG. 1 preferably includes a [clock] element
> (readily known to those skilled in the art) for indicating processed time over a
> selectable period (the microprocessor subsystem 12 can in fact include a 24-hour
> clock element, much the way a digital wrist-watch includes 24-hour information).

While the 24-hour clock element of Flentov is not recited as "a real-time clock" however,
it is a computer clock that keeps track of the current time in order to determine loft time for
example.  Therefore it would appear that the 24-hour clock element recited by Flentov is "a real-
time clock" for purposes of storing time in human units.  This is different from hardware clocks
which are only signals that govern digital electronics.

The instant invention defines the "real-time clock" in column 5, lines 33-37:

> The microprocessor 32 is connected to a clock 46 which is used as an internal
> clock for coordinating the functioning of the microprocessor 32. The clock 46
> also serves as a real time clock to provide date and time information to the
> microprocessor 32.

There does not appear to be any special definition for the term "real-time clock" as long
as the clock serves to provide date and time information reflecting a time at which the first user-
defined event occurs to be stored with the first event information.  Flentov teaches storing the
information in memory, 6:14-25:

> During motion of the ski or mountain bike, the speed sensor 18 sends velocity
> information (over communication line 11a) to the microprocessor subsystem 12;
> while the loft sensor 20 sends loft or "air" time information (over communication
> line 11b) to the microprocessor subsystem 12. The speed information and loft
> time information are processed by the microprocessor subsystem 12 to quantify
> actual speed, e.g., in miles per hour, and actual loft time, e.g., in seconds. The
> actual speed and loft time are thereafter stored in internal memory 13 until, at
> least, the speed and time data are accessed by a user of the system 10.

Flentov teaches the microprocessor processes velocity information from the speed sensor
and the loft information from the loft sensor and converts the speed into miles per hour and the
loft into seconds and stores the information in memory 13.

Burdea also teaches a method to monitor physical movement of a body part.  The system

employs an electronic device which tracks and monitors an individual's motion through the use

of sensors capable of measuring parameters associated with the individual's movement.  In

column 6, lines 30-33,

> Patient data can be stored in database 114 for statistical purposes.  Database 114
> can include a time stamp for providing a time history of updates of the patient
> information.

Burdea teaches the convention of storing performance data over time that includes a time

stamp for providing a time history of updates.  A clock would be required in order to associate a

specific time and day with each piece of performance data, in order to evaluate the user's history

of performance data over many days.  It would have been obvious to one of ordinary skill in the

art to modify the clock of Flentov to provide a time stamp as taught by Burdea in order to

maintain a time history of patient information for statistical purposes.

Regarding the new claim language added in the last amendment, the Flentov device is for

"detecting a first user-defined event [such as a first run down the mountain] based on at least one

of the user-defined operation parameters and the movement data" that records the physical

activity that occurs from the top of the run to the bottom of the run.  Flentov teaches 7:38-44:

> A user presses the start/stop button 58 at the start of activity--such as at the start
> of skiing down a slope or biking down a trail--and presses the button 58 at the
> completion of activity to cease the acquisition of data

The at least one user-defined operational parameter is a predetermined threshold when

the user is at the top of the run.  The user predetermines at least one thresholds is when the user-

defined event ends at the end of the run.  At the end of the run, the user pushes button 58 a

second time to stop recording movement data.  When the user stops recording movement data,

the microprocessor stores the movement data along with the time stamp as taught by Burdea. The time stamp accurately stores the time and date in which the user-defined event occurred at the end of the run.  Therefore, the modified Flentov device is for "storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the first user-defined event occurred" as claimed.

**Regarding claim 13,** in addition to the limitations of claim 1, claim 13 also recites an input/output port, a computer capable of interpreting and reporting the movement data based on operational parameters, and a download device connected to the movement measuring device and the computer for transmitting the movement data and operational parameters between the movement measuring device and the computer for analysis, reporting and operation purposes. Flentov already teaches an output indicator 16.

Burdea shows in figure 1, network 22 is capable of transmitting the movement data and operational parameters between the movement measuring device or sensing glove 30 and the remote computer 20.  The remote workstation 20 is used for receiving diagnostic information and communicating rehabilitation instructions to the movement measuring device.  Burdea column 4, lines 46-50:

> Remote workstation 20 can be coupled over network 22 to computer workstation 14.  Remote workstation 20 can be used at a medical specialist location for receiving diagnostic information and communicating rehabilitation instructions to computer workstation 14.

Broadly, the network 22 includes the input/output port and the network card is the download device electronically connected to said movement measuring device 30 and a remote computer 20 for transmitting and receiving information.  It would have been obvious to one of ordinary skill in the art to further modify Flentov to include an input/output port, computer and

Application/Control Number: 90/013,201                                           Page 9
Art Unit: 3993

download device as taught by Burdea so that a remote specialist can review historical data and

suggest new instructions.

**Regarding claim 20,** Flentov teaches a method of monitoring physical movement of a

body part comprising the steps of attaching a portable, self-contained movement measuring

device 10 to the body part for measuring unrestrained movement in any direction.  The

movement measuring device 10 measures data associated with the physical movement.  The

microprocessor 13 within the movement measuring device 10 interprets the physical movement

data based on user-defined operational parameters.

Burdea teaches using a "real-time clock" for adding a time stamp to the movement data

so that the user movement data can be stored in memory for statistical purposes.

Regarding the new claim language added in the last amendment, the Flentov device

includes a microprocessor 13 for "detecting a first user-defined event [such as a first run down

the mountain] based on at least one of the user-defined operation parameters and the movement

data" that records the physical activity that occurs from the top of the run to the bottom of the

run.  Flentov teaches 7:38-44:

> A user presses the start/stop button 58 at the start of activity--such as at the start
> of skiing down a slope or biking down a trail--and presses the button 58 at the
> completion of activity to cease the acquisition of data

The at least one user-defined operational parameter is a predetermined threshold when

the user at the top of the run predetermines when the user-defined event occurs at the end of the

run.  At the end of the run, the user pushes button 58 a second time to stop recording movement

data.  When the user stops recording movement data, the microprocessor stores the movement

data along with the time/date stamp from the "real-time clock" as taught by Burdea.  The time

LT 0000406

Application/Control Number: 90/013,201                                      Page 10
Art Unit: 3993

stamp accurately stores the time/date in which the user-defined event occurred at the end of the

run.  Therefore, the modified Flentov device is for "storing first event information related to the

detected first user-defined event along with first time stamp information reflecting a time at

which the first user-defined event occurred" as claimed.

It would have been obvious to one of ordinary skill in the art to modify Flentov to include

a "real-time clock" for adding a time stamp to the movement data as taught by Burdea to be

stored in memory for storing data for statistical purposes thereby providing historical progress,

see column 6, lines 30-33.  Any conventional means to tag a date and time stamp to the

movement data for providing statistical information over time would have been obvious to one of

ordinary skill.  A real-time clock is a well-known example of a means to provide a date and time

stamp.  It would have been obvious to one of ordinary skill in the art to modify Flentov to

include a time/date stamp as taught by Burdea such as real-time clock in order to track the

movement data over time thereby compare the previous movement data to the current movement

data.

**Regarding claim 21,** as set forth above in rejection of claim 1, Flentov also teaches how

to derive speed and direction in column 18, lines 52-61:

> Also shown in FIG. 14A are translational integrators $209a$-$209c$ which convert the
> compensated accelerations from inputs $207d$-$207f$ to translational velocities by
> integration. Integrators $210a$-$210c$ likewise integrate inputs of pitch $207a$, yaw
> $207b$, and roll $207c$ to angular velocity while integrators $211a$-$211c$ provide a
> further integration to convert the angular velocities to angular position. The
> angular positional information and translational velocity information is combined
> and processed at the speed and direction resolution section 212 to derive speed
> and direction.

Flentov already teaches the movement sensor measures the velocity and direction.

LT 0000407

Application/Control Number: 90/013,201                                             Page 11
Art Unit: 3993

**Regarding claim 31,** the microprocessor also stores in memory the date associated with the time stamp.

**Regarding claim 32,** the microprocessor 13 retrieves the time stamp, as taught by Burdea, with the date from the "real-time clock" to associate the time stamp with the first user-defined event.

**Regarding claim 33,** the microprocessor 13 retrieves the time stamp, as taught by Burdea, from the "real-time clock" based on the occurrence of the user defined event.

**Regarding claim 35,** Flentov teaches "[t]he memory may be nonvolatile such as battery backed RAM or Electrically Erasable Programmable Read Only Memory (EEPROM)" column 14, lines 33-35. Therefore, the memory continues to store movement data in response to battery power being lost from said power source.

**Regarding claims 36, 37,** Flentov teaches in column 2, lines 36-40, "a user interface for providing external inputs to the apparatus, including one or more of the following: a start/stop button for selectively starting and stopping the acquisition of data by the apparatus". The movement sensor continuously checks for movement when the user presses the start button. It will continue to check for movement data until the user presses the start/stop button to stop the microprocessor from processing movement data.

**Regarding claims 38-40,** the output indicator 16 displays information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event. The first user-defined event would be defined when the user presses the start/stop button 58 to stop processing movement data. The first user-defined event would be completed at that point. The movement data and the time stamp would be stored in memory. The output indicator would

LT 0000408

Application/Control Number: 90/013,201                                          Page 12
Art Unit: 3993

then signal the occurrence of the first user-defined event.  The first user-defined event can be

indexed by the type of event and/or by the time stamp associated with the data.  Such details are

well within the realm of the artisan of ordinary skill in the art of data storage and retrieval when

recording data and retrieving the data.

    **Regarding claims 41, 85 and 128,** as noted above, Flentov teaches "detecting a first

user-defined event [such as a first run down the mountain] based on at least one of the user-

defined operation parameters and the movement data".  The device records the physical activity

that occurs from the top of the run to the bottom of the run.  The at least one user-defined

operational parameter is a predetermined threshold when the user, at the top of the run,

predetermines when at least one of the user-defined operational parameters at the end of the run.

At the end of the run, the user pushes button 58 a second time to stop recording movement data.

The first user-defined event occurs when the movement data reaches the predetermined threshold

at the end of the run.  When the movement data reaches the predetermined threshold, the

microprocessor stores the movement data along with the time stamp as taught by Burdea.  The

time stamp accurately stores the time in which the user-defined event occurred at the end of the

run.  The Merriam-Webster Dictionary defines THRESHOLD as "END, BOUNDARY".  The

predetermined threshold is the END or BOUNDARY of the movement data.

    **Regarding claim 42,** the output indicator 16 is configured to display information

signaling the occurrence of the first user-defined event [run down the mountain] when the

movement data reaches the predetermined threshold.  The output indicator or display 16 is

configured to display speed and loft information for example.

LT 0000409

Application/Control Number: 90/013,201                                                      Page 13
Art Unit: 3993

     **Regarding claim 43,** the memory 13 is configured to store the first event information

indicating that the predetermined threshold is met.

     **Regarding claim 44,** as taught by Burdea, as noted above, the microprocessor associates

the time/date stamp with the movement data in association with the first event information.

     **Regarding claim 45,** one of ordinary skill in the art having devices that include batteries

would require some form of output indication to let the user know when the batteries are about to

die.  Such is well within the realm of the artisan of ordinary skill.

     **Regarding claim 46,** Flentov teaches at the top of column 2, the display can be a LCD or

LED display.

     **Regarding claim 47,** Burdea shows in figure 1, network 22 is capable of transmitting the

movement data and operational parameters between the movement measuring device or sensing

glove 30 and the remote computer 20.  The remote workstation is used for receiving diagnostic

information and communicating rehabilitation instructions to the movement measuring device.

Burdea column 4, lines 46-50:

> Remote workstation 20 can be coupled over network 22 to computer workstation
> 14.  Remote workstation 20 can be used at a medical specialist location for
> receiving diagnostic information and communicating rehabilitation instructions to
> computer workstation 14.

     Broadly, the network 22 includes the input/output port and the network card is the

download device electronically connected to said movement measuring device 30 and a remote

computer 20 for transmitting and receiving information.  It would have been obvious to one of

ordinary skill in the art to further modify Flentov to include an input/output port, computer and

download device as taught by Burdea so that a remote specialist can review historical data and

suggest new instructions.

Application/Control Number: 90/013,201                                    Page 14
Art Unit: 3993

**Regarding claims 48, 49,** as noted above, Burdea teaches remote workstation 20 can be coupled over network 22 to computer workstation 14. Obviously, computer workstation 14 has software configured to communicate with external software in the remote workstation 20 wherein the external software is configured to present the downloaded movement data to the user in the display. It would have been obvious to one of ordinary skill in the art to further modify Flentov to be able to download the physical activity from the local microprocessor to an external computer over a network as taught by Burdea in order to have the information saved at a different location so the information can be analyzed by a specialist and processed for improving the user's performance.

**Regarding claim 50,** Burdea teaches the downloaded movement data is analyzed by a specialist and therefore is capable of being analyzed by the user via said external software.

**Regarding claims 51-54, 136-140,** the external software is configured to interpret the movement data and produce at least one report. Burdea teaches producing a hard copy of diagnostic information including progress charts 4:43-50. The purpose of the external computer is to analyze the data and to communicate new instructions for the user. Producing history reports on the time-stamped, movement data would be obvious to one of ordinary skill in the art in order to produce historical data for developing new instructions for the user. Such would have been an obvious provision in Flentov.

**Regarding claims 55, 141,** the movement data is configured to be downloaded to the computer via a wired connection. Burdea's network 22 is a wired connection.

**Regarding claims 56, 142,** wireless connections are old and well known and an obvious equivalent means of communicating information from one computer to another.

LT 0000411

**Regarding claim 58,** the output indicator 52 is configured to provide a visual indicator to the user regarding the threshold being met.  The output indicator 52 would display the results.

**Regarding claims 60, 61, 130, 146, 147,** the memory stores the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications.  One type of operational parameters occurs each time the loft or "air" time event happens.  It includes the smooth vibrational spectrum threshold between t1 and t2 as shown in figure 4.  Each time the movement data reaches this threshold, the microprocessor is configured to detect that the loft or "air" time user-defined event has occurred.  The microprocessor is configured to calculate the actual loft or "air" and will send the information to the output indicator to display the loft or "air" time data indicating that the user-defined loft or "air" time event has occurred.

**Regarding claim 64,** the plurality of loft or "air" time thresholds are different from each other because they occur at different times and the loft or "air" time data itself will also be different.

**Regarding claim 65,** the plurality of notifications have different visual indicators because the notification will have to distinguish the first loft or "air" time event from the second loft or "air" time event and so on.

**Regarding claim 66,** the prior art has already established the user of using visual indicators and including a blinking indicator is old and well known and an obvious provision in the art of displaying information on a display screen.  Blinking indicators is well known to draw the user's attention to the information displayed because it has a particular importance above other information that is being displayed.  Where the general conditions of a claim are disclosed

Application/Control Number: 90/013,201                                    Page 16
Art Unit: 3993

in the prior art, it is not inventive to discover the optimum or workable ranges by routine

experimentation. *In re Swain et al.*, 33 CCPA (Patents) 1250, 156 F.2d 239, 70 USPQ 412;

*Minnesota Mining and Mfg. Co. v. Coe*, 69 App. D.C. 217, 99 F.2d 986, 38 USPQ 213; *Allen et*

*al. v. Coe*, 77 App. D.C. 324, 135 F.2d 11, 57 USPQ 136.  Providing blinking lights to highlight

a portion of the display is well within the realm of the artisan of ordinary skill in the art at the

time of the invention for displaying information on a display screen.

    **Regarding claims 68, 128, 154,** the microprocessor is configured to detect occurrence of

the first user-defined even by comparing the movement data to the predetermined threshold

which is when the user stops the collection of movement data.

    **Regarding claims 69, 155,** Flentov teaches in column 19, lines 12-16:

> It should be apparent to those in the art that the accelerometers of FIG. 13-14
> provide sufficiently detailed information such that the whole of the system
> according to the invention can be mounted to a user of the system directly, rather
> than directly to a vehicle.

The sensor can be mounted on the user of the system directly.

    **Regarding claims 70, 155,** the sensor can be mounted on the arm of the user and

therefore measures movement of the user's arm.

    **Regarding claims 71, 72,** as noted above, Flentov measures distance as well as speed.

Flentov teaches in column 17, lines 63-66, "one accelerometer can be used to detect speed;

which is the integral of the acceleration over time.  Further, a double integration over the same

period provides distance".  Therefore, the movement sensor of Flentov would also measure

distance regardless if user is walking, skiing or biking.

    **Regarding claims 73, 116, 158,** as noted above, Burdea teaches including a time stamp

for storing the time/date stamp with the movement data for providing a time history of updates of

the user performance.  The microprocessor stores in memory the movement data associated with

the time stamp.

The movement sensor continuously checks for movement as long as the device is turned

on.  Flentov teaches 6:14-25:

> During motion of the ski or mountain bike, the speed sensor 18 sends velocity
> information (over communication line 11a) to the microprocessor subsystem 12;
> while the loft sensor 20 sends loft or "air" time information (over communication
> line 11b) to the microprocessor subsystem 12. The speed information and loft
> time information are processed by the microprocessor subsystem 12 to quantify
> actual speed, e.g., in miles per hour, and actual loft time, e.g., in seconds. The
> actual speed and loft time are thereafter stored in internal memory 13 until, at
> least, the speed and time data are accessed by a user of the system 10.

The output indicator displays information indicating the occurrence of the first user-

defined event based on the detection of the first user-defined event and the first time stamp

information.  The first user-defined event is based on all of the movement data that was

processed during the run down the mountain and stored in memory.  The output indicator would

display information signaling the occurrence of the first user-defined event based movement data

such as loft or "air" time and speed.

The physical movement data is stored along with the time stamp where the

microprocessor interprets the physical movement data.

Burdea teaches the physical movement data is configured to be downloaded to a

computer 14, 20.

Burdea teaches communicating with external software configured to run on the computer

14, 20 and present the interpreted physical movement data to the user.

The purpose of the computers is to analyze the data to produce reports based on the

movement data in order to be presented to the user to improve their physical movement.

The memory stores the user-defined operational parameters such as loft or "air" time. The user-defined operational parameters comprise a plurality of thresholds respectively corresponding to a plurality of notifications such as loft or "air" time or speed. Each time the movement data reaches one of the plurality of thresholds, the microprocessor is configured to detect that one of the user-defined events occurred.

The sensor can be mounted on the user (Flentov 19:12-16). The arm of the user is part of the user and therefore measures movement of the user's arm.

**Regarding claim 75,** as noted above, Burdea teaches storing a time stamp for associating the time/date stamp with the movement data for providing a time history of updates of the user performance.

**Regarding claim 76,** the microprocessor retrieves the time stamp from the real-time clock and associate the retrieved first time stamp with the received movement data as taught by Burdea.

**Regarding claim 77,** the microprocessor is configured to retrieve the time stamp from the real-time clock based on the occurrence of at least one of the user-defined events.

**Regarding claims 79, 122,** memory is configured to continuously store movement data in response to battery power being lost from the power source because the memory is nonvolatile such as battery backed RAM or Electrically Erasable Programmable Read Only Memory (EEPROM)", Flentov column 14, lines 33-35.

**Regarding claims 80, 81, 123, 124,** the movement sensor continuously checks for movement and the microprocessor continuously interprets the movement data received from the movement sensor as long as the user presses the start button and the device is on 6:14-25.

**Regarding claims 82, 83 and 84,** the output indicator displays information signally the occurrence of the first user-defined event based on the detection of the first user-defined event and/or the first time stamp. Once the threshold has been met, the first user-defined event has been detected. The movement data is stored along with the time stamp. The output indicator will then display information indicating the first user-defined event such as speed and loft or "air" time.

**Regarding claims 85 and 86,** at least one of the user-defined operational parameters is a predetermined threshold such as when the user presses the button to stop processing the movement data. The user-defined event occurs when the movement data reaches the predetermined threshold. The output indicator is configured to display information signaling the occurrence of the first user-defined event e.g., loft time, when the movement data reaches the predetermined threshold, 8:20-21.

**Regarding claim 87,** memory is configured to store the information indicating that the threshold is met when the user stops processing movement data.

**Regarding claim 88,** memory stores the information indicating that the threshold is met including a time stamp in association with the first event information.

**Regarding claims 89, 132,** one of ordinary skill in the art having devices that include batteries would require some form of output to let the user know when the batteries are about to die.

**Regarding claim 90,** Flentov teaches at the top of column 2, the display can be a LCD or LED display.

Application/Control Number: 90/013,201                                          Page 20
Art Unit: 3993

 **Regarding claim 91,** Burdea teaches the movement data stored in the memory is configured to be downloaded to the remote workstation 20.

 **Regarding claims 92, 93,** as noted above, Burdea teaches remote workstation 20 can be coupled over network 22 to computer workstation 14. Obviously, computer workstation 14 has software configured to communicate with external software in the remote workstation 20 wherein the external software is configured to present the downloaded movement data to the user to be analyzed.

 **Regarding claim 94,** the purpose of the external computer is for a specialist to analyze the data and to communicate new instructions for the user to the local workstation 14. Producing reports on the movement data including historical data would be obvious to one of ordinary skill in the art in order to properly analyze the data to develop new instructions for the user. Burdea teaches, column 4, lines 43-50, the workstation 14 is coupled to hard copy device 18 for producing a hard copy of diagnostic information including rehabilitation progress charts. Such can also be applied to the external computer 20.

 **Regarding claim 95,** the external software is configured to interpret the movement data and produce at least one history report. The purpose of the external computer is to analyze the historical data. Producing reports on the movement data including historical data would be obvious to one of ordinary skill in the art in order to develop new instructions for the user.

 **Regarding claim 96,** the history report obviously includes dates and time of the movement data. This is how one can analyze the progress of the user.

 **Regarding claim 97,** the external software is configured to allow the user to program additional reports and histories as needed with respect to the movement data.

Application/Control Number: 90/013,201                                      Page 21
Art Unit: 3993

Regarding claim 98, the movement data is configured to be downloaded to the computer via a wired connection.  Network 22 is a wired connection.

Regarding claim 99, wireless connections are old and well known and an obvious equivalent means of communicating information wirelessly.

Regarding claim 101, the output indicator 16 provides a visual indicator to the user regarding the threshold being met such as speed and "air" time.

Regarding claim 103, memory is configured to store the user-defined operational parameters and a plurality of thresholds respectively corresponding to a plurality of notifications. Each time the movement data reaches one of the thresholds such as loft or "air" time, the microprocessor is configured to detect that one of a plurality of user-defined events occurred.

Regarding claim 104, the microprocessor detects that one of the user-defined events occurred based on the movement data reaching one of the plurality of thresholds, the output indicator displays a corresponding one of the notifications indicating that one of the user-defined events has occurred such as loft or "air" time.  The threshold is the smooth vibrational spectrum as shown in figure 4.

Regarding claims 107, 150, the plurality of thresholds are different from each other because each loft or "air" time would be different in duration.

Regarding claims 108, 151, 152, the plurality of notifications are different visual indicators because the speed measures miles per hour, "air" time measures in seconds. Additionally display 64 will display "S" to indicate speed information.

Regarding claims 109, 152, the prior art has already established the use of visual indicators to communicate different kinds of movement information to the user.  A blinking

LT 0000418

indicator is old and well known and an obvious provision in the art in order to highlight a

particular piece of information on a display screen.  Where the general conditions of a claim are

disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by

routine experimentation. *In re Swain et al.*, 33 CCPA (Patents) 1250, 156 F.2d 239, 70 USPQ

412; *Minnesota Mining and Mfg. Co. v. Coe*, 69 App. D.C. 217, 99 F.2d 986, 38 USPQ 213;

*Allen et al. v. Coe*, 77 App. D.C. 324, 135 F.2d 11, 57 USPQ 136.  Providing blinking lights to

highlight a portion of the display is well within the realm of the artisan of ordinary skill in the art

of displaying information on a display screen.

> **Regarding claim 110,** the output indicator is configured to signal the occurrence of user-

defined events such as loft or "air" time.

> **Regarding claim 111,** the microprocessor is configured to detect occurrence of the first

user-defined even by comparing the movement data to the predetermined threshold which is

when the user pressed the start/stop button to stop the collection of movement data.

> **Regarding claims 112, 113, 155,** Flentov teaches in column 19, lines 12-16:

> > It should be apparent to those in the art that the accelerometers of FIG. 13-14
> > provide sufficiently detailed information such that the whole of the system
> > according to the invention can be mounted to a user of the system directly, rather
> > than directly to a vehicle.

The sensor can be mounted on the user of the system directly e.g., the arm of the user.

Flentov teaches that the whole of the system can be mounted to a user of the system directly,

rather than directly to a vehicle.  When attached to the arm of the user it will measure movement

of the arm as well as the whole of the body.  The system will still measure movement of the body

and the ski as a whole.

Application/Control Number: 90/013,201                                            Page 23
Art Unit: 3993

      **Regarding claim 114,** the system of Flentov measures distance as noted above regardless of whether the user is skiing, biking, running or walking.

      **Regarding claim 115,** as noted above, the whole of the system 10 can be mounted to the user and therefore is wearable and measures distances including walking, running, skiing or biking.

      **Regarding claims 118-120,** as set forth above, Burdea teaches storing the time/date stamp to the first time stamp information.

      Burdea also teaches retrieving the first time stamp information from the real-time clock and associate the retrieved first time stamp information with the first user-defined event.

      Likewise, Burdea teaches retrieving the first time stamp information from the real-time clock based on the detection of the first user-defined event.

      **Regarding claim 122,** Flentov teaches that memory can be EEPROM.

      **Regarding claim 123,** the movement sensor continuously checks for movement once the user presses the start button, Flentov 7:38-42.

      **Regarding claim 124,** Flentov teaches 6:14-22:

> During motion of the ski or mountain bike, the speed sensor 18 sends velocity information (over communication line 11a) to the microprocessor subsystem 12; while the loft sensor 20 sends loft or "air" time information (over communication line 11b) to the microprocessor subsystem 12. The speed information and loft time information are processed by the microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and actual loft time, e.g., in seconds.

      **Regarding claims 125-127,** displaying information signaling the occurrence of the first user-defined event based on the detection of the user-defined event and/or by the first time stamp information. The first user-defined event is the run down the mountain. In response to detecting the first user-defined event has occurred, the output indicator would display information

LT 0000420

Application/Control Number: 90/013,201                                          Page 24
Art Unit: 3993

signaling the occurrence of the first user-defined event which would be loft or "air" time or

speed.

Regarding claim 128, one of the user-defined operational parameters is a predetermined

threshold such as loft or "air" time or speed.  The first user-defined event occurs when the

movement data reaches the predetermined threshold at the end of the run.

Regarding claim 129, the output indicator displays loft or "air" time information

signaling the occurrence of the first user-defined event when the movement data reaches the

predetermined threshold at the end of the run.

Regarding claims 130, 131, the device stores in memory said first event information and

the time stamp information, as taught by Burdea, indicating that the predetermined threshold is

met.

Regarding claims 133, 134, 135, Vock teaches in 8:11-15:

> The speed information and loft time information are processed by the
> microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and
> actual loft time, e.g., in seconds. The actual speed and loft time are thereafter
> stored in internal memory 13

The physical movement data stored in memory is the interpreted physical movement data

such as speed and loft time, and the stored physical movement data is configured to be

downloaded to a computer as taught by Burdea.  The external software is configured to run on

the computer.

Regarding claims 137-140, Burdea teaches producing at least one report based on the

interpreted physical movement data using the external software, Burdea 4:43-45.  Additional

reports would have been an obvious provision in order to maximize the ability of the specialist to

develop the best set of instructions for the user.

Application/Control Number: 90/013,201                                          Page 25
Art Unit: 3993

**Regarding claims 144, 153,** Flentov teaches in column 8, lines 32-33, when the microprocessor determines when a threshold has been met, the display will signal the occurrence that the user-defined threshold has been met by displaying the loft time, for example.

**Regarding claim 146,** Flentov teaches in figure 4 a graph 70 of a representative vibrational spectrum 72 that is stored into the microprocessor subsystem 12. In column 10, lines 29-37:

> The vibrational spectrum between t1 and t2 [in figure 4] is comparatively smooth as compared to the spectrum outside this region because the user's sporting vehicle (e.g., the ski or mountain bike) is in the air and is not therefore subjected to the random vibrations of the road or ski slope. Accordingly, this relatively smooth spectrum between t1 and t2 can be readily discerned from the rest of the spectrum by the microprocessor subsystem 12 and evaluated for "air" time: specifically, "air" time is t2-t1.

The user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications for determining the loft "air" time includes a relatively smooth vibrational spectrum between t1 and t2 readily discerned from the rest of the vibration spectrum. Detecting comprises detecting occurrence of one of a plurality of user-defined events each time the movement data reaches one of the plurality of these thresholds.

**Regarding claim 147,** the method further comprises displaying, via an output indicator a corresponding one of the notifications indicating that one of the user-defined events has occurred. The output indicator would display the loft or "air" time.

**Regarding claim 150,** the plurality of thresholds are different from each other. The many different loft or "air" times would indicate different loft or "air" time. Each user-defined event or "air" time would be different for each jump.

LT 0000422

Application/Control Number: 90/013,201                                        Page 26
Art Unit: 3993

**Regarding claim 151,** the plurality of notifications are different visual indicators.

Flentov 8:30-35 states:

> A display portion 68 of the display 52 shows a number corresponding to the
> sequential information on display. For example, the illustrated "1" number means
> that the highest "air" time record is currently being displayed; while a number
> greater than one means that a loft time other than the highest loft time is being
> displayed.

Each loft or "air" time would be ranked based on the highest "air" time record receiving

the number "1". The next highest "air" time would be ranked number "2" and so on.

**Regarding claim 152,** the prior art has already established the convention of using visual

indicators to display different results. Using a blinking indicator is old and well known and an

obvious provision in the art of displaying information on a display screen in order to highlight

one particular piece of data. Where the general conditions of a claim are disclosed in the prior

art, it is not inventive to discover the optimum or workable ranges by routine experimentation. *In*

*re Swain et al.*, 33 CCPA (Patents) 1250, 156 F.2d 239, 70 USPQ 412; *Minnesota Mining and*

*Mfg. Co. v. Coe*, 69 App. D.C. 217, 99 F.2d 986, 38 USPQ 213; *Allen et al. v. Coe*, 77 App. D.C.

324, 135 F.2d 11, 57 USPQ 136. Providing blinking lights to highlight a portion of the display is

well within the realm of the artisan of ordinary skill in the art of displaying information on a

display screen.

**Regarding claim 153,** as noted above, the output indicator or display would signal the

occurrence of the user-defined events such as loft or "air" time or speed.

**Regarding claim 154,** detecting comprises comparing said physical movement data to

the predetermined threshold. As noted above, the smooth spectrum is the threshold for

determining the loft or "air" time.

Application/Control Number: 90/013,201                                                    Page 27
Art Unit: 3993

**Regarding claim 156,** measuring the data comprises measuring the data using an

accelerometer of the portable, self-contained movement measuring device.

**Regarding claims 159, 174 and 190,** one of the user-defined operational parameters

comprise a first predetermined threshold which is when the user has set the predetermined

threshold for the loft or "air" time.  A second predetermined threshold different from the first

predetermined threshold is the speed.

The microprocessor is configured to interpret said movement data to determine whether

the movement data reaches the first predetermined threshold which is the smooth portion 72 of

the vibrational spectrum shown in figure 4 and whether the movement data reaches the second

predetermined threshold when it determines whether a third condition is met.  Flentov teaches

2:15-20:

> One preferred aspect of the invention includes a speed sensor, connected to the
> microprocessor subsystem, which senses a third condition that is indicative of a
> velocity of the vehicle. In this aspect, the microprocessor subsystem includes
> means for converting the third condition to information representative of a speed
> of the vehicle.

Flentov teaches speed parameters in "a third condition that is indicative of a velocity of

the vehicle." "[T]he microprocessor subsystem includes means for converting the third condition

to information representative of a speed of the vehicle."

**Regarding claim 160,** the output indicator is configured to display first information

indicating the occurrence of the first user-defined event when it is determined that the first

predetermined threshold is met.

Application/Control Number: 90/013,201                                      Page 28
Art Unit: 3993

The output indicator is also configured to display second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met such as speed of the user.

**Regarding claim 161,** the displayed first information, i.e., loft or "air" time, is different from the displayed second information i.e., speed.

**Regarding claim 163,** the first user-defined event is a predetermined type of movement such as the run down the mountain.

**Regarding claims 168, 169, 183, 184, 199, 200,** the microprocessor of Flentov is configured to detect a second event or run down the mountain, based on at least one of the user-defined operational parameters where the user stops collection and the movement data at the end of the run.  The microprocessor is configured to store, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the second event occurred.

**Regarding claims 175, 191,** the output indicator is configured to display first information such as loft, indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met and configured to display second information, such as speed, indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold or "a third condition" is met.  Flentov teaches 2:15-22:

> One preferred aspect of the invention includes a speed sensor, connected to the microprocessor subsystem, which senses a third condition that is indicative of a velocity of the vehicle. In this aspect, the microprocessor subsystem includes means for converting the third condition to information representative of a speed of the vehicle.

Flentov teaches a third condition or threshold for speed that the microprocessor converts to information representative of speed.

**Regarding claims 176, 192,** the displayed first information is in seconds and the displayed second information is in miles per hour.

**Regarding claims 178, 194,** the first user-defined event is a predetermined type of movement skiing down a mountain.

**Claims 20 and 118-120, 122-142, 144, 153, 154, 157, 194, 199, 200 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Gaudet et al. in view of Burdea et al.**

**Regarding claims 20, 118-120,** Gaudet teaches a method of monitoring physical movement of body parts comprising attaching a portable, self-contained movement measuring device 20 to the body of the user for measuring unrestrained movement in any direction. The user is capable of moving unrestrained in any direction.

The method includes measuring data associated with the physical movement using the portable, self-contained movement measuring device 20.

The method includes interpreting, using a microprocessor 40 included in the portable, self-contained movement measuring device 20. Gaudet teaches 5:32-37:

> FIG. 4 shows an exemplary embodiment of the foot contact time/foot loft time generator 20 shown in FIG. 3. As shown, foot contact time/foot loft time generator 20 includes an accelerometer 34, an amplifier circuit 38 (which has a high-pass filter 36 included within it), and a micro-controller 40.

The physical movement data is based on user-defined operational parameters. Gaudet teaches user-defined operational parameters in 16:60-64:

Alternatively, the parameters or variables could be adjusted automatically via software, based upon information input by the user (such as the pushing of a button both when the user starts and when the user finishes traversing a known distance).

Gaudet also teaches using timers, column 5, lines 12-14 (emphasis added):

According to one embodiment, foot contact time/foot loft time generator 20 includes a micro-controller [40] having virtually all circuitry, e.g., memory, **timers** and analog-to-digital (A/D) converters, on board, so that memory unit 54 need only be used to perform functions such as **permanently** storing data produced by foot contact time/foot loft time generator 20.

The timers are used to measure "air time" (Ta) and "contact time" (Tc).  The method includes storing data in said memory 54.

Gaudet teaches 9:8-15:

The occurrence of a negative spike event causes an "air time" (Ta) timer in micro-controller 40 to stop and a "contact time" (Tc) timer to start. The time measured by the air time (Ta) timer represents the time difference between the last "positive spike event" (defined below) and the negative spike event just detected. When a negative spike event occurs, a "StepCount" value, i.e., a counted number of footsteps of the user, also is increment.

Likewise Gaudet teaches 9:46-51:

The occurrence of a positive spike event causes the contact time (Tc) timer to stop and causes the air time (Ta) timer to start. The time measured by the contact time (Tc) timer represents the time difference between the last negative spike event and the positive spike event just detected.

By measuring time intervals between these positive and negative spikes, average "foot contact times" (Tc) and "foot loft times" (Ta) of the user may be calculated. To derive the pace of the user, the average foot contact time is multiplied by a first constant if it is less than 400 milli-seconds (ms) and is multiplied by a second constant if it is greater than 400 ms.  This pace value may, in turn, be used to calculate the distance traveled by the user.

The only difference between Gaudet and the claimed invention is using the timer of

Gaudet to provide time stamp information to be added to the recorded movement data in order to

keep track of the user's performance over time.

Burdea teaches a method to monitor physical movement of a body part. The system

employs an electronic device which tracks and monitors an individual's motion through the use

of sensors capable of measuring parameters associated with the individual's movement. In

column 6, lines 30-33,

> Patient data can be stored in database 114 for statistical purposes. Database 114
> can include a time stamp for providing a time history of updates of the patient
> information.

Burdea teaches the convention of storing performance data over time including a time

stamp with the data for providing a time history of updates. Gaudet already teaches a timer. A

clock such as a real-time clock would be required in order to associate a specific time and day

with each piece of performance data in order to evaluate the user's performance over many days.

Any conventional means to tag a date and time stamp to the performance data for providing

statistical information over time would have been obvious to one of ordinary skill. It would have

been obvious to one of ordinary skill in the art to modify the timer of Gaudet to provide a

time/date stamp as taught by Burdea to be associated with the movement data in order to

maintain a time history of user information for statistical purposes.

**Regarding claim 118,** as noted above, Burdea teaches the convention of storing, in the

memory, date information associated with the first time stamp information.

Application/Control Number: 90/013,201                                      Page 32
Art Unit: 3993

**Regarding claims 119, 120,** as noted above, the microprocessor a real-time clock is a conventional means to provide time and date information for storing with the movement data based on the detection of the first user-defined event.

**Regarding claims 123, 124,** Gaudet teaches in column 8, lines 54-59:

> Essentially, continuous-loop portion 101 continuously monitors the voltage across inputs 46 and 48 of micro-controller 40 to determine when negative and positive voltages differences (between inputs 46 and 48) in excess of predetermined thresholds occur. These negative and positive voltage differences are indicative, respectively, of the foot of a user impacting with and leaving the ground.

In figure 5 of Gaudet, the output of accelerometer 32 is fed into the amplifier circuit 38 whose output is input to the microcontroller 40. Therefore the microcontroller has a continuous-loop algorithm 101 that continuously monitors the voltage across amplified signals from the accelerometer.

**Regarding claim 125,** Gaudet teaches displaying, using an output indicator 26A of the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the user-defined event. Gaudet teaches the user has defined the operational parameters of the event 16:60-64:

> Alternatively, the parameters or variables could be adjusted automatically via software, based upon information input by the user (such as the pushing of a button both when the user starts and when the user finishes traversing a known distance).

The parameters are based upon information input by the user when the user starts and when the user finishes traversing a known distance.

**Regarding claim 126,** because the user has defined the first user-defined event, the microprocessor simultaneously retrieves the time and date information from the clock to associate it with the movement information and display the results.

**Regarding claim 127,** as noted above, the first user-defined event is based on the parameters set by the user and the time and date are automatically associated with the movement information.  Therefore the display signaling the occurrence of the first user-defined event is based on both the detection of the user-defined event and the first time stamp information.

**Regarding claim 128,** the user-defined event is based on the parameters input by the user when the user starts and when the user finishes traversing a known distance.  The user-defined event occurs when the movement data reaches the predetermined threshold.

**Regarding claim 129,** the display will signal the occurrence of the first-user defined event when the movement data reaches the predetermined threshold by displaying the results.

**Regarding claim 130,** as noted above, the microprocessor will store the first even information that indicates the predetermined threshold is met.

**Regarding claim 131,** as noted above, the microprocessor will store the first time stamp information in association with the first even information.

**Regarding claim 132,** in the art of portable battery operated devices, it is well-known to an artisan of ordinary skill to provide some indication that the battery power is getting low.

**Regarding claim 133,** "memory 54 need only be used to perform functions such as permanently storing data produced by foot contact time/foot loft time generator 20" Gaudet, 5:15-18.

**Regarding claims 134, 135,** as noted above, Burdea teaches remote workstation 20 can be coupled over network 22 to computer workstation 14.  Obviously, computer workstation 14 has software configured to communicate with external software in the remote workstation 20 wherein the external software is configured to present the downloaded movement data to the user

Application/Control Number: 90/013,201                                            Page 34
Art Unit: 3993

in the display.  Remote workstation 20 is for receiving performance data, analyze data and

communicate new rehabilitation instructions to computer workstation 14.

**Regarding claims 136-140,** the external software is configured to interpret the

movement data and produce at least one report.  The purpose of the external computer is to

analyze the data and to communicate new instructions for the user to the local workstation 14.

Producing reports on the movement data including historical data would be obvious to one of

ordinary skill in the art in order to develop new instructions for the user.  Burdea teaches, column

4, lines 43-50, the workstation 14 is coupled to hard copy device 18 for producing a hard copy of

diagnostic information including rehabilitation progress charts.

**Regarding claim 141,** the movement data is configured to be downloaded to the

computer via a wired connection.  Burdea's network 22 is a wired connection.

**Regarding claim 142,** wireless connections are old and well known and an obvious

equivalent means of communicating information from one computer to another.

**Regarding claim 144,** the user-defined event is based on the parameters input by the user

when the user starts and when the user finishes traversing a known distance, Gaudet;16:60-64.

The user-defined event occurs when the movement data reaches the predetermined threshold set

forth by the user.  The output indicator will indicate the predetermined threshold being reached

by displaying the results.

**Regarding claims 153, 154,** Gaudet teaches displaying, using an output indicator 26A of

the portable, self-contained movement measuring device, information signaling the occurrence of

the first user-defined event based on the detection of the user-defined event. Gaudet teaches the

user has defined the operational parameters of the event 16:60-64:

Alternatively, the parameters or variables could be adjusted automatically via software, based upon information input by the user (such as the pushing of a button both when the user starts and when the user finishes traversing a known distance).

The parameters are based upon information input by the user when the user starts and when the user finishes traversing a known distance.

**Regarding claim 157,** as noted above, distance is one of the parameters that is measured and displayed.

**Regarding claim 194,** the first user-defined event is a predetermined type of movement i.e., walking.

**Regarding claims 199 and 200,** the microprocessor detects a second event based on at least one of the user-defined operational parameters and the movement data and storing in memory the second event information related to the detected second event along with second time stamp information reflecting a time at which the second event occurred.  The second event would be when the user uses the portable, self-contained device a second time to record the walking activities.


**Claim 122 is rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Gaudet and Burdea as applied to claim 20 above, and further in view of Flentov.**

**Regarding claim 122,** Flentov teaches "[t]he memory may be nonvolatile such as battery backed RAM or Electrically Erasable Programmable Read Only Memory (EEPROM)" column 14, lines 33-35.  Therefore, the memory continues to store movement data in response to battery power being lost from said power source.  It would have been obvious to one of ordinary skill in

Application/Control Number: 90/013,201                                          Page 36
Art Unit: 3993

the art to further modify Gaudet to use EEPROM memory as taught by Flentov to store the

information so that the information stored is not lost in the event of a power loss.


**Claims 1, 13, 20 and 21, 31-33, 35-56, 58, 60, 61, 64-66, 68-73, 75-77, 79-99, 101, 103,**

**104, 107-116, 118-120, 122-142, 144, 146, 147, 150-161, 163, 168, 169, 174-176, 178, 183, 184,**

**189-192, 194, 199, 200 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable**

**over Vock et al. in view of Burdea et al.**

**Regarding claims 1, 13, 20, 21, 31-33, 189,** Vock teaches a portable, self-contained

device 10 comprising a movement sensor 18, 20, a power source 22, a microprocessor 12, a user

input 14, memory 13 and an output indicator 16 or display.

The movement sensor 18, 20 measures data associated with unrestrained movement in

any direction and generating signals indicative of said movement.  As shown in figure 2 the

portable, self-contained device 10 is mounted to the ski of the user.  The user can manipulate the

skis in an unrestrained movement in any direction.  The sensor 18, 20 generates signals

indicative of the unrestrained movement.

The microprocessor 12 is connected to the movement sensor 18, 20 and the power source

22 and is capable of receiving, interpreting, storing and responding to the movement data based

on user-defined operational parameters.  Vock teaches in column 8, lines 3-22:

> Briefly, the invention shown in FIG. 1 operates as follows. The housing 24 is
> attached or mounted to a sporting device, such as a ski or mountain bike, such that
> a user of the ski or mountain bike can access the system 10. During motion of the
> ski or mountain bike, the speed sensor 18 sends velocity information (over
> communication line 11a) to the microprocessor subsystem 12; while the loft
> sensor 20 sends loft or "air" time information (over communication line 11b) to
> the microprocessor subsystem 12. The speed information and loft time
> information are processed by the microprocessor subsystem 12 to quantify actual

LT 0000433

> speed, e.g., in miles per hour, and actual loft time, e.g., in seconds. The actual
> speed and loft time are thereafter stored in internal memory 13 until, at least, the
> speed and time data are accessed by a user of the system 10. Upon access through
> the user interface 14 (communicating with the microprocessor subsystem 12 via
> communication line 11c), a user of the system 10 can command the display of the
> speed and loft time data (sent across communication line 11d) on the display 16 in
> order to evaluate his or her performance in the sporting activity.

The user, through the user interface 14, commands the microprocessor 12 to display the speed and loft time data on the display 16 in order to evaluate his or her performance in the sporting activity.

Vock also teaches a clock element in column 3, lines 17-21:

> Preferably, the microprocessor subsystem of the invention includes a [clock]
> element, e.g., a 24-hour clock, for providing information convertible to an elapsed
> time. Accordingly, the subsystem can perform various calculations, e.g., dead
> time, on the data acquired by the apparatus for display to a user.

The clock of Vock is used for calculating the various elapsed times however, providing a clock that can also associate dates as well as time of day to the movement data, the user can thereby collect data over days, weeks or months to track performance over time. Such would have been an obvious provision to one of ordinary skill in the art as exemplified by Burdea.

Burdea is cited to teach the convention of storing data for statistical purposes by including a time stamp associated with the data thereby providing historical progress, see column 6, lines 30-33. Any conventional means to tag a date and time stamp to the movement data for providing statistical information over time would have been obvious to one of ordinary skill. A real-time clock is a well-known example of a means to provide a date and time stamp. It would have been obvious to one of ordinary skill in the art to modify Vock to include a time/date stamp as taught by Burdea such as real-time clock in order to track the movement data over time.

LT 0000434

Application/Control Number: 90/013,201                                        Page 38
Art Unit: 3993

Vock teaches many different embodiments for the speed sensor and the loft sensor.  In

column 20, lines 27-30, six accelerometers are used:

> Specifically, six accelerometers are connected with various sensitive orientations
> to collect pitch 207a yaw 207b, roll 207c, surge 207d, heave 207e, and sway 207f
> accelerations.

Vock also teaches how to derive speed and direction in column 20, line 62 to column 21,

lines 1-5:

> Also shown in FIG. 14A are translational integrators 209a-209c which convert the
> compensated accelerations from inputs 207d-207f to translational velocities by
> integration. Integrators 210a-210c likewise integrate inputs of pitch 207a, yaw
> 207b, and roll 207c to angular velocity while integrators 211a-211c provide a
> further integration to convert the angular velocities to angular position. The
> angular positional information and translational velocity information is combined
> and processed at the speed and direction resolution section 212 to derive speed
> and direction.

The accelerometers 207d-207f are used to determine the angular positional information

and translational velocity information.  The angular positional information and the velocity

information is combined and processed at the speed and direction resolution section 212 to

derive speed and direction.

Additionally, Vock teaches in lines 58-62 of column 17:

> It should be clear to those skilled in the art that fewer, or greater, numbers of
> accelerometers are within the scope of the invention, so long as they collectively
> determine speed. In effect, the fewer number of accelerometers results in reduced
> accuracy; not reduced functionality. Rather, in an ideal situation, one
> accelerometer can be used to detect speed; which is the integral of the
> acceleration over time. Further, a double integration over the same period
> provides distance; and, therefore, the invention can also provide distance in at
> least one embodiment of the invention.

The movement data of any one accelerometer can be used to determine speed and

distance through integration and double integration, respectively.

Application/Control Number: 90/013,201                                                Page 39
Art Unit: 3993

Sensor 20 is a loft sensor that detects when the skier is in the air during a jump.  The loft

sensor 20 may be constructed by several known components. Preferably, the sensor 20 is either

an accelerometer or a microphone assembly.  FIG. 4 illustrates a graph 70 of a representative

vibrational spectrum 72 that is stored into the microprocessor subsystem 12.  Vock 12:22-30:

> The vibrational spectrum between t1 and t2 [in FIG. 4] is comparatively smooth
> as compared to the spectrum outside this region because the user's sporting
> vehicle (e.g., the ski or mountain bike) is in the air and is not therefore subjected
> to the random vibrations of the road or ski slope. Accordingly, this relatively
> smooth spectrum between t1 and t2 can be readily discerned from the rest of the
> spectrum by the microprocessor subsystem 12 and evaluated for "air" time:
> specifically, "air" time is t2-t1.

Regarding the new claim language added in the last amendment, the Vock device is for

"detecting a first user-defined event [such as a first run down the mountain] based on at least one

of the user-defined operation parameters and the movement data" that records the physical

activity that occurs from the top of the run to the bottom of the run.  Vock teaches 9:30-34:

> A user presses the start/stop button 58 at the start of activity--such as at the start
> of skiing down a slope or biking down a trail--and presses the button 58 at the
> completion of activity to cease the acquisition of data

The at least one user-defined operational parameter is a predetermined threshold when

the user at the top of the run predetermines when the threshold occurs at the end of the run.  At

the end of the run, the user pushes button 58 a second time to stop recording movement data.

When the user stops recording movement data, the microprocessor, in response thereto, stores

the movement data along with the time stamp as taught by Burdea.  The time stamp accurately

stores the time in which the user-defined event occurred at the end of the run.  Therefore, the

modified Vock device is for "storing first event information related to the detected first user-

Application/Control Number: 90/013,201                                                   Page 40
Art Unit: 3993

defined event along with first time stamp information reflecting a time at which the first user-

defined event occurred" as claimed.

　　　**Claim 13,** recites, in addition to the limitations of claim 1, an input/output port, a

computer capable of interpreting and reporting the movement data based on operational

parameters, and a download device connected to the movement measuring device and the

computer for transmitting the movement data and operational parameters between the movement

measuring device and the computer for analysis, reporting and operation purposes.

　　　Vock teaches at least one user input 14 connected to the microprocessor 12 for

controlling the operation of the device.

　　　Vock teaches an output indicator 16.

　　　Burdea teaches 4:47-50:

> Remote workstation 20 can be used at a medical specialist location for receiving
> diagnostic information and communicating rehabilitation instructions to computer
> workstation 14.

　　　The remote workstation 20 is a computer running a program capable of interpreting and

reporting said movement data based on the operational parameters.  The program can generate

reports of the user's progress for analysis.

　　　Burdea teaches network 22 that provides communication between the workstation 14 and

the remote workstation 20.  Obviously, the workstation 14 and workstation 20 include

input/output ports in order to communicate with each other.  The download device is the network

interface card which allows transmitting the movement data and operational parameters between

the movement measuring device and the remote computer for analysis, reporting and operation

purposes.

Application/Control Number: 90/013,201                                    Page 41
Art Unit: 3993

Vock teaches the pressure sensor 221 determines the speed of vertical descent and the

inclinometer 222 determines the angle.  Since the angle of descent is known, and the rate of

descent is known, the true speed is determined and displayed.

**Regarding claim 20,** Vock teaches a method to monitor physical movement of a body

part comprising the steps of attaching a portable, self-contained movement measuring device 10

to the body part of the skis for measuring unrestrained movement in any direction.  The sensors

221 and 222 measure data associated with the physical movement.  The microprocessor 12

interprets the physical movement data based on user-defined operational parameters.  As noted in

claim 1, Vock teaches when the user stops recording movement data, the microprocessor, in

response to the button 58 being pushed a second time, stores the movement data along with the

time stamp as taught by Burdea.  The time stamp accurately stores the time in which the user-

defined event occurred at the end of the run.

As noted above in claim 1, Vock teaches a clock element for measuring elapsed time.

Burdea teaches a method of storing the movement data along with time stamp information in

memory.  Burdea would inherently include a clock element in order to provide time and date

information to be stored along with the movement data in memory 13 for developing historical

data for a person to analyze.  The modified Vock device would store in memory the first event

information related to the detected first user-defined event along with first time stamp

information reflecting a time at which the first user-defined event occurred.

The method further includes a microprocessor for detecting a first user-defined event

based on at least one of the user-defined operational parameters and the movement data that

LT 0000438

Application/Control Number: 90/013,201                                             Page 42
Art Unit: 3993

records the physical activity that occurs from the top of the run to the bottom of the run, see

Vock 9:30-34.

**Regarding claim 21,** Vock teaches using pressure sensors 221 to determine speed and

inclinometers 222 to determine the angle.  The angle data would be taken along two orthogonal

axes i.e., horizontal and vertical.

**Regarding claim 31,** the microprocessor stores in memory the date associated with the

first time stamp.

**Regarding claim 32,** the microprocessor 12 retrieves the time stamp, as taught by

Burdea, with the date from the "real-time clock" to associate the time stamp with the first user-

defined event.

**Regarding claim 33,** the microprocessor 12 retrieves the time stamp, as taught by

Burdea, from the "real-time clock" based on the occurrence of the user defined event.

**Regarding claims 35, 79, 122,** Vock teaches 16:25-29:

> The subsystem 150 stores information about the user's activity in memory. This
> memory may be external to the CPU 152, such as shown as memory 154, but
> preferably resides in the RAM 152c. The memory may be nonvolatile such as
> battery backed RAM or Electrically Erasable Programmable Read Only Memory
> (EEPROM).

Vock teaches conventional memory includes nonvolatile memory such as battery backed

RAM or Electrically Erasable Programmable Read Only Memory (EEPROM).  Such is well-

known to the artisan of ordinary skill.  EEPROM is a well-known form of Read Only Memory

used to store data that must be saved when power is removed.  Therefore, the memory continues

to store movement data in response to battery power being lost from said power source.

**Regarding claims 36, 37, 80, 81, 123, 124,** Vock teaches in column 8, lines 6-17:

Application/Control Number: 90/013,201                                                Page 43
Art Unit: 3993

> During motion of the ski or mountain bike, the speed sensor 18 sends velocity
> information (over communication line 11a) to the microprocessor subsystem 12;
> while the loft sensor 20 sends loft or "air" time information (over communication
> line 11b) to the microprocessor subsystem 12. The speed information and loft
> time information are processed by the microprocessor subsystem 12 to quantify
> actual speed, e.g., in miles per hour, and actual loft time, e.g., in seconds. The
> actual speed and loft time are thereafter stored in internal memory 13 until, at
> least, the speed and time data are accessed by a user of the system 10.

The movement sensors 18 and 20 will continuously transmit movement data to the
microprocessor 12. The speed and loft time information are processed by the microprocessor 12
to quantify actual speed in miles per hour and actual loft time in seconds where the actual speed
and loft times are thereafter stored in internal memory 13.

**Regarding claims 38, 82, 125, 129,** the output indicator 16 is configured to display the
results of the first user-defined event or run including speed and loft or "air" time based on the
detection of the first user-defined event as predetermined by the user, 9:30-34.

**Regarding claims 39, 40, 83, 84, 126, 127,** the same display 16 would display
information signaling the occurrence of the first user-defined event based on the detection of the
first user-defined event and the first time stamp information. As set forth in claim 1, when the
microprocessor detect the parameter that determines the end of the physical activity Burdea
teaches storing a time/date stamp with the physical activity data and displaying the results.

**Regarding claims 41, 85, 128,** Vock teaches in column 9, lines 30-33:

> A user presses the start/stop button 58 at the start of activity--such as at the start
> of skiing down a slope or biking down a trail--and presses the button 58 at the
> completion of activity to cease the acquisition of data

One of the user-defined operational parameters is a predetermined threshold when the
user stops the acquisition of data. The microprocessor detects this predetermined threshold when

LT 0000440

Application/Control Number: 90/013,201                                    Page 44
Art Unit: 3993

the button 58 being pressed a second time signaling the occurrence of the first user-defined event

when the movement data reaches the predetermined threshold.

> **Regarding claims 42, 86,** Vock teaches in column 2, line 66 to column 3, line 3:

>> a user interface for providing external inputs to the apparatus, including one or
>> more of the following: a start/stop button for selectively starting and stopping the
>> acquisition of data by the apparatus

The predetermined threshold is met when the user presses the start/stop button a second

time to stop the acquisition of data.  The output indicator 16 is configured to display the results

of the run such as speed and loft time.

> **Regarding claims 43, 87, 130,** Vock teaches in 8:11-15:

>> The speed information and loft time information are processed by the
>> microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and
>> actual loft time, e.g., in seconds. The actual speed and loft time are thereafter
>> stored in internal memory 13

Memory 13 stores the first event information indicating the threshold is met.

> **Regarding claims 44, 75, 76, 88, 131,** Burdea teaches adding a time/date stamp with the

first event information where the microprocessor retrieves the time/date stamp and stores it with

the first user-defined event information in memory 13.  The microprocessor obviously has to

retrieve the time/date from the "real-time clock".

> **Regarding claims 45, 89, 132,** in the art of portable battery operated devices, it is well-

known to an artisan of ordinary skill to provide some indication that the battery power is getting

low.

> **Regarding claims 46, 90,** the output indicator can include LCD and LED displays, see

Vock, column 2, lines 30-31.

**Regarding claims 47, 91,** the movement data stored in memory is configured to be downloaded to a computer as shown in figure 22. The information is downloaded to the base 608 that includes a computer, 26:18.

**Regarding claims 48, 92,** as noted above, Burdea teaches remote workstation 20 can be coupled over network 22 to computer workstation 14. Obviously, computer workstation 14 has software configured to communicate with external software in the remote workstation 20 wherein the external software is configured to present the downloaded movement data to the user in the display. It would have been obvious to modify Vock to download the physical activity from the local microprocessor to an external computer over a network as taught by Burdea in order to have the information saved at a different location so the information can be analyzed and processed for improving the user's performance.

**Regarding claims 49, 50, 93,** as noted above, Burdea taught the external software in the remote computer 20 is configured to run on the external computer where it can be analyzed by the user.

**Regarding claims 51, 94, 136, 137, 138, 139, 140,** the external software is configured to interpret the movement data and produce at least one report. The purpose of the external computer is to analyze the data and to communicate new instructions for the user to the local workstation 14. Producing reports using the movement data including historical data would be obvious to one of ordinary skill in the art in order to enhance the performance of the user. Burdea teaches, column 4, lines 43-50, the workstation 14 is coupled to hard copy device 18 for producing a hard copy of diagnostic information including rehabilitation progress charts. The

external computer would also be capable of generating reports.  Such would have been an obvious provision in Vock.

**Regarding claims 52, 95, 140,** the external software is configured to interpret the movement data and produce at least one history report.  The purpose of the external computer is to analyze the historical data.  Producing reports on the movement data including historical data would be obvious to one of ordinary skill in the art in order to develop new instructions for the user.

**Regarding claims 53, 96,** the history report obviously includes dates and time of the movement data.  It is important to include the dates and times in order to view historical changes in the user's development in order to generate a new training program for the user.

**Regarding claims 54, 97,** the external software is configured to allow the user to program additional reports and histories with respect to the movement data.  If it can generate one report and one history report, it can generate a plurality of reports and histories.

**Regarding claims 55, 98, 141,** the movement data is configured to be downloaded to the computer via a wired connection.  Burdea teaches network 22 is a wired connection.

**Regarding claims 56, 99, 142,** wireless connections are old and well known and an obvious equivalent means of communicating information over air waves.

**Regarding claims 58, 101, 144,** the output indicator provides a visual indicator to the user regarding the threshold being met.  Displays 16, 52, 162, 630 would display the loft or "air" time, speed of the user, distance traveled, etc. based on the microprocessor determining that the threshold is met.

LT 0000443

Application/Control Number: 90/013,201                                          Page 47
Art Unit: 3993

**Regarding claims 60, 61, 104, 146, 147,** the memory stores the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications.  One type of operational parameters occurs each time the loft or "air" time event happens.  It includes the smooth vibrational spectrum threshold between t1 and t2 as shown in figure 4.  Each time the movement data reaches this threshold, the microprocessor is configured to detect that the loft or "air" time user-defined event has occurred.  The microprocessor is configured to calculate the actual loft or "air" and store it in memory and will send the information to the output indicator to display the loft or "air" time data indicating that the user-defined loft or "air" time event has occurred.

**Regarding claims 64, 107, 150,** the plurality of thresholds are different from each other because they are collected at different times and represent different jumps.  Moreover, the plurality of thresholds would also include speed.

**Regarding claims 65, 108, 151,** the plurality of notifications have different visual indicators because one measures speed and another measures loft time.

**Regarding claims 66, 109, 152,** the prior art has already established the convention of using visual indicators to display different results.  Using a blinking indicator is old and well known and an obvious provision in the art of displaying information on a display screen in order to highlight one particular piece of data.  Where the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation. *In re Swain et al.*, 33 CCPA (Patents) 1250, 156 F.2d 239, 70 USPQ 412; *Minnesota Mining and Mfg. Co. v. Coe*, 69 App. D.C. 217, 99 F.2d 986, 38 USPQ 213; *Allen et al. v. Coe*, 77 App. D.C. 324, 135 F.2d 11, 57 USPQ 136.  Providing blinking lights to highlight

LT 0000444

a portion of the display is well within the realm of the artisan of ordinary skill in the art of displaying information on a display screen.

Regarding claims 68, 111, the microprocessor is configured to detect occurrence of the first user-defined event by comparing the movement data to the predetermined threshold which occurred when the user pressed the start/stop button 58 a second time.

Regarding claims 69, 112, 155, Vock teaches in column 21, lines 31-35, the device can be mounted to the user. Therefore, the device is capable of being placed on the user's arm and still be able to perform the function of recording the speed of the user, for example.

Regarding claims 70, 113, 155, with the device attached to the user's arm the sensor measures movement of the user's arm along with the user's body which will measure the speed of the user.

Regarding claims 71, 72, 114, 115, the movement sensor measures distance as well as speed. Vock teaches in column 20, lines 6-9, "one accelerometer can be used to detect speed; which is the integral of the acceleration over time. Further, a double integration over the same period provides distance". Therefore, the movement sensor of Vock would also measure distance . The distance is the same whether the user is walking, skiing or biking.

Regarding claims 73, 116, 118-120, 123, 124, 134, 135, 158, as noted above, Burdea teaches including a time stamp for associating the time/date stamp with the movement data and user-defined events for providing a time history of updates of the user performance for storing in memory. The microprocessor also stores in memory the date associated with the time stamp.

The microprocessor also continuously checks movement data received from the movement sensor after the user presses the start button, Vock 8:6-17.

The output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

The movement data stored in memory is configured to be downloaded to the computer 14, 20.

Software is configured to communicate with external software configured to run on a computer 14, 20 and present the downloaded movement data.

The external software is configured to produce at least one report based on the movement data.

The memory stores a plurality of user-defined thresholds for the loft or "air" time and speed, for example.  The plurality of thresholds corresponds to a plurality of notifications such as loft or "air" time and speed.  Each time the movement data reaches one of the plurality of thresholds, the microprocessor is configured to detect that one of the user-defined events occurred.

The sensor can be mounted on the arm of the user and measures the movement of the user's arm to determine the speed of the user.

**Regarding claim 77,** as noted above, Burdea teaches including a time stamp for associating the time/date stamp with the movement data so as to provide a time history of the user performance to be stored in memory.

**Regarding claim 103,** memory is configured to store the user-defined operational parameters and a plurality of thresholds respectively corresponding to a plurality of notifications.

Application/Control Number: 90/013,201                                      Page 50
Art Unit: 3993

Each time the movement data reaches one of the thresholds such as loft or "air" time, the

microprocessor is configured to detect that one of a plurality of user-defined events occurred.

     **Regarding claim 104,** the output indicator 16, 52, 162, 274, 630, 744a, is configured to

display a corresponding notification indicating that one of the user-defined events has occurred

such as loft time.

     **Regarding claim 110,** the output indicator 16, 52, 162, 274, 630, 744a, is configured to

signal the occurrence of user-defined events such as loft time and speed.

     **Regarding claims 125-128,** as noted above, Burdea teaches including a time stamp for

associating the time/date stamp with the movement data so as to provide a time history of the

user performance to be stored in memory.  The output indicator or displays 16, 52, 162, 630 are

configured to signal the occurrence of user-defined events such as speed and loft time which is

based on movement data.

     **Regarding claim 129,** the output indicator will signal the occurrence of the first user-

defined event when the movement data reaches the predetermined threshold at the end of the run.

At least one of the plurality of thresholds set by the user such as loft or "air" time or speed which

the output indicator will display.

     **Regarding claim 130,** memory stores the first event information indicating that the

predetermined threshold is met at the end of the physical activity.

     **Regarding claim 131,** the microprocessor records the time and date of the threshold

being met.  The microprocessor records the time and date for all movement data.

     **Regarding claims 133-135,** Vock teaches in 8:11-15:

          The speed information and loft time information are processed by the
          microprocessor subsystem 12 to quantify actual speed, e.g., in miles per hour, and

LT 0000447

actual loft time, e.g., in seconds. The actual speed and loft time are thereafter
stored in internal memory 13

The physical movement data stored in memory is the interpreted physical movement data

such as speed and loft time, and the stored physical movement data is configured to be

downloaded to a computer as taught by Burdea.  The external software is configured to run on

the computer.

**Regarding claims 136-140,** Burdea teaches 4:43-50 producing reports based on the

interpreted physical movement data using external software.  Since the movement data includes

time/date stamps, history reports can also be generated.  Additional reports and histories with

respect to the interpreted physical movement data can be generated.  The additional reports and

histories can be programmed by the user via external software.  All of the means to generate

reports are taught by the prior art.  Whether the reports are created by a specialist in the art or by

a user is well within the realm of the artisan of ordinary skill.

**Regarding claim 153,** Vock teaches signaling the occurrence of a user-defined event

such as speed or loft time which is based on the threshold being met.

**Regarding claim 154,** Vock teaches at least one of the user-defined operational

parameters is a predetermined threshold for determining speed and loft time, and the first user-

defined event occurs when the movement data reaches the predetermined threshold as set forth at

the end of the run.  The detecting comprises comparing the physical movement data to the

predetermined threshold at the end of the run.

**Regarding claim 156,** Vock teaches measuring the movement data to determine the

speed or loft time of the portable, self-contained movement measuring device.

Application/Control Number: 90/013,201                                    Page 52
Art Unit: 3993

**Regarding claims 159, 174 and 190,** the user-defined operational parameters comprise a

first predetermined threshold which is when the user has set the predetermined threshold for the

first user-defined event e.g., when the user makes a jump.  The first predetermined threshold is

when the user leaves the ground where the movement data is relatively smooth as shown in

figure 4 at 72.  The microprocessor interprets the smooth portion of the movement data as the

first user-defined event.

A second predetermined threshold different from the first predetermined threshold is

speed.  The second user-defined event occurs when the movement data reaches the second

predetermined threshold.  Vock teaches 2:45-50:

> One preferred aspect of the invention includes a speed sensor, connected to the
> microprocessor subsystem, which senses a third condition that is indicative of a
> velocity of the vehicle. In this aspect, the microprocessor subsystem includes
> means for converting the third condition to information representative of a speed
> of the vehicle.

The microprocessor is configured to interpret said movement data to determine whether

the movement data reaches the first predetermined threshold which is when the movement data is

relatively smooth as noted above and to determine whether it senses a third condition that is

indicative of the velocity.

**Regarding claims 160, 175, 176, 191, 192,** the output indicator is configured to display

first information indicating the occurrence of the first user-defined event when it is determined

that the first predetermined threshold is met such as loft or "air" time.

The output indicator is also configured to display second information indicating the

occurrence of the second user-defined event when is determined that the second predetermined

threshold is met such as speed of the user.

LT 0000449

Application/Control Number: 90/013,201                                                    Page 53
Art Unit: 3993

  **Regarding claims 161,** the displayed first information, i.e., loft or "air" time, is different
from the displayed second information i.e., speed.

  **Regarding claims 163, 178, 194,** the first user-defined event is a predetermined type of
movement such as a run down the mountain.

  **Regarding claims 168, 183, 199,** the microprocessor of Vock is configured to detect a
second event or run down the mountain based on at least one of the user-defined operational
parameters, where the user stops collection of movement data, and the movement data at the end
of the run.  The microprocessor is configured to store, in said memory, second event information
related to the detected second event along with second time stamp information reflecting a time
at which the second event occurred at the end of the run.

  **Regarding claims 169, 184, 200,** the second event is a predetermined type of movement
such as a second run down the mountain.


# THIS ACTION IS MADE FINAL.

  Patent owner's amendment filed 14 October 2014 necessitated the new grounds of
rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See
MPEP § 706.07(a).

  A shortened statutory period for response to this action is set to expire 2 Months from the
mailing date of this action.

  **Extensions of time under 37 CFR 1.136(a) do not apply in reexamination
proceedings.** The provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a
reexamination proceeding. Further, in 35 U.S.C. 305 and in 37 CFR 1.550(a), it is required that
reexamination proceedings "will be conducted with special dispatch within the Office."

  **Extensions of time in reexamination proceedings are provided for in 37 CFR
1.550(c).** A request for extension of time must specify the requested period of extension and it
must be accompanied by the petition fee set forth in 37 CFR 1.17(g). Any request for an
extension in a third party requested *ex parte* reexamination must be filed on or before the day on

Application/Control Number: 90/013,201                                         Page 54
Art Unit: 3993

which action by the patent owner is due, and the mere filing of a request will not effect any
extension of time. A request for an extension of time in a third party requested *ex parte*
reexamination will be granted only for sufficient cause, and for a reasonable time specified.  Any
request for extension in a patent owner requested *ex parte* reexamination for up to two months
from the time period set in the Office action must be filed no later than two months from the
expiration of the time period set in the Office action.  A request for an extension in a patent
owner requested *ex parte* reexamination for more than two months from the time period set in
the Office action must be filed on or before the day on which action by the patent owner is due,
and the mere filing of a request for an extension for more than two months will not effect the
extension.  The time for taking action in a patent owner requested *ex parte* reexamination will
not be extended for more than two months from the time period set in the Office action in the
absence of sufficient cause or for more than a reasonable time.

   The filing of a timely first response to this final rejection will be construed as including a
request to extend the shortened statutory period for an additional month, which will be granted
even if previous extensions have been granted. In no event, however, will the statutory period for
response expire later than SIX MONTHS from the mailing date of the final action. See MPEP §
2265.


### *Amendment in Reexamination Proceedings*

   In any reexamination proceeding under this chapter, the patent owner will be
permitted to propose any amendment to his patent and a new claim or claims thereto, in order to
distinguish the invention as claimed from the prior art cited under the provisions of section 301
of this title, or in response to a decision adverse to the patentability of a claim of a patent. See 35
U.S.C. 305. **For this reason, patent owner is notified that *any* amendment to a claim not
involved in the reexamination proceeding may not be entered, and if entered, will bring
that claim into the reexamination proceeding.** See 37 CFR 1.104.

   Patent owner is also notified that any proposed amendment to the specification and/or
claims in this reexamination proceeding must comply with 37 C.F.R. 1.530(d)-(j), must be
formally presented pursuant to 37 C.F.R. 1.52(a) and (b), and must contain any fees required by
37 C.F.R. 1.20(c). See MPEP § 2250(IV) for examples to assist in the preparation of proper
proposed amendments in reexamination proceedings. Also, in accordance with 37 CFR 1.530(e),
each claim amendment must be accompanied by an explanation of the support in the disclosure
of the patent for the amendment (i.e., support for the changes made in the claim(s), support for
any insertions and deletions). The failure to submit an explanation will generally result in a
noncompliant response since the failure to set forth the support in the disclosure goes to the
merits of the case (see MPEP § 2266.01). Such an amendment submitted after final rejection will
not be entered.


### *Notification of Concurrent Proceedings*

The patent owner is reminded of the continuing responsibility under 37 C.F.R. 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the patent throughout the course of this reexamination proceeding. Likewise, if present, the third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

## Service of Papers

After filing of a request for ex parte reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. The document must reflect service or the document may be refused consideration by the Office. See 37 CFR 1.550(f).

## Conclusion

**All** correspondence relating to this *ex parte* reexamination proceeding should be directed:

By EFS:         Registered users may submit via the electronic filing system EFS-Web, at
                https://efs.uspto.gov/efile/myportal/efs-registered.

By Mail to:     Mail Stop *Ex Parte* Reexam
                Central Reexamination Unit
                Commissioner for Patents
                United States Patent & Trademark Office
                P.O. Box 1450 Alexandria, VA 22313-1450

By FAX to:      (571) 273-9900
                Central Reexamination Unit

By hand:        Customer Service Window
                Randolph Building
                401 Dulany Street
                Alexandria, VA 22314

For EFS-Web transmissions, 37 CFR 1.8(a)(1)(i) (C) and (ii) states that correspondence (except for a request for reexamination and a corrected or replacement request for reexamination) will be considered timely filed if (a) it-is transmitted via the Office's electronic- filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a certificate of transmission for each piece of correspondence stating the date of transmission, which is prior to the expiration of the set period of time in the Office action.

Case 1:21-cv-00385-JDW   Document 58-1   Filed 09/21/22   Page 397 of 478 PageID #: 1026

Any inquiry concerning this communication or earlier communications from the
Examiner, or as to the status of this proceeding, should be directed to the Central
Reexamination Unit at telephone number (571) 272-7705.

Telephone Number for reexamination inquiries:

| | |
|---|---|
| Reexamination and Amendment Practice | (571) 272-7703 |
| Central Reexam Unit (CRU) | (571) 272-7705 |
| Reexamination Facsimile Transmission No. | (571) 273-9900 |

/Danton  DeMille/
Patent Reexamination Specialist
Central Reexamination Unit 3993
(571) 272-4974
9 December 2014

Conferee:       /RMF/                          Conferee: /EDL/

LT 0000453

| *Office Action in Ex Parte Reexamination* | Control No.<br>90/013,201 | Patent Under Reexamination<br>6059576 | |
|---|---|---|---|
| | Examiner<br>DANTON DE MILLE | Art Unit<br>3993 | AIA (First Inventor to File) Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☒ Responsive to the communication(s) filed on _10/14/2014_ .

☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☒ This action is made FINAL.

c. ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire _2_ month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.   3. ☐ Interview Summary, PTO-474.
2. ☐ Information Disclosure Statement, PTO/SB/08.   4. ☐ _____.

Part II   SUMMARY OF ACTION

1a. ☒ Claims _1,13,20,21,31-33,35-56,58,60,61,64-66,68-73,75-77,79-99,101,103,104,107-116,118-120,122-142,144,146,147 and 150-204_ are subject to reexamination.

1b. ☒ Claims _2-12,14-19 and 22-29_ are not subject to reexamination.

2. ☒ Claims _30,34,57,59,62,63,67,74,78,100,102,105,106,117,121,143,145,148 and 149_ have been canceled in the present reexamination proceeding.

3. ☒ Claims _162,164-167,170-173,177,179-182,185-188,193,195-198 and 201-204_ are patentable and/or confirmed.

4. ☒ Claims _1,13,20,21,31-33,35-56,58,60,61,64-66,68-73,75-77,79-99,101,103,104,107-116,118-120,122-142,144,146,147,150-161,163,168,169,174-176,178,183,184,189-192,194,199 and 200_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

   a) ☐ All  b) ☐ Some*  c) ☐ None   of the certified copies have

    1 ☐ been received.

    2 ☐ not been received.

    3 ☐ been filed in Application No. _____ .

    4 ☐ been filed in reexamination Control No. _____.

    5 ☐ been received by the International Bureau in PCT application No. _____.

   * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____.

LT 0000454

cc: Requester (if third party requester)

U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-13)                    **Office Action in Ex Parte Reexamination**                    Part of Paper No. 20141021

LT 0000455

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/013,201 | 04/04/2014 | 6059576 | A209779 | 9930 |

23373        7590        12/22/2014
SUGHRUE MION, PLLC
2100 PENNSYLVANIA AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20037

| EXAMINER |
|---|
| DEMILLE, DANTON D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/22/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

LT 0000459

| *Ex Parte Reexamination Interview Summary* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/013,201 | 6059576 |
| | Examiner | Art Unit |
| | DANTON DE MILLE | 3993 |

| All participants (USPTO personnel, patent owner, patent owner's representative): | |
|---|---|
| (1) _Danton DeMille_ | (4) _Quadeer Ahmed_ |
| (2) _Eileen Lillis_ | (5) _Carl Pelegrini_ |
| (3) _Jimmy Foster_ | (6) _William Mandir_ |
| | (7) _Aiyda Ghahramani_ |

Date of Interview: _18 December 2014_

Type:  a)☐ Telephonic     b)☐ Video Conference
          c)☒ Personal (copy given to:  1)☐ patent owner      2)☒ patent owner's representative)

Exhibit shown or demonstration conducted:    d)☐ Yes    e)☒ No.
     If Yes, brief description: _____

Agreement with respect to the claims f)☐  was reached.   g)☒  was not reached.   h)☐  N/A.
Any other agreement(s) are set forth below under "Description of the general nature of what was agreed to..."

Claim(s) discussed: _1,13 and 20_.

Identification of prior art discussed: _art of record_.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
_See Continuation Sheet_.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims
patentable, if available, must be attached.  Also, where no copy of the amendments that would render the claims
patentable is available, a summary thereof must be attached.)

A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION MUST INCLUDE PATENT OWNER'S
STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  (See MEPEP § 2281). IF A RESPONSE TO THE
LAST OFFICE ACTION HAS ALREADY BEEN FILED, THEN PATENT OWNER IS GIVEN **ONE MONTH** FROM THIS
INTERVIEW DATE TO PROVIDE THE MANDATORY STATEMENT OF THE SUBSTANCE OF THE INTERVIEW
(37 CFR 1.560(b)). THE REQUIREMENT FOR PATENT OWNER'S STATEMENT CAN NOT BE WAIVED.
**EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

| /Danton DeMille/ | /JGF/ | /EDL/ |
|---|---|---|
| Patent Reexamination Specialist | | |
| Art Unit 3993 | | LT 0000460 |

cc: Requester (if third party requester)

U.S. Patent and Trademark Office
PTOL-474 (Rev. 04-01)                    *Ex Parte* Reexamination Interview Summary                    Paper No. 20141218

LT 0000461

Continuation of Description of the general nature of what was agreed to if an agreement was reached, or any other comments:  Patent owner proposed an amendment, see attachment, based on the opinion that the examiner interpreted the claim language "detecting a first user-defined event based on at least one of the user-defined operational parameters and the movement data…" to mean "detecting a first user-defined event based on at least one of the user-defined operational parameters and/or the movement data".  The user-defined event of the instant invention is based on the user-defined operational parameter and the movement data i.e., is a specific characteristic of the movement data.

The Office's interpretation of the claim language is that the detection was based on at least one user-defined operational parameter and the movement data.  The user-defined event was the run down the mountain based on the user defined operational parameters which is when the user presses start button at the top of the run and presses the stop button at the end of the run.  The movement data is what is being accumulated from the time the user pressed the start button until the user presses the stop button.  Broadly, the user-defined event, as claimed, is based on a user-defined parameter such as pushing the start button at the beginning and pressing the stop button at the end to define the parameters of the movement data.

It was discussed that tying the time stamp to the movement (or to the sensing of the movement) of the user-defined event would mean that the time stamp is not interpreted to indicate the time of an entire activity within which the movement took place, but only that of the movement.  Patent Owner asserted in the interview that the various art combinations applied in the Final rejection failed to suggest providing a time stamp to sensed movement in a user-defined event (which is based on user-defined operational parameters and the movement data).

Discussed changing the language to state "detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters".  However, this still defines the event based on the parameters and the movement data.  It was also discussed modifying "storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the first user-defined event occurred"  to be "storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user defined event".

Formal amendment to follow.

LT 0000462

# FAX COVER SHEET

| TO | (Manual Fax Entry) |
|---|---|
| COMPANY | Fax Recipient |
| FAX NUMBER | 15712734974 |
| FROM | SUGHRUE MION |
| DATE | 2014-12-15 18:45:02 EST |
| RE | [12670] Agenda for the Personal Interview (Control No. 90/013,201; Attorney Docket No.: A209779) |

## COVER MESSAGE

Dear Examiner DeMille,
Please find attached the agenda for the interview this Thursday.
Best,
Quadeer

Sughrue Mion, PLLC  | ,  Office: | Fax:

Warning: In rare cases, our e-mail filtering software may eliminate legitimate email from clients unnoticed. Therefore, if your mail contains important instructions, please make sure that we acknowledge receipt of those instructions.
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail to coordinate retrieval or deletion of this message. Thank you.

WWW.EFAX.COM

LT 0000463

PAGE 1/3 * RCVD AT 12/15/2014 5:45:37 PM [Eastern Standard Time] * SVR:W-PTOFAX-002/3 * DNIS:2734974 * CSID:12022937860 * DURATION (mm-ss):01-46

Control No.: 90/013,201                    *FOR DISCUSSION ONLY, DO NOTENTER*
Atty. Docket No.: A209779

## Agenda for the Personal Interview

Date / time of Interview

      December 18, 2014 at 10AM

Scheduled Participants

      Applicant's representative(s):     William H. Mandir, Reg. No. 32,156
                                          Carl J. Pellegrini, Reg. No. 40,766
                                          Quadeer A. Ahmed, Reg. No. 60,835
                                          Aiyda Ghahramani
                                          (202) 857-3207 (voice - Quadeer)

      USPTO:                   Examiner Danton DeMille
                                            Supervisor Eileen Lillis
                                            (571) 272-4974 (voice)
                                            (571) 273-4974 (fax)

      **It is Applicant's intention that such an interview will lead to an agreeable resolution of the rejected claims.**

      Claims 1, 13, 20, 21, 31-33, 35-56, 58, 60, 61, 64-66, 68-73, 75-77, 79-99, 101, 103, 104, 107-116, 118-120, 122-142, 144, 146, 147, and 150-204 are subject to reexamination.

      During the interview, Patent Owner's representatives would appreciate the opportunity to discuss a proposed clarifying amendment to claim 1 in light of the Examiner's comments in the Office Action dated December 10, 2014.

      The proposed amendment is shown in the attached Appendix.

      In particular, the proposed amendment relates to the following portion of claim 1:

      "detecting a first user-defined event based on at least one of the user-defined operational parameters and the movement data,..."

      The Examiner appears to be interpreting this feature to mean that the detection of the event is based on (i) one of the user-defined operational parameters **and/or** (ii) the movement data.

      The Examiner's interpretation appears to be based on the "at least one of" language in the claim.

      However, the PO's intention is for the "at least one of" to qualify the plural user-defined operational parameters rather than qualifying the operational parameters and the movement data.

      In other words, the PO's intention is for this claim to be interpreted to mean that the detection of the event is based on (i) one of the user-defined operational parameters **and** (ii) the movement data.

      Accordingly, as shown in the attached Appendix, PO is proposing to amend claim 1 to recite:

Page 1 of 3

LT 0000464

Control No.: 90/013,201
Atty. Docket No.: A209779

*FOR DISCUSSION ONLY, DO NOTENTER*

detecting a first user-defined event based on at least one of the user-defined operational parameters, and **based on** the movement data…

Similar amendments could be made to the other independent claims (namely, claims 13 and 20).

As such, in the claimed invention, the first user-defined event is detected based on two pieces of information - a user-defined operational parameter and the movement data.

On the other hand, as acknowledged in the Office Action, the alleged event in Flentov occurs when the user pushes a button 58 instructing the system to stop recording movement data (Office Action, paragraph bridging pages 7-8).

That is, the detection of the alleged event is solely based on the button 58 being pushed and n*ot based on any movement data*.

For example, regardless of how long or short the run is which would presumably correlate to the amount of movement data, the end of the event is detected based on the button 58 being pushed - the amount of movement data does not at all factor into the detection of the event.

Accordingly, based on the clarifying amendment discussed above, it is respectfully submitted that Flentov alone, or in combination with Burdea, does not and cannot teach all the features of claim 1.

In view of the foregoing, it is believed that the proposed arguments and amendments discussed above would overcome the relevant rejections of record and thus would confirm the patentability of the claims subject to this reexamination.

However, if the Examiners have any additional suggestions for further clarifying the claimed subject matter, Applicant's representatives would welcome such suggestions during the personal interview.

LT 0000465

Control No.: 90/013,201                *FOR DISCUSSION ONLY, DO NOT ENTER*
Atty. Docket No.: A209779

# **APPENDIX**

## PROPOSED AMENDMENT TO CLAIM 1

1. (currently amended):  A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising:

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters, detecting a first user-defined event based on at least one of the user-defined operational parameters; and based on the movement data, and storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the first user-defined event occurred;

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data; and

an output indicator connected to said microprocessor for signaling the occurrence of user-defined events;

wherein said movement sensor measures the angle and velocity of said movement.

LT 0000466

PATENT APPLICATION

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*In re* Patent of                                        Docket No:  A209779

Theodore L. Brann

Control No.:  90/013,201                          Group Art Unit:  3993

Confirmation No.: 9930                           Examiner:  DEMILLE, DANTON D

Filed:  April 4, 2014

For:  TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER
       MOVEMENT DURING PHYSICAL ACTIVITY

### STATEMENT OF SUBSTANCE OF INTERVIEW

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Please review and enter the following remarks summarizing the personal interview

conducted on December 18, 2014.

As an initial matter, Patent Owner's representatives thank the Examiners for the

courtesies extended during the personal interview.

During the interview, proposed clarifying amendment to independent claims 1, 13, and

20 were discussed in light of the Examiner's comments in the Office Action dated December 10,

2014.  Further, differences between the claimed invention and the cited references were

discussed in view of the proposed amendments to the claims (*see* Examiner's Interview Summary

dated December 22, 2014).

Regarding the Examiner's position that the Flentov reference teaches detecting a first

user-defined event based on (i) one of the user-defined operational parameters and (ii) the

STATEMENT OF SUBSTANCE OF INTERVIEW
Appln. No.:  90/013,201
Attorney Docket No.:  A209779

movement data, PO's representative explained that the detection of the asserted event in Flentov

is not based on the movement data.

Additional clarifying amendments were discussed to tie the claimed first time stamp

information such that it reflects a time at which the movement data causing the first user-defined

event occurred.

The Examiners agreed that if a formal response is filed with clarifying amendments along

the lines discussed during the interview, the Examiners would reconsider their current position

regarding the combination of references (i.e., Flentov/Vock with Burdea).

It is respectfully submitted that the instant STATEMENT OF SUBSTANCE OF

INTERVIEW complies with the requirements of 37 C.F.R. §§1.2 and 1.133 and MPEP §713.04.

**It is believed that no petition or fee is required.**  However, if the USPTO deems

otherwise, Patent Owner hereby petitions for any extension of time which may be required to

maintain the pendency of this case, and any required fee, except for the Issue Fee, for such

extension is to be charged to Deposit Account No. 19-4880.

Respectfully submitted,

/Abdul-Quadeer Ahmed/

SUGHRUE MION, PLLC
Telephone:  202.293.7060
Facsimile:  202.293.7860

WASHINGTON OFFICE
23373
CUSTOMER NUMBER

Date:  January 8, 2015

Quadeer A. Ahmed
Registration No. 60,835

2

LT 0000468

REEXAMINATION

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| *In re* Patent of | Docket No:  A209779 |
| Theodore L. Brann | |
| Control No.:  90/013,201 | Group Art Unit:  3993 |
| Confirmation No.:  9930 | Examiner:  DEMILLE, DANTON D |
| Filed:  April 4, 2014 | |

For:  TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER
MOVEMENT DURING PHYSICAL ACTIVITY

### RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION

**MAIL STOP** *Ex Parte* **Reexam**
Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

In response to the Office Action dated December 10, 2014, Patent Owner respectfully requests reconsideration of this reexamination application in light of the following amendments and remarks.

## TABLE OF CONTENTS

I.      AMENDMENTS TO THE CLAIMS ................................................................................2

II.     STATUS OF THE CLAIMS AND EXEMPLARY SUPPORT FOR CLAIM
        AMENDMENTS ..........................................................................................................41

III.    REMARKS ..................................................................................................................47

LT 0000471

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

## I.      AMENDMENTS TO THE CLAIMS

**This listing of claims will replace all prior versions and listings of claims in the proceeding:**

**LISTING OF CLAIMS:**

1. (currently amended):  A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising:

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters, detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters, and storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred;

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data; and

an output indicator connected to said microprocessor for signaling the occurrence of user-defined events;

2

LT 0000472

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

wherein said movement sensor measures the angle and velocity of said movement.

2. (original):  The device of claim 1 further comprising at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters to and from a computer.

3. (original):  The device of claim 1 wherein said device is compact and weighs less than one pound.

4. (original):  The device of claim 1 wherein said movement sensor comprises at least one accelerometer.

5. (original):  The device of claim 1 wherein said movement sensor can simultaneously detect real time movement along at least two orthogonal axes.

6. (original):  The device of claim 1 wherein said movement sensor is housed separately from said microprocessor.

7. (original):  The device of claim 1 wherein said monitored body part movement is torso or limb movement.

LT 0000473

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

8. (original):  The device of claim 1 wherein said data measured by said movement sensor includes the distance of said movement.

9. (original):  The device of claim 1 wherein said output indicator is visual.

10. (original):  The device of claim 1 wherein said output indicator is audible.

11. (original):  The device of claim 1 wherein said output indicator is tactile.

12. (original):  The device of claim 1 wherein said user input is a switch.

13. (currently amended):  A system to aid in training and safety during physical activity, said system comprising

a portable, self-contained movement measuring device, said movement measuring device further comprising

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement;

a power source;

a microprocessor connected to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters, detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters, and storing first event information related to

4

LT 0000474

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred;

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor;

memory for storing said movement data;

at least one input/output port connected to said microprocessor for downloading said data and uploading said operational parameters; and

an output indicator connected to said microprocessor;

a computer running a program capable of interpreting and reporting said movement data based on said operational parameters; and

a download device electronically connected to said movement measuring device and said computer for transmitting said movement data and operational parameters between said movement measuring device and said computer for analysis, reporting and operation purposes;

wherein said movement sensor measures the angle and velocity of said movement.

14. (original):  The system of claim 13 wherein said computer is a personal computer.

15. (original):  The system of claim 13 wherein said computer is connected to a network of other computers.

LT 0000475

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

16. (original):  The system of claim 13 wherein said download device is a physical docking station.

17. (original):  The system of claim 13 wherein said download device is a wireless device.

18. (original):  The system of claim 17 wherein said wireless device uses radio frequency.

19. (original):  The system of claim 17 wherein said wireless device uses infrared light.

20. (currently amended):  A method to monitor physical movement of a body part comprising the steps of:

attaching a portable, self-contained movement measuring device to said body part for measuring unrestrained movement in any direction;

measuring data associated with said physical movement;

interpreting, using a microprocessor included in the portable, self-contained movement measuring device, said physical movement data based on user-defined operational parameters and a real-time clock; [and]

storing said data in memory;

detecting, using the microprocessor, a first user-defined event based on the movement data and at least one of the user-defined operational parameters; and

LT 0000476

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

storing, in said memory, first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred.

21. (original):  The method of claim 20 wherein said physical movement data includes velocity data of said movement, angle measurement data taken along at least two orthogonal axes, and related date and time data.

22. (original):  The method of claim 21 further comprising the step of defining said parameters for a specific physical movement prior to said interpreting step.

23. (original):  The method of claim 21 further comprising the step of downloading said data from said movement measuring device to a computer for reporting and analysis purposes.

24. (original):  The method of claim 21 wherein said interpreting step comprises teaching an individual how to properly perform said physical movement.

25. (original):  The method of claim 20 wherein said movement measuring device is an accelerometer.

26. (original):  The method of claim 20 further comprising the step of providing real time feedback regarding said movement.

LT 0000477

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

27. (original):  The method of claim 26 wherein said physical movement is physical labor.

28. (original):  The method of claim 26 wherein said physical movement is an exercise related to medical treatment.

29. (original):  The method of claim 26 wherein said physical movement is an exercise to improve technique related to an athletic skill.

LT 0000478

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

**Cancel claim 30.**

31. (new):  The device of claim 1, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information.

32. (new):  The device of claim 1, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock and associate the retrieved first time stamp information with said first user-defined event.

33. (new):  The device of claim 32, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock based on the detection of the user-defined event.

**Cancel claim 34.**

35. (new):  The device of claim 1, wherein said memory is configured to continue to store said movement data in response to battery power being lost from said power source.

36. (new):  The device of claim 1, wherein said movement sensor is configured to continuously check for said movement.

LT 0000479

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

37. (new):  The device of claim 36, wherein said microprocessor is configured to continuously interpret, based on the user-defined operational parameters, said movement data received from said movement sensor.

38. (new):  The device of claim 1, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event.

39. (new):  The device of claim 38, wherein said output indicator is configured to display said information signaling the occurrence of the first user-defined event based on said first time stamp information.

40. (new):  The device of claim 1, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

41. (new):  The device of claim 1, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.

LT 0000480

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

42. (new):  The device of claim 41, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.

43. (new):  The device of claim 41, wherein said memory is configured to store said first event information indicating that the predetermined threshold is met.

44. (new):  The device of claim 43, wherein said memory is configured to store the first time stamp information in association with said first event information.

45. (new):  The device of claim 1, wherein said output indicator is configured to indicate a low battery condition of the device.

46. (new):  The device of claim 9, wherein said output indicator is selected from the group consisting of single monochromatic LEDs, multiple colored lights, and liquid crystal displays.

47. (new):  The device of claim 1, wherein said movement data stored in the memory is configured to be downloaded to a computer.

48.  (new):  The device of claim 47, further comprising:

11

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

software configured to communicate with external software, wherein the external software is configured to present the downloaded movement data to the user.

49.  (new):  The device of claim 48, wherein said external software is configured to run on the computer.

50. (new):  The device of claim 49, wherein said downloaded movement data is configured to be analyzed by said user via said external software.

51. (new):  The device of claim 48, wherein said external software is configured to interpret said movement data and produce at least one report.

52. (new):  The device of claim 48, wherein said external software is configured to interpret said movement data and produce at least one history report.

53. (new):  The device of claim 52, wherein said at least one history report includes dates and times of said movement data.

54. (new):  The device of claim 48, wherein said external software is configured to allow the user to program additional reports and histories with respect to said movement data of said user.

LT 0000482

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

55. (new):  The device of claim 47, wherein said movement data is configured to be downloaded to said computer via a wired connection.

56.  (new):  The device of claim 47, wherein said movement data is configured to be downloaded to said computer via a wireless connection.

**Cancel claim 57.**

58.  (new):  The device of claim 41, wherein the output indicator is configured to provide a visual indicator to the user regarding the predetermined threshold being reached.

**Cancel claim 59.**

60. (new):   The device of claim 1, wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred.

61. (new):  The device of claim 60, wherein when the microprocessor detects that one of the user-defined events occurred based on the movement data reaching one of the plurality of the

13

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

thresholds, the output indicator displays a corresponding one of the notifications indicating that one of the user-defined events has occurred.


**Cancel claim 62.**


**Cancel claim 63.**


64.  (new):  The device of claim 60, wherein the plurality of thresholds are different from each other.


65.  (new):  The device of claim 60, wherein the plurality of notifications are different visual indicators.


66. (new):  The device of claim 65, wherein at least one of the visual indicators includes a blinking indicator.


**Cancel claim 67.**


68.  (new):  The device of claim 41, wherein said microprocessor is configured to detect occurrence of the first user-defined event by comparing said movement data to said predetermined threshold.


14

LT 0000484

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

69. (new):  The device of claim 1, wherein said device is configured to be placed on said user's arm to monitor and record said movement data.

70.  (new):  The device of claim 69, wherein said movement sensor is configured to measure movement of said user's arm.

71. (new):  The device of claim 1, wherein said movement sensor is configured to measure a walking distance.

72. (new):  The device of claim 71, wherein said device is configured to be wearable by the user, and said movement sensor is configured to measure said walking distance of said user.

73. (new):  The device of claim 1, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information,

wherein said movement sensor is configured to continuously check for said movement,

wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information,

wherein the device further comprises software configured to communicate with external software configured to run on a computer and present the downloaded movement data,

wherein said external software is configured to produce at least one report based on said movement data,

LT 0000485

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-defined events occurred,

wherein said device is configured to be placed on said user's arm to monitor and record said movement data,

wherein said movement sensor is configured to measure movement of said user's arm.

**Cancel claim 74.**

75. (new):  The system of claim 13, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information.

76. (new):  The system of claim 13, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock and associate the retrieved first time stamp information with said first user-defined event.

77. (new):  The system of claim 76, wherein said microprocessor is configured to retrieve said first time stamp information from said real-time clock based on the detection of the first user-defined event.

LT 0000486

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

**Cancel claim 78.**

79. (new):  The system of claim 13, wherein said memory is configured to continue to store said movement data in response to battery power being lost from said power source.

80. (new):  The system of claim 13, wherein said movement sensor is configured to constantly checks for said movement.

81. (new):  The system of claim 80, wherein said microprocessor is configured to continuously interpret, based on the user-defined operational parameters, said movement data received from said movement sensor.

82. (new):  The system of claim 13, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event.

83. (new):  The system of claim 82, wherein said output indicator is configured to display said information signaling the occurrence of the first user-defined event based on said first time stamp information.

LT 0000487

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

84. (new):  The system of claim 13, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

85. (new):  The system of claim 13, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.

86. (new):  The system of claim 85, wherein said output indicator is configured to display information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.

87. (new):  The system of claim 85, wherein said memory is configured to store said first event information indicating that the predetermined threshold is met.

88. (new):  The system of claim 87, wherein said memory is configured to store the first time stamp information in association with said first event information.

89. (new):  The system of claim 13, wherein said output indicator is configured to indicate a low battery condition of the device.

LT 0000488

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

90. (new):  The system of claim 13, wherein said output indicator is visual, and said output indicator is selected from the group consisting of single monochromatic LEDs, multiple colored lights, and liquid crystal displays.

91. (new):  The system of claim 13, wherein said movement data stored in the memory is configured to be downloaded to the computer.

92. (new):  The system of claim 91, wherein the portable, self-contained movement measuring device further comprises:

software configured to communicate with the program running on the computer, wherein the program is configured to present the downloaded movement data to the user.

93. (new):  The system of claim 92, wherein said downloaded movement data is configured to be analyzed by said user via said program.

94. (new):  The system of claim 92, wherein said program is configured to interpret said movement data and produce at least one report.

95. (new):  The system of claim 92, wherein said program is configured to interpret said movement data and produce at least one history report.

LT 0000489

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

96. (new):  The system of claim 95, wherein said at least one history report includes dates and times of said movement data.

97. (new):  The system of claim 92, wherein said program is configured to allow the user to program additional reports and histories with respect to said movement data of said user.

98. (new):  The system of claim 91, wherein said movement data is configured to be downloaded to said computer, using the download device, via a wired connection.

99.  (new):  The system of claim 91, wherein said movement data is configured to be downloaded to said computer, using the download device, via a wireless connection.

**Cancel claim 100.**

101.  (new):  The system of claim 85, wherein the output indicator is configured to provide a visual indicator to the user regarding the predetermined threshold being reached.

**Cancel claim 102.**

103. (new):  The system of claim 13, wherein the memory is configured to store the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein each time the

20

LT 0000490

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

movement data reaches one of the plurality of the thresholds, the microprocessor is configured to detect that one of a plurality of user-defined events occurred.

104. (new):  The system of claim 103, wherein when the microprocessor detects that one of the user-defined events occurred based on the movement data reaching one of the plurality of the thresholds, the output indicator displays a corresponding one of the notifications indicating that one of the user-defined events has occurred.

**Cancel claim 105.**

**Cancel claim 106.**

107. (new):  The system of claim 103, wherein the plurality of thresholds are different from each other.

108. (new):  The system of claim 103, wherein the plurality of notifications are different visual indicators.

109. (new):  The system of claim 108, wherein at least one of the visual indicators includes a blinking indicator.

LT 0000491

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

110. (new):  The system of claim 13, wherein said output indicator is configured to signal the occurrence of user-defined events.

111. (new):  The system of claim 85, wherein said microprocessor is configured to detect occurrence of the first user-defined event by comparing said movement data to said predetermined threshold.

112. (new):  The system of claim 13, wherein said device is configured to be placed on said user's arm to monitor and record said movement data.

113. (new):  The system of claim 112, wherein said movement sensor configured to measure movement of said user's arm.

114. (new):  The system of claim 13, wherein said movement sensor configured to measure a walking distance.

115. (new):  The system of claim 114, wherein said device is configured to be wearable by the user, and said movement sensor is configured to measure said walking distance of said user.

116. (new):  The system of claim 13, wherein said microprocessor is configured to store, in said memory, date information associated with the first time stamp information,

LT 0000492

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

wherein said movement sensor is configured to continuously check for said movement,

wherein said output indicator is configured to display information signaling the

occurrence of the first user-defined event based on the detection of the first user-defined event

and the first time stamp information,

wherein said movement data stored in the memory is configured to be downloaded to the

computer,

wherein the device further comprises software configured to communicate with the

program which presents the downloaded movement data,

wherein said program is configured to produce at least one report based on said

movement data,

wherein the memory is configured to store  the user-defined operational parameters, the

user-defined operational parameters comprising a plurality of thresholds respectively

corresponding to a plurality of notifications, wherein each time the movement data reaches one

of the plurality of the thresholds, the microprocessor is configured to detect that one of the user-

defined events occurred,

wherein said device is configured to be placed on said user's arm to monitor and record

said movement data,

wherein said movement sensor configured to measure movement of said user's arm.


**Cancel claim 117.**


118.  (new):  The method of claim 20, further comprising:

LT 0000493

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

storing, in said memory, date information associated with the first time stamp

information.

119. (new):   The method of claim 20, further comprising:

retrieving said first time stamp information from said real-time clock and associate the

retrieved first time stamp information with said first user-defined event.

120.  (new):  The method of claim 119, further comprising:

retrieving said first time stamp information from said real-time clock based on the

detection of the first user-defined event.

**Cancel claim 121.**

122. (new):  The method of claim 20, wherein said storing comprises continuously

storing said movement data after battery power is lost from a power source of the portable, self-

contained movement measuring device.

123.  (new):  The method of claim 20, further comprising:

continuously monitoring for said physical movement using a movement sensor of the

portable, self-contained movement measuring device.

124. (new):  The method of claim 123, wherein said interpreting comprises:

LT 0000494

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

continuously interpreting, based on the user-defined operational parameters, said physical movement data.

125.  (new):  The method of claim 20, further comprising:

displaying, using an output indicator of the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the user-defined event.

126.  (new):  The method of claim 125, wherein said output indicator displays said information signaling the occurrence of the first user-defined event based on said first time stamp information.

127.  (new):  The method of claim 20, further comprising:

displaying, using an output indicator included the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information.

128. (new):  The method of claim 20, wherein said at least one of the user-defined operational parameters is a predetermined threshold, and said first user-defined event occurs when the movement data reaches the predetermined threshold.

LT 0000495

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

129  (new):  The method of claim 128, wherein an output indicator of the portable, self-contained movement measuring device displays information signaling the occurrence of the first user-defined event when the movement data reaches the predetermined threshold.

130.  (new):  The method of claim 128, further comprising:

storing, in said memory, said first event information indicating that the predetermined threshold is met.

131.  (new):  The method of claim 130, further comprising:

storing, in said memory, the first time stamp information in association with said first event information.

132.  (new):  The method of claim 20, further comprising:

indicating a low battery condition, using an output indicator of the portable, self-contained movement measuring device.

133. (new):  The method of claim 20, wherein said physical movement data stored in the memory is the interpreted physical movement data, and said stored physical movement data is configured to be downloaded to a computer.

134.  (new):  The method of claim 133, further comprising:

LT 0000496

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

communicating with external software, wherein the external software is configured to

present said interpreted physical movement data to the user.

135.  (new):  The method of claim 134, wherein said external software is configured to

run on a computer.

136.  (new):  The method of 20, further comprising:

producing a report based on said interpreted physical movement data.

137.  (new):  The method of 134, further comprising:

producing at least one report based on said interpreted physical movement data using the

external software.

138. (new):  The method of claim 134, further comprising:

producing at least one history report based on said interpreted physical movement data

using the external software.

139.  (new):  The method of claim 138, wherein said at least one history report includes

dates and times of said physical movement data.

140.  (new):  The method of claim 134, further comprising:

LT 0000497

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

providing additional reports and histories with respect to said interpreted physical movement data, wherein the additional reports and histories are programmed by the user via the external software.

141.  (new):  The method of claim 133, wherein said physical movement data is configured to be downloaded to said computer via a wired connection.

142.  (new):  The method of claim 133, wherein said movement data is configured to be downloaded to the computer via a wireless connection.

**Cancel claim 143.**

144.  (new):  The method of claim 128, further comprising:

providing, via an output indicator of the portable, self-contained movement measuring device, a visual indicator to the user regarding the predetermined threshold being reached.

**Cancel claim 145.**

146.  (new):  The method of claim 20, further comprising:

storing the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications,

LT 0000498

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

wherein the detecting comprises detecting occurrence of one of a plurality of user-defined events each time the movement data reaches one of the plurality of the thresholds.

147.  (new):  The method of claim 146, wherein in response to detecting that one of the user-defined events occurred based on the movement data reaching one of the plurality of the thresholds, the method further comprises:

displaying, via an output indicator of the portable, self-contained movement measuring device, a corresponding one of the notifications indicating that one of the user-defined events has occurred.

**Cancel claim 148.**

**Cancel claim 149.**

150.  (new):  The method of claim 146, wherein the plurality of thresholds are different from each other.

151.  (new):  The method of claim 146, wherein the plurality of notifications are different visual indicators.

152. (new):  The method of claim 151, wherein at least one of the visual indicators includes a blinking indicator.

LT 0000499

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

153. (new):  The method of claim 20, further comprising:

signaling, using an output indicator included in the portable, self-contained movement measuring device, the occurrence of user-defined events.

154. (new):  The method of claim 128, wherein the detecting comprises comparing said physical movement data to said predetermined threshold.

155.  (new):  The method of claim 20, wherein said body part is a user's arm, and said measuring the data comprises monitoring and recording the physical movement of said user's arm.

156.  (new):  The method of claim 155, wherein said measuring the data comprises measuring the data using a movement sensor of the portable, self-contained movement measuring device.

157. (new):  The method of claim 20, further comprising:

measuring a walking distance based on the interpreted physical movement data.

158. (new):  The method of claim 20, further comprising:

storing, in said memory, date information associated with the first time stamp information;

30

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

continuously monitoring for said physical movement using a movement sensor of the portable, self-contained movement measuring device;

displaying, using an output indicator included the portable, self-contained movement measuring device, information signaling the occurrence of the first user-defined event based on the detection of the first user-defined event and the first time stamp information,

wherein said physical movement data stored in the memory is the interpreted physical movement data, and said stored physical movement data is configured to be downloaded to a computer;

communicating with external software configured to run on the computer and present said interpreted physical movement data to the user;

producing a report based on said interpreted physical movement data using the external software; and

storing the user-defined operational parameters, the user-defined operational parameters comprising a plurality of thresholds respectively corresponding to a plurality of notifications, wherein the detecting comprises detecting occurrence of one of a plurality of user-defined events each time the movement data reaches one of the plurality of the thresholds,

wherein said body part is a user's arm, and said measuring the data comprises monitoring and recording the physical movement of said user's arm.

159. (new):  The device of claim 1, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

31

LT 0000501

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

wherein said microprocessor is configured to interpret said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.

160. (new):  The device of claim 159, wherein the output indicator is configured to display first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met, and configured to display second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.

161. (new):  The device of claim 160, wherein the displayed first information is different from the displayed second information.

162. (new):  The device of claim 1, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

163. (new): The device of claim 1, wherein said first user-defined event is a predetermined type of movement.

LT 0000502

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

164. (new):  The device of claim 163, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

165. (new):  The device of claim 163, wherein the predetermined type of movement is movement exceeding a predefined speed.

166. (new):  The device of claim 163, wherein the predetermined type of movement is no movement for a predetermined amount of time.

167. (new):  The device of claim 163, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

168. (new): The device of claim 1, wherein said microprocessor is configured to detect a second event based on the movement data and at least one of the user-defined operational parameters, and said microprocessor is configured to store, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the movement data causing the second event occurred.

169. (new): The device of claim 168, wherein said second event is a predetermined type of movement.

LT 0000503

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

170. (new):  The device of claim 169, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.


171. (new):  The device of claim 169, wherein the predetermined type of movement is movement exceeding a predefined speed.


172. (new):  The device of claim 169, wherein the predetermined type of movement is no movement for a predetermined amount of time.


173. (new):  The device of claim 169, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.


174. (new):  The system of claim 13, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

wherein said microprocessor is configured to interpret said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.

LT 0000504

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

175. (new):  The system of claim 174, wherein the output indicator is configured to display first information indicating occurrence of the first user-defined event when it is determined that the first predetermined threshold is met, and configured to display second information indicating occurrence of the second user-defined event when it is determined that the second predetermined threshold is met.

176. (new):  The system of claim 175, wherein the displayed first information is different from the displayed second information.

177. (new):  The system of claim 13, wherein the first user-defined event is a movement exceeding a user-defined angle limit and the first time stamp information reflects a time at which the movement exceeded the user-defined angle limit.

178. (new): The system of claim 13, wherein said first user-defined event is a predetermined type of movement.

179. (new):  The system of claim 178, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

180. (new):  The system of claim 178, wherein the predetermined type of movement is movement exceeding a predefined speed.

LT 0000505

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

181. (new):  The system of claim 178, wherein the predetermined type of movement is no movement for a predetermined amount of time.

182. (new):  The system of claim 178, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

183. (new): The system of claim 13, wherein said microprocessor is configured to detect a second event based on the movement data and at least one of the user-defined operational parameters, and said microprocessor is configured to store, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the movement data causing the second event occurred.

184. (new): The system of claim 183, wherein said second event is a predetermined type of movement.

185. (new):  The system of claim 184, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

186. (new):  The system of claim 184, wherein the predetermined type of movement is movement exceeding a predefined speed.

36

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

187. (new):  The system of claim 184, wherein the predetermined type of movement is no movement for a predetermined amount of time.

188. (new):  The system of claim 184, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

189. (new):  The system of claim 13, wherein said movement sensor comprises at least one accelerometer.

190. (new):  The method of claim 20, wherein the user-defined operational parameters comprise a first predetermined threshold and a second predetermined threshold different from the first predetermined threshold,

    wherein the first user-defined event occurs when the movement data reaches the first predetermined threshold and a second user-defined event occurs when the movement data reaches the second predetermined threshold,

    wherein said interpreting comprises interpreting said movement data to determine whether the movement data reaches the first predetermined threshold and whether the movement data reaches the second predetermined threshold.

191. (new):  The method of claim 190, further comprising:

    displaying, using an output indicator included in the portable, self-contained movement measuring device, first information indicating occurrence of the first user-defined event when it

LT 0000507

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

is determined that the first predetermined threshold is met and second information indicating

occurrence of the second user-defined event when it is determined that the second predetermined

threshold is met.

192. (new):  The method of claim 191, wherein the displayed first information is different

from the displayed second information.

193. (new):  The method of claim 20, wherein the first user-defined event is a movement

exceeding a user-defined angle limit and the first time stamp information reflects a time at which

the movement exceeded the user-defined angle limit.

194. (new): The method of claim 20, wherein said first user-defined event is a

predetermined type of movement.

195. (new):  The method of claim 194, wherein the predetermined type of movement is

movement exceeding a predetermined angle limit.

196. (new):  The method of claim 194, wherein the predetermined type of movement is

movement exceeding a predefined speed.

197. (new):  The method of claim 194, wherein the predetermined type of movement is

no movement for a predetermined amount of time.

LT 0000508

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

198. (new):  The method of claim 194, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

199. (new): The method of claim 20, further comprising:

detecting, using the microprocessor, a second event based on the movement data and at least one of the user-defined operational parameters; and

storing, in said memory, second event information related to the detected second event along with second time stamp information reflecting a time at which the movement data causing the second event occurred.

200. (new): The method of claim 199, wherein said second event is a predetermined type of movement.

201. (new):  The method of claim 200, wherein the predetermined type of movement is movement exceeding a predetermined angle limit.

202. (new):  The method of claim 200, wherein the predetermined type of movement is movement exceeding a predefined speed.

203. (new):  The method of claim 200, wherein the predetermined type of movement is no movement for a predetermined amount of time.

LT 0000509

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

204. (new):  The method of claim 200, wherein the predetermined type of movement is a maximum number of incorrect movements allowed in a predetermined time period.

LT 0000510

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

## II.    STATUS OF THE CLAIMS AND EXEMPLARY SUPPORT FOR CLAIM AMENDMENTS

| Claim No. | Status | Support in Specification |
|---|---|---|
| 1 | Pending | col. 5, line 59 to col. 6, line 9 |
| 2 | Pending | NA |
| 3 | Pending | NA |
| 4 | Pending | NA |
| 5 | Pending | NA |
| 6 | Pending | NA |
| 7 | Pending | NA |
| 8 | Pending | NA |
| 9 | Pending | NA |
| 10 | Pending | NA |
| 11 | Pending | NA |
| 12 | Pending | NA |
| 13 | Pending | col. 5, line 59 to col. 6, line 9 |
| 14 | Pending | NA |
| 15 | Pending | NA |
| 16 | Pending | NA |
| 17 | Pending | NA |
| 18 | Pending | NA |
| 19 | Pending | NA |
| 20 | Pending | col. 5, line 59 to col. 6, line 9 |
| 21 | Pending | NA |
| 22 | Pending | NA |
| 23 | Pending | NA |
| 24 | Pending | NA |
| 25 | Pending | NA |
| 26 | Pending | NA |
| 27 | Pending | NA |
| 28 | Pending | NA |
| 29 | Pending | NA |
| 30 | Canceled | NA |
| 31 | New | col. 6, lines 5-9 |
| 32 | New | col. 5, line 44; col. 6, line 9 |
| 33 | New | col. 5, line 44; col. 6, line 9 |
| 34 | Canceled | NA |
| 35 | New | col. 5, lines 47-51 |
| 36 | New | col. 5, lines 40-41 |
| 37 | New | col. 6, lines 16-40 |

LT 0000511

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

| 38 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
|---|---|---|
| 39 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 40 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 41 | New | col. 5, line 59 to col. 6, line 9 and col. 7, lines 6-30 |
| 42 | New | col. 5, line 58 to col. 6, line 3 and col. 6, lines 41-43 |
| 43 | New | col. 6, lines 6-9 |
| 44 | New | col. 6, lines 6-9 and col. 6, lines 19-21 |
| 45 | New | col. 6, lines 27-39 |
| 46 | New | col. 5, lines 25-27 |
| 47 | New | col. 8, lines 31-55 |
| 48 | New | col. 8, lines 31-55 |
| 49 | New | col. 8, lines 31-55 |
| 50 | New | col. 8, lines 40-55 |
| 51 | New | col. 8, lines 40-55 |
| 52 | New | col. 8, lines 40-55 |
| 53 | New | col. 8, lines 40-55 |
| 54 | New | col. 8, lines 40-55 |
| 55 | New | col. 8, lines 30-55 |
| 56 | New | col. 8, lines 30-55 |
| 57 | Canceled | NA |
| 58 | New | col. 4, lines 9-14 |
| 59 | Canceled | NA |
| 60 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 61 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 62 | Canceled | NA |
| 63 | Canceled | NA |
| 64 | New | col. 5, line 58 to col. 6, line 15 |
| 65 | New | col. 4, lines 5-14 |
| 66 | New | col. 4, lines 5-14 |
| 67 | Canceled | NA |
| 68 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 69 | New | col. 3, lines 59-62 |
| 70 | New | col. 3, lines 59-62 |
| 71 | New | col. 3, lines 45-47 |
| 72 | New | col. 3, lines 45-47 |
| 73 | New | col. 3, lines 59-62, col. 4, lines 5-14, col. 5, lines 40-41, col. 5, line 58 to col. 6, line 15, col. 7, lines 6-30, and col. 8, lines 30-55 |
| 74 | Canceled | NA |
| 75 | New | col. 6, lines 5-9 |
| 76 | New | col. 5, line 44; col. 6, line 9 |
| 77 | New | col. 5, line 44; col. 6, line 9 |
| 78 | Canceled | NA |

42

LT 0000512

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

| 79 | New | col. 5, lines 47-51 |
|---|---|---|
| 80 | New | col. 5, lines 40-41 |
| 81 | New | col. 6, lines 16-40 |
| 82 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 83 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 84 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 85 | New | col. 5, line 59 to col. 6, line 9 and col. 7, lines 6-30 |
| 86 | New | col. 5, line 58 to col. 6, line 3 and col. 6, lines 41-43 |
| 87 | New | col. 6, lines 6-9 |
| 88 | New | col. 6, lines 6-9 and col. 6, lines 19-21 |
| 89 | New | col. 6, lines 27-39 |
| 90 | New | col. 5, lines 25-27 |
| 91 | New | col. 8, line 31-55 |
| 92 | New | col. 8, line 31-55 |
| 93 | New | col. 8, line 40-55 |
| 94 | New | col. 8, line 40-55 |
| 95 | New | col. 8, line 40-55 |
| 96 | New | col. 8, line 40-55 |
| 97 | New | col. 8, line 40-55 |
| 98 | New | col. 8, line 30-45 |
| 99 | New | col. 8, lines 30-55 |
| 100 | Canceled | NA |
| 101 | New | col. 4, lines 9-14 |
| 102 | Canceled | NA |
| 103 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 104 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 105 | Canceled | NA |
| 106 | Canceled | NA |
| 107 | New | col. 5, line 58 to col. 6, line 15 |
| 108 | New | col. 4, lines 5-14 |
| 109 | New | col. 4, lines 5-14 |
| 110 | New | col. 4, lines 3-14 |
| 111 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 112 | New | col. 3, lines 59-62 |
| 113 | New | col. 3, lines 59-62 |
| 114 | New | col. 3, lines 45-47 |
| 115 | New | col. 3, lines 45-47 |
| 116 | New | col. 3, lines 59-62, col. 4, lines 5-14, col. 5, lines 40-41, col. 5, line 58 to col. 6, line 15, col. 7, lines 6-30, and col. 8, lines 30-55 |
| 117 | Canceled | NA |
| 118 | New | col. 6, lines 5-9 |
| 119 | New | col. 5, line 44; col. 6, line 9 |

LT 0000513

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

| 120 | New | col. 5, line 44; col. 6, line 9 |
|---|---|---|
| 121 | Canceled | NA |
| 122 | New | col. 5, lines 47-51 |
| 123 | New | col. 5, lines 40-41 |
| 124 | New | col. 6, lines 16-40 |
| 125 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 126 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 127 | New | col. 4, lines 5-14 and col. 6, lines 6-15 |
| 128 | New | col. 5, line 59 to col. 6, line 9 and col. 7, lines 6-30 |
| 129 | New | col. 5, line 58 to col. 6, line 3 and col. 6, lines 41-43 |
| 130 | New | col. 6, lines 6-9 |
| 131 | New | col. 6, lines 6-9 and col. 6, lines 19-21 |
| 132 | New | col. 6, lines 27-39 |
| 133 | New | col. 8, line 31-55 |
| 134 | New | col. 8, line 31-55 |
| 135 | New | col. 8, line 31-55 |
| 136 | New | col. 8, line 40-55 |
| 137 | New | col. 8, line 40-55 |
| 138 | New | col. 8, line 40-55 |
| 139 | New | col. 8, line 40-55 |
| 140 | New | col. 8, line 40-55 |
| 141 | New | col. 8, line 30-45 |
| 142 | New | col. 8, line 30-45 |
| 143 | Canceled | NA |
| 144 | New | col. 4, lines 9-14 |
| 145 | Canceled | NA |
| 146 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 147 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 148 | Canceled | NA |
| 149 | Canceled | NA |
| 150 | New | col. 5, line 58 to col. 6, line 15 |
| 151 | New | col. 4, lines 5-14 |
| 152 | New | col. 4, lines 5-14 |
| 153 | New | col. 4, lines 3-14 |
| 154 | New | col. 5, line 58 to col. 6, line 15 and col. 7, lines 6-30 |
| 155 | New | col. 3, lines 59-62 |
| 156 | New | col. 4, lines 38-45 |
| 157 | New | col. 3, lines 45-47 |
| 158 | New | col. 3, lines 59-62, col. 4, lines 5-14, col. 5, lines 40-41, col. 5, line 58 to col. 6, line 15, col. 7, lines 6-30, and col. 8, lines 30-55 |
| 159 | New | col. 5, line 58 to col. 6, line 40 and col. 7, lines 6-30 |
| 160 | New | col. 4, lines 5-14 |

44

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

| 161 | New | col. 4, lines 5-14 |
|-----|-----|--------------------|
| 162 | New | col. 5, line 59 to col. 6, line 15 |
| 163 | New | col. 6, lines 16-40 and col. 10, lines 50-54 |
| 164 | New | col. 6, lines 19-26 |
| 165 | New | col. 6, lines 19-40 |
| 166 | New | col. 6, lines 19-40 |
| 167 | New | paragraph bridging cols. 7-8 |
| 168 | New | col. 5, line 59 to col. 6, line 9, and col. 7, lines 6-30 |
| 169 | New | col. 6, lines 16-40 and col. 10, lines 50-54 |
| 170 | New | col. 6, lines 19-26 |
| 171 | New | col. 6, lines 19-40 |
| 172 | New | col. 6, lines 19-40 |
| 173 | New | paragraph bridging cols. 7-8 |
| 174 | New | col. 5, line 58 to col. 6, line 40 and col. 7, lines 6-30 |
| 175 | New | col. 4, lines 5-14 |
| 176 | New | col. 4, lines 5-14 |
| 177 | New | col. 5, line 59 to col. 6, line 15 |
| 178 | New | col. 6, lines 16-40 and col. 10, lines 50-54 |
| 179 | New | col. 6, lines 19-26 |
| 180 | New | col. 6, lines 19-40 |
| 181 | New | col. 6, lines 19-40 |
| 182 | New | paragraph bridging cols. 7-8 |
| 183 | New | col. 5, line 59 to col. 6, line 9, and col. 7, lines 6-30 |
| 184 | New | col. 6, lines 16-40 and col. 10, lines 50-54 |
| 185 | New | col. 6, lines 19-26 |
| 186 | New | col. 6, lines 19-40 |
| 187 | New | col. 6, lines 19-40 |
| 188 | New | paragraph bridging cols. 7-8 |
| 189 | New | col. 4, lines 38-45 |
| 190 | New | col. 5, line 58 to col. 6, line 40 and col. 7, lines 6-30 |
| 191 | New | col. 4, lines 5-14 |
| 192 | New | col. 4, lines 5-14 |
| 193 | New | col. 5, line 59 to col. 6, line 15 |
| 194 | New | col. 6, lines 16-40 and col. 10, lines 50-54 |
| 195 | New | col. 6, lines 19-26 |
| 196 | New | col. 6, lines 19-40 |
| 197 | New | col. 6, lines 19-40 |
| 198 | New | paragraph bridging cols. 7-8 |
| 199 | New | col. 5, line 59 to col. 6, line 9, and col. 7, lines 6-30 |
| 200 | New | col. 6, lines 16-40 and col. 10, lines 50-54 |
| 201 | New | col. 6, lines 19-26 |
| 202 | New | col. 6, lines 19-40 |

45

LT 0000515

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

| 203 | New | col. 6, lines 19-40 |
| 204 | New | paragraph bridging cols. 7-8 |

46

LT 0000516

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

<h2 align="center">III.    REMARKS</h2>

Claims 1, 13, 20, 21, 31-33, 35-56, 58, 60, 61, 64-66, 68-73, 75-77, 79-99, 101, 103, 104, 107-116, 118-120, 122-142, 144, 146, 147, and 150-204 are subject to reexamination.  All the reexamined claims are rejected.

Claims 1, 13, and 20 are the independent claims.

By this Amendment, independent claims 1, 13, and 20 along with dependent claims 168, 183, and 199 have been amended.

**Patentable claims**

PO thanks the Examiner for confirming the patentability of claims 162, 164-167, 170-173, 177, 179-182, 185-188, 193, 195-198, and 201-204.

PO respectfully requests the Examiner to confirm the patentability of independent claims 1, 13, and 20 along with the remaining dependent claims in view of the claim amendments being made herein and the corresponding arguments submitted below.

**Summary of claim amendments and response**

As an initial matter, Patent Owner's (PO's) representatives would again like to thank Examiners Danton De Mille along with Eileen Lillis and Jimmy Foster for the courtesies extended during the personal interview conducted on December 18, 2014 (*see* Examiner's Interview Summary dated December 22, 2014 and Statement of Substance of Interview filed January 8, 2015).

LT 0000517

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

During the interview, proposed clarifying amendments to independent claims 1, 13, and 20 were discussed in light of the Examiner's comments in the Office Action dated December 10, 2014.  Further, differences between the claimed invention and the cited references were discussed in view of the proposed amendments to the claims.

In particular, clarifying amendments were discussed during the interview to tie the claimed first time stamp information such that it reflects a time at which the movement data causing the first user-defined event occurred.

Accordingly, along the lines of the discussion during the interview, independent claims 1, 13, and 20 have been amended to recite in some variation:

> the microprocessor storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which <u>the movement data causing</u> the first user-defined event occurred

For instance, upon detection of the event, such as when a user's measured movement passes a given angle (or some other type of movement threshold), time stamp information is recorded.  This recorded time stamp information reflects a time at which the user's movement (e.g., passing the given angle) caused the event to occur (patent specification, col. 6, lines 15-40 *also see* col. 7, lines 32-43).

As discussed during the interview and explained below, the asserted combination of references (i.e., Flentov/Gaudet/Vock with Burdea) does not teach or suggest this feature.

For example, the alleged time stamp information in the Examiner's proposed combination of Flentov and Burdea would reflect the time at which the data captured during the skier's run down the hill (i.e., at the end of the session) is updated to a database, not a time at which the movement data causing the end of the run (alleged event) occurred.

LT 0000518

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

The rejections based on Gaudet and Vock are similarly deficient, as explained below.

Dependent claims 168, 183, and 199 have been amended so they are consistent with the amendments made to independent claims 1, 13, and 20.

Accordingly, as discussed in further detail below, the instant Response places the claims in condition for immediate allowance.  Consequently, PO respectfully requests the Examiner to issue a Notice of Intent to Issue *Ex Parte* Reexamination Certificate responsive to this Response.

## Claim Rejections - 35 USC §103

Claims 1, 13, 20, 21, 31-33, 35-56, 58, 60, 61, 64-66, 68-73, 75-77, 79-99, 101, 103, 104, 107-116, 118-120, 122-142, 144, 146, 147, 150-161, 163, 168, 169, 174-176, 178, 183, 184, 189-192, 194, 199, and 200 are rejected under pre-AIA 35 U.S.C. 103(a) as allegedly being unpatentable over Flentov in view of Burdea.

Claims 20, 118-120, 123-142, 144, 153, 154, 157, 194, 199, and 200 are rejected under pre-AIA 35 U.S.C. 103(a) as allegedly being unpatentable over Gaudet in view of Burdea[1].

Claim 122 is rejected under pre-AIA 35 U.S.C. 103(a) as allegedly being unpatentable over Gaudet and Burdea, and further in view of Flentov.

Claims 1, 13, 20, 21, 31-33, 35-56, 58, 60, 61, 64-66, 68-73, 75-77, 79-99, 101, 103, 104, 107-116, 118-120, 122-142, 144, 146, 147, 150-161, 163, 168, 169, 174-176, 178, 183, 184, 189-192, 194, 199, and 200 are rejected under pre-AIA 35 U.S.C. 103(a) as allegedly being unpatentable over Vock in view of Burdea.

---

[1] Even though claim 122 is listed in the statement of rejection at page 29 of the Office Action, this claim is separately rejected at page 35.

49

LT 0000519

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

For *at least* the following reasons, PO respectfully traverses these rejections.

As noted above, independent claims 1, 13, and 20 have been amended to recite, in some variation:

> the microprocessor capable of…detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters, and storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred;

As such, in the claimed invention, **the microprocessor detects the first user-defined event based on two pieces of information** - **the movement data** and the user-defined operational parameter.  The first time stamp information **reflects a time at which the movement data causing the first user-defined event occurred**

It is respectfully submitted that the asserted combinations of the references do not teach or suggest the above-noted claim features.

### *Flentov and Burdea do not teach the subject claim features of independent claims 1, 13, and 20*

<u>First</u>, in Flentov, the alleged detection of an event is not made by a microprocessor based on any movement data.

For example, in the Office Action, it is asserted that the alleged event in Flentov occurs when the user (skier) pushes a button 58 instructing the system to stop recording movement data (Office Action, paragraph bridging pages 7-8).

LT 0000520

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

That is, the detection of the alleged event is solely based on the button 58 being pushed and ***not* based on any movement data**, let alone **a microprocessor** making the detection based on such movement data.

In particular, regardless of how long or short the run, the event is detected based on the user pushing the button 58 - the movement data of the run does not at all factor into the detection of the event. Moreover, the microprocessor does not detect the event. All that matters is when the user pushes the button.

During the interview, the Examiner seemed to suggest that the event in Flentov is detected based on the movement data apparently because the skier pushes the button 58 when the user's movement ends.

PO respectfully submits that even if Flentov is interpreted this way, it still does not teach the claimed detection operation because the Examiner is overlooking the fact that the claims require **the microprocessor** to detect a first user-defined event **based on the movement data** and at least one of the user-defined operational parameters.

That is, the event is detected by the microprocessor based on the movement data, not the user. On the other hand, in Flentov, even assuming *arguendo* that the skier's movement data is taken into account for detecting the end of the run, the movement data is taken into account by the user, not the microprocessor as claimed.

Therefore, Flentov does not and cannot teach the claimed microprocessor...detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters.

LT 0000521

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

**Second**, Flentov alone or in combination with Burdea does not teach or suggest the claimed microprocessor capable of…storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred.

As discussed during the interview, the alleged time stamp information in the Examiner's proposed combination of Flentov and Burdea would reflect the time at which the data captured during the skier's run down the hill (i.e., at the end of the session) is updated to a database, ***not a time at which the movement data causing the end of the run*** (alleged event) **occurred**.

In particular, as noted above, the alleged event in Flentov is detected when the skier pushes the button 58 instructing the system to stop recording movement data (e.g., at the end of a run down a hill).

Burdea, which is relied upon for allegedly teaching the claimed first time stamp information, discloses that "[p]atient data can be stored in database 114 for statistical purposes. Database 114 can include a time stamp for providing a time history of updates of the patient information" (Burdea, col. 6, lines 30-33). **That is, the time stamp described in Burdea is related to the** <u>update time</u> **at which the patient data is updated at the database 114**.

As such, if Burdea's teachings are incorporated into Flentov, then the proposed modification with Burdea would result in the ski data being downloaded by the skier to a computer along with a time stamp indicating the time at which the ski data was downloaded.

Since the time stamp in the proposed modification reflects the time at which the ski data was downloaded, this could occur shortly after the skier pushes the button or a day or two later.

LT 0000522

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

Regardless of when the ski data is downloaded, the time stamp information in the proposed modification has no relationship to the ski data itself or the time at which the skier pushes the button (i.e., the Examiner's proposed event). Therefore, the proposed modification is substantially different from the invention as now claimed.

In view of the foregoing, it is respectfully submitted that Flentov alone, or in combination with Burdea, does not and cannot teach all the features of independent claims 1, 13, and 20.

PO respectfully submits that the remaining claims, namely claims 21, 31-33, 35-56, 58, 60, 61, 64-66, 68-73, 75-77, 79-99, 101, 103, 104, 107-116, 118-120, 122-142, 144, 146, 147, 150-161, 163, 168, 169, 174-176, 178, 183, 184, 189-192, 194, 199, and 200, are patentable over Flentov and Burdea *at least* by virtue of their dependency.


### *Gaudet and Burdea do not teach the subject claim features of independent claim 20*

**<u>First</u>**, similar to Flentov, Gaudet does not teach detecting an event based on movement data as required by claim 20.

As the Examiner notes, Gaudet teaches detecting occurrence of positive/negative spike events based on which foot contact times can be measured (the foot contact time is measured as the time difference between each instance at which the foot impacts the surface and the following instance at which the foot leaves the surface) (Office Action, page 30 along with Gaudet, col. 2, lines 5-26 and col. 4, line 50 to col. 5, line 5).

Further, as noted by the Examiner, Gaudet discloses that certain parameters used in its software routine can be user-adjustable and this could be accomplished by "pushing of a button

LT 0000523

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

both when the user starts and when the user finishes traversing a known distance" (Office
Action, pages 29-30 and Gaudet, col. 16, lines 60-64).

As such, the alleged detection of an event in Gaudet is similar to the alleged detection of
an event in Flentov.  That is, the event detection in Gaudet is ***not*** **based on the movement data**
but based on the user input alone.

For *at least* this reason, claim 20 is patentable over Gaudet and Burdea.

Moreover, the asserted combination of Gaudet and Burdea cannot and does not teach the
claimed microprocessor which stores first event information related to the detected first user-
defined event along with first time stamp information **reflecting a time at which the movement
data causing the first user-defined event occurred**.

It is generally alleged in the Office Action that "[i]t would have been obvious to one of
ordinary skill in the art to modify the timer of Gaudet to provide a time/date stamp as taught by
Burdea to be associated **with the movement data** in order to maintain a time history of user
information for statistical purposes" (Office Action, page 31, third paragraph, emphasis added).

However, similar to the flawed combination of Burdea with Flentov, if Burdea's
teachings are incorporated into Gaudet, then the proposed modification with Burdea would result
in the user's movement data captured during the "known distance" (session) traversed by the user
(until the user pushes the button at the end) to be stored in a database at the end of the session
along with a time stamp indicating the time at which the database was updated.

Since the time stamp in the proposed modification reflects the time at which the
movement data captured during the "known distance" was stored in a database, this could occur
shortly after the user pushes the button at the end of the session or a day or two later.

54

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

Consequently, the time stamp information in Gaudet would not reflect a time at which certain movement data causing the event occurred but would instead reflect a time at which the movement data captured during the entire session is updated to a database.

On the other hand, in the claimed invention, the first time stamp information **reflects the time at which the movement data causing the first user-defined event occurred**.

In view of the foregoing, it is respectfully submitted that Gaudet alone, or in combination with Burdea, does not and cannot teach all the features of independent claim 20.

PO respectfully submits that the remaining claims, namely claims 118-120, 123-142, 144, 153, 154, 157, 194, 199, and 200, are patentable over Gaudet and Burdea *at least* by virtue of their dependency.

Claim 122 depends from claim 20 and Flentov does not cure the above-noted deficient teachings of Gaudet and Burdea with respect to claim 20.  Accordingly, claim 122 is patentable *at least* by virtue of its dependency.

### *Vock and Budea do not teach the subject claim features of independent claims 1, 13, and 20*

Independent claims 1, 13, and 20 are patentable over the asserted combination of Vock and Burdea for *at least* reasons similar to those given above with respect to the rejection based on the asserted combination of Flentov and Burdea.

The Vock patent matured from a continuation-in-part application of the Flentov patent.

LT 0000525

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

The Examiner relies on similar portions of Vock and Flentov for allegedly teaching the claimed microprocessor detecting an event and storing time stamp information reflecting a time at which movement data causing the event occurred.

For example, at pages 39-40, the Examiner cites Vock's teachings of a user pressing the start/stop button 58 to signal the end of a run (e.g., down a hill) as corresponding to the claimed event detection. Then, reasoning similar to that provided for combining Flentov and Burdea is provided for combining Vock and Burdea. *Id.*

As already noted above with respect to the asserted combination of Flentov and Burdea, the combined teachings of these references cannot and do not teach or suggest the claimed **microprocessor** capable of…detecting a first user-defined event **based on the movement data** and at least one of the user-defined operational parameters, and storing first event information related to the detected first user-defined event along with first time stamp information **reflecting a time at which the movement data causing the first user-defined event occurred**.

Therefore, for *at least* reasons similar to those given above with respect to the rejection based on the asserted combination of Flentov and Burdea, it is respectfully submitted that Vock alone, or in combination with Burdea, does not and cannot teach all the features of independent claims 1, 13, and 20.

PO respectfully submits that the remaining claims, namely claims 21, 31-33, 35-56, 58, 60, 61, 64-66, 68-73, 75-77, 79-99, 101, 103, 104, 107-116, 118-120, 122-142, 144, 146, 147, 150-161, 163, 168, 169, 174-176, 178, 183, 184, 189-192, 194, 199, and 200, are patentable over Vock and Burdea *at least* by virtue of their dependency.

56

LT 0000526

RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION
Control No.: 90/013,201
Attorney Docket No.: A209779

**Conclusion**

     In view of the above, reconsideration and issuance of a Notice of Intent to Issue *Ex Parte*

Reexamination Certificate in this proceeding are now believed to be in order, and such actions

are hereby solicited.  If any points remain in issue which the Examiner feels may be best

resolved through a personal or telephone interview, the Examiner is kindly requested to contact

the undersigned at the telephone number listed below.

     The USPTO is directed and authorized to charge all required fees, except for the Issue

Fee and the Publication Fee, to Deposit Account No. 19-4880.  Please also credit any

overpayments to said Deposit Account.

                         Respectfully submitted,

                         /Abdul-Quadeer Ahmed/

SUGHRUE MION, PLLC                   Quadeer A. Ahmed
Telephone:  202.293.7060               Registration No. 60,835
Facsimile:  202.293.7860

WASHINGTON OFFICE
**23373**
CUSTOMER NUMBER

Date:  January 9, 2015

LT 0000527

Please Enter
/DD/
01/31/2015

REEXAMINATION

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*In re* Patent of                                    Docket No:  A209779

Theodore L. Brann

Control No.:  90/013,201                    Group Art Unit:  3993

Confirmation No.:  9930                    Examiner:  DEMILLE, DANTON D

Filed:  April 4, 2014

For:  TRAINING AND SAFETY DEVICE, SYSTEM AND METHOD TO AID IN PROPER
      MOVEMENT DURING PHYSICAL ACTIVITY

### RESPONSE TO *EX PARTE* REEXAMINATION FINAL OFFICE ACTION

**MAIL STOP *Ex Parte* Reexam**
Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

       In response to the Office Action dated December 10, 2014, Patent Owner respectfully

requests reconsideration of this reexamination application in light of the following amendments

and remarks.

## TABLE OF CONTENTS

I.      AMENDMENTS TO THE CLAIMS ................................................................................2

II.     STATUS OF THE CLAIMS AND EXEMPLARY SUPPORT FOR CLAIM
        AMENDMENTS ...........................................................................................................41

III.    REMARKS ....................................................................................................................47

LT 0000535

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/013,201 | 04/04/2014 | 6059576 | A209779 | 9930 |

23373          7590          02/18/2015
SUGHRUE MION, PLLC
2100 PENNSYLVANIA AVENUE, N.W.
SUITE 800
WASHINGTON, DC 20037

| EXAMINER |
|---|
| DEMILLE, DANTON D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/18/2015 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

LT 0000536

| ***Examiner-Initiated Interview Summary*** | **Application No.**<br>90/013,201 | **Applicant(s)**<br>6059576 |
|---|---|---|
| | **Examiner**<br>DANTON DE MILLE | **Art Unit**<br>3993 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Danton DeMille*.                          (3) _____.

(2) *Quadeer Ahmed*.                          (4) _____.

Date of Interview: *30 January 2015*.

Type:     ☒ Telephonic     ☐ Video Conference
          ☐ Personal [copy given to: ☐ applicant     ☐ applicant's representative]

Exhibit shown or demonstration conducted:     ☐ Yes     ☒ No.
     If Yes, brief description: _____.

Issues Discussed     ☐101  ☐112  ☐102  ☐103  ☐Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: *1,13 and 20*.

Identification of prior art discussed: *none*.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

*Agreed to changes to the independent claims to more clearly define the invention over the prior art by setting forth that the microprocessor detects "a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data and storing first event information related to the detected first user-defined even along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred"* .

**Applicant recordation instructions**:  It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

/DANTON DE MILLE/
Primary Examiner, Art Unit 3993

| ***Notice of Intent to Issue Ex Parte Reexamination Certificate*** | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/013,201 | 6059576 |
| | Examiner | Art Unit | AIA (First Inventor to File) Status |
| | DANTON DE MILLE | 3993 | No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

1. ☒ Prosecution on the merits is (or remains) closed in this *ex parte* reexamination proceeding.  This proceeding is subject to reopening at the initiative of the Office or upon petition.  *Cf.* 37 CFR 1.313(a).  A Certificate will be issued in view of

    (a) ☒ Patent owner's communication(s) filed: <u>09 January 2015</u>.
    (b) ☐ Patent owner's failure to file an appropriate timely response to the Office action mailed: _____.
    (c) ☐ Patent owner's failure to timely file an Appeal Brief (37 CFR 41.31).
    (d) ☐ The decision on appeal by the ☐ Board of Patent Appeals and Interferences ☐ Court dated _____
    (e) ☐ Other: _____.

2. The Reexamination Certificate will indicate the following:
    (a) Change in the Specification:  ☐ Yes ☒ No
    (b) Change in the Drawing(s):  ☐ Yes ☒ No
    (c) Status of the Claim(s):

        (1) Patent claim(s) confirmed: _____.
        (2) Patent claim(s) amended (including dependent on amended claim(s)): *1-29*
        (3) Patent claim(s) canceled: _____.
        (4) Newly presented claim(s) patentable: <u>See Continuation Sheet</u>.
        (5) Newly presented canceled claims: <u>See Continuation Sheet</u>.
        (6) Patent claim(s) ☐ previously ☐ currently disclaimed: _____.
        (7) Patent claim(s) not subject to reexamination: _____.

3. ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

4. ☒ Note the attached statement of reasons for patentability and/or confirmation.  Any comments considered necessary by patent owner regarding reasons for patentability and/or confirmation must be submitted promptly to avoid processing delays.  Such submission(s) should be labeled: "Comments On Statement of Reasons for Patentability and/or Confirmation."

5. ☐ Note attached NOTICE OF REFERENCES CITED (PTO-892).

6. ☐ Note attached LIST OF REFERENCES CITED (PTO/SB/08 **or PTO/SB/08 substitute**).

7. ☐ The drawing correction request filed on _____ is:  ☐ approved  ☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All  b)☐ Some*  c)☐ None  of the certified copies have
        ☐ been received.
        ☐ not been received.
        ☐ been filed in Application No. _____.
        ☐ been filed in reexamination Control No. _____.
        ☐ been received by the International Bureau in PCT Application No. _____.

    * Certified copies not received: _____.

9. ☒ Note attached Examiner's Amendment.

10. ☒ Note attached Interview Summary (PTO-474).

11. ☐ Other: _____.

**All correspondence** relating to this reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

| |
|---|
| /Danton  DeMille/ |
| Primary Examiner |
| Art Unit: 3993 |

cc: Requester (if third party requester)

LT 0000538

**Continuation Sheet (PTOL-469)**                                    **Reexam Control No.  90/013,201**

Continuation of (4) Newly presented claim(s) patentable: 31-33,35-56,58,60,61,64-66,68-73,75-77,79-99,101,103,104,107-116,118-120,122-142,144,146,147 and 150-204.

Continuation of (5) Newly presented canceled claims: 30,34,57,59,62,63,67,74,78,100,102,105,106,117,121,143,145,148 and 149.

LT 0000539

The present application is being examined under the pre-AIA first to invent provisions.

## EXAMINER'S AMENDMENT

An examiner's amendment to the record appears below.  The changes made by this examiner's amendment will be reflected in the reexamination certificate to issue in due course.

Authorization for this examiner's amendment was given in a telephone interview with Quadeer Ahmed on 30 January 2015.

The patent has been amended as follows:

**Claim 1.**  (currently amended):  A portable, self-contained device for monitoring movement of body parts during physical activity, said device comprising:

a movement sensor capable of measuring data associated with unrestrained movement in any direction and generating signals indicative of said movement; a power source; a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data based on user-defined operational parameters, detecting a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data, and storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred:

at least one user input connected to said microprocessor for controlling the operation of said device;

a real-time clock connected to said microprocessor; memory for storing said movement

data; and

an output indicator connected to said microprocessor for signaling the occurrence of user-

defined events;

wherein said movement sensor measures the angle and velocity of said movement.


**Claim 13.** (currently amended): A system to aid in training and safety during physical

activity, said system comprising

a portable, self-contained movement measuring device, said movement measuring device

further comprising

a movement sensor capable of measuring data associated with unrestrained movement in

any direction and generating signals indicative of said movement; a power source; a

microprocessor connected to said power source, said microprocessor capable of receiving,

interpreting, storing and responding to said movement data based on user-defined operational

parameters, detecting a first user-defined event based on the movement data and at least one of

the user-defined operational parameters regarding the movement data, and storing first event

information related to the detected first user-defined event along with first time stamp

information reflecting a time at which the movement data causing the first user-defined event

occurred;

at least one user input connected to said microprocessor for controlling the operation of

said device;

LT 0000541

a real-time clock connected to said microprocessor; memory for storing said movement

data;

at least one input/output port connected to said microprocessor for downloading said data

and uploading said operational parameters; and

an output indicator connected to said microprocessor;

a computer running a program capable of interpreting and reporting said movement data

based on said operational parameters; and

a download device electronically connected to said movement measuring device and said

computer for transmitting said movement data and operational parameters between said

movement measuring device and said computer for analysis, reporting and operation purposes;

wherein said movement sensor measures the angle and velocity of said movement.


**Claim 20.** (currently amended): A method to monitor physical movement of a body part

comprising the steps of:

attaching a portable, self-contained movement measuring device to said body part for

measuring unrestrained movement in any direction;

measuring data associated with said physical movement;

interpreting, using a microprocessor included in the portable, self-contained movement

measuring device, said physical movement data based on user-defined operational parameters

and a real-time clock; [and]

storing said data in memory;

LT 0000542

<u>detecting, using the microprocessor, a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data; and</u>

<u>storing, in said memory, first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred.</u>

**STATEMENT OF REASONS FOR PATENTABILITY AND/OR CONFIRMATION**

The following is an examiner's statement of reasons for patentability and/or confirmation of the claims found patentable in this reexamination proceeding:

While the prior art teaches a portable, self-contained device for monitoring movement of body parts during physical activity comprising a movement sensor, a power source, a user input, a real-time clock, memory, an output indicator and a microprocessor capable of receiving, interpreting, storing and responding to the movement data based on user-defined operational parameters. There is no teaching or fair suggestion for the microprocessor to detect a first user-defined event based on the movement data and at least one of the user-defined operational parameter regarding the movement data, and storing first event information related to the detected first user-defined event along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred.

Additionally the prior art teaches a method to monitor physical movement of a body part comprising the steps of attaching a portable, self-contained movement measuring device to the body part, measuring data associated with the physical movement, storing data in memory,

Application/Control Number: 90/013,201                                    Page 6
Art Unit: 3993

interpreting, using a microprocessor, the physical movement data based on user-defined

operational parameters and a real-time clock.  However, there is no teaching or fair suggestion to

detect, using the microprocessor, a first user-defined even based on the movement data and at

least one user-defined operational parameters regarding the movement data and storing in

memory first event information related to the detected first user-defined event along with first

time stamp information reflecting a time at which the movement data causing the first user-

defined event occurred.

Any comments considered necessary by PATENT OWNER regarding the above

statement must be submitted promptly to avoid processing delays.  Such submission by the

patent owner should be labeled: "Comments on Statement of Reasons for Patentability and/or

Confirmation" and will be placed in the reexamination file.


## *CONCLUSION*

**All** correspondence relating to this *ex parte* reexamination proceeding should be directed:

By EFS:        Registered users may submit via the electronic filing system EFS-Web, at
               https://efs.uspto.gov/efile/myportal/efs-registered.

By Mail to:    Mail Stop *Ex Parte* Reexam
               Central Reexamination Unit
               Commissioner for Patents
               United States Patent & Trademark Office
               P.O. Box 1450 Alexandria, VA 22313-1450

By FAX to:     (571) 273-9900
               Central Reexamination Unit

By hand:       Customer Service Window
               Randolph Building
               401 Dulany Street
               Alexandria, VA 22314

LT 0000544

Application/Control Number: 90/013,201                                          Page 7
Art Unit: 3993

For EFS-Web transmissions, 37 CFR 1.8(a)(1)(i) (C) and (ii) states that correspondence
(except for a request for reexamination and a corrected or replacement request for
reexamination) will be considered timely filed if (a) it-is transmitted via the Office's
electronic- filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a
certificate of transmission for each piece of correspondence stating the date of
transmission, which is prior to the expiration of the set period of time in the Office action.

Any inquiry concerning this communication or earlier communications from the
Examiner, or as to the status of this proceeding, should be directed to the Central
Reexamination Unit at telephone number (571) 272-7705.

Telephone Number for reexamination inquiries:

Reexamination and Amendment Practice              (571) 272-7703
Central Reexam Unit (CRU)                         (571) 272-7705
Reexamination Facsimile Transmission No.          (571) 273-9900

**/Danton  DeMille/**
Patent Reexamination Specialist
Central Reexamination Unit 3993
(571) 272-4974
17 February 2015

Conferee: **/JGF/**                               Conferee: **/EDL/**

LT 0000545

| *Examiner-Initiated Interview Summary* | Application No. | Applicant(s) |
| --- | --- | --- |
| | 90/013,201 | 6059576 |
| | Examiner | Art Unit | |
| | DANTON DE MILLE | 3993 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Danton DeMille_.                (3)_____.

(2) _Quadeer Ahmed_.              (4)_____.

Date of Interview: _30 January 2015_.

Type:    ☒ Telephonic   ☐ Video Conference
        ☐ Personal [copy given to: ☐ applicant    ☐ applicant's representative]

Exhibit shown or demonstration conducted:   ☐ Yes    ☒ No.
    If Yes, brief description: _____.

Issues Discussed    ☐101   ☐112   ☐102   ☐103   ☐Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: _1,13 and 20_.

Identification of prior art discussed: _none_.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

_Agreed to changes to the independent claims to more clearly define the invention over the prior art by setting forth that the microprocessor detects "a first user-defined event based on the movement data and at least one of the user-defined operational parameters regarding the movement data and storing first event information related to the detected first user-defined even along with first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred"_ .

**Applicant recordation instructions**: It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /DANTON DE MILLE/ | |
| --- | --- |
| Primary Examiner, Art Unit 3993 | |

LT 0000546