IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **LOGANTREE LP,**  *Plaintiff,*  v.  **FOSSIL GROUP INC.,**  *Defendant.* | Case No. 1:21-cv-00385-JDW |

## MEMORANDUM

In this lawsuit, Plaintiff LoganTree LP ("LoganTree") alleges that Defendant Fossil Group Inc. ("Fossil") infringes one of its patents, U.S. Patent No. 6,059,576 (the "'576 Patent"). That patent relates to a device that is used to monitor a person's movements to help train the wearer to move more safely during physical activity. The Parties have submitted to me for construction ten terms of the '576 Patent. I held a hearing on January 18, 2023, and now resolves the disputed constructions.

### I.     LEGAL STANDARD

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWS Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quotation omitted). Claim construction is a matter of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015). "[T]here is no 'magic formula or catechism'" for construing a patent claim, nor is a court "barred from

considering any particular sources or required to analyze sources in any specific sequence[.]" *Phillips*, 415 F.3d at 1324. Instead, a court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.* (citation omitted).

A court generally gives the words of a claim "their ordinary and customary meaning", which is the "meaning that the term would have to a person of ordinary skill in the art at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (quotations omitted). Usually, a court first considers the claim language; then the remaining intrinsic evidence; and finally, the extrinsic evidence in limited circumstances. *See Interactive Gift Exp., Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331-32 (Fed. Cir. 2001). While "the claims themselves provide substantial guidance as to the meaning of particular claim terms[,]" a court also must consider the context of the surrounding words. *Phillips,* 415 F.3d at 1314. In addition, the patent specification "'is always highly relevant to the claim construction analysis' and indeed is often 'the single best guide to the meaning of a disputed term.'" *AstraZeneca AB v. Mylan Pharms. Inc.*, 19 F.4th 1325, 1330 (Fed. Cir. 2021) (quotation omitted). But, while a court must construe claims to be consistent with the specification, the court must "avoid the danger of reading limitations from the specification into the claim ...." *Phillips,* 415 F.3d at 1323. This is a "fine" distinction. *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186–87 (Fed.Cir.1998). In addition, "[e]ven when the specification describes only a single

embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Hill-Rom Svcs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (quotation omitted) (alterations in original).

A court may refer to extrinsic evidence only if the disputed term's ordinary and accustomed meaning cannot be discerned from the intrinsic evidence. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996). Although a court may not use extrinsic evidence to vary or contradict the claim language, extrinsic materials "may be helpful to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995). Extrinsic evidence is used "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art[.]" *Phillips*, 415 F.3d at 1318. The Federal Circuit has cautioned against relying upon expert reports and testimony that is generated for the purpose of litigation because of the likelihood of bias. *Id.*; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.") (quotation omitted).

Ultimately, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be . . . the correct construction." *Renishaw PLC v. Marposs Societa' per Anzioni*, 158 F.3d 1243, 1250 (Fed.

3

Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation[.]" *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996), *abrogated on other grounds by, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000), *vacated*, 535 U.S. 722 (2002).

## II. CONSTRUCTION OF DISPUTED TERMS

### A. Agreed Upon Constructions

During the claim construction hearing, on the record, the Parties agreed on the construction for two terms. Therefore, I will adopt those constructions:

#### 1. "first time stamp information reflecting a time at which the movement data causing the first user-defined event occurred"[1]

| LoganTree's Construction | Fossil's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "first time stamp information reflecting a system time at which the movement data causing the first user-defined event occurred" | "first time stamp information reflecting a time that the system recorded or noted at which the movement data causing the first user-defined event occurred" |

---

[1] This term appears in Claims 1, 20, 31-32, 36, 39-40, 56-58, 61, 113-114, 129-134, and 144 of the '576 Patent.

2. "signaling the occurrence of user-defined events"[2]

| LoganTree's Construction | Fossil's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "providing feedback to the wearer via visual, audible and/or tactile warnings" | "providing feedback to the wearer via visual, audible, and/or tactile notifications" |

B. "angle"[3]

| LoganTree's Construction | Fossil's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "the space between two intersecting planes at the point where they meet" | Plain and ordinary meaning |

Where a term's plain meaning is clear to a POSITA, the Court need not construe it. *See Summit 6, LLC v. Samsung Elecs. Co*, 802 F.3d 1283, 1291 (Fed. Cir. 2015). Because the plain and ordinary meaning of the term "angle" is apparent to a POSITA, a jury, and me, there is no need to construe this term. Indeed, the District of Kansas noted while construing this patent, the term "'angle' is not a complicated, complex term, and it is easily understood by a person of minimal education." *LoganTree LP v. Garmin Int'l, Inc.*, No. 17-1217-EFM-ADM, 2021 WL 168921 at *5 (D. Kan. Jan. 19, 2021). The Court agrees.

Fossil points to no evidence the patent requires its proposed construction, that it aligns with how a POSITA would understand the term, or that its proposed construction

---

[2] This term appears in Claims 1, 36, 40, and 114 of the '576 Patent.
[3] This term appears in Claims 1 and 21 of the '576 Patent.

5

somehow clarifies the term's scope. In fact, I have no idea where the construction comes from. In addition, the proposed construction reads out embodiments that track movement along a single plane. (*See, e.g.*, '576 Patent at 3:45-47.) Because Fossil's proposed construction would exclude a preferred embodiment, it is likely incorrect, and I will not adopt it. *See Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1373 (Fed. Cir. 2020) (citations omitted).

### C. Disputes Concerning Angular Movement

There are several terms for which the core dispute is whether to import an angular movement limitation. At the claim construction hearing, both LoganTree and I noted that the '576 Patent discloses measurements of angular movements and linear movements, which provides almost conclusive evidence that the claim terms encompass both types of movement. Fossil did not point to any limiting language in any of the claim terms that might cause the me to limit the '576 Patent's scope. Indeed, at the claim construction hearing, Fossil offered nothing other than its counsel's gestalt sense that the Patent only applied to angular movements. That's not enough to overcome the specification's disclosures, though.

The closest Fossil came to a response was that the Patent's specification regarding the "quickness function" describes rendering a "quickness violation" when two angular thresholds are exceeded in quick succession. However, that function is directed at resolving a particular problem in which a warning is quickly succeeded and overridden by

a second warning. (*See* '576 Patent at 7:44-55.) It does not address whether the device measures linear movements such as speed and distance, or whether the device measures non-movements, all of which the specification discloses. I therefore conclude that the terms discussed below are not limited to angular movements. I address the remaining disputes for each term below.

### 1. "user-defined event"[4]

| LoganTree's Construction | Fossil's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "An angular movement programmed by a user" | Plain and ordinary meaning |

Without the angular movement limitation, what remains of Fossil's proposed construction of the term "user-defined event" is "a movement programed by a user." There are two problems with this construction. *First*, there is no need to import a movement limitation into this term because the claim language already links the user-defined event to "movement data." (*See, e.g.*, Reexamination Of The '576 Patent at 1:35-43.) *Second*, the term "programmed by a user" sheds no additional light on the term's meaning and scope beyond the original term "user-defined;" it just phrases it in the passive voice.

---

[4] This term appears in Claims 1, 20, 31-32, 36, 39-40, 56-58, 61, 113-114, 129-134, and 144 of the '576 Patent.

Fossil's argument that its construction is the only possible way to avoid indefiniteness is unconvincing. The plain language is easy to understand, and the claims limit the types of events that a user may define to those based on movement data. Additionally, the specification sheds light on the type of events that may be user-defined. (*See* '576 Patent at 6:19-39.) Therefore, both a POSITA and a jury can easily understand the term's meaning and limits.

2. "user-defined operational parameters"[5]

| LoganTree's Construction | Defendants' Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "a user selection of angular positions at which to be noticed when the angular position is exceeded" | "a measurement that the user sets for the system to record" |

Absent the angular movement limitation, Fossil's proposed construction of "user-defined operational parameters" becomes "a user selection at which to be noticed when exceeded." This construction reads in two limitations: (1) the "exceeded" limitation; and (2) the "noticed" limitation. The claim language requires neither, and I will not adopt them.

*First,* nothing in the patent requires the wearer to exceed a user-defined operational parameter to trigger a response. When the parameter is met, the device will react. For example, if the user wants to record each time his back bends to a 25-degree angle, the device will record when his back reaches 25 degrees. Therefore, the user-

---

[5] This term appears in Claims 1 of the '576 Patent.

defined operational parameter is the measurement the user wants to capture, which doesn't require exceeding that measurement.

*Second*, although the user-defined operational parameter prompts the machine to record movement data, there is no requirement that it trigger a notification. The user-defined operational parameter is linked to "storing . . . event information" based on the occurrence of a user-defined event and at least one user-defined operational parameter. (*See* Reexamination Of The '576 Patent at 1:36-42.) There is a separate claim limitation that requires the ability to issue a notification, and during the claim construction hearing LoganTree conceded that proving this capability will be necessary to prove infringement. But infringement is not the issue of the day. Therefore, I will not read a notification requirement into the term "user-defined operational parameter."

Although Fossil's construction is incorrect, I conclude this term requires construction because the concept of "operational parameters" does not have a clear, obvious meaning. Because the claim language ties the user-defined operational parameter directly to storing movement data, the operational parameter is a measurement the user sets for the system to record. Therefore, I adopt a Construction incorporating those elements.

3. "velocity"[6]

| LoganTree's Construction | Fossil's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "rate of change of angular position" | Plain and ordinary meaning |

The plain and ordinary meaning of the term "velocity" is apparent to a POSITA, a jury, and me, so it is not necessary to construe this term. In fact, without reading in an angular limitation, Fossil's proposed construction is more wordy than the claim language but adds nothing. Notably, Fossil's argument that I should import an angular limitation for this term is based on a misrepresentation of LoganTree's argument in the District of Kansas. LoganTree never argued that "velocity" **only** means angular velocity in that court, but that's how Fossil characterizes it before me. Instead, LoganTree argued that the term includes both angular and linear velocity because the defendant in that case attempted to limit it to only the latter. *See LoganTree LP v. Garmin Int'l, Inc.*, No. 17-1217-EFM-ADM, 2021 WL 168921 at *4 (D. Kan. Jan. 19, 2021). LoganTree's argument was a response to the inverse of Fossil's current argument, and Fossil's misrepresentation is inappropriate.

---

[6] This term appears in Claims 1 and 21 of the '576 Patent

4.  **"predetermined threshold"**[7]

| LoganTree's Construction | Fossil's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "an angle exceeding a [user-defined operational parameter]" | Plain and ordinary meaning |

Absent an angular limitation, there is nothing about Fossil's proposed construction that adds any clarity or scope to this term. The plain and ordinary meaning of the term "predetermined threshold" is apparent to a POSITA, a jury, and me, so it is not necessary to construe this term.

D.  **"movement sensor"**[8]

| LoganTree's Construction | Fossil's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "an accelerometer capable of detecting velocity and angles of movement in multiple planes" | "one or more interconnected devices that measure movement and associated data" |

The Parties disagree whether the '576 Patent's movement sensor must be an accelerometer or may be another type of device or combination of devices that can track movement. I conclude that this term requires construction because the concept of a "movement sensor" does not have a clear, obvious meaning. However, I don't adopt

---

[7] This term appears in Claims 39-41, 55, 61, 113-115, 128, and 135 of the '576 Patent.
[8] This term appears in Claims 1, 4-8, 13, 63-65, and 147 of the '576 Patent.

Fossil's proposed construction because it is too limiting, is not supported by the claims and specification, and unnecessarily imports claim limitations into the term itself.

Fossil's proposed construction consists of four disputed elements, each of which I reject: (1) the movement sensor is a single device; (2) that device is an accelerometer; (3) the device detects velocity and angles of movement; and (4) the movement is detected in multiple planes. *First*, I reject the "multiple planes" limitation for the same reasons as stated above while construing the term "angle," and because the specification discloses an embodiment in which the movement sensor measures movement along a single plane. (*See* '576 Patent at 4:45-47.) *Second*, there is already a claim limitation that requires the movement sensor to measure angle and velocity. (*See* Reexamination Of The '576 Patent at 1:49-50, 2:21-22.) Therefore, I will not import that limitation into the term itself.

*Third*, I cannot currently resolve the dispute over whether the device must be an accelerometer or whether it can be another type of device, such as a pressure sensor or a GPS. Although an accelerometer is a preferred embodiment, there is no evidence in the current record that it is the only type of device the patent intends. *See Hill-Rom Svcs.*, 755 F.3d at 1372. During the claim construction hearing, the Parties' arguments hinged on whether another type of device can satisfy the "measures angle and velocity" claim limitation. LoganTree will have to prove that the motion sensor in Fossil's invention measures angle and velocity to prove infringement, but there is no evidence before me

that is sufficient to limit what types of devices can and do take those types of measurements.

*Fourth*, the claims and specification anticipate a motion sensor that consists of multiple devices. A court must construe claims consistent with the specification. *See Phillips*, 415 F.3d at 1323. Often, the specification is the best guide to the meaning of a disputed term. *AstraZeneca*, 19 F.4th at 1330. Claim 4 of the Patent contemplates a movement sensor comprised of "at least one accelerometer," which suggests the movement sensor might be more than one device. (*See* '576 Patent at 11:56-57.) The specification clarifies that it may, and lists an embodiment for "a movement sensor which detects movement and measures associated data" that includes "multiple accelerometers, each capable of measuring angles of movement in only one plane . . . oriented within the device . . . ." (*See* '576 Patent at 4:38-40, 45-48.) Therefore, I will not limit the term to a single device.

### E. Indefiniteness Disputes

Fossil argues that two disputed terms are indefinite because they do not appear in the Patent's specification. To demonstrate indefiniteness, Fossil must offer clear and convincing evidence. *See Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008). Fossil does not point to any affirmative evidence to satisfy this burden. Instead, it argues that there is no evidence in the specification to support any meaning for the disputed terms. But that's not enough. The Federal Circuit has held, for example,

13

that a claim term doesn't fail a written description requirement just because the terms are absent from the specification. *See Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1345 (Fed. Cir. 2016). The same logic applies to Fossil's indefiniteness argument. Fossil needs more than a gap in the specification to satisfy its burden. It needs evidence that a POSITA would not know, from the context of the patent and extrinsic sources, what the claim term means. It doesn't have that, so I will reject its indefiniteness arguments. Because it has not offered an alternative construction, I will address LoganTree's proposed constructions for each term.

1. **"unrestrained movement in any direction"**[9]

| LoganTree's Construction | Fossil's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning<br><br>*Alternatively:* "Movement that is not restrained and not limited to a particular direction or directions" | Indefinite | Plain and ordinary meaning |

This term is clear on its face and does not require construction. Logan Tree's alternative construction does not add anything. It changes "unrestrained" to "not restrained" and "in any direction" to "not limited to a particular direction or directions." Neither change makes the term more clear to a POSITA or me, so I will not adopt it.

---

[9] This term appears in Claims 1 and 20 of the '576 Patent.

2. **"predetermined type of movement"** [10]

| LoganTree's Construction | Fossil's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning<br><br>*Alternatively:* "type of movement chosen by the user" | Indefinite | "type of movement that the user sets before use" |

LoganTree proposes "plain and ordinary meaning," but it's not clear from the plain language that something "predetermined" is something that the user sets. In fact, "predetermined" could encompass an out-of-the-box setting. But the "predetermined type of movement" is a type of "user-defined event." Therefore, it is important to clarify that a user makes the setting, not someone else. In addition, because it is "predetermined," it has to occur before use so that the device knows what to measure. It cannot, for example, happen after the fact and be predetermined.

### III. CONCLUSION

I will construe the disputed claims as described above, and I will adopt the Parties' agreed-upon constructions. An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

February 21, 2023

---

[10]   This term appears in Claims 144-147 and 175-178 of the '576 Patent.