IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **LOGANTREE LP,**<br><br>*Plaintiff,*<br><br>v.<br><br>**FOSSIL GROUP, INC.,**<br><br>*Defendant.* | **Case No. 1:21-cv-00385-JDW** |

**MEMORANDUM**

Like a New Kids On The Block song, modern devices track our movements "step by step."[1] LoganTree LP held a patent on devices that could keep track of those steps, and it claims that Fossil Group, Inc., manufactured wearable devices that infringed on that patent. To resolve at least part of their dispute, I have to construe two terms of the patent. After doing that, I conclude that LoganTree has "the right stuff,"[2] meaning enough evidence to put its case to the jury. I will therefore deny Fossil's summary judgment motion.

---

[1] New Kids On The Block, Step By Step (Columbia Records 1990)
[2] New Kids On The Block, You Got It (The Right Stuff) (Columbia Records 1988)

## I. BACKGROUND

LoganTree owned U.S. Patent No. 6,059,576, which expired on November 21, 2017. The '576 Patent sets forth three independent claims and twenty-six dependent claims. Independent Claim 1, which is illustrative of the claims in suit, recites:

> A portable, self-contained device for monitoring *movement of body parts during physical activity*, said device comprising:
> a) a movement sensor capable of measuring data associated with *unrestrained movement in any direction* and generating signals indicative of *said movement*;
> b) a power source;
> c) a microprocessor connected to said movement sensor and to said power source, said microprocessor capable of receiving, interpreting, storing and responding to said movement data *based on user-defined operational parameters*;
> d) at least one user input connected to said microprocessor for controlling the operation of said device;
> e) a real-time clock connected to said microprocessor;
> f) memory for storing said movement data; and
> g) an output indicator connected to said microprocessor for signaling the *occurrence of user-defined events*;
> h) wherein said movement sensor *measures the angle and velocity of said movement*.

('576 patent,11:30-49 (emphases added to highlight disputed limitations).)

Fossil manufactures a range of smart watches, fitness trackers, and "hybrid" devices capable of monitoring a user's physical activity. On March 16, 2021, LoganTree filed this suit alleging that Fossil's products infringed the '576 Patent. Fossil moved for summary judgment on invalidity grounds, and I denied that motion. Fossil also moved for summary judgment of non-infringement. It makes three arguments: (A) the accused devices do not infringe the limits concerning a user-defined operational parameter and the occurrence

2

of a user-defined event; (B) the accused devices do not measure the angle and velocity of a relevant movement; and (C) for accused touchscreen devices, LoganTree did not obtain evidence from third parties that it needs to identify a relevant movement sensor. That motion is ripe for decision.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the nonmovant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A nonmoving party that asserts a genuine dispute about a fact must support its assertion by: "(A) citing to particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). When determining whether a genuine issue of material fact exists, a judge must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

When two experts offer conflicting opinions, so long as those opinions are admissible and on point, there is a battle of the experts and summary judgment is inappropriate. *See Metro Life Ins. Co. v. Bancorp Svcs. LLC*, 527 F.3d 1330, 1338-39 (Fed. Cir. 2008). Because these expert issues are complex, my Policies And Procedures require parties to file contemporaneous *Daubert* motions with summary judgment. The Parties complied with that policy and filed motions to exclude certain expert opinions. However, Fossil did not file a *Daubert* motion to exclude the expert testimony of Dr. Paul D. Martin but challenges the applicability or weight of that expert's analysis. For the purposes of summary judgment, absent an applicable *Daubert* motion, I must assume that the expert's position is admissible and treat it as part of the factual record. Therefore, when there's conflicting expert testimony on the record, as there is for the issues presented below, I will deny summary judgment.

In a patent case, the determination of the scope of the patent claims is a question of law, and a dispute about that legal issue does not preclude summary judgment. *See Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998). When the parties present a dispute about the scope of a claim term, the court must resolve that dispute. *See O2 Micro Intern. V. Beyond Innov.*, 521 1351, 1362 (Fed. Cir. 2008).

B.  **Claim Construction**

When construing a claim, words "are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*)). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. If the meaning isn't readily apparent, "the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). Then, a court may review extrinsic evidence, cognizant of its potential unreliability and bias. *See Phillips*, 415 F.3d at 1318.

A judge may depart from a word's ordinary and customary meaning only when a patentee (1) sets out a definition and acts as his own lexicographer, or (2) disavows the full scope of a claim term either in the specification or during prosecution. *See Thorner*, 669 F.3d at 1365. The judge must interpret the claim "with an eye toward giving effect to all terms in the claim." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) (citation omitted). Readings that render claim language "superfluous" or "meaningless" are disfavored. *Id.* (collecting cases).

## III.  ANALYSIS

Infringement occurs when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent …." 35 U.S.C. § 271(a). "Determining infringement requires two steps: construing the claims and comparing the properly construed claims to the accused product." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1316–17 (Fed. Cir. 2015). Still, "a good faith dispute about the meaning and scope of asserted claims does not, in and of itself, create a genuine dispute to preclude summary judgment in patent cases[.]" *Phonometrics*, 133 F.3d at 1464 (Fed. Cir. 1998).

Infringement is a question of fact. *See Thorner*, 669 F.3d at 1317. Accordingly, summary judgment of noninfringement "is proper when no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused device

either literally or under the doctrine of equivalents." *Id.* (citation omitted). The patentee has the burden of proving infringement by a preponderance of the evidence. *See Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019). For literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Id.*

### A.   "User-Defined Event"/"User-Defined Operational Parameters"

The accused devices allow a user to set a desired step goal (say, 10,000 steps). The measurement system records progress based on the user's movements. Once the user reaches the set goal, the device notifies the user. Dr. Martin will opine at trial that a POSITA would understand that the step goal is a user-defined parameter, and that the moment the user exceeds the goal (and therefore triggers a notice) is a user-defined event. Fossil has not moved to exclude Dr. Martin's opinion, so I must treat it as a piece of the factual evidence that the jury will consider.

Dr. Martin's opinion is consistent with my construction of the relevant terms and with the patent's specification. I interpreted a "user-defined event" to have its plain and ordinary meaning and "user-defined operational parameter" as a "measurement the user sets for the system to record." (D.I. 79, 7-9.) So, when a user sets a step goal, she sets a measurement for the system to record. And when the user exceeds the step goal, that's the user-defined event, by the term's plain and ordinary meaning. Of note, the specification describes a device that allows a user to set an operational parameter, such

7

as the angle of the user's hips and spine while performing a squat (say, 85°), and an event, such as exceeding that angle, that will trigger an alert to the user.

I disagree with Fossil's argument that this interpretation renders the step goal both the user-defined parameter and the user-defined event. It's true that both the event and the parameter are measured against the step goal, but they are not the same thing. The parameter is the step goal—a static number that the device counts up to. The event is the moment that the user exceeds that goal. It is judged against the goal, but it is not the goal. If Fossil were correct, then its interpretation could also read out the preferred embodiment that the specification describes, where a pre-set angle is the parameter and the device measures a user exceeding that angle. Under Fossil's interpretation, squatting at the specified angle would be both the user-defined event and operational parameter. Because the event and the parameter are two different things, Fossil has no basis for me to conclude that the accused devices do not infringe this claim limit.

### B.     "Measures Angle And Velocity Of Said Movement"

#### 1.     Claim construction issues

The Parties' summary judgment briefs argue about the meaning of the terms "measures" and "said movement," and they argue about whose fault it is that I haven't already construed those terms. But regardless of the blame, I can't kick the can down the road and let the jury resolve these issues of law. I have to construe each term before looking at the evidence of infringement.

8

### a. "Measures"

Although the Parties dispute what it means to "measure" an angle, neither makes much of a claim construction argument. Neither points me to the specification, the file history, or other material from which I might determine whether the term "measure" encompasses "calculating" or "determining." Fossil just argues that they aren't the same thing, without any citation. And LoganTree argues that "measure" and "detect" are the same thing, without providing any guidance about "calculate" or "determine."

The patent discloses an accelerometer or multiple accelerometers as the measurement device. ('576 Patent at 4:35-48.) Accelerometers do not, on their own, measure an angle, a fact that Fossil acknowledges. (*See* D.I. 160 at 9-10.) Instead, they collect movement data, which allows the accelerometer or another computational device to calculate the angle of movement. The patent discloses a preferred embodiment in which the movement sensor does not measure or detect the angle, but only provides the data for the sensor to calculate the angle, so I will construe the term "measure" to include "calculate" so that the term captures the preferred embodiment. A "claim construction that excludes a preferred embodiment is rarely, if ever correct[.]" *E.g.*, *Kaufman v. Microsoft Corp.*, 34 F.4th 1360,1372 (Fed. Cir. 2022) (cleaned up).

Fossil's argument to the contrary does not account for the possibility that it would read out this preferred embodiment. And it doesn't point to anything in the specification,

the file history, or even extrinsic evidence that suggests that the term "measure" cannot include "calculate." I therefore reject the argument.

### b.     "Said movement"

The parties dispute the antecedent for the term "said movement" in the claim limit "measures the angle and velocity of said movement." The claim language offers two possible antecedent bases. The preamble refers to "movement of body parts during physical activity." ('576 Patent at 11:29-30.) The first claim limit refers to "unrestrained movement in any direction." (*Id.* at 11:32-34.) I conclude that "unrestrained movement in any direction" is the proper antecedent because the preamble is not limiting.

Preamble language that "merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim." *Pacing Tech., LLC v. Garmin Intern., Inc.*, 778 F.3d 1021, 1023-24 (Fed. Cir. 2015) (quote omitted). "However, when limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *Id.* at 1024 (cleaned up; quote omitted). That is, the preamble is limiting if it "recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quote omitted). There is no "litmus test" to determine whether preamble language is limiting. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006). Whether to treat a preamble term as a claim limitation is "determined on the facts of each case in light of

the claim as a whole and the invention described in the patent." *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003).

The preamble of Claim 1 does not animate the claim and is thus not limiting. Both the preamble and the claim limits describe a movement, but that's not enough to find that preamble is the antecedent. Instead, the preamble is a statement of purpose: the anticipated use of the device is to monitor movement during physical activity. This should not fix the meaning of movement in subsequent limitations, particularly when the phrase "said movement" can find an antecedent basis in the claim limits themselves.

But that's not the end of the analysis; it still begs the question of what is moving because the device has to measure movement of something, either the device itself or a body part. The claim language and the specification suggest that the movement sensor measures data associated with "unrestrained movement in any direction" of the movement sensor itself. An accelerometer measures its own movement and uses the collected data as a proxy for the movement of something to which it's attached. An accelerometer cannot observe a separate object—like a body part—to determine that object's movement. And yet the patent discloses accelerometers as the devices that detect movement. I will therefore adopt a construction in which the device measures its own movement to capture the preferred embodiment of an accelerometer. This construction "do[es] not limit the claim language based on the embodiment," but instead "aligns with,

and thus bolsters, what the plain claim language indicates[.]" *Sequoia Tech. LLC v. Dell, Inc.*, 66 F.4th 1317, 1327 (Fed. Cir. 2023).

### 2. Infringement analysis

LoganTree has offered sufficient admissible evidence that the accused devices practice the "measures the angle and velocity" limitation. Dr. Martin's report outlines how the movement sensors in the accused devices detect the device's orientation by measuring, for instance, an angle of projection or angle of rotation. (*See* D.I. 167-3, ¶¶ 264-275.) From this evidence (which Fossil has not sought to exclude), a reasonable jury could find infringement.

Much of Fossil's non-infringement argument rests on its contention about the meaning of the terms "measures" and "said movement." Because I have rejected Fossil's construction of those terms, the arguments that rest on Fossil's constructions necessarily fall away. Fossil also argues that the measurement of the movement takes place in a processor, not in the movement sensor. But there is evidence that the accelerometer gathers multiple measurements to determine the angle of movement before providing that information to the processor. The microprocessor then determines if a particular movement was a step, as Dr. Martin attested in his deposition. But that calculation is not the measurement of an angle; the measurement happens before the data goes to the processor.

### C. Supporting Evidence

Fossil makes a number of arguments about the work that Dr. Martin did and suggests that gaps remain even after his analysis. This argument goes more to the weight that the jury should attach to Dr. Martin's analysis. It is not a basis for me to enter summary judgment. The record is clear that LoganTree sought information from third parties, including Google and STMicroelectronics, and Dr. Martin offered opinions based in part on the information that LoganTree received. Fossil is free to poke holes in that analysis before the jury, but it has not demonstrated that those holes justify my taking the case from the jury.

### IV. CONCLUSION

Once I construe the patent terms, the record shows that LoganTree has enough evidence to put its claims to a jury. I will therefore deny Fossil's summary judgment motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

April 2, 2024